**A. BRUNO LAW**
ALYSSA M. BRUNO (PA ID #321345; NJ ID #152382016)
[*Admitted to this Court*]
P.O. Box 468
Easton, PA 18044
Telephone: (610) 258-4003
Email: abruno@abrunolaw.com

*Attorney for Plaintiff Sophia Parker Studios, Inc. (t/a WIFE NYC)*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| SOPHIA PARKER STUDIOS, INC.<br>(t/a WIFE NYC),<br><br>                    Plaintiff,<br><br>v.<br><br>ALICE TEMPERLEY MBE, TMLL LTD. (t/a TEMPERLEY LONDON), TEMPERLEY HOLDINGS LTD. (t/a TEMPERLEY HOLDINGS),  ROMO LTD. (t/a ROMO and/or THE ROMO GROUP), ROMO (HOLDINGS) LTD., ROMO, INC. (t/a ROMO FABRICS AND WALLCOVERINGS and ROMO USA), THE ROMO GROUP LTD., AND DOES 1-20, inclusive,<br><br>                    Defendants. | Case No. 1:24-cv-02086-PAB<br><br>Judge Pamela A. Barker<br><br>**FIRST AMENDED COMPLAINT FOR:**<br><br>**(1) COPYRIGHT INFRINGEMENT PURSUANT TO 17 U.S.C. § 501;**<br>**(2) VICARIOUS AND CONTRIBUTORY COPYRIGHT INFRINGEMENT;**<br>**(3) DISTRIBUTION OF FALSE COPYRIGHT MANAGEMENT INFORMATION AND REMOVAL OF COPYRIGHT MANAGEMENT INFORMATION IN VIOLATION OF 17 U.S.C. § 1202(a) and (b); and**<br>**(4) ACCOUNTING.**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Sophia Parker Studios, Inc. (t/a WIFE NYC) ("**Plaintiff**"), by and through

its undersigned counsel, hereby files this First Amended Complaint against Defendants

Alice Temperley MBE ("**Alice Temperley**"), TMLL Ltd. (t/a Temperley London) and

1

Temperley Holdings Ltd. (t/a Temperley Holdings) (collectively "**Temperley London**" and/or "**Temperley London Defendants**"), Romo Ltd. (t/a ROMO and/or The Romo Group), Romo (Holdings) Ltd., Romo, Inc. (t/a ROMO Fabrics and Wallcoverings and ROMO USA), and The Romo Group Ltd. (collectively "**ROMO**" and/or "**ROMO Defendants**"), and Does 1-20 (collectively "**Doe Defendants**") (collectively referred to as "**Defendants**") and alleges as follows:

## NATURE OF THE ACTION

1.      This action is for direct and secondary copyright infringement in violation of 17 U.S.C. § 101, *et seq.,* distribution of false copyright management information in violation of 17 U.S.C. § 1202(a), and removal of copyright management information in violation of 17 U.S.C. § 1202(b) arising out of Defendants' unauthorized reproduction and exploitation of an original sculptural artwork created by Sophia Parker Studios, Inc. ("**Plaintiff**") entitled "Memphis Chainsaw" ("**the Artwork**") (U.S. Copyright Registration No. VA 2-342-734) as well as one or more of the four (4) published original photographs of the Artwork authored by Plaintiff, which were first displayed on Plaintiff's widely disseminated and popular Instagram account, @wifenyc, between September 2019 and April 2020 (collectively "**the Photographs**") (U.S. Copyright Registration No. VA 2-352-960 and U.S. Copyright Registration No. VA 2-420-961).  See **Exhibits A and B**.

2.      The CEO of Plaintiff Sophia Parker Studios, Inc. is Sophia Parker, a visual artist who specializes in plant-based artworks, immersive botanical sculptures, and print designs.  Plaintiff has shown her artworks in art galleries and institutions throughout the country, including MoMA PS1.  She recently showed a 10-piece sculptural artwork collection at a leading contemporary art fair, Untitled Art, which took place alongside Art Basel Miami Beach from December 4-8, 2024.  Plaintiff regularly collaborates with luxury

fashion and accessories brands and has licensed her artworks to a variety of companies in the apparel, jewelry, cosmetics, hair care, fragrance, sportswear, and hotel industries.  Some of her recent clients include Saint Laurent, Aveda, and Nike.

3.      The Artwork created by Plaintiff at issue in this lawsuit is a highly intricate, colorful, and vibrant sculptural work that was hand shaped and hand painted by Plaintiff to create its striking and visually distinct look.   Plaintiff owns the copyright to this original sculptural work and continues to create other original works of art in this style of design.



4.      The Photographs at issue in this lawsuit were authored by Plaintiff and posted to her Instagram account, @wifenyc.  They depict different angles and lighting of the Artwork and are set forth below.  Defendants copied one or more of the Photographs to produce the unauthorized derivative works at issue in this lawsuit.

3









5.      The Temperley London Defendants own a fashion brand named "Temperley London" that sells a wide range of luxury fashion items, such as embroidered dresses, kimonos, pantsuits, contemporary separates, and jackets.  The founder and creative director of Temperley London, Alice Temperley MBE, started the brand over 24 years ago in the United Kingdom.  Today, Temperley London is a well-known fashion brand that sells its apparel products to a worldwide audience, including a loyal U.S customer base.  Multiple celebrities and influential individuals have worn Temperley London apparel pieces, including Madonna, Beyoncé, Penelope Cruz, Thandiwe Newton, Kate Middleton, Eva Mendes, Halle Berry, Kate Moss, Gwyneth Paltrow, Angelina Jolie, Sarah Jessica Parker, Jennifer Coolidge, Winnie Harlow, Rita Wilson, Julia Garner, Kylie Minogue, Rita Ora, Jodie Comer, Elle Macpherson, Suki Waterhouse, Sandra Bullock, Corrine Bailey Rae, Christina Hendricks, and Brandi Carlile.[1]

6.      The Temperley London Defendants sell and distribute Temperley London apparel items to consumers located in the United States through brick-and-mortar stores,

---

[1] See https://int.temperleylondon.com/pages/about-us and https://int.temperleylondon.com/pages/temperley-tribe.

trunk shows at various retailers, and online through their website,

https://int.temperleylondon.com/?country=US,  social media accounts, and other e-

commerce platforms.

       7.      In February 2023, Plaintiff discovered an advertisement in a window of a

store in New York City that showed a model wearing a garment created by the Temperley

London Defendants that included a reproduction of Plaintiff's Artwork on the front and

sides of it.  This garment is known as the "Farrah Kimono."  Plaintiff instantly recognized

her Artwork on the kimono.  Plaintiff's discovery that day led to the subsequent discovery of

widespread infringement of her Artwork and the Photographs by Alice Temperley MBE, the

Temperley London Defendants, and the ROMO Defendants in the form of various apparel

products and interiors products, including fabrics and cushions.

### *TEMPERLEY LONDON'S "FARRAH" APPAREL INFRINGEMENTS*

       8.      In or around February or March 2022, the Temperley London Defendants

began selling and distributing a Temperley London Spring Summer 2022 luxury fashion

collection that included three (3) apparel items known as the "Farrah" apparel products.  All

three (3) of these "Farrah" apparel products include identical reproductions of Plaintiff's

Artwork yet were created without Plaintiff's knowledge, consent, or any payment to her.

Plaintiff had no knowledge of the Temperley London apparel products featuring her

Artwork or any use of her Artwork by Defendants until she discovered the store display

showing the model wearing the "Farrah Kimono" in February 2023.

       9.      The unauthorized Temperley London "Farrah" apparel products that the

Temperley London Defendants sold to consumers in the United States and that are at issue

in this lawsuit are: 1) the embroidered "Farrah Kimono" in three (3) colorways (i.e. black,

pastel parchment, pale lilac); 2) the embroidered "Farrah Dress" in two (2) colorways (i.e.

black and pastel parchment); 3) the embroidered "Farrah Strappy Dress" in two (2)

colorways (i.e. black and pastel parchment); and 4) any other subsequently discovered derivative apparel products (collectively referred to as "**Unauthorized Farrah Apparel Products**"), as set forth below.  See also **Exhibit C**.

**Farrah Kimono ($1,415.00) – colorways: black, pastel parchment, pale lilac**

"Memphis Chainsaw" sculpture by Plaintiff Sophia Parker Studios, Inc.

Unauthorized "Farrah Kimono" by Temperley London Defendants





Unauthorized "Farrah Kimono" on Temperley London's website

**Farrah Dress ($2,455.00) – colorways: black, pastel parchment, pale lilac**

"Memphis Chainsaw" sculpture by Plaintiff Sophia Parker Studios, Inc.

Unauthorized "Farrah Dress" by Temperley London Defendants





Unauthorized "Farrah Dress" on Temperley London's website

**Farrah Strappy Dress ($2,310.00) – colorways: black and pastel parchment**

"Memphis Chainsaw" sculpture by Plaintiff Sophia Parker Studios, Inc.

Unauthorized "Farrah Strappy Dress" by Temperley London Defendants





Unauthorized "Farrah Strappy Dress" on Temperley London's website

10. All of the Unauthorized Farrah Apparel Products include copies of Plaintiff's Artwork as depicted in the Photographs in embroidered form.

11. The Unauthorized Farrah Apparel Products are strikingly similar or at least substantially similar to Plaintiff's copyright-protected Artwork and the Photographs as they include almost exact replicas of Plaintiff's Artwork with only some minor color and pattern adjustments made to them.

12. The Unauthorized Farrah Apparel Products all contain almost identical reproductions of Plaintiff's highly distinctive Artwork in embroidered form. The embroidered patterned artworks found on the fronts, sides, and backs of the Unauthorized Farrah Apparel Products include the copyright-protected elements of Plaintiff's Artwork, including, but not limited to, the original hook-shaped curved form of the Dioon Edule Palm hand shaped by Plaintiff, the three (3) black and white checkerboard patterned palm fronds, the signature and distinctive curved blue stem of the plant in a cool medium blue paint tone, the intricate geometric paint patterns and color-tipped palm fronds, the particular color blocking expressions and color schemes chosen by Plaintiff, and the entire unique shape of the heavily-altered curved plant as depicted in the Artwork. Notably, the repeated embroidered patterned artworks found in the Unauthorized Farrah Apparel Products also contain the particular light blue- and light pink-painted palm fronds located in the center of the curved hook part of Plaintiff's sculpture. Plaintiff's Artwork and the Unauthorized Farrah Apparel Products contain identical design elements, and those elements are arranged in virtually the same way in relation to each other in both the Artwork and the embroidered patterned artworks found in the Unauthorized Farrah Apparel Products. Defendants replicated the entire copyright-protected selection, coordination, and arrangement of the

design elements in Plaintiff's Artwork.  Only minor color alterations are present between the works.

13.     The Unauthorized Farrah Apparel Products constitute unauthorized derivative works of Plaintiff's Artwork and the Photographs; thus, Defendants' actions in producing, selling, displaying, and distributing them infringe upon Plaintiff's exclusive copyright rights in the Artwork and the Photographs.

14.     Upon information and belief, Defendant Alice Temperley MBE accessed the Photographs of the Artwork through Plaintiff's widely disseminated Instagram account, @wifenyc, and/or through obtaining screenshots/shares of the Photographs.

15.     Upon information and belief, agents of Defendants TMLL Ltd. and Temperley Holdings Ltd. accessed the Photographs of the Artwork through Plaintiff's widely disseminated Instagram account, @wifenyc, and/or through screenshots/shares of the Photographs, and/or by receiving copies of the Photographs from Defendant Alice Temperley MBE or a third party.

16.      Upon information and belief, Alice Temperley MBE copied one or more of Plaintiff's Photographs of the Artwork.

17.     Upon information and belief, Alice Temperley MBE copied Plaintiff's original and distinct hand-painted Artwork by reproducing one or more of the Photographs found on Plaintiff's Instagram page to create digital and/or physical renderings of the Artwork.  The Temperley London Defendants then used those renderings to create the Unauthorized Farrah Apparel Products.

18.     Upon information and belief, the Temperley London Defendants copied one or more of Plaintiff's Photographs of the Artwork.

11

19.     Upon information and belief, the Temperley London Defendants copied Plaintiff's original and distinct hand-painted Artwork by reproducing one or more of the Photographs found on Plaintiff's Instagram page to create digital and/or physical renderings of the Artwork.  The Temperley London Defendants then used those unauthorized copies of Plaintiff's Artwork to create the Unauthorized Farrah Apparel Products.

### *TEMPERLEY LONDON'S "PALMAE" APPAREL INFRINGEMENTS*

20.     In addition to the Unauthorized Farrah Apparel Products, Alice Temperley MBE and the Temperley London Defendants also produced, displayed, sold, and distributed another line of clothes in Temperley London's Spring Summer 2022 collection known as the "Palmae" apparel line.

21.     Upon information and belief, Alice Temperley MBE copied Plaintiff's original and distinct hand-painted Artwork by reproducing one or more of the Photographs found on Plaintiff's Instagram page to create digital and/or physical renderings of the Artwork.  The Temperley London Defendants then used those renderings to create the Unauthorized Palmae Apparel Products.

22.     Upon information and belief, the Temperley London Defendants copied Plaintiff's original and distinct hand-painted Artwork by reproducing one or more of the Photographs found on Plaintiff's Instagram page to create digital and/or physical renderings of the Artwork.  The Temperley London Defendants then used those renderings to create the Unauthorized Palmae Apparel Products.

23.     The unauthorized Temperley London "Palmae" apparel products that the Temperley London Defendants sold to consumers in the United States and that are at issue in this lawsuit are: 1) the "Palmae Print Jacket" in one (1) colorway (i.e. black); 2) the "Palmae Print Dress" in two (2) colorways (i.e. black and parchment); 3) the "Palmae Print Trouser" in one (1) colorway (i.e. black); 4) the "Palmae Print Long Kaftan" in two (2)

12

colorways (i.e. black and parchment); 5) the "Palmae Print Coat" in two (2) colorways (i.e. black and parchment); and 6) any other subsequently discovered derivative apparel products (collectively "**Unauthorized Palmae Apparel Products**"), as set forth below.  See also **Exhibit D**.

<u>**Palmae Print Jacket ($940.00) – colorway: black**</u>

"Memphis Chainsaw" sculpture by Plaintiff Sophia Parker Studios, Inc.

Unauthorized "Palmae Print Jacket" by Temperley London Defendants





Unauthorized "Palmae Print Jacket" by Temperley London Defendants

## <u>Palmae Print Dress ($1,185.00) – colorways: black and parchment</u>

"Memphis Chainsaw" sculpture by Plaintiff Sophia Parker Studios, Inc.

Unauthorized "Palmae Print Dress" by Temperley London Defendants





Unauthorized "Palmae Print Dress" by Temperley London Defendants

### Palmae Print Trousers ($650.00) – colorway: black

"Memphis Chainsaw" sculpture by Plaintiff Sophia Parker Studios, Inc.

Unauthorized "Palmae Print Trouser" by Temperley London Defendants





Unauthorized "Palmae Print Trouser" by Temperley London Defendants

**Palmae Print Long Kaftan ($1,515.00) – colorways: black and parchment**

"Memphis Chainsaw" sculpture by Plaintiff Sophia Parker Studios, Inc.

Unauthorized "Palmae Print Long Kaftan" by Temperley London Defendants





Unauthorized "Palmae Print Long Kaftan" by Temperley London Defendants

**Palmae Print Coat ($1,660.00) – colorways: black and parchment**

"Memphis Chainsaw" sculpture by Plaintiff Sophia Parker Studios, Inc.

Unauthorized "Palmae Print Coat" by Temperley London Defendants





Unauthorized "Palmae Print Coat" by Temperley London Defendants

24.     The Unauthorized Palmae Apparel Products all contain a repeated patterned print that includes copyright-protected elements of Plaintiff's Artwork, including, but not limited to, the three (3) black and white checkerboard patterned palm fronds, the signature and distinctive blue stems of the plant in a cool medium blue paint tone, the intricate

geometric paint patterns and color-tipped palm fronds, and the particular color blocking expressions and color schemes chosen by Plaintiff.  Notably, the base of Plaintiff's Artwork and the plant depicted in the patterned print of the Unauthorized Palmae Apparel Products is a palm.  Moreover, the particular selection, coordination, and arrangement of original design elements in Plaintiff's Artwork have been reproduced in the Unauthorized Palmae Apparel Products.  The "total concept and feel" of the Unauthorized Palmae Apparel Products is the same as that of the Artwork.  An observer viewing the Artwork and the Unauthorized Palmae Apparel Products side by side would perceive them as coming from one creative source.

25.     The Unauthorized Palmae Apparel Products are substantially similar to Plaintiff's copyright-protected Artwork and the Photographs and are unauthorized adaptations of the Artwork.  The Unauthorized Palmae Apparel Products constitute unauthorized derivative works; thus, Defendant Alice Temperley and the Temperley London Defendants' actions in producing, selling, displaying, and distributing them infringe upon Plaintiff's exclusive copyright rights in the Artwork and the Photographs.

### *TEMPERLEY LONDON AND ROMO'S "FARRAH" INTERIORS INFRINGEMENTS*

26.     The ROMO Defendants own an interiors furnishing brand known as "ROMO" that produces fabrics, wallcoverings, trimmings, and accessories.  The ROMO Defendants claim that all of their interiors collections are designed in-house and then sold through a "worldwide network of designers, retailers, distributors, and agents," thereby giving the collections "international brand recognition in over 70 countries."[2]

27.     The production facility and corporate headquarters of the U.S.-based ROMO entity, Romo, Inc. (t/a ROMO Fabrics and Wallcoverings and ROMO USA), is located in

_____

[2] See https://www.romo.com/company/about-us

Chagrin Falls, Ohio.  ROMO USA has showrooms in eight (8) U.S. cities, including New York, Boston, Atlanta, Chicago, Dallas, Washington DC, Miami, and Los Angeles.  Its flagship showroom is located in the prestigious D&D Building in New York City.

28.     Following the apparent success of the Temperley London Spring Summer 2022 apparel collection, the Temperley London Defendants and the ROMO Defendants launched a joint collaboration known as the Temperley London x ROMO "A World Less Ordinary" interiors collection in or around March 2023.  This collection consists of fabrics, cushions, trims, and wallpaper products.  Through this collection, Defendants again made unauthorized use of Plaintiff's Artwork and the Photographs and sold products that violated Plaintiff's copyright rights – this time in the form of fabrics and cushions.

29.     In March 2023, Plaintiff discovered that Defendants had created four (4) products as part of their Temperley London x ROMO "A World Less Ordinary" interiors collection that included almost exact replicas of the Artwork as depicted in the Photographs.

30.      The unauthorized Temperley London x ROMO "Farrah" interiors products that the Temperley London Defendants and the Romo Defendants sold and that are at issue in this lawsuit are: 1) the embroidered "Farrah Agave" fabric; 2) the embroidered "Farrah Lilac Ash" fabric; 3) the embroidered "Farrah Agave" cushion; and 4) the embroidered "Farrah Lilac Ash" cushion (collectively "**Unauthorized Farrah Interiors Products**"), as set forth below.  See also **Exhibit E**.

31.     Defendants Romo, Inc., Romo Ltd., Romo (Holdings) Ltd., and The Romo Group Ltd. sold the Unauthorized Farrah Interiors to consumers in the United States.

19

**Farrah Agave Fabric**

| "Memphis Chainsaw" sculpture by Plaintiff Sophia Parker Studios, Inc. | Unauthorized "Farrah Agave" fabric by Temperley London and ROMO Defendants |





Unauthorized "Farrah Agave" fabric on ROMO's website

**Farrah Lilac Ash Fabric**

"Memphis Chainsaw" sculpture by Plaintiff Sophia Parker Studios, Inc.

Unauthorized "Farrah Lilac Ash" fabric by Temperley London and ROMO Defendants





Unauthorized "Farrah Lilac Ash" fabric on ROMO's website

Farrah Lilac Ash
8013/02

**Farrah Agave Cushion**

| "Memphis Chainsaw" sculpture by Plaintiff Sophia Parker Studios, Inc. | Unauthorized "Farrah Agave" cushion by Temperley London and ROMO Defendants |



ROMO



Unauthorized "Farrah Agave" cushion on ROMO's website

Farrah 60cm x 40cm Cushion Agave          RC765/01
Collection: Temperley London x Romo – Fabrics

**Farrah Lilac Ash Cushion**



"Memphis Chainsaw" sculpture by Plaintiff Sophia Parker Studios, Inc.

Unauthorized "Farrah Lilac Ash" cushion by Temperley London and ROMO Defendants

Unauthorized "Farrah Lilac Ash" cushion on ROMO's website

32.     Upon information and belief, Romo, Inc. copied one or more of Plaintiff's Photographs of the Artwork and/or copied one or more of the digital or physical renderings featuring the Artwork created by the Temperley London Defendants.  Romo Inc. then used those copies of Plaintiff's Artwork to create the Unauthorized Farrah Interiors Products.

33.     Upon information and belief, Romo Ltd. copied one or more of Plaintiff's Photographs of the Artwork and/or copied one or more of the digital or physical renderings featuring the Artwork created by the Temperley London Defendants.  Romo Ltd. then used those copies of Plaintiff's Artwork to create the Unauthorized Farrah Interiors Products.

34.     Upon information and belief, Romo (Holdings) Ltd. copied one or more of Plaintiff's Photographs of the Artwork and/or copied one or more of the digital or physical renderings featuring the Artwork created by the Temperley London Defendants.  Romo (Holdings) Ltd. then used those copies of Plaintiff's Artwork to create the Unauthorized Farrah Interiors Products.

35.     Upon information and belief, The Romo Group Ltd. copied one or more of Plaintiff's Photographs of the Artwork and/or copied one or more of the digital or physical renderings featuring the Artwork created by the Temperley London Defendants.  The Romo Group Ltd. then used those copies of Plaintiff's Artwork to create the Unauthorized Farrah Interiors Products.

36.     All of the Unauthorized Farrah Interiors Products include copies of Plaintiff's Artwork as depicted in the Photographs in embroidered form.

37.     The Unauthorized Farrah Interiors Products are strikingly similar or at least substantially similar to Plaintiff's copyright-protected works as they include almost exact replicas of Plaintiff's Artwork with only some minor color and pattern adjustments made to them.

38.     The Unauthorized Farrah Interiors Products all contain almost identical reproductions of Plaintiff's highly distinctive Artwork in embroidered form.  The repeated embroidered patterned print that makes up the Farrah Agave and Farrah Lilac Ash fabrics as well as the Farrah Agave and Farrah Lilac Ash cushions includes the copyright-protected elements of Plaintiff's Artwork, including, but not limited to, the original hook-shaped

24

curved form of the Dioon Edule Palm hand shaped by Plaintiff , two of the three (3) black and white checkerboard patterned palm fronds, the distinctive curved stem of the plant as shaped by Plaintiff, the intricate geometric paint patterns and color-tipped palm fronds, the particular color blocking expressions and color schemes chosen by Plaintiff, and the entire unique shape of the heavily-altered curved plant as depicted in the Artwork.  Plaintiff's Artwork and the Unauthorized Farrah Interiors Products contain identical design elements, and those elements are arranged in virtually the same way in relation to each other in both the Artwork and the embroidered patterns found in the Unauthorized Farrah Interiors Products.  Defendants replicated the entire copyright-protected selection, coordination, and arrangement of the design elements in Plaintiff's Artwork.  Only minor color alterations are present between the works.

39.     The Unauthorized Farrah Interiors Products constitute unauthorized derivative works; thus, Defendants' actions in producing, selling, displaying, and distributing them infringe upon Plaintiff's exclusive copyright rights in the Artwork and the Photographs.

### INFRINGING UNAUTHORIZED ADVERTISING WORKS BY ALL DEFENDANTS

40.     In addition to producing, selling, displaying, and distributing the unauthorized apparel and interiors products set forth above, Defendants also violated Plaintiff's copyright rights in the Artwork and the Photographs by producing photographs, videos, and advertisements featuring the Unauthorized Farrah Apparel Products, Unauthorized Palmae Apparel Products, and the Unauthorized Farrah Interiors Products and then displaying and distributing those derivative works at brick-and-mortar showrooms and retail stores, in print books, brochures, advertisements, email blasts, social media posts/stories, websites, and through various other advertising and marketing channels (collectively "**Unauthorized Advertising Works**").  See **Exhibits C – J.**

## *WILLFUL INFRINGEMENT BY ALL DEFENDANTS*

41.     In April 2024, Plaintiff through its counsel, Alyssa M. Bruno, Esq., sent detailed Cease-and-Desist Notices to Alice Temperley, the Temperley London Defendants, and the Romo Defendants regarding the above-mentioned infringements.  In the letters, Plaintiff demanded that Defendants *immediately cease and forever desist* all forms of infringement concerning the Artwork and the Photographs.

42.     Despite acknowledging receipt of the Cease-and-Desist Notice from Plaintiff in April 2024 regarding all of the aforementioned infringements, the Temperley London Defendants and the ROMO Defendants **continued to display, produce, distribute, and sell the Unauthorized Farrah Interiors Products** to consumers worldwide, including to consumers located in the United States, **for many additional months**.  See Cease-and-Desist Demand Letter, attached hereto as **Exhibit K**; see also Defendants' Acknowledgement Letters, attached hereto as **Exhibit L**.  The ROMO Defendants did not remove the Unauthorized Farrah Interiors Products as being listed for sale on their U.S. website, www.romo.com, **until February 2025, over ten (10) months** after the April 2024 Cease-and-Desist Notice had been sent and received by Defendants.  Upon information and belief, the ROMO Defendants continue to display, distribute, and sell the Unauthorized Farrah Interiors Products to consumers throughout the world, including the United States, via their showrooms and various distribution channels, including third-party retailers and designers.

43.     Additionally, despite acknowledging receipt of the Cease-and-Desist Notice from Plaintiff in April 2024 regarding all of the aforementioned infringements, Alice Temperley MBE, the Temperley London Defendants, and the ROMO Defendants continued **for many additional months and continue to this day** to display, reproduce, and distribute certain of the Unauthorized Advertising Works depicting the Unauthorized Farrah Apparel

Products, Unauthorized Palmae Apparel Products, and Unauthorized Farrah Interiors Products as set forth in Exhibits C – J through their various social media accounts and websites, showrooms, stores, and other advertising/marketing channels.

44.     Defendants have and are still willfully infringing upon Plaintiff's copyright rights in the Artwork and the Photographs.  Plaintiff is entitled to relief.

## JURISDICTION AND VENUE

45.     This is a civil action seeking damages and injunctive relief for direct and secondary copyright infringement in violation of 17 U.S.C. § 101, *et seq.,* distribution of false copyright management information in violation of 17 U.S.C. § 1202(a), and removal of copyright management information in violation of 17 U.S.C. § 1202(b).  This Court has original subject matter jurisdiction over the action under 28 U.S.C. §§ 1331 and 1338 as this action asserts claims arising under the Copyright Act of 1976, including as amended by the Digital Millennium Copyright Act.

46.     This Court has personal jurisdiction over Defendants because all of the Defendants conduct continuous, systematic, and routine business within this state and this District; Defendants have purposely availed themselves of the state of Ohio to conduct their business; the events at issue underlying the cause of action at hand arose from Defendants' transaction of business in this state and this District; and Plaintiff has been harmed due to Defendants' conduct within this state and this District.   Exercising personal jurisdiction over Defendants would comport with traditional notions of fair play and substantial justice. Specifically, Alice Temperley MBE and the Temperley London Defendants produced the Unauthorized Farrah Apparel Products and Unauthorized Palmae Apparel Products and then distributed, sold, and displayed those infringing products to consumers in Ohio through Temperley London's U.S. website, https://int.temperleylondon.com/?country=US, which sells and delivers goods to Ohio residents.  The Temperley London Defendants also sold the

27

Unauthorized Farrah Apparel Products and Unauthorized Palmae Apparel Products to other third-party retailers and distributors located in the U.S. who then sold the infringing products to consumers located in Ohio and this District.  Additionally, Alice Temperley MBE displayed copies of the Unauthorized Farrah Apparel Products, Unauthorized Palmae Apparel Products, and Unauthorized Farrah Interiors Products in the form of advertisements for the products (i.e. Unauthorized Advertising Works) on her personal Instagram account, @alicetemperley, which is viewable to residents of Ohio and this District.  The Temperley London Defendants also displayed copies of the Unauthorized Farrah Apparel Products, Unauthorized Palmae Apparel Products, and Unauthorized Farrah Interiors Products in the form of advertisements for the products (i.e. the Unauthorized Advertising Works) on their Instagram account, @temperleylondon, which not only displays the products to Ohio residents but also allows Ohio residents to purchase the products directly through the Instagram Shop app.  Upon information and belief, the Unauthorized Advertising Works depicting the Unauthorized Farrah Apparel Products and Unauthorized Palmae Apparel Products were run as Instagram ads in Stories and on the Instagram Feed by the Temperley London Defendants and were shown to Ohio residents who engaged with Temperley London's Instagram account.  Furthermore, the Temperley London Defendants displayed the Unauthorized Advertising Works on their other social media accounts, including their two other Instagram accounts, @TemperleyBridal and @TemperleyLondonOutlet, Facebook account, https://www.facebook.com/temperleylondon/, and Twitter/X account (@TemperleyLondon), all of which were accessible and targeted to reaching U.S. consumers, including consumers located in Ohio and this District.  Plaintiff was harmed by Defendant Alice Temperley's and the Temperley London Defendants' actions in producing, displaying, selling, and distributing the Unauthorized Farrah Apparel Products, Unauthorized Palmae Apparel Products, Unauthorized Farrah Interiors Products, and Unauthorized Advertising Works to consumers in the state of Ohio and this District as all of

these works contain unauthorized copies of Plaintiff's original Artwork and were commercially exploited without Plaintiff's consent or any payment to her.

This Court has personal jurisdiction over Romo, Inc. because Romo, Inc. is incorporated in this state and this District and has a corporate headquarters located at 16722 West Park Circle Drive, Chagrin Falls, OH 44023. Additionally, Romo, Inc. produced, stored, distributed, displayed, and sold the Unauthorized Farrah Interiors Products to consumers in Ohio and in this District. Upon information and belief, units of the Unauthorized Farrah Interiors Products are currently stored in warehouses or other storage facilities located in Ohio that are owned or under the control of Romo, Inc. Plaintiff was harmed by the actions of Romo, Inc. that took place in Ohio and this District as her original Artwork was exploited by Romo, Inc. for commercial gain through the sale of the Unauthorized Farrah Interiors Products without her consent or any payment to her.

Finally, this Court has personal jurisdiction over the U.K.-based ROMO Defendants, Romo Ltd., Romo (Holdings) Ltd., and The Romo Group Ltd., because upon information and belief, Romo Ltd., Romo (Holdings) Ltd., and The Romo Group Ltd. developed/manufactured the Unauthorized Farrah Interiors Products that were sold to consumers located in Ohio and this District. Moreover, upon information and belief, Romo Ltd., Romo (Holdings) Ltd., and The Romo Group Ltd. supplied and distributed the Unauthorized Farrah Interiors Products to consumers located in Ohio and this District. Upon information and belief, Romo Ltd., Romo (Holdings) Ltd., and The Romo Group Ltd. also supplied and distributed the Unauthorized Farrah Interiors Products to Romo, Inc. and various other third parties that then sold these goods to consumers located in the state of Ohio and this District. Notably, all of the named ROMO entities are closely held limited companies that are run by the identical Board of Directors. According to the Annual Report and Financial Statements of the ROMO Defendants for the period ending on December 31,

2023, The Romo Group Ltd. is the parent company of the other ROMO subsidiaries and has 100% direct ownership of Romo (Holdings) Ltd. Romo (Holdings) Ltd. is the parent company of Romo Ltd. and has 100% direct ownership of Romo Ltd. Romo Ltd. is the parent company of Romo, Inc. and has 100% direct ownership of Romo, Inc. Upon information and belief, Romo Ltd., Romo (Holdings) Ltd., and The Romo Group Ltd. all contributed to, induced, had control over, and profited financially from the infringing actions of its subsidiaries that took place in the U.S., including in the state of Ohio and this District. Upon information and belief, Romo Ltd., Romo (Holdings) Ltd., and The Romo Group Ltd. all profited from the sale of the Unauthorized Farrah Interiors Products in the U.S. and the state of Ohio and had involvement in the infringements set forth in this First Amended Complaint. ROMO's website, https://www.romo.com/, is owned and operated by Romo Ltd. and is accessible and operational to consumers located in the state of Ohio. ROMO's website serves consumers located in the U.S. and displayed the Unauthorized Farrah Interiors Products to consumers within Ohio. Designers and other buyers located in Ohio have the ability to purchase or inquire about purchasing the Unauthorized Farrah Interiors Products through accessing and utilizing ROMO's website. Designers and other buyers located in Ohio can also visit the "Where to Buy" tab of ROMO's website and then click on the "USA" tab under the "Find an Interior Designer/Retailer" header to be directed to a "Find a Showroom" page that lists in a drop-down menu all of the states where there is a ROMO showroom. Under "Ohio" on the aforementioned drop-down menu, it lists 16722 West Park Circle Drive, Chagrin Falls, OH 44023 as the showroom where ROMO products, including the Unauthorized Farrah Interiors Products can be purchased. In addition to be able to purchase the Unauthorized Farrah Interiors Products through the ROMO Defendants directly, the Unauthorized Farrah Interiors Products produced by the U.K.-based ROMO Defendants, Romo Ltd., Romo (Holdings) Ltd., and The Romo Group Ltd., were also displayed, distributed, and sold to consumers located in Ohio through the websites of third-

party retailers and distributors. Upon information and belief, third-party retailers who are located outside of the U.S. but sell ROMO products to consumers located in the U.S., including in Ohio, purchased the Unauthorized Farrah Interiors Products from one or more of the U.K.-based ROMO Defendants, Romo Ltd., Romo (Holdings) Ltd., and The Romo Group Ltd. Finally, Romo, Ltd., Romo (Holdings) Ltd., and The Romo Group Ltd. displayed the Unauthorized Farrah Interiors Products on their social media account, @romo_fabrics, and Facebook account, https://www.facebook.com/romofabrics, both of which are accessible and targeted to reach consumers located in Ohio and this District. Plaintiff was harmed by Romo Ltd., Romo (Holdings) Ltd., and The Romo Group Ltd.'s actions in producing, displaying, selling, and distributing the Unauthorized Interiors Products and Unauthorized Advertising Works to consumers in the state of Ohio and this District as these works all contain unauthorized copies of Plaintiff's original Artwork and were commercially exploited without Plaintiff's consent or any payment to her.

47. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b), (c), (d), and 1400(a) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District; a substantial part of the property that is the subject of this action is situated in this District; the Court in this District has personal jurisdiction over the Defendants; and Defendants or their agents reside or may be found in this District. Specifically, the Court in this District has personal jurisdiction over the Defendants for the reasons set forth in the preceding paragraph. The ROMO Defendants have a U.S. corporate headquarters located in this District at 16722 West Park Circle Drive, Chagrin Falls, OH 44023, which is the headquarters for Romo, Inc. Defendant Romo, Inc. (t/a ROMO Fabrics and Wallcoverings and ROMO USA) is incorporated in this District. Upon information and belief, Romo, Inc. employs individuals located in this District who, upon information and belief, were engaged in the activities alleged in this Complaint. Upon information and belief, all of the ROMO Defendants, including Romo, Inc. and the U.K.-based ROMO

31

Defendants, Romo Ltd., Romo (Holdings) Ltd., and The Romo Group Ltd., produced, sold, distributed, and displayed unauthorized reproductions of Plaintiff's Artwork as depicted in the Photographs to consumers within this District in the form of the Unauthorized Farrah Interiors Products and Unauthorized Advertising Works set forth herein. The Romo Defendants displayed the Unauthorized Farrah Interiors Products on their social media account, @romo_fabrics, and Facebook account, https://www.facebook.com/romofabrics, both of which are accessible and targeted to reach consumers located in this District.

Additionally, Defendant Alice Temperley MBE and the Temperley London Defendants produced, sold, distributed, and displayed unauthorized reproductions of Plaintiff's Artwork as depicted in the Photographs to consumers within this District through their website and social media accounts in the form of the Unauthorized Farrah Apparel Products, Unauthorized Palmae Apparel Products, Unauthorized Farrah Interiors Products, and Unauthorized Advertising Works. Defendant Alice Temperley MBE displayed and promoted the Unauthorized Advertising Works set forth herein to consumers within the District via her Instagram account, @alicetemperley, and the Temperley London Defendants displayed and promoted the Unauthorized Advertising Works to consumers within the District via their Instagram accounts, @temperleylondon, @TemperleyBridal and @TemperleyLondonOutlet, Facebook account, https://www.facebook.com/temperleylondon/, and Twitter/X account (@TemperleyLondon), all of which were accessible and targeted to reaching U.S. consumers, including consumers located in Ohio and this District. The Temperley London Defendants also sold the Unauthorized Farrah Apparel Products and Unauthorized Palmae Apparel Products to third party retailers and distributors who sold the products to consumers located in this District. Moreover, upon information and belief, Defendant Alice Temperley MBE, the Temperley London Defendants, and the U.K.-based ROMO Defendants, Romo Ltd., Romo (Holdings) Ltd., and The Romo Group Ltd., collaborated with, directed, controlled, and induced Romo,

Inc. located in this District to infringe upon Plaintiff's Artwork and the Photographs. Finally, upon information and belief, at least some of the Unauthorized Farrah Interiors Products are still physically located in Romo, Inc.'s corporate headquarters, warehouse, and distribution facilities located in this District.

## **THE PARTIES**

48.     Plaintiff Sophia Parker Studios, Inc. (t/a WIFE NYC) ("**Plaintiff**") is a United States corporation organized under the laws of the State of New York with its principal place of business located in Flushing, New York.  Sophia Parker is the CEO of Sophia Parker Studios, Inc.

49.     Defendant Alice Temperley MBE ("Defendant" and/or "**Alice Temperley**") is the Founder and Creative Director of Temperley London and upon information and belief, is and at all relevant times was, a citizen of the United Kingdom residing in Ilminster, United Kingdom.

50.     Defendant TMLL Ltd. (t/a Temperley London) (company #13356817) ("Defendant" and/or "**TMLL Ltd.**") is a private limited company registered in England and Wales with a principal place of business located in Ilminster, United Kingdom.  TMLL Ltd. sells goods to consumers in the U.S. through Temperley London's website, https://www.temperleylondon.com/, and through other third-party retailers and distributors based in the U.S.  TMLL Ltd is a subsidiary of Temperley Holdings Ltd., which owns 100% of TMLL Ltd.'s issued share capital.[3]  As of the date of the filing of TMLL Ltd.'s Annual

---

[3] See TMLL Ltd.'s Annual Report and Financial Statements for the period ending on December 31, 2023, at 7.  Last accessed online at https://find-and-update.company-information.service.gov.uk/company/13356817/filing-history on March 13, 2025.

Report and Financial Statements for the period ending on December 31, 2023, Lucca Donnini was the Director of TMLL Ltd.[4]

51.     Defendant Temperley Holdings Ltd. (t/a Temperley Holdings) (company #07094663) ("Defendant" and/or "**Temperley Holdings Ltd.**") is a private limited company registered in England with a principal place of business located in Ilminster, United Kingdom.  Temperley Holdings Ltd. sells goods to consumers in the U.S. through Temperley London's website, https://www.temperleylondon.com/, and through other third-party retailers and distributors based in the U.S.  Temperley Holdings Ltd. is the parent company of TMLL Ltd. and owns 100% of the issued share capital of TMLL Ltd.[5]  The ultimate controlling party of Temperley Holdings Ltd. is Times Square LLC, a company registered in Dubai, United Arab Emirates.  On November 23, 2023, "Times Square LLC acquired a controlling share of the shares in Temperley Holdings Limited."[6]  As of the date of the filing of Temperley Holdings Ltd.'s Annual Report and Financial Statements for the period ending on December 31, 2023, Lucca Donnini was the Director of Temperley Holdings Ltd.[7]

52.     Defendant Romo, Inc. (t/a ROMO Fabrics and Wallcoverings and ROMO USA) (entity #795419) ("Defendant" and/or "**Romo, Inc.**") is a United States corporation with a principal place of business located at 16722 West Park Circle Drive, Chagrin Falls, OH 44023 and a registered agent address of O.R.C. Statutory Services Corp., 600 Superior

---

[4] See id., at 1.

[5] See id.

[6] See Temperley Holdings Ltd.'s Annual Report and Financial Statements for the period ending on December 31, 2023, at 6.  Last accessed online at https://find-and-update.company-information.service.gov.uk/company/07094663/filing-history on March 13, 2025.

[7] See id., at 2.

Ave., E, Suite 1400, Cleveland, OH 44114.  Romo, Inc. manufactures and sells "upholstery and soft furnishing fabrics," cushions, and other interiors products to consumers in the United States.[8]  Upon information and belief, Romo, Inc. has a physical office, manufacturing facility, showroom, and distribution center(s) located in Chagrin Falls, Ohio. Romo, Inc. is a wholly owned subsidiary of the U.K.-based company, Romo Ltd.[9]

53.    Defendant Romo Ltd. (t/a ROMO and/or The Romo Group) (company #385709) ("Defendant" and/or "**Romo Ltd.**") is a private limited company registered in England with its principal place of business located in the United Kingdom.  Romo Ltd. is "the UK Headquarters for [The Romo Group]."[10]  Nevertheless, Romo Ltd. engages in the business of supplying "upholstery and soft furnishing fabrics" to consumers located outside of the U.K., including consumers located in the United States.[11]  The principal activities of Romo Ltd. and its subsidiary undertakings are "the design, distribution and wholesale supply of luxury furnishing fabrics and wall coverings."[12]  Romo Ltd. also provides "management and financial services to all subsidiary undertakings."[13]  Romo Ltd. is the parent company to Romo, Inc., the U.S.-based company.[14]  Romo Ltd. is a wholly owned subsidiary of Romo (Holdings) Ltd.  The ultimate controlling party of Romo Ltd. is

---

[8] See Romo Ltd.'s Annual Report and Financial Statements for the period ending on December 31, 2023, at 28.  Last accessed online at https://find-and-update.company-information.service.gov.uk/company/00385709/filing-history on March 13, 2025.

[9] See id.

[10] See id.

[11] See id., at 28.

[12] See id., at 4.

[13] See id.

[14] See id., at 28.

Jonathan Frank Mould.[15]  The Board of Directors of Romo Ltd. at the time that its Annual Report and Financial Statements for the period ending on December 31, 2023 was filed consisted of JF Mould, ED Mould, FM Mould, JA Mould, and NB Sexton.[16]

54.  Defendant Romo (Holdings) Ltd. (company #02583111) ("Defendant" and/or "**Romo (Holdings) Ltd.**") is a private limited company registered in England with its principal place of business located in the United Kingdom.  Romo (Holdings) Ltd. is the parent company of Romo Ltd.  Romo (Holdings) Ltd. "provides the strategy for the trading companies of the Group who continue to create and sell beautiful product ranges within the 6 Group brands of Romo, Black Edition, Villa Nova, Kirkby Design, Zinc Textile and Mark Alexander.  The Group focuses on investing in design and distribution to provide excellent products and customer service to both existing and emerging customers and markets."[17] Romo (Holdings) Ltd. indirectly owns 100% of Romo, Inc., the U.S.-based company.[18]  The entire share capital of Romo (Holdings) Ltd. was acquired by The Romo Group Ltd. (formerly Thread Newco Limited) on March 29, 2023.[19]  The Board of Directors of Romo (Holdings) Ltd. at the time that its Annual Report and Financial Statements for the period ending on December 31, 2023 was filed consisted of JF Mould, ED Mould, FM Mould, JA Mould, and N Sexton.[20]

---

[15] See id., at 43.

[16] See id., at 4.

[17] See Romo (Holdings) Ltd.'s Annual Report and Financial Statements for the period ending on December 31, 2023, at 2.  Last accessed online at https://find-and-update.company-information.service.gov.uk/company/02583111/filing-history on March 13, 2025.

[18] See id., at 21.

[19] See id., at 2 and 26.

[20] See id., at 3.

55.     Defendant The Romo Group Ltd. (company #14451746) ("Defendant" and/or "**The Romo Group, Ltd.**") is a private limited liability company registered in England with its principal place of business located in the United Kingdom.  The Romo Group Ltd. was incorporated on October 31, 2022 to act as "an acquisition vehicle for the acquisition of Romo (Holdings) Limited and its subsidiaries"[21] and is the parent company to Romo, Inc., Romo Ltd., and Romo (Holdings) Ltd..  On March 29, 2023, "The Romo Group Limited acquired 100% of the share capital of Romo (Holdings) Limited for £145,725,000."[22] According to its December 31, 2023 Annual Report and Financial Statements, "The Romo Group is an international designer and distributor of luxury furnishing fabrics, wallpapers and accessories to over 70 worldwide markets within the interior design industry.  The strategy of the Group continues to be the creation and sale of beautiful product ranges within the 6 Group brands of Romo, Black Edition, Villa Nova, Kirkby Design, Zinc Textile and Mark Alexander.  The Group focuses on investing in design and distribution to provide excellent products and customer service to both existing and emerging customers and markets…. During 2023, the Group has continued to make progress in the implementation of its strategy including the successful worldwide launch of new product collections for all brands."[23]  In its December 31, 2023 Annual Report, The Romo Group Ltd. states that "[t]he key business risks and uncertainties affecting the Group are considered to relate to the market response **to new design launches and the strength of the brands in the European and US markets**."[24]  The ultimate controlling party of The Romo Group Ltd. is Jonathan

---

[21] See The Romo Group Limited (formerly Thread Newco Limited)'s Annual Report and Financial Statements for the period ending on December 31, 2023, at 1.  Last accessed online at https://find-and-update.company-information.service.gov.uk/company/14451746/filing-history on March 13, 2025.

[22] See id., at 30.

[23] See id.

[24] See id., at 2.

Frank Mould.[25]  The Board of Directors of The Romo Group Ltd. at the time that its Annual Report and Financial Statements for the period ending on December 31, 2023 was filed consisted of JF Mould, ED Mould, FM Mould, JA Mould, and NB Sexton.[26]

56.     The Doe Defendants include, among others, those persons who created, produced, distributed, displayed, and sold products or other derivative works such as photographs, videos, and advertisements that infringe upon the copyright-protected elements of the Artwork and the Photographs.  The Doe Defendants also include those persons who aided, contributed, or induced the creation, production, distribution, display, and sale of products and other derivative works such as photographs, videos, and advertisements that infringe upon the copyright-protected elements of the Artwork and the Photographs.

57.     The true names and capacities of the Defendants named herein as Does 1 through 20, inclusive, are unknown to Plaintiff who thus sues such Defendants by such fictitious names.  With permission of the Court, Plaintiff will amend this First Amended Complaint to allege their true names when they have been ascertained.  Upon information and belief, each of the fictitiously named Defendants herein is responsible in some manner for the occurrences alleged herein, and Plaintiff's injuries as alleged herein were proximately caused by such Defendants' acts or omissions.

<u>**ALLEGATIONS COMMON TO ALL CLAIMS**</u>

**I.     Plaintiff's Copyright-Protected Artwork**

58.     Plaintiff created the copyright-protected Artwork entitled "Memphis Chainsaw" in 2019.

---

[25] See <u>id</u>., at 43.

[26] See <u>id.</u>, at 5.

59.     The live plant at the center of the Artwork is a Dioon Edule Palm, which Plaintiff sourced from a local plant shop in New York City.  To shape the plant into the unique and creative form of the sculpture, Plaintiff used a variety of techniques, such as heating the stems of the plant in a slow and methodical process, bending the plant into its curved position using filament at certain points along the stem, and cutting the individual fronds of the plant to create a specific, heavily altered shape.  Plaintiff then hand painted the individual palm fronds to create the highly intricate and creative pattern depicted in the Artwork.

60.     The paint used to create the Artwork was hand mixed by Plaintiff in specific proportions that are proprietary to Plaintiff.  Plaintiff chose to paint the stem of the Artwork in a specific blue using an emulsion vinyl paint and acrylic polymer emulsion opaque paint with accentuated pigment due to the curved and complex surface of the stem.

61.      The Artwork is an original work of authorship created by Plaintiff.

62.     The Artwork is a copyright-protected sculptural work that is registered with the U.S. Copyright Office (U.S. Copyright Office Registration No. VA 2-342-734).  See **Exhibit A**.

II.     **Plaintiff's Copyright-Protected Photographs and Posting of the Same on Plaintiff's Instagram account, @wifenyc.  Defendants' Access to the Artwork via the Photographs.**

63.     After creating the Artwork, Plaintiff took photos of it in her art studio.

64.     As set forth above, Plaintiff then posted four (4) of those photographs onto her well-known and widely disseminated Instagram account, @wifenyc, between September 2019 and April 2020 (collectively "**the Photographs**").

65.     The Photographs are original works of authorship created by Plaintiff.  The Photographs are registered works of art with the U.S. Copyright Office (U.S. Copyright Office Registration No. VA 2-352-960 and U.S. Copyright Office Registration No. VA 2-420-961).  See **Exhibit B**.

66.     Alice Temperley MBE, the Temperley London Defendants, and the ROMO Defendants had access to the Photographs, which are copies of the preexisting Artwork, due to the public and widely disseminated nature of Plaintiff's Instagram account, @wifenyc. As of the date of this First Amended Complaint, Plaintiff's Instagram account has 98,400 followers.  Many of the followers who view, follow, and share photographs of Plaintiff's artworks on her Instagram account are fellow designers, artists, and creators.  Upon information and belief, Defendants accessed the Photographs through Plaintiff's Instagram account.  The other Defendants then obtained access to the Photographs by receiving or accessing them and/or copies of them from the Defendants who accessed the Photographs. Alternatively, one or more of the Defendants received the Photographs from a third party who shared the Photographs that were posted on Plaintiff's Instagram account and then those Defendants subsequently shared the Photographs with the other Defendants.

67.     The Defendants who accessed the Photographs subsequently shared the Photographs and/or copies of the Photographs with the other Defendants to create the Unauthorized Farrah Apparel Products, Unauthorized Palmae Apparel Products, and Unauthorized Farrah Interiors Products.  All of the infringing products at issue are strikingly similar or at least substantially similar to Plaintiff's Artwork as depicted in the Photographs. Defendants created and produced the Unauthorized Farrah Apparel Products, Unauthorized Palmae Apparel Products, and Unauthorized Farrah Interiors Products by copying the Artwork as depicted in one or more of the Photographs and creating digital and/or physical rendering(s) from it.  Those digital and/or physical renderings were then used to create the

various embroidered patterned artworks and print patterns that appear on the Unauthorized Farrah Apparel Products, Unauthorized Palmae Apparel Products, and Unauthorized Farrah Interiors Products.

68.     It is apparent that Defendants accessed Plaintiff's Photographs and thereby accessed the depictions of the Artwork set forth in the Photographs as the Unauthorized Farrah Apparel Products and Unauthorized Farrah Interiors Products all contain embroidered copies of Plaintiff's Artwork that are strikingly similar to the Photographs and the Artwork. Defendants' access to Plaintiff's Photographs and thereby the underlying Artwork can be inferred by the strikingly similarities between the works at issue. Because Defendants' access to the Photographs depicting the Artwork can be established through the striking similarities between the Photographs and the Unauthorized Farrah Apparel Products and Unauthorized Farrah Interiors Products, Defendants' access to the Photographs depicting the Artwork to create the Unauthorized Palmae Apparel Products is also established.

69.     Moreover, the close relationships between the Defendants, including the collaborative nature between the two brands at issue (i.e. Temperley London and ROMO) and the fact that the corporate Defendants of each respective brand share the same director, employees, and board of directors further supports the conclusion that Defendants had collective access to the Artwork as depicted in the Photograph and collectively copied the Artwork as depicted in the Photographs. Alice Temperley is the Founder and Creative Director of TMLL Ltd. and, upon information and belief, has an integral role in designing the collections put out by TMLL Ltd., including the Spring Summer 2022 collection that included the Unauthorized Farrah Apparel Products and Unauthorized Palmae Apparel Products. Temperley Holdings Ltd. is the parent company of TMLL Ltd. and had control over the operations at TMLL Ltd. at the time that the Unauthorized Farrah Apparel Products

41

and Unauthorized Palmae Apparel Products were first produced, distributed, and sold by the Temperley London Defendants. TMLL Ltd. and Temperley Holdings Ltd. had the same director and employed some of the same employees at the time that the Unauthorized Farrah Apparel Products and Unauthorized Palmae Apparel Products were first produced, distributed, and sold by the Temperley London Defendants. Alice Temperley MBE and the Temperley London Defendants collaborated with the ROMO Defendants to create and promote the Temperley London x ROMO "A World Less Ordinary" Interiors line, including the Unauthorized Farrah Interiors Products. All Defendants had an active role in the design process of the Temperley London x ROMO "A World Less Ordinary" Interiors collection. The U.S.-based entity, Romo, Inc., and the U.K.-based Romo Ltd. and Romo (Holdings) Ltd. are all wholly owned subsidiaries of Defendant The Romo Group Ltd. All of the ROMO Defendants have the same board of directors and some of the same employees. Upon information and belief, Romo, Inc. and the U.K.-based ROMO Defendants created and produced the Unauthorized Farrah Interiors Products that were sold to consumers in the United States.

### III. INFRINGING APPAREL PRODUCTS – Alice Temperley MBE, the Temperley London Defendants, and the ROMO Defendants Infringed Upon Plaintiff's Artwork and the Photographs through the Production, Display, Distribution, and Sale of the Unauthorized Farrah Apparel Products and Unauthorized Palmae Apparel Products.

70. As set forth above, in or around February/March 2022, the Temperley London Defendants started selling their Spring Summer 2022 collection to the public, which included the Unauthorized Farrah Apparel Products and Unauthorized Palmae Apparel Products.

71. After the launch of the Temperley London Spring Summer 2022 collection, the Temperley London Defendants and Defendant Alice Temperley MBE promoted the

collection to consumers in the United States via online and social media efforts and through fashion shows and in-person trunk shows at brick-and-mortar retailers in the United States.

72.     Defendants engaged in a U.S. tour to promote the new collection.  The U.S. cities covered in the tour to promote the Temperley London Spring Summer 2022 collection included Los Angeles, Houston, Palm Beach, and Naples, FL.  During this tour, the Unauthorized Farrah Apparel Products and Unauthorized Palmae Apparel Products were displayed, distributed, and sold to consumers based in the United States.

73.     The trunk shows took place at the Soho House in Los Angeles and the Marissa Collections boutiques in Palm Beach and Naples, FL.  A runway show to promote the collection took place at the Elizabeth Anthony boutique in Houston, TX.

74.     As set forth above, the Unauthorized Farrah Apparel Products include almost exact replicas of Plaintiff's Artwork as depicted in the Photographs on the front, sides, and back of the garments.

75.     Plaintiff never gave permission or consent to Defendants to reproduce, display, distribute, or sell derivative works that featured the Artwork or the Photographs.

76.     Alice Temperley MBE and the Temperley London Defendants copied one or more of the Photographs and the underlying Artwork to create the Unauthorized Farrah Apparel Products.

77.     Upon information and belief, the Temperley London Defendants digitally reproduced one or more of the Photographs found on Plaintiff's Instagram account, @wifenyc, to create a pattern or digital rendering that was then used to create the Unauthorized Farrah Apparel Products.

78.     Upon information and belief, Defendant Alice Temperley MBE, the Creative Director of Temperley London, collaborated with, directed, controlled, and induced the

43

Temperley London Defendants to create, produce, sell, and display the Unauthorized Farrah Apparel Products.

79.     The Unauthorized Farrah Apparel Products are strikingly similar or at a minimum, substantially similar, to the Artwork and the Photographs.  Thus, they constitute unauthorized derivative works of the Artwork and the Photographs and infringe upon Plaintiff's copyright rights in those works.

80.     The Temperley London Defendants and Alice Temperley MBE reproduced, displayed, sold, and distributed the Unauthorized Farrah Apparel Products to consumers in the United States and abroad without Plaintiff's consent or any payment to Plaintiff.

81.     In addition to the Unauthorized Farrah Apparel Products, the Temperley London Defendants and Alice Temperley MBE also created, reproduced, displayed, sold, and distributed the Unauthorized Palmae Apparel Products to consumers in the United States and abroad without Plaintiff's consent or any payment to Plaintiff.

82.     To create the Unauthorized Palmae Apparel Products, Alice Temperley MBE and the Temperley London Defendants copied one or more of Plaintiff's Photographs and the underlying Artwork.

83.     Upon information and belief, the Temperley London Defendants digitally reproduced one or more of the Photographs found on Plaintiff's Instagram account, @wifenyc, to create a pattern or digital rendering that was then used to create the Unauthorized Palmae Apparel Products.

84.     Upon information and belief, Defendant Alice Temperley collaborated with, directed, controlled, and induced the Temperley London Defendants to create, produce, sell, and display the Unauthorized Palmae Apparel Products.

85.     The Unauthorized Palmae Apparel Products are substantially similar to the Artwork and the Photographs.  Thus, they constitute unauthorized derivative works of the Artwork and the Photographs and infringe upon Plaintiff's copyright rights in those works.

86.     On Temperley London's website, it states under its "Ownership of Rights" section of its Terms and Conditions page: "Any trademarks, copyrights or logos used on the website are owned by or licensed by TMLL Ltd."  In publishing and distributing this statement, the Temperley London Defendants are representing that they own all of the copyrights to the apparel designs set forth on their website.  This statement is false as it relates to the Unauthorized Farrah Apparel Products and Unauthorized Palmae Apparel Products and constitutes the distribution of false copyright management information in violation of 17 U.S.C. § 1202(a) because Plaintiff is the copyright holder to the Artwork that the Unauthorized Farrah and Palmae Apparel Products are unauthorized copies of, not Defendants.  See **Exhibit F**.

87.     Defendants displayed, sold, and distributed the Unauthorized Farrah Apparel Products and Unauthorized Palmae Apparel Products to United States consumers through Temperley London's website, https://int.temperleylondon.com/?country=US, ROMO's website, https://www.romo.com/, Temperley London's Instagram accounts, @temperleylondon, @TemperleyBridal, and @TemperleyLondonOutlet, Alice Temperley MBE's Instagram account, @alicetemperley, ROMO's Instagram account, @romo_fabrics, Temperley London's Facebook account, https://www.facebook.com/temperleylondon/, ROMO's Facebook account, https://www.facebook.com/romofabrics, and Temperley London's Twitter/X (@TemperleyLondon) account, among other online and brick-and-mortar channels of distribution such as third-party retailers and distributors.  See **Exhibits C, D, H, I, J**.

45

IV.    **INFRINGING INTERIORS PRODUCTS – Alice Temperley MBE, the Temperley London Defendants, and the ROMO Defendants Infringed Upon Plaintiff's Artwork and the Photographs through the Production, Display, Distribution, and Sale of the Unauthorized Farrah Interiors Products.**

88.    As set forth above, in or around March 2023, the Temperley London Defendants and ROMO Defendants released an interiors collection known as the Temperley London x ROMO "A World Less Ordinary" collection and started selling, displaying, and distributing the various interiors products that make up that collection, including the Unauthorized Farrah Interiors Products.

89.    The unauthorized Farrah Agave and Farrah Lilac Ash fabrics include almost identical reproductions of Plaintiff's Photographs and the underlying Artwork with only a few minor design changes and color alterations.  The Farrah Agave and Farrah Lilac Ash fabrics both contain the copyright-protected elements of the Artwork and the particular selection, coordination, and arrangement of those elements.  The Farrah Agave and Farrah Lilac Ash fabrics are strikingly similar or at a minimum, substantially similar, to Plaintiff's Artwork and the Photographs.

90.    Likewise, the unauthorized Farrah Agave and Farrah Lilac Ash cushions include almost identical reproductions of Plaintiff's Photographs and the underlying Artwork with only a few minor design changes and color alterations.  The Farrah Agave and Farrah Lilac Ash cushions both contain the copyright-protected elements of the Artwork and the particular selection, coordination, and arrangement of those elements.   The Farrah Agave and Farrah Lilac Ash cushions are strikingly similar or at a minimum, substantially similar, to Plaintiff's Artwork and the Photographs.

91.    In March 2023, Defendants displayed the Unauthorized Farrah Interiors Products at the London Institute of Contemporary Arts for the Temperley London x ROMO "A World Less Ordinary" collection launch party.   Notably, the unauthorized Temperley

London Farrah Kimono apparel garment featuring Plaintiff's Artwork was prominently displayed at the launch party to draw attention to the Temperley London x ROMO interiors collection and the collaboration between the brands.

92.     Defendants also displayed the Unauthorized Farrah Interiors Products in the ROMO showroom at London Design Week in March 2023.  Upon information and belief, ROMO was a sponsor of London Design Week.  Upon information and belief, the ROMO showroom was a main feature of London Design Week and drew a significant audience. Once again, the unauthorized Temperley London Farrah Kimono apparel garment featuring Plaintiff's Artwork was prominently displayed at the ROMO showroom at London Design Week to draw attention to the Temperley London x ROMO interiors collection and the collaboration between the brands.

93.     After the launch of the collection in England, Defendant Alice Temperley MBE, Founder and Creative Director of Temperley London, and Emily Mould, Director of Design & Excellence for ROMO, went on a North American tour promoting the Temperley London x ROMO "A World Less Ordinary" product line across the United States.

94.     During the North American tour, Defendants promoted, displayed, sold, and distributed the Unauthorized Farrah Apparel Products and Unauthorized Farrah Interiors Products to U.S. consumers.  Moreover, Defendants held launch parties in New York and Los Angeles to celebrate and promote the Temperley London x ROMO "A World Less Ordinary" collection and the collaboration between the brands.

95.     Plaintiff never gave permission or consent to Defendants to reproduce, display, distribute, or sell derivative works that featured the Artwork or the Photographs. Plaintiff never received any payment from Defendants relating to their reproduction, display, distribution, or sale of the Unauthorized Farrah Interiors Products.

47

96. The Temperley London Defendants and ROMO Defendants copied one or more of the Photographs and the underlying Artwork to create the Unauthorized Farrah Interiors Products.

97. Upon information and belief, Alice Temperley MBE reproduced one or more of the Photographs found on Plaintiff's Instagram account, @wifenyc, to create a pattern or digitally rendered copy of the Artwork that was then used to create the Unauthorized Farrah Interiors Products.

98. Upon information and belief, TMLL Ltd. reproduced one or more of the Photographs found on Plaintiff's Instagram account, @wifenyc, to create a pattern or digitally rendered copy of the Artwork that was then used to create the Unauthorized Farrah Interiors Products.

99. Upon information and belief, Temperley (Holdings) Ltd. reproduced one or more of the Photographs found on Plaintiff's Instagram account, @wifenyc, to create a pattern or digitally rendered copy of the Artwork that was then used to create the Unauthorized Farrah Interiors Products.

100. Upon information and belief, Romo, Inc. reproduced one or more of the Photographs found on Plaintiff's Instagram account, @wifenyc, to create a pattern or digitally rendered copy of the Artwork that was then used to create the Unauthorized Farrah Interiors Products. Romo, Inc. displayed, sold, and distributed the Unauthorized Farrah Interiors Products to consumers located in the U.S.

101. Upon information and belief, Romo Ltd. reproduced one or more of the Photographs found on Plaintiff's Instagram account, @wifenyc, to create a pattern or digitally rendered copy of the Artwork that was then used to create the Unauthorized Farrah Interiors Products. Romo Ltd. displayed, sold, and distributed the Unauthorized Farrah Interiors Products to consumers located in the U.S.

102.     Upon information and belief, Romo (Holdings) Ltd. reproduced one or more of the Photographs found on Plaintiff's Instagram account, @wifenyc, to create a pattern or digitally rendered copy of the Artwork that was then used to create the Unauthorized Farrah Interiors Products. Romo (Holdings) Ltd. displayed, sold, and distributed the Unauthorized Farrah Interiors Products to consumers located in the U.S.

103.     Upon information and belief, The Romo Group Ltd. reproduced one or more of the Photographs found on Plaintiff's Instagram account, @wifenyc, to create a pattern or digitally rendered copy of the Artwork that was then used to create the Unauthorized Farrah Interiors Products. The Romo Group Ltd. displayed, sold, and distributed the Unauthorized Farrah Interiors Products to consumers located in the U.S.

104.     All of the Unauthorized Farrah Interiors Products infringe upon Plaintiff's copyright rights as they are unauthorized derivative works of Plaintiff's Artwork and the Photographs.

105.     Upon information and belief, Defendant Alice Temperley MBE collaborated with, directed, controlled, and induced the Temperley London Defendants and ROMO Defendants to create, produce, sell, and display the Unauthorized Farrah Interiors Products. Defendant Alice Temperley MBE profited from the sale and display of the Unauthorized Farrah Interiors Products.

106.     Upon information and belief, the Temperley London Defendants collaborated with, directed, and induced the ROMO Defendants to create, produce, sell, and display the Unauthorized Farrah Interiors Products.  The Temperley London Defendants profited from the sale and display of the Unauthorized Farrah Interiors Products.

107.     Upon information and belief, the ROMO Defendants collaborated with, directed, and induced the Temperley London Defendants to sell and display the

Unauthorized Farrah Interiors Products. The ROMO Defendants profited from the sale and display of the Unauthorized Farrah Interiors Products.

108.    Defendants displayed, sold, and distributed the Unauthorized Farrah Interiors Products to United States consumers through ROMO's showrooms located throughout the United States and the world, through ROMO's website, https://www.romo.com/, Temperley London's website https://int.temperleylondon.com/?country=US, Temperley London's Instagram account, @temperleylondon, ROMO's Instagram account, @romo_fabrics, Alice Temperley MBE's Instagram account, @alicetemperley, Temperley London's Facebook account, https://www.facebook.com/temperleylondon/, ROMO's Facebook account, https://www.facebook.com/romofabrics, Temperley London's Twitter/X (@TemperleyLondon) account, ROMO's Pinterest account, https://www.pinterest.com/romo_fabrics/, among other online and brick-and-mortar channels of distribution such as third-party retailers, designers, and distributors.  See **Exhibits E, G, H, I, J**.

109.    Notably, on ROMO's website, PDF printouts are listed alongside the Unauthorized Farrah Interiors Products, which include additional information for each product.  The PDFs for the Farrah Agave and Farrah Lilac Ash fabrics and the Farrah Agave and Farrah Lilac Ash cushions include the following copyright management statement: "© Copyright The Romo Group 2024.  All Rights Reserved."  See **Exhibit G**.

110.    This copyright management statement is a blatant misrepresentation in violation of 17 U.S.C. § 1202(a) as Plaintiff is the copyright holder to the Artwork featured on the Unauthorized Farrah Interiors Products, not the ROMO Defendants.

111.    Despite Defendants' receipt and acknowledgement of the Cease-and-Desist Notice sent by Plaintiff in April 2024 regarding the aforementioned infringements, Defendants continue to produce, sell, display, and distribute the Unauthorized Farrah

Interiors Products in ROMO showrooms throughout the United States and the world, as well as through other distribution channels such as ROMO's website, Temperley London's website, the brands' respective social media channels, and third-party retailers, designers, and distributors.

### V.     INFRINGING ADVERTISING WORKS BY ALICE TEMPERLEY MBE – Defendant Alice Temperley MBE Infringed Upon Plaintiff's Artwork and the Photographs through the Creation, Display, and Distribution of the Unauthorized Advertising Works.

112.    In addition to the sale of the aforementioned infringing apparel and interiors products set forth above, Defendants have and continue to reproduce, display, and distribute photographs, videos, and other advertisements that include unauthorized reproductions of the Artwork as depicted in the Photographs via their social media accounts, websites, brick-and-mortar stores, showrooms, newsletters, email blasts, and elsewhere (collectively "**Unauthorized Advertising Works**").

113.    Specifically, Defendant Alice Temperley MBE displayed several photographs, videos, and advertisements on her personal Instagram account, @alicetemperley, that prominently depict the Unauthorized Farrah Apparel Products, Unauthorized Palmae Apparel Products, and Unauthorized Farrah Interiors Products.  See **Exhibit H**.

114.     All of the photos, videos, and advertisements set forth in Exhibit H contain unauthorized reproductions of the copyright-protected components of Plaintiff's Artwork and the Photographs and are substantially similar to Plaintiff's Artwork and the Photographs.

115.    Thus, the Unauthorized Advertising Works set forth in Exhibit H are unauthorized derivative works that infringe upon Plaintiff's copyright rights in the Artwork and the Photographs.

116.    Despite receiving a Cease-and-Desist Notice from Plaintiff in April 2024 regarding the aforementioned infringements, Defendant Alice Temperley MBE continued to display the Unauthorized Advertising Works on her personal Instagram account, @alicetemperley, for many additional months after receiving the Cease-and-Desist Notice. Some of the Unauthorized Advertising Works are still displayed on Alice Temperley's personal Instagram account, @alicetemperley, as of the date of the filing of this First Amended Complaint.

117.    Defendant Alice Temperley MBE has and is still willfully infringing upon Plaintiff's copyright rights.

118.    As a direct and proximate result of Defendant Alice Temperley's display of the Unauthorized Farrah Advertising Works set forth in Exhibit H, Defendants increased the brand awareness of the Temperley London and ROMO brands in the marketplace in general, leading to increased sales relating to the Temperley London Spring Summer 2022 apparel collection, the Temperley London x ROMO "A World Less Ordinary" interiors collection, as well as other merchandise and products sold by Defendants.

119.    Plaintiff has been injured by Defendant Alice Temperley MBE's infringing conduct and is entitled to relief.

**VI.    INFRINGING ADVERTISING WORKS BY THE TEMPERLEY LONDON DEFENDANTS – The Temperley London Defendants Infringed Upon Plaintiff's Artwork and the Photographs through the Creation, Display, and Distribution of the Unauthorized Advertising Works.**

120.    The Temperley London Defendants displayed several photographs, videos, and advertisements on Temperley London's website, in their brick-and-mortar stores, and at special events such as trunk shows and fashion shows that prominently depict the

Unauthorized Farrah Apparel Products, Unauthorized Palmae Apparel Products, and Unauthorized Farrah Interiors Products.

121.    Additionally, the Temperley London Defendants displayed several photographs, videos, and advertisements on their Instagram accounts, @temperleylondon, @TemperleyBridal, and @TemperleyLondonOutlet, Facebook account, https://www.facebook.com/temperleylondon, and Twitter/X account (@TemperleyLondon), that prominently depict the Unauthorized Farrah Apparel Products, Unauthorized Palmae Apparel Products, and the Unauthorized Farrah Interiors Products.  See **Exhibit I**.

122.    Moreover, upon information and belief, the Temperley London Defendants also sent out newsletters, email blasts, and other forms of advertisements that feature photographs and/or videos depicting the Unauthorized Farrah Apparel Products, Unauthorized Palmae Apparel Products, and Unauthorized Farrah Interiors Products to consumers or potential consumers.

123.    All of the photos, videos, and advertisements set forth in Exhibits C, D, and I contain unauthorized reproductions of the copyright-protected components of Plaintiff's Artwork and the Photographs and are substantially similar to Plaintiff's Artwork and the Photographs.

124.    Thus, the Unauthorized Advertising Works set forth in Exhibits C, D, and I are unauthorized derivative works that infringe upon Plaintiff's copyright rights in the Artwork and the Photographs.

125.    The Temperley London Defendants have benefited immensely by the positive attention that was garnered online via social media due to the widespread dissemination of the Unauthorized Advertising Works.  The Unauthorized Advertising Works featuring the Unauthorized Farrah Apparel Products were particularly popular and garnered significant publicity and consumer attention directed towards the Temperley London brand.

126.     In February 2023, the well-known American singer and songwriter, Brandi Carlile, wore the Farrah Kimono featuring multiple replicas of Plaintiff's Artwork to the 65th Annual Grammy Awards where she went on to win three (3) Grammys.  Thereafter, the photos of Carlile in the Farrah Kimono were prominently displayed on Temperley London's website and social media channels.  See **Exhibit I**.  The Unauthorized Advertising Works featuring Carlile wearing Plaintiff's Artwork increased the marketability of the Temperley London brand, which upon information and belief, resulted in increased sales of Temperley London apparel pieces, including but not limited to, the Farrah Kimono product.

127.     Other Unauthorized Farrah Apparel Products have also been worn by other celebrities at high profile events, such as Rebecca Night, who wore the Farrah Dress at the Downton Abbey Premier in London.  Again, this unauthorized display of Plaintiff's Artwork garnered additional publicity and attention for the Temperley London brand, such as being featured in Page Six magazine in the U.S., thereby leading to the increased marketability of the Temperley London brand in general, which upon information and belief, resulted in increased sales of Temperley London apparel products.

128.     Despite receiving a Cease-and-Desist Notice from Plaintiff in April 2024 regarding the aforementioned infringements, the Temperley London Defendants continued to display the Unauthorized Advertising Works set forth in Exhibits C, D, and I on their website, Instagram accounts, @temperleylondon, @TemperleyBridal, and @TemperleyLondonOutlet, Facebook account, https://www.facebook.com/temperleylondon, and Twitter/X account (@TemperleyLondon) for many additional months after receiving the Cease-and-Desist Notice.   Some of the Unauthorized Advertising Works are still displayed on Temperley London's website and social media accounts as of the date of the filing of this First Amended Complaint.

129.     The Temperley London Defendants have and are still willfully infringing upon Plaintiff's copyright rights.

130.     As a direct and proximate result of the Temperley London Defendants' display of the Unauthorized Advertising Works set forth in Exhibits C, D, and I, Defendants increased the brand awareness of the Temperley London and ROMO brands in the marketplace in general, leading to increased sales relating to the Temperley London Spring Summer 2022 apparel collection, the Temperley London x ROMO "A World Less Ordinary" interiors collection, as well as other merchandise and products sold by Defendants.

131.     Plaintiff has been injured by the Temperley London Defendants' infringing conduct and is entitled to relief.

**VII.     INFRINGING ADVERTISING WORKS BY THE ROMO DEFENDANTS – The ROMO Defendants Infringed Upon Plaintiff's Artwork and the Photographs through the Creation, Display, and Distribution of the Unauthorized Advertising Works.**

132.     The ROMO Defendants displayed several photographs, videos, and advertisements on the ROMO website and in their brick-and-mortar showrooms that prominently depict the Unauthorized Farrah Apparel Products and the Unauthorized Farrah Interiors Products.  See **Exhibits E and J**.

133.     Additionally, the ROMO Defendants displayed several photographs, videos, and advertisements on their Instagram account, @romo_fabrics, Facebook account, https://www.facebook.com/romofabrics, Pinterest account, https://www.pinterest.com/romo_fabrics/, and other social media and advertising channels that prominently depict the Unauthorized Farrah Apparel Products and Unauthorized Farrah Interiors Products.  See **Exhibit J**.

134.    Moreover, upon information and belief, the ROMO Defendants also sent out newsletters, email blasts, and other forms of advertisements to consumers or potential consumers that featured photographs and/or videos depicting the Unauthorized Farrah Apparel Products and Unauthorized Farrah Interiors Products.

135.    Additionally, the ROMO Defendants have a brochure that displays photos of the Unauthorized Farrah Interiors Products that is currently available to download on its U.S. website, www.romo.com.  Upon information and belief, ROMO is still displaying and distributing this brochure in its showrooms located in the U.S. as well.

136.    The ROMO Defendants also have a swatch book on display in the ROMO showrooms that include the Farrah Agave fabric and the Farrah Lilac Ash fabric.  Upon information and belief, the ROMO fabric swatch books that feature the infringing "Farrah" fabrics are still available for customers to view in ROMO's U.S. showrooms.

137.    All of the Unauthorized Advertising Works set forth in Exhibits E and H contain unauthorized reproductions of the copyright-protected elements of Plaintiff's Artwork and the Photographs and are substantially similar to Plaintiff's Artwork and the Photographs.

138.    Thus, the Unauthorized Advertising Works set forth in Exhibits E and J are unauthorized derivative works that infringe upon Plaintiff's copyright rights in the Artwork and the Photographs.

139.    Despite receiving a Cease-and-Desist Notice from Plaintiff in April 2024 regarding the aforementioned infringements, the ROMO Defendants continued to display the aforementioned Unauthorized Advertising Works set forth in Exhibits E and J on their website, in their showrooms, Instagram account, @romo_fabrics, Facebook account, https://www.facebook.com/romofabrics, Pinterest account, https://www.pinterest.com/romo_fabrics/, and other social media and advertising channels

for many additional months after receiving the Cease-and-Desist Notice. Some of the Unauthorized Advertising Works are still displayed on ROMO's website and social media accounts as of the date of the filing of this First Amended Complaint.

140. The ROMO Defendants have and are still willfully infringing upon Plaintiff's copyright rights.

141. As a direct and proximate result of the ROMO Defendants' display of the Unauthorized Advertising Works, Defendants increased the brand awareness of the Temperley London and ROMO brands in the marketplace in general, leading to increased sales relating to the Temperley London Spring Summer 2022 apparel collection, the Temperley London x ROMO "A World Less Ordinary" interiors collection, as well as other merchandise and products sold by Defendants.

142. Plaintiff has been injured by the ROMO Defendants' infringing conduct and is entitled to relief.

## FIRST CLAIM FOR RELIEF

### (For Direct Copyright Infringement Under 17 U.S.C. § 501 – As to All Defendants)

143. Plaintiff repeats and alleges paragraphs 1 through 142 hereof, as if fully set forth herein in their entirety.

144. The Artwork entitled "Memphis Chainsaw" is an original sculptural work of art created by Plaintiff that qualifies for copyright protection under the U.S. Copyright Act, 17 U.S.C. § 101, *et seq.* Plaintiff is the sole author and copyright holder to the Artwork and has filed its copyright registration for the Artwork with the U.S. Copyright Office in accordance with its rules and regulations. The Artwork is registered with the U.S. Copyright Office and has been assigned Registration No. VA 2-342-734, with an effective date of

registration of February 28, 2023, certifying Plaintiff's compliance with all applicable formalities of the U.S. Copyright Office.  See **Exhibit A**.

145.    The four (4) Photographs set forth in Exhibit B are original works of art created by Plaintiff that qualify for copyright protection under the U.S. Copyright Act, 17 U.S.C. § 101, *et seq.*  Plaintiff is the sole author and copyright holder to the Photographs and has filed copyright registrations for the works with the U.S. Copyright Office in accordance with its rules and regulations.  The Photographs are registered with the U.S. Copyright Office and have been assigned Registration No. VA 2-352-960, with an effective date of registration of April 27, 2023, and U.S. Copyright Registration No. VA 2-420-961, with an effective date of November 4, 2024, certifying Plaintiff's compliance with all applicable formalities of the U.S. Copyright Office.  See **Exhibit B**.

146.    Through Defendants' conduct alleged herein, including their unauthorized reproduction, display, sale, and commercial distribution of derivative works of the Artwork and the Photographs without Plaintiff's authorization and without a license, Defendants have directly infringed upon Plaintiff's exclusive rights in the Artwork and the Photographs in violation of Section 501 of the Copyright Act.  See 17 U.S.C. § 501.

147.    Defendants' infringing conduct alleged herein was willful as they sold, displayed, and distributed the aforementioned Unauthorized Farrah Apparel Products, Unauthorized Palmae Apparel Products, Unauthorized Farrah Interiors Products, and Unauthorized Advertising Works with full knowledge that they did not obtain permission from Plaintiff to use its Artwork or the Photographs and did not enter into a licensing deal or compensate Plaintiff for the use of its Artwork or the Photographs.

148.    Defendants' conduct alleged herein was willful because even after Defendants were made aware of the various infringements via the Cease-and-Desist Demand Letter sent by Plaintiff in April 2024, which all Defendants acknowledged receipt of through

sending response letters to Plaintiff's counsel, they continued to sell, display, and distribute the Unauthorized Farrah Interiors Products through their websites, social media channels, in ROMO showrooms throughout the world, including in the United States, and through third-party designers, retailers, and distribution channels for many additional months. The ROMO Defendants did not remove the Unauthorized Farrah Interiors Products as being listed for sale on their U.S. website, www.romo.com, until February 2025, **over ten (10) months** after the April 2024 Cease-and-Desist Notice had been sent and received by Defendants.

149.    Defendants' conduct alleged herein was willful because even after Defendants were made aware of their various infringements, including their display of the Unauthorized Advertising Works featuring the Unauthorized Farrah Apparel Products, Unauthorized Palmae Apparel Products, and Unauthorized Farrah Interiors Products, they continued to reproduce, display, and post new advertisements showing derivative works of the Artwork and the Photographs on their social media channels, websites, and elsewhere and refused to take down or remove the previously posted Unauthorized Advertising Works from these sources.

150.    As a direct and proximate result of Defendants' unlawful actions set forth herein, Defendants have obtained direct and indirect profits as alleged above that they would not have otherwise realized but for their infringement of Plaintiff's rights in the Artwork and the Photographs. As such, Plaintiff has been harmed and suffered damages in an amount to be proven at trial.

151.    Pursuant to 17 U.S.C. § 504(a)(1) and (b), Plaintiff is entitled to recover its actual damages and any profits of Defendants that are attributable to the infringements and are not taken into account in computing the actual damages. Plaintiff is entitled to the

disgorgement of Defendants' profits, both direct and indirect profits, stemming from the infringing conduct set forth herein.

152. Plaintiff is entitled to an accounting of and a constructive trust with respect to such profits.

153. Plaintiff is also entitled, at its election, to seek statutory damages pursuant to 17 U.S.C. § 504(c), costs, and its attorneys' fees pursuant to 17 U.S.C. § 505.

154. Defendants' conduct has caused and will continue to cause if not enjoined and restrained by this Court great and irreparable injury to Plaintiff that cannot be fully compensated monetarily. Plaintiff has no adequate remedy at law. Pursuant to 17 U.S.C. §§ 502 and 503, Plaintiff is entitled to preliminary and permanent injunctive relief prohibiting Defendants from further infringing upon Plaintiff's copyright rights in the Artwork and the Photographs.

155. Plaintiff is further entitled to the preliminary impounding and subsequent destruction of all Unauthorized Farrah Apparel Products, Unauthorized Palmae Apparel Products, Unauthorized Farrah Interiors Products, Unauthorized Advertising Works, and any other infringing products and/or advertising works that are in the custody or control of Defendants pursuant to 17 U.S.C. § 503.

## SECOND CLAIM FOR RELIEF

### (Vicarious and Contributory Copyright Infringement – As to All Defendants)

156. Plaintiff repeats and alleges paragraphs 1 through 155 hereof, as if fully set forth herein in their entirety.

157. Each and every reproduction and creation of a derivative work of the Artwork and the Photographs by Defendants was without the consent, approval, or license of Plaintiff.

158.    Upon information and belief, Defendants, and each of them, are contributorily liable for the infringements alleged herein because they knowingly induced, caused, participated in, aided and abetted in, and profited from the illegal reproduction, display, sale, and distribution of the Unauthorized Farrah Apparel Products, Unauthorized Palmae Apparel Products, Unauthorized Farrah Interiors Products, and Unauthorized Advertising Works, all of which contain unauthorized copies and derivatives of Plaintiff's Artwork as depicted in the Photographs, as set forth herein.  Upon information and belief, Defendant Alice Temperley MBE knowingly induced, caused, participated in, aided and abetted, and profited from the creation, sale, display, and distribution of the Unauthorized Farrah Apparel Products and Unauthorized Palmae Apparel Products sold by the Temperley London Defendants as she was actively involved in the day-to-day operations of designing the Temperley London collection that contains the Unauthorized Farrah Apparel Products and Unauthorized Palmae Apparel Products and oversaw the subsequent marketing efforts related to promoting those products.  She further had a direct involvement in the creation of the Temperley London x ROMO interiors collection that included the Unauthorized Farrah Interiors Products and profited from the creation, sale, display, and distribution of the Unauthorized Farrah Interiors Products sold by the Temperley London Defendants and the ROMO Defendants.  She also participated in and profited from the subsequent marketing campaign, including the press tour that took place in the U.S., related to the promotion of the Temperley London x ROMO interiors collection.  Moreover, upon information and belief, the Temperley London Defendants knowingly induced, caused, participated in, aided and abetted, and profited from the creation, sale, display, and distribution of the Unauthorized Farrah Interiors Products by the ROMO Defendants.   Upon information and belief, the collaboration between the Temperley London Defendants and the ROMO Defendants concerning this collection was a very close one, and the designs chosen for the collection, including the designs that infringed upon Plaintiff's Artwork, were deliberate choices that

resulted from multiple discussions between employees/agents of the Temperley London Defendants and employees/agents of the ROMO Defendants.  Likewise, upon information and belief, the ROMO Defendants knowingly induced, caused, participated in, aided and abetted, and profited from the creation, sale, display, and distribution of the Unauthorized Farrah Interiors Products by the Temperley London Defendants.  Furthermore, the subsequent press tour and marketing endeavors taken by Alice Temperley MBE, the Temperley London Defendants, and the ROMO Defendants to promote the Temperley London x ROMO collection, including the Unauthorized Farrah Interiors Products, were the result of multiple conversations between the employees/agents of the respective companies, thereby further demonstrating each Defendants' knowing inducement, causation, participation in, aiding and abetting, and profiting from the infringing acts by the other Defendants.

159.    Upon information and belief, Defendants, and each of them, are also vicariously liable for the infringements alleged herein because they had the right and ability to supervise and control the infringing conduct and because they had a direct financial interest in the infringing conduct.  Defendants received revenue in connection with the unauthorized reproduction, display, distribution, and sale of the Unauthorized Farrah Apparel Products, Unauthorized Palmae Apparel Products, Unauthorized Farrah Interiors Products, and Unauthorized Advertising Works and were able to supervise and control the reproduction, display, distribution, and sale of these products and advertising works by the other Defendants.  Specifically, Defendant Alice Temperley MBE had the right and ability to supervise and control the infringing conduct of TMLL Ltd. and Temperley (Holdings) Ltd. and had a direct financial interest in the reproduction, display, distribution, and sale of the Unauthorized Farrah Apparel Products, Unauthorized Palmae Apparel Products, Unauthorized Farrah Interiors Products, and Unauthorized Advertising Works by these Defendants.  The Romo Group Ltd. had the right and ability to supervise and control the

infringing conduct of Romo (Holdings) Ltd., Romo Ltd., and Romo, Inc. and had a direct financial interest in the reproduction, display, distribution, and sale of the Unauthorized Farrah Apparel Products, Unauthorized Farrah Interiors Products, and Unauthorized Advertising Works by these Defendants.  Romo (Holdings) Ltd. had the right and ability to supervise and control the infringing conduct of Romo Ltd. and Romo, Inc. and had a direct financial interest in the reproduction, display, distribution, and sale of the Unauthorized Farrah Apparel Products, Unauthorized Farrah Interiors Products, and Unauthorized Advertising Works by these Defendants.  Romo Ltd. had the right and ability to supervise and control the infringing conduct of Romo, Inc. and had a direct financial interest in the reproduction, display, distribution, and sale of the Unauthorized Farrah Apparel Products, Unauthorized Farrah Interiors Products, and Unauthorized Advertising Works by this Defendant.  Upon information and belief, Romo, Inc. and the U.K.-based ROMO Defendants had the right and ability to supervise and control the infringing conduct of the Temperley London Defendants as it relates to the Unauthorized Farrah Interiors Products and related Unauthorized Advertising Works and had a direct financial interest in the reproduction, display, distribution, and sale of the Unauthorized Farrah Interiors Products. Upon information and belief, the Temperley London Defendants had the right and ability to supervise and control the infringing conduct of the ROMO Defendants as it relates to the Unauthorized Farrah Interiors Products and related Unauthorized Advertising Works and had a direct financial interest in the reproduction, display, distribution, and sale of the Unauthorized Farrah Interiors Products.

160.    As a direct result of Defendants', and each of their, acts of contributory and vicarious copyright infringement as alleged above, Plaintiff has suffered damages in an amount to be established at trial.

161.     As a direct result of Defendants' acts of copyright infringement as alleged herein, Defendants, and each of them, have obtained direct and indirect profits they would not otherwise have realized but for their infringement of Plaintiff's rights in the Artwork and the Photographs.  As such, Plaintiff is entitled to the disgorgement of Defendants' profits, both direct and indirect profits, attributable to their infringement of Plaintiff's rights in the Artwork and the Photographs, in an amount to be established at trial.

162.     Plaintiff is entitled to an accounting of and a constructive trust with respect to such profits.

163.     Plaintiff is also entitled, at its election, to seek statutory damages pursuant to 17 U.S.C. § 504(c), costs, and its attorneys' fees pursuant to 17 U.S.C. § 505.

164.     Defendants' conduct has caused and will continue to cause if not enjoined and restrained by this Court great and irreparable injury to Plaintiff that cannot be fully compensated monetarily.  Plaintiff has no adequate remedy at law.  Pursuant to 17 U.S.C. §§ 502 and 503, Plaintiff is entitled to preliminary and permanent injunctive relief prohibiting Defendants from further infringing upon Plaintiff's copyrights.

## **THIRD CLAIM FOR RELIEF**

**(Distribution of False Copyright Management Information and Removal of Copyright Management Information in Violation of 17 U.S.C. § 1202(a) and (b) – As to All Defendants)**

165.     Plaintiff repeats and alleges paragraphs 1 through 166 hereof, as if fully set forth herein in their entirety.

166.     Plaintiff is the author and sole copyright claimant of the Artwork and the Photographs.  When Plaintiff posted the Photographs of the Artwork on her Instagram account, the copyright management information of Plaintiff's trade name, WIFE NYC, which is Plaintiff's Instagram handle, @wifenyc, was listed above and below each and every

Photograph (as seen on an iPhone) or next to the Photograph (as seen on a computer). Moreover, the title of each Photograph as listed with the Copyright Office is set forth under or next to each Photograph displayed on Plaintiff's Instagram account. The title of the Photograph, "Memphis Chainsaw," posted on Plaintiff's Instagram on November 17, 2019 is also the title of the underlying Artwork. Plaintiff's trade name and the titles of each Photograph and the underlying Artwork constitute copyright management information under 17 U.S.C. § 1202(c).

167. Defendants knew that they were not the authors or copyright holders to the Artwork or the Photographs. All of the Defendants displayed and distributed unauthorized copies of the Artwork and the Photographs in the form of derivative works, namely the Unauthorized Farrah Apparel Products, Unauthorized Palmae Apparel Products, Unauthorized Farrah Interiors Products, and the Unauthorized Advertising Works.

168. Defendant Alice Temperley MBE knowingly and with the intent to induce, enable, facilitate, or conceal infringement, provided and distributed copyright management information that is false when she displayed unauthorized copies of the Artwork and the Photographs in the form of derivative works, namely the Unauthorized Advertising Works depicting the Unauthorized Farrah Apparel Products, Unauthorized Palmae Apparel Products, and Unauthorized Farrah Interiors Products, on her personal Instagram account, @alicetemperley, with her name, @alicetemperley, and sometimes the brand names of Temperley London and ROMO listed above and under or next to the Unauthorized Advertising Works. Defendant Alice Temperley MBE provided and distributed this false copyright management information in an effort to induce, facilitate, enable, and conceal her own infringement and any future infringement by Defendants and any third party of Plaintiff's Artwork and the Photographs so that they could successfully make profits off of selling derivative works of Plaintiff's Artwork (i.e. the Unauthorized Farrah Apparel

Products, Unauthorized Palmae Apparel Products, and Unauthorized Farrah Interiors Products) without receiving Plaintiff's consent or compensating Plaintiff.  Such actions violate 17 U.S.C. § 1202(a)(1) and (2).

169.    Additionally, Defendant Alice Temperley MBE copied the Photographs and the underlying Artwork found on Plaintiff's Instagram account and intentionally removed the copyright management information of Plaintiff's trade name and Instagram handle, @wifenyc, as well as the titles of the Photographs and Artwork displayed under or next to the Photographs on Plaintiff's Instagram account, knowing or having reasonable grounds to know that such action would induce, enable, facilitate, or conceal their own infringement and the infringement of the other Defendants and any third party of Plaintiff's Artwork and the Photographs.  Upon information and belief, Alice Temperley MBE made identical copies of the Photographs posted on Plaintiff's Instagram sans Plaintiff's copyright management information to be used in an "inspiration" board or something similar so that the employees/agents of the Temperley London Defendants and employees/agents of the ROMO Defendants could view the Photographs and create the subsequent infringing apparel pieces, fabrics, and cushions from the copies of the Photographs.  Upon information and belief, Alice Temperley MBE removed Plaintiff's copyright information from one or more digital copies of one or more of Plaintiff's Photographs, and these copies were then used by the Temperley London Defendants and the ROMO Defendants to create digital and/or physical renderings of Plaintiff's design.  From the digital and/or physical renderings of the design, the Temperley London Defendants and the ROMO Defendants produced the embroidered and print copies of the design that are part of the Unauthorized Farrah Apparel Products, Unauthorized Palmae Apparel Products, and Unauthorized Farrah Interiors Products.  The Unauthorized Farrah Apparel Products, Unauthorized Palmae Apparel Products, Unauthorized Farrah Interiors Products, and Unauthorized Advertising Works do not contain Plaintiff's copyright management information and are unauthorized copies of

Plaintiff's Artwork and the Photographs. Alice Temperley MBE was aware or had reasonable grounds to be aware that by removing Plaintiff's copyright management information from the unauthorized copies of Plaintiff's Artwork and the Photographs, both the identical copies of the Photographs and the derivative works of the Artwork and Photographs, future infringements through further unauthorized reproduction, display, distribution, and sale of the Unauthorized Farrah Apparel Products, Unauthorized Palmae Apparel Products, Unauthorized Farrah Interiors Products, and Unauthorized Advertising Works by Defendants and third parties was likely because by removing Plaintiff's copyright management information, Defendants could more easily represent to the world that they were the authors of the Unauthorized Farrah Apparel Products, Unauthorized Palmae Apparel Products, and Unauthorized Farrah Interiors Products and could thereby profit accordingly. Such actions violate 17 U.S.C. § 1202(b)(1).

170. Further, Defendant Alice Temperley MBE distributed copies of Plaintiff's Artwork and the Photographs, namely the Unauthorized Advertising Works depicting the Unauthorized Farrah Apparel Products, Unauthorized Palmae Apparel Products, and Unauthorized Farrah Interiors Products, on her personal Instagram account, @alicetemperley, knowing that Plaintiff's copyright management information (i.e. Plaintiff's trade name and Instagram handle, @wifenyc, and titles of the Photographs and the Artwork as listed on Plaintiff's Instagram) had been removed without the authority of Plaintiff or the law. Defendant Alice Temperley MBE did as such knowing or having reasonable grounds to know that such action would induce, enable, facilitate, or conceal her own infringement and the infringement of the other Defendants and any third party of Plaintiff's Artwork and the Photographs. Alice Temperley MBE was aware or had reasonable grounds to be aware that by removing Plaintiff's copyright management information from the unauthorized copies of Plaintiff's Artwork and the Photographs and distributing copies of Plaintiff's Artwork and the Photographs where Plaintiff's copyright

management information had been removed without the authority of Plaintiff or the law, future infringements through further unauthorized reproduction, display, distribution, and sale of the Unauthorized Farrah Apparel Products, Unauthorized Palmae Apparel Products, Unauthorized Farrah Interiors Products, and Unauthorized Advertising Works by Defendants and third parties was likely because by removing Plaintiff's copyright management information, Defendants could more easily represent to the world that they were the authors of the Unauthorized Farrah Apparel Products, Unauthorized Palmae Apparel Products, and Unauthorized Farrah Interiors Products and could thereby profit accordingly. Defendant Alice Temperley MBE's *modus operandi* of distributing copies of Plaintiff's Artwork and the Photographs, both identical copies and derivative works of the Artwork as depicted in the Photographs, that do not include Plaintiff's copyright management information was intended to facilitate Defendants' production, display, sale, and distribution of the infringing products (i.e. Unauthorized Farrah Apparel Products, Unauthorized Palmae Apparel Products, Unauthorized Farrah Interiors Products, and Unauthorized Advertising Works) and having those infringing acts go undetected by Plaintiff and the public. Such actions violate 17 U.S.C. § 1202(b)(3).

171. Defendants TMLL Ltd. and Temperley (Holdings) Ltd. knowingly and with the intent to induce, enable, facilitate, or conceal infringement, provided and distributed copyright management information that is false when they displayed unauthorized copies of the Artwork and the Photographs in the form of derivative works, namely the Unauthorized Advertising Works depicting the Unauthorized Farrah Apparel Products, Unauthorized Palmae Apparel Products, and Unauthorized Farrah Interiors Products, on their U.S. website, https://int.temperleylondon.com/?country=US, Instagram accounts, @temperleylondon, @TemperleyBridal, and @TemperleyLondonOutlet, Facebook account, https://www.facebook.com/temperleylondon/, and Twitter/X (@TemperleyLondon) account with their brand names, Temperley London, Temperley Bridal, and Temperley London

Outlet listed above and under (as seen on an iPhone) or next to (as seen on a computer) the Unauthorized Advertising Works.  They also distributed false copyright management information when they displayed the Unauthorized Farrah Apparel Products and Unauthorized Palmae Apparel Products at their trunk shows and via other third-party distributors, both online and through brick-and-mortar channels of distribution, while displaying the name, "Temperley London" on the tag of the items and above/next to the items when they were on display.

172.    On Temperley London's website, Defendants TMLL Ltd. and Temperley (Holdings) Ltd. displayed their various brand names and copyright management information directly above and next to the listings displaying and offering for sale the Unauthorized Farrah Apparel Products, Unauthorized Palmae Apparel Products, and Unauthorized Farrah Interiors Product.  Further, under the "Ownership of Rights" section of the website's Terms and Conditions page it states: "Any trademarks, copyrights or logos used on the website are owned by or licensed by TMLL Ltd."  See **Exhibit F**.  Through displaying their copyright management information in connection with display and offering for sale of the Unauthorized Farrah Apparel Products and Unauthorized Palmae Apparel Products, TMLL Ltd. and Temperley (Holdings) Ltd. held out to the public that these designs were original creations authored by Temperley London.  Defendants TMLL Ltd. and Temperley (Holdings) Ltd. provided and distributed this false copyright management information in an effort to induce, facilitate, enable, and conceal their own infringement and any future infringement by Defendants and any third party of Plaintiff's Artwork and the Photographs so that they could successfully make profits off of selling derivative works of Plaintiff's Artwork (i.e. the Unauthorized Farrah Apparel Products, Unauthorized Palmae Apparel Products, and Unauthorized Farrah Interiors Products) without receiving Plaintiff's consent or compensating Plaintiff.  Such actions violate 17 U.S.C. § 1202(a)(1) and (2).

173.    Additionally, Defendants TMLL Ltd. and Temperley (Holdings) Ltd. copied the Photographs and the underlying Artwork found on Plaintiff's Instagram account and intentionally removed the copyright management information of Plaintiff's trade name and Instagram handle, @wifenyc, as well as the titles of the Photographs and Artwork displayed under or next to the Photographs on Plaintiff's Instagram account, knowing or having reasonable grounds to know that such action would induce, enable, facilitate, or conceal her own infringement and the infringement of the other Defendants and any third party of Plaintiff's Artwork and the Photographs.  Upon information and belief, Defendants TMLL Ltd. and Temperley (Holdings) Ltd. made identical copies of the Photographs posted on Plaintiff's Instagram sans Plaintiff's copyright management information to be used in an "inspiration" board or something similar so that the employees/agents of the Temperley London Defendants and employees/agents of the ROMO Defendants could view the Photographs and create the subsequent infringing apparel pieces, fabrics, and cushions from the copies of the Photographs.  Upon information and belief, Defendants TMLL Ltd. and Temperley (Holdings) Ltd. removed Plaintiff's copyright information from one or more digital copies of one or more of Plaintiff's Photographs, and these copies were then used by the Temperley London Defendants and the ROMO Defendants to create digital and/or physical renderings of Plaintiff's design.  From the digital and/or physical renderings of the design, the Temperley London Defendants and the ROMO Defendants produced the embroidered and print copies of the design that are part of the Unauthorized Farrah Apparel Products, Unauthorized Palmae Apparel Products, and Unauthorized Farrah Interiors Products.  The Unauthorized Farrah Apparel Products, Unauthorized Palmae Apparel Products, Unauthorized Farrah Interiors Products, and Unauthorized Advertising Works do not contain Plaintiff's copyright management information and are unauthorized copies of Plaintiff's Artwork and the Photographs.

174.    Defendants TMLL Ltd. and Temperley (Holdings) Ltd. were aware or had reasonable grounds to be aware that by removing Plaintiff's copyright management information from the unauthorized copies of Plaintiff's Artwork and the Photographs, both the identical copies of the Photographs and the derivative works of the Artwork and Photographs, future infringements through further unauthorized reproduction, display, distribution, and sale of the Unauthorized Farrah Apparel Products, Unauthorized Palmae Apparel Products, Unauthorized Farrah Interiors Products, and Unauthorized Advertising Works by Defendants and third parties was likely because by removing Plaintiff's copyright management information, Defendants could more easily represent to the world that they were the authors of the Unauthorized Farrah Apparel Products, Unauthorized Palmae Apparel Products, and Unauthorized Farrah Interiors Products and could thereby profit accordingly.  Such actions violate 17 U.S.C. § 1202(b)(1).

175.    Further, Defendants TMLL Ltd. and Temperley (Holdings) Ltd. distributed copies of Plaintiff's Artwork and the Photographs, namely the Unauthorized Advertising Works depicting the Unauthorized Farrah Apparel Products, Unauthorized Palmae Apparel Products, and Unauthorized Farrah Interiors Products, on their U.S. website, https://int.temperleylondon.com/?country=US, Instagram accounts, @temperleylondon, @TemperleyBridal, and @TemperleyLondonOutlet, Facebook account, https://www.facebook.com/temperleylondon/, and Twitter/X (@TemperleyLondon) account knowing that Plaintiff's copyright management information (i.e. Plaintiff's trade name and Instagram handle, @wifenyc, and titles of the Photographs and the Artwork as listed on Plaintiff's Instagram) had been removed without the authority of Plaintiff or the law. Defendants TMLL Ltd. and Temperley (Holdings) Ltd. did as such knowing or having reasonable grounds to know that such action will induce, enable, facilitate, or conceal their own infringement and the infringement of the other Defendants and any third party of Plaintiff's Artwork and the Photographs.  Defendants TMLL Ltd. and Temperley (Holdings)

Ltd. were aware or had reasonable grounds to be aware that by removing Plaintiff's copyright management information from the unauthorized copies of Plaintiff's Artwork and the Photographs and distributing copies of Plaintiff's Artwork and the Photographs where Plaintiff's copyright management information had been removed without the authority of Plaintiff or the law, future infringements through further unauthorized reproduction, display, distribution, and sale of the Unauthorized Farrah Apparel Products, Unauthorized Palmae Apparel Products, Unauthorized Farrah Interiors Products, and Unauthorized Advertising Works by Defendants and third parties was likely because by removing Plaintiff's copyright management information, Defendants could more easily represent to the world that they were the authors of the Unauthorized Farrah Apparel Products, Unauthorized Palmae Apparel Products, and Unauthorized Farrah Interiors Products and could thereby profit accordingly.

176.    Defendants TMLL Ltd. and Temperley (Holdings) Ltd.'s *modus operandi* of distributing copies of Plaintiff's Artwork and the Photographs that do not include Plaintiff's copyright management information was intended to facilitate Defendants' production, display, sale, and distribution of the infringing products (i.e. Unauthorized Farrah Apparel Products, Unauthorized Palmae Apparel Products, Unauthorized Farrah Interiors Products, and Unauthorized Advertising Works) and having those infringing acts go undetected by Plaintiff and the public.  Such actions violate 17 U.S.C. § 1202(b)(3).

177.    Defendants Romo, Inc., Romo Ltd., Romo (Holdings) Ltd., and The Romo Group Ltd. knowingly and with the intent to induce, enable, facilitate, or conceal infringement, provided and distributed copyright management information that is false when they displayed unauthorized copies of the Artwork and the Photographs in the form of derivative works, namely the Unauthorized Advertising Works depicting the Unauthorized Farrah Apparel Products and Unauthorized Farrah Interiors Products, on their U.S. website,

https://www.romo.com, Instagram account, @romo_fabrics, and Facebook account, https://www.facebook.com/romofabrics, with their brand names, ROMO, "Romo, Fabrics & Wallcoverings," and Instagram handle, @romo_fabrics, listed above and under (as seen on an iPhone) or next to (as seen on a computer) the Unauthorized Advertising Works.  They also distributed false copyright management information when they displayed the Unauthorized Farrah Apparel Products and Unauthorized Farrah Interiors Products at their showrooms throughout the U.S. and via other third-party distributors, both online and through brick-and-mortar channels of distribution, while displaying the brand name, ROMO, above/next to/in connection with the items when they were on display.

178.    On ROMO's website, Defendants Romo, Inc., Romo Ltd., Romo (Holdings) Ltd., and The Romo Group Ltd. displayed their various brand names and copyright management information directly above and next to the listings displaying and offering for sale the Unauthorized Farrah Interiors Product.  Further, on ROMO's website, PDF printouts are listed alongside the Unauthorized Farrah Interiors Products, which include additional information for each product.  All of the PDFs list "© Copyright The Romo Group 2024. All Rights Reserved." next to the Unauthorized Farrah Interiors Products.  See **Exhibit G**. Upon information and belief, this copyright management information is also listed on the physical interiors products themselves and in the sample and swatch books in the ROMO showrooms located in the U.S., among other locations.  Through displaying their copyright management information in connection with display and offering for sale of the Unauthorized Farrah Interiors Products, Defendants Romo, Inc., Romo Ltd., Romo (Holdings) Ltd., and The Romo Group Ltd. held out to the public that these designs were original creations authored by the ROMO Defendants.  These statements are blatant misrepresentations that constitute the provision and distribution of false copyright management information as Plaintiff is the copyright holder to the Artwork featured on the Unauthorized Farrah Interiors Products, not the ROMO Defendants.

179.    Defendants Romo, Inc., Romo Ltd., Romo (Holdings) Ltd., and The Romo Group Ltd. provided and distributed this false copyright management information in an effort to induce, facilitate, enable, and conceal their own infringement and any future infringement by Defendants and any third party of Plaintiff's Artwork and the Photographs so that they could successfully make profits off of selling derivative works of Plaintiff's Artwork (i.e. the Unauthorized Farrah Interiors Products) without receiving Plaintiff's consent or compensating Plaintiff.  Such actions violate 17 U.S.C. § 1202(a)(1) and (2).

180.    Additionally, Defendants Romo, Inc., Romo Ltd., and Romo (Holdings) Ltd. copied the Photographs and the underlying Artwork found on Plaintiff's Instagram account and intentionally removed the copyright management information of Plaintiff's trade name and Instagram handle, @wifenyc, as well as the titles of the Photographs and Artwork displayed under or next to the Photographs on Plaintiff's Instagram account, knowing or having reasonable grounds to know that such action would induce, enable, facilitate, or conceal her own infringement and the infringement of the other Defendants and any third party of Plaintiff's Artwork and the Photographs.  Upon information and belief, Defendants Romo, Inc., Romo Ltd., and Romo (Holdings) Ltd. made identical copies of the Photographs posted on Plaintiff's Instagram sans Plaintiff's copyright management information to be used in an "inspiration" board or something similar so that the employees/agents of the Temperley London Defendants and employees/agents of the ROMO Defendants could view the Photographs and create the subsequent infringing fabrics and cushions from the copies of the Photographs.  Upon information and belief, Defendants Romo, Inc., Romo Ltd., and Romo (Holdings) Ltd. removed Plaintiff's copyright information from one or more digital copies of one or more of Plaintiff's Photographs, and these copies were then used by the Temperley London Defendants and the ROMO Defendants to create digital and/or physical renderings of Plaintiff's Artwork.  From the digital and/or physical renderings of the Artwork, the ROMO Defendants produced the embroidered copies of the design that are part

74

of the Unauthorized Farrah Interiors Products. The Unauthorized Farrah Interiors Products and Unauthorized Advertising Works do not contain Plaintiff's copyright management information and are unauthorized copies of Plaintiff's Artwork and the Photographs.

181.    Defendants Romo, Inc., Romo Ltd., Romo (Holdings) Ltd., and The Romo Group Ltd. were aware or had reasonable grounds to be aware that by removing Plaintiff's copyright management information from the unauthorized copies of Plaintiff's Artwork and the Photographs, both the identical copies of the Photographs and the derivative works of the Artwork and Photographs, future infringements through further unauthorized reproduction, display, distribution, and sale of the Unauthorized Farrah Apparel Products and Unauthorized Advertising Works by Defendants and third parties was likely because by removing Plaintiff's copyright management information, Defendants could more easily represent to the world that they were the authors of the Unauthorized Farrah Apparel Products, Unauthorized Palmae Apparel Products, and Unauthorized Farrah Interiors Products and could thereby profit accordingly. Such actions violate 17 U.S.C. § 1202(b)(1).

182.    Further, Defendants Romo, Inc., Romo Ltd., Romo (Holdings) Ltd., and The Romo Group Ltd. distributed copies of Plaintiff's Artwork and the Photographs, namely the Unauthorized Advertising Works depicting the Unauthorized Farrah Apparel Products and Unauthorized Farrah Interiors Products, on their U.S. website, https://www.romo.com, Instagram account, @romo_fabrics, and Facebook account, https://www.facebook.com/romofabrics, knowing that Plaintiff's copyright management information (i.e. Plaintiff's trade name and Instagram handle, @wifenyc, and titles of the Photographs and the Artwork as listed on Plaintiff's Instagram) had been removed without the authority of Plaintiff or the law. Defendants Romo, Inc., Romo Ltd., Romo (Holdings) Ltd., and The Romo Group Ltd. did as such knowing or having reasonable grounds to know that such action will induce, enable, facilitate, or conceal their own infringement and the

infringement of the other Defendants and any third party of Plaintiff's Artwork and the Photographs. Defendants Romo, Inc., Romo Ltd., Romo (Holdings) Ltd., and The Romo Group Ltd. were aware or had reasonable grounds to be aware that by removing Plaintiff's copyright management information from the unauthorized copies of Plaintiff's Artwork and the Photographs and distributing copies of Plaintiff's Artwork and the Photographs where Plaintiff's copyright management information had been removed without the authority of Plaintiff or the law, future infringements through further unauthorized reproduction, display, distribution, and sale of the Unauthorized Farrah Apparel Products, Unauthorized Farrah Interiors Products, and Unauthorized Advertising Works by Defendants and third parties was likely because by removing Plaintiff's copyright management information, Defendants could more easily represent to the world that they were the authors of the Unauthorized Farrah Interiors Products and could thereby profit accordingly.

183. Defendants Romo, Inc., Romo Ltd., Romo (Holdings) Ltd., and The Romo Group Ltd.'s *modus operandi* of distributing copies of Plaintiff's Artwork and the Photographs that do not include Plaintiff's copyright management information was intended to facilitate Defendants' production, display, sale, and distribution of the infringing products (i.e. Unauthorized Farrah Apparel Products, Unauthorized Farrah Interiors Products, and Unauthorized Advertising Works) and having those infringing acts go undetected by Plaintiff and the public. Such actions violate 17 U.S.C. § 1202(b)(3).

184. Upon information and belief, Defendants knew that Plaintiff was the author of the Artwork and the Photographs and was the sole copyright holder to the Artwork and the Photographs.

185. Upon information and belief, Defendants knew that they did not have authorization from Plaintiff and did not obtain a license from Plaintiff to use the Artwork or Photographs or to make derivative works from those artworks.

186.    Despite having this knowledge, Defendants removed Plaintiff's copyright management information on identical copies of the Photographs and derivative works of the Artwork as depicted in the Photographs and provided and distributed false authorship and ownership information in connection with the derivative works of the Artwork and the Photographs.

187.    Plaintiff has suffered actual damages as a result of these acts set forth herein in an amount currently unknown and to be determined at trial.

188.    Defendants have gained profits as a result of these acts set forth herein in an amount currently unknown to Plaintiff and to be determined at trial.

189.    Plaintiff is entitled to recover from Defendants its actual damages and any profits of Defendants that are attributable to the violations and are not taken into account in computing the actual damages, pursuant to 17 U.S.C. § 1203(b)(3) and (c)(2).

190.    In the alternative, and at Plaintiff's election, Plaintiff is entitled to recover from Defendants, for each and every violation of 17 U.S.C. § 1202, the extent to which is currently unknown at the present time and will be proven at trial, statutory damages of not less than $2,500.00 and up to $25,000.00 per violation (each instance of use, reproduction, distribution and/or display), pursuant to 17 U.S.C. § 1203(c)(3)(B).

191.    Pursuant to 17 U.S.C. § 1203(b)(1), Plaintiff is entitled to preliminary and permanent injunctive relief to prevent or restrain further violations of 17 U.S.C. § 1202.

192.    Plaintiff is entitled to recover its costs from Defendants pursuant to 17 U.S.C. § 1203(b)(4).

193.    Plaintiff is further entitled to recover its attorneys' fees from Defendants pursuant to 17 U.S.C. § 1203(b)(5).

194.    Plaintiff is further entitled to the preliminary impounding and subsequent destruction of all Unauthorized Farrah Apparel Products, Unauthorized Palmae Apparel Products, Unauthorized Farrah Interiors Products, Unauthorized Advertising Works, other infringing products and/or advertising works, and any devices or products that were involved in the violation and are in the custody or control of Defendants pursuant to 17 U.S.C. § 1203(b)(2) and (6).

## FOURTH CLAIM FOR RELIEF

### (Accounting – As to All Defendants)

195.    Plaintiff repeats and alleges paragraphs 1 through 196 hereof, as if fully set forth herein in their entirety.

196.    Defendants have derived and/or are in possession of significant revenue, profits, and other benefits thereon stemming from the unauthorized and improper use and commercial exploitation of Plaintiff's copyright-protected artworks, namely, the Artwork and the Photographs.

197.    Plaintiff is entitled to a full and accurate accounting of all revenues generated by Defendants in connection with the sale, display, production, and distribution of the Unauthorized Farrah Apparel Products, Unauthorized Palmae Apparel Products, Unauthorized Farrah Interiors Products, and Unauthorized Advertising Works.

198.    Moreover, Plaintiff is entitled to a full and accurate accounting of all revenues generated by and in connection with the sale of all Temperley London Spring Summer 2022 Collection apparel products and Temperley London Wedding apparel products during the time that the Unauthorized Advertising Works, which are unauthorized derivative works of Plaintiff's Artwork and the Photographs, were displayed and used by

Defendants on their websites, social media channels, in stores and showrooms, and via other advertising mediums to promote these apparel collections.

199.    Plaintiff is also entitled to a full and accurate accounting of all revenues generated by and in connection with the sale of the interiors products (i.e. fabrics, cushions, wallpapers, trimmings, etc.) that are part of the Temperley London x ROMO "A World Less Ordinary" collection during the time that the Unauthorized Advertising Works, which are unauthorized derivative works of Plaintiff's Artwork and the Photographs, were displayed and used by Defendants on their websites, social media channels, in stores and showrooms, and via other advertising mediums to promote this interiors collection.

200.    The precise amount of money due to Plaintiff from Defendants resulting from their infringements is unknown to Plaintiff and cannot be reasonably ascertained without a full and complete accounting of Defendants' relevant books and records.  Due to the widespread nature of the infringing acts committed by Defendants at issue, it is not possible for Plaintiff to ascertain a fixed sum that is currently owed to it unless a full and accurate accounting of all revenues generated from the aforementioned infringing acts is performed.

## **PRAYER FOR RELIEF**

WHEREFORE, Sophia Parker Studios, Inc. prays for judgment in its favor against Defendants, jointly and severally, and for the following relief:

1) That Plaintiff shall be awarded its actual damages incurred as a result of Defendants' unlawful conduct and the infringing acts set forth herein in an amount as may be proper pursuant to 17 U.S.C. § 504(b) and 17 U.S.C. § 1203(c);

2) That Plaintiff shall be awarded all profits, both direct and indirect, of Defendants, and each of them, stemming from their unlawful actions and

infringement, the exact sum to be proven at the time of trial pursuant to 17 U.S.C. § 504(b) and 17 U.S.C. § 1203(c);

3) That, alternatively, at Plaintiff's election, Plaintiff shall be awarded statutory damages of up to $150,000.00 for each separate act of infringement for willful infringement pursuant to 17 U.S.C. § 504(c) and statutory damages up to $25,000.00 per act of infringement pursuant to 17 U.S.C. § 1203(c) and any other applicable laws;

4) That the Court shall enter an order for a preliminary and permanent injunction (a) enjoining Defendants and their respective members, officers, principals, shareholders, agents, attorneys, servants, employees, successors, and assigns, and any and all other persons in privity with or acting in active concert or participation with any of them, from reproducing, displaying, selling, or distributing the Unauthorized Farrah Apparel Products, Unauthorized Palmae Apparel Products, Unauthorized Farrah Interiors Products, and Unauthorized Advertising Works, distributing or providing false Copyright Management Information, removing Plaintiff's Copyright Management Information, or otherwise infringing in any manner (including without limitation by materially contributing to or intentionally inducing the infringement of) any copyright right in Plaintiff's Artwork and/or the Photographs; and (b) impounding all Unauthorized Farrah Apparel Products, Unauthorized Palmae Apparel Products, Unauthorized Farrah Interiors Products, and Unauthorized Advertising Works still in the possession, custody, or control of Defendants, all molds or other articles by which such copies may be reproduced, and all records documenting the manufacture, sale, or receipt of things involved in the aforementioned violations pursuant to 17 U.S.C. § 503 and 17 U.S.C. § 1203(b), and as part of the final judgment, ordering the destruction of all unauthorized copies of Plaintiff's Artwork

and the Photographs, including the Unauthorized Farrah Apparel Products, Unauthorized Palmae Apparel Products, Unauthorized Farrah Interiors Products, and Unauthorized Advertising Works, and all molds and other articles by means of which such copies may be reproduced;

5) That the Temperley London Defendants shall be required to provide an accounting of the total revenue generated by the sale of the Unauthorized Farrah Apparel Products, Unauthorized Palmae Apparel Products, and Unauthorized Interiors Products, as well as an accounting of the total revenue generated from the sale of all Temperley London Spring Summer 2022 apparel products and Temperley London Wedding apparel products during the time that the Unauthorized Advertising Works, which are unauthorized derivative works of Plaintiff's Artwork and the Photographs, were used and displayed by the Temperley London Defendants on their websites, e-commerce platforms, social media channels, in-store, and through various other advertising mediums to promote these apparel collections.

6) That the ROMO Defendants shall be required to provide an accounting of the total revenue generated by the sale of the Unauthorized Farrah Interiors Products, as well as an accounting of the total revenue generated from the sale of all Temperley London x ROMO "A World Less Ordinary" collection interiors products during the time that the Unauthorized Advertising Works, which are unauthorized derivative works of Plaintiff's Artwork and the Photographs, were used and displayed by the ROMO Defendants on their websites, social media channels, in ROMO showrooms, and through various other advertising mediums to promote this interiors collection.

7) That a constructive trust shall be imposed upon Defendants regarding such amounts and any other revenues or proceeds realized by Defendants, and each of them, through their infringement of Plaintiff's intellectual property rights;

8) That Plaintiff shall be awarded its attorneys' fees as available under 17 U.S.C. § 505 and 17 U.S.C. § 1203(b).

9) That Plaintiff shall be awarded its costs of suit and expenses;

10) That Plaintiff shall be awarded pre-judgment and post-judgment interest as allowed by law; and

11) That Plaintiff shall be awarded further legal and equitable relief as the Court deems just.

**A. BRUNO LAW**

*/s/ Alyssa M. Bruno*

By: _____

Dated: March 13, 2025

ALYSSA M. BRUNO

*Attorney for Plaintiff Sophia Parker Studios, Inc. (t/a WIFE NYC)*

## DEMAND FOR JURY TRIAL

Pursuant to Fed. R. Civ. P. 38, Plaintiff Sophia Parker Studios, Inc., hereby demands a jury trial in the above-entitled action on all claims for relief for which Plaintiff is entitled to a trial by jury.

**A. BRUNO LAW**

*/s/ Alyssa M. Bruno*

Dated: March 13, 2025      By: _____

ALYSSA M. BRUNO

*Attorney for Plaintiff Sophia Parker Studios, Inc. (t/a WIFE NYC)*

**CERTIFICATE OF SERVICE**

      I hereby certify that on this 13th day of March 2025, a true and correct copy of the foregoing **PLAINTIFF SOPHIA PARKER STUDIOS, INC.'S FIRST AMENDED COMPLAINT** was filed electronically with the United States District Court for the Northern District of Ohio through the Court's CM/ECF system.  Notice of the filing will be sent by email to all counsel by operation of the Court's electronic filing system, and all parties may access this filing through that system.  A courtesy copy of this filing will also be sent to all counsel.

                                           */s/ Alyssa M. Bruno*

By:    _____

Dated: March 13, 2025      Alyssa M. Bruno
                                    (PA ID #321345; NJ ID #152382016)
                                    [*Admitted to this Court*]
                                    **A. BRUNO LAW**
                                    P.O. Box 468
                                    Easton, PA 18044
                                    Telephone: (610) 258-4003
                                    Email: abruno@abrunolaw.com

                                    *Attorney for Plaintiff Sophia Parker Studios, Inc. (t/a WIFE NYC)*

84