## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| SOPHIA PARKER STUDIOS, INC. (t/a WIFE NYC),<br><br>         Plaintiff,<br><br>v.<br><br>ALICE TEMPERLEY MBE, TMLL LTD. (t/a TEMPERLEY LONDON), TEMPERLEY HOLDINGS LTD. (t/a TEMPERLEY HOLDINGS), ROMO LTD. (t/a ROMO and/or THE ROMO GROUP), ROMO (HOLDINGS) LTD., ROMO, INC. (t/a ROMO FABRICS AND WALLCOVERINGS and ROMO USA), THE ROMO GROUP LTD., AND DOES 1-20, inclusive,<br><br>         Defendants. | Case No. 1:24-cv-02086-PAB<br><br>Judge Pamela A Barker<br><br>Magistrate Judge Reuben J. Shepherd<br><br>**DEFENDANT ROMO, INC.'S MOTION TO DISMISS FIRST AMENDED COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)** |

## <u>DEFENDANT ROMO, INC.'S MOTION TO DISMISS FIRST AMENDED COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)</u>

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendant Romo, Inc., by and through the undersigned counsel, hereby moves to dismiss Plaintiff's (1) claims for copyright infringement, as well as contributory, vicarious, and willful copyright infringement, (2) claims for false distribution of copyright management information and removal of copyright management information, and (3) claims for statutory damages and attorneys' fees. In support, Romo, Inc. submits its Memorandum of Law dated March 27, 2025, which is being filed contemporaneously with this Notice.

Dated: March 27, 2025

Respectfully submitted,

By: */s/ Meredith K. Collier*

Meredith K. Collier (097108)
Todd R. Tucker (0065617)
**CALFEE, HALTER & GRISWOLD LLP**
1405 East Sixth Street
Cleveland, OH 44114
Telephone: 216.622.8200
Facsimile: 216.241.0816
mcollier@calfee.com
ttucker@calfee.com

Jeffer Ali (*pro hac vice*)
**HUSCH BLACKWELL LLP**
80 South Eighth Street, Suite 4800
Minneapolis, Minnesota 55402
Telephone: 612.852.2700
Facsimile: 612.852.2701
jeffer.ali@huschblackwell.com

Sharif Ahmed (*pro hac vice*)
**HUSCH BLACKWELL LLP**
2415 East Camelback Road, Suite 500
Phoenix, AZ 85016
Telephone: 480.824.7890
Facsimile: 480-824-7905
sharif.ahmed@huschblackwell.com

*Attorneys for Defendant Romo, Inc.*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| SOPHIA PARKER STUDIOS, INC. (t/a WIFE NYC), | Case No. 1:24-cv-02086-PAB |
| Plaintiff, | Judge Pamela A Barker |
| v. | Magistrate Judge Reuben J. Shepherd |
| ALICE TEMPERLEY MBE, TMLL LTD. (t/a TEMPERLEY LONDON), TEMPERLEY HOLDINGS LTD. (t/a TEMPERLEY HOLDINGS), ROMO LTD. (t/a ROMO and/or THE ROMO GROUP), ROMO (HOLDINGS) LTD., ROMO, INC. (t/a ROMO FABRICS AND WALLCOVERINGS and ROMO USA), THE ROMO GROUP LTD., AND DOES 1-20, inclusive, | |
| Defendants. | |

<u>**DEFENDANT ROMO, INC.'S MEMORANDUM IN SUPPORT OF
ITS MOTION TO DISMISS FIRST AMENDED COMPLAINT PURSUANT TO
FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)**</u>

## TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................................................... i

TABLE OF AUTHORITIES ....................................................................................................... i

BRIEF STATEMENT OF ISSUES TO BE DECIDED ........................................................ v

SUMMARY OF ARGUMENT ................................................................................................ vi

I.   INTRODUCTION ............................................................................................................... 1

II.  LEGAL STANDARD ......................................................................................................... 4

III. ARGUMENT ....................................................................................................................... 5

A. Plaintiff Fails to Plausibly Allege Infringement of the MEMPHIS CHAINSAW Sculpture (Registration VA 2-342-734). ........................................................................................ 5

    1. Romo, Inc. did not copy the sculpture. ........................................................................ 5

    2. Romo, Inc. never accessed or had the opportunity to access the sculpture. .................. 8

B. Plaintiff Fails to Plausibly Allege Facts Supporting its Claim that Romo, Inc. Infringed the Photographs (VA 2-352-960 (Registered April 27, 2023) and VA 2-420-961 (Registered Nov. 4, 2024)). ................................................................................................................. 9

    1. Plaintiff does not allege that Romo, Inc. copied the photographs. .............................. 10

    2. Plaintiff does not plausibly allege that Romo, Inc. had access to Plaintiff's photographs. ............................................................................................................. 14

C. The Complaint Fails to Plausibly Allege Sufficient Facts Supporting a Claim for Vicarious or Contributory Infringement Against Romo, Inc. .............................................................. 16

D. Plaintiff Fails to Adequately Plead a DMCA Claim for Violation of 17 U.S.C. § 1202... 17

    1. Plaintiff's CMI removal claims should be dismissed. .................................................. 18

    2. Plaintiff's distribution of false CMI claims should be dismissed. ............................... 20

E. Plaintiff May Not Seek Statutory Damages or Attorney's Fees for the Alleged Copyright Infringement. .................................................................................................................... 22

F. Plaintiff's First Amended Complaint rests entirely on "information and belief" pleading. 24

IV. CONCLUSION ................................................................................................................... 25

V.  LOCAL RULE 7.1(f) CERTIFICATION ........................................................................ 25

## TABLE OF AUTHORITIES

Page(s)

Cases

*A&M Records, Inc. v. Napster, Inc.*,
　239 F.3d 1004 (9th Cir. 2001) ............................................. 16
*ABS Ent., Inc. v. CBS Corp.*,
　908 F.3d 405 (9th Cir. 2018) ............................................... 8
*Advanta-STAR Automotive Research Corp of America v. Search Optics, LLC*,
　672 F. Supp. 3d 1035 (S.D. Cal. 2023) .................................. 11
*Arista Recs., LLC v. Doe 3*,
　604 F.3d 110 (2d Cir. 2010) ............................................... 16
*Art Attacks Ink, LLC v. MGA Ent. Inc.*,
　581 F.3d 1138 (9th Cir. 2009) ...................................... 9, 15, 16
*Ashcroft v. Iqbal*,
　556 U.S. 662 (2009) ......................................................... 5
*ATC Distribution Grp., Inc. v. Whatever It Takes Transmissions & Parts, Inc.*,
　402 F.3d 700 (6th Cir. 2005) ............................................. 10
*Bell Atl. Corp. v. Twombly*,
　550 U.S. 544 (2007) ....................................................... 4, 5
*Bouchat v. Bon–Ton Dept. Stores, Inc.*,
　506 F.3d 315 (4th Cir. 2007) ............................................. 23
*Bridgeport Music, Inc. v. Rhyme Syndicate Music*,
　376 F.3d 615 (6th Cir. 2004) ............................................. 16
*Bridgeport Music, Inc. v. WM Music Corp.*,
　508 F.3d 394 (6th Cir. 2007) ............................................. 16
*Campbell v. Walt Disney Co.*,
　718 F. Supp. 2d 1108 (N.D. Cal. 2010) ................................. 11
*Christianson v. W. Pub. Co.*,
　149 F.2d 202 (9th Cir. 1945) ......................................... 11, 14
*Citizens United v. Schneiderman*,
　882 F.3d 374 (2d Cir. 2018) ............................................. 24
*Coquico, Inc. v. Rodriguez-Miranda*,
　562 F.3d 62 (1st Cir. 2009) ............................................. 10
*Craig v. UMG Recordings, Inc.*,
　380 F. Supp. 3d 324 (S.D.N.Y. 2019) ................................... 18
*Derek Andrew, Inc. v. Poof Apparel Corp.*,
　528 F.3d 696 (9th Cir. 2008) ............................................. 23
*Faulkner Press, L.L.C. v. Class Notes, L.L.C.*,
　756 F. Supp. 2d 1352 (N.D. Fla. 2010) ............................. 20, 21
*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc.*,
　499 U.S. 340 (1991) ................................................... 7, 8, 10
*Germain v. Teva Pharms., USA, Inc.*,
　756 F.3d 917 (6th Cir. 2014) ............................................. 24

ii

*Harney v. Sony Pictures TV, Inc.*,
  704 F.3d 173 (1st Cir. 2013) ................................................................. 10

*Harrington v. Pinterest, Inc.*,
  No. 5:20-cv-05290-EJD, 2022 WL 4348460 (N.D. Cal. Sept. 19, 2022) ............................... 22

*Johnson v. Jones*,
  149 F.3d 494 (6th Cir. 1998) ................................................................ 23

*Kampschroer v. Anoka Cty.*,
  57 F. Supp. 3d 1124 (D. Minn. 2014) ......................................................... 24

*Latimer v. Roaring Toyz, Inc.*,
  601 F.3d 1224 (11th Cir. 2010) ............................................................ 7, 8

*Leigh v. Warner Bros., Inc.*,
  212 F.3d 1210 (11th Cir. 2000) ............................................................... 7

*Loomis v. Cornish*,
  836 F.3d 991 (9th Cir. 2016) .............................................................. 9, 15

*Malibu Textiles, Inc. v. Label Lane Int'l, Inc.*,
  922 F.3d 946 (9th Cir. 2019) ......................................................... 10, 11, 14

*Mango v. BuzzFeed, Inc.*,
  356 F. Supp. 3d 368 (S.D.N.Y. 2019) ...................................................... 17, 20

*Mason v. Montgomery Data, Inc.*,
  967 F.2d 135 (5th Cir. 1992) ................................................................ 23

*Masterson Marketing, Inc. v. KSL Recreation Corp.*,
  495 F. Supp. 2d 1044 (S.D. Cal. 2007) ..................................................... 2, 6

*Meshwerks, Inc. v. Toyota Motor Sales U.S.A., Inc.*,
  528 F.3d 1258 (10th Cir. 2008) ......................................................... 2, 6, 7

*Parker v. Google, Inc.*,
  242 F. App'x 833 (3d Cir. 2007) ............................................................. 16

*Pasillas v. McDonald's Corp.*,
  927 F.2d 440 (9th Cir. 1991) ............................................................ 10, 11

*Pohl v. MH Sub I LLC*,
  770 F. App'x 482 (11th Cir. 2019) ......................................................... 7, 8

*Ritani, LLC v. Aghjayan*,
  880 F. Supp. 2d 425 (S.D.N.Y., 2012) ...................................................... 24

*Stevens v. Corelogic, Inc.*,
  899 F.3d 666 (9th Cir. 2018) ................................................................ 22

*Three Boys Music Corp. v. Bolton*,
  212 F.3d 477 (9th Cir. 2000) ................................................................. 9

*Tomaydo-Tomahhdo, LLC v. Vozary*,
  629 F. App'x 658 (6th Cir. 2015) .......................................................... 6, 7

*Troll Co. v. Uneeda Doll Co.*,
  483 F.3d 150 (2d Cir. 2007) ................................................................. 23

*Unicolors, Inc. v. H&M Hennes & Mauritz, L.P.*,
  52 F.4th 1054 (9th Cir. 2022) ........................................................... 11, 14

Statutes

17 U.S.C. 504(c) ............................................................................. 24

17 U.S.C. § 412 ........................................................................ passim

iii

17 U.S.C. § 1202 ................................................................................................................ passim

Rules

Fed. R. Civ. P. 12(b)(6) .......................................................................................................... 1, 25

## BRIEF STATEMENT OF ISSUES TO BE DECIDED

1. Does Plaintiff fail to state a claim for direct copyright infringement against Romo, Inc. where Plaintiff alleges that Romo, Inc. infringed the copyright in the sculpture by allegedly reproducing photographs of the sculpture, even though Plaintiff's photograph registrations specifically exclude the sculpture and do not cover the sculpture?

2. Does Plaintiff also fail to state a claim for direct copyright infringement against Romo, Inc. where Plaintiff fails to plausibly allege any facts that indicate Romo, Inc. engaged in any copying of the allegedly original constituent elements Plaintiff's Photographs?

3. Does Plaintiff also fail to state a claim for direct copyright infringement against Romo, Inc. where Plaintiff fails plausibly allege that Romo, Inc. accessed the sculpture and photographs?

4. Does Plaintiff fail to state a claim for vicarious or contributory infringement against Romo, Inc. where Plaintiff fail to allege any facts that suggest Romo, Inc. either had knowledge of any allegedly infringing activity of any other Defendant, or materially contributed to the alleged infringement?

5. Does Plaintiff fail to state a cognizable claim under the Digital Millenium Copyright Act where Plaintiff does not allege that its works included proper copyright management information and that Romo, Inc. removed Plaintiff's copyright management information or distributed works with Plaintiff's copyright management information altered or removed?

6. Is Plaintiff precluded from seeking statutory damages and/or attorneys' fees for alleged copyright infringement when Plaintiff registered its works well beyond the three-month post-publication window under the Copyright Act, 17 U.S.C. § 412?

7. Does Plaintiff fail to state claims against Romo, Inc. where Plaintiff premises virtually all its allegations on "information and belief" pleading?

## SUMMARY OF ARGUMENT

1. Where the plaintiff fails to plausibly allege any facts that a defendant engaged in purported copyright infringement, the plaintiff fails to state a claim for direct copyright infringement.

2. A plaintiff fails to plausibly allege copyright infringement of a sculpture where the plaintiff alleges only that the defendant reproduced photographs of the sculpture.

3. A plaintiff fails to plausibly allege copyright infringement of a sculpture where the reproduced photographs at issue are independently copyrighted, and on the face of their registrations, specifically exclude the sculpture.

4. Where a plaintiff fails to plausibly allege any facts that a defendant copied or accessed the plaintiff's photographs or sculpture, the plaintiff fails to state a claim for direct copyright infringement.

5. Where the plaintiff fails to allege that a defendant infringed any copyrightable aspect of a photograph, the plaintiff fails to state a cognizable claim for copyright infringement.

6. Where the plaintiff fails to plausibly allege any facts suggesting that an individual defendant had knowledge of any allegedly infringing activity—much less materially contributed to it—the plaintiff fails to state a claim for vicarious or contributory infringement against the individual defendant.

7. Where the plaintiff fails to allege that its works were published in connection with its copyright management information, and that the defendant removed the plaintiff's copyright management information or distributed any of the plaintiff's copyright management information, the plaintiff fails to plead a cognizable claim under the Digital Millenium Copyright Act, 17 U.S.C. § 1202.

8.  A plaintiff is precluded from recovering statutory damages or attorneys' fees pursuant to 17 U.S.C. § 412 where the plaintiff did not register a copyright for its work within three months of the work's initial publication.

9.  Where the plaintiff premises virtually all its claims against an individual defendant on "information and belief" pleading, without alleging plausible facts, the plaintiff fails to state a claim against the defendant.

Defendant Romo, Inc. moves to dismiss Plaintiff Sophia Parker Studios' ("Plaintiff") First Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failing to plausibly allege claims upon which relief can be granted.

## I.    INTRODUCTION

A complaint is not a license to go fishing. Indeed, subjective belief—underlying **nearly two hundred** conclusory paragraphs—is no substitute for factual allegations. Plaintiff is now on its second complaint in six months and has had nearly a year to investigate and determine whether a suit against Defendant Romo, Inc. ("Romo, Inc.") is proper. Plainly, it is not. As discussed below, Plaintiff's First Amended Complaint is a Gordian Knot made up of irreconcilable copyright infringement allegations, baseless Digital Millenium Copyright Act ("DMCA") claims, statutorily barred damages theories, and contradictory narratives of indirect liability. Ultimately, Plaintiff fails to plausibly allege facts to support any of its claims.

First, Plaintiff accuses Romo, Inc. of infringing three copyrights: (1) a sculpture (U.S. Copyright Reg. No. VA 2-342-734 (MEMPHIS CHAINSAW)); (2) Photographs of the sculpture (U.S. Copyright Reg. No. VA 2-352-960 (Registered April 27, 2023)); and (3) more Photographs of the sculpture (U.S. Copyright Reg. No. VA 2-420-961 (Registered November 4, 2024))[1]. ECF No. 22, ¶1 (First Amended Complaint, "FAC"). As to all Defendants, including Romo, Inc., Plaintiff's copyright infringement claims are premised on a single core act of alleged copying: the "unauthorized reproduction" of photographs from Plaintiff's Instagram account. (*See, e.g.*, FAC, ¶100.) Nothing more. Indeed, Plaintiff does not allege that Romo, Inc. accessed or copied the MEMPHIS CHAINSAW sculpture. Instead, Plaintiff alleges that Romo, Inc. infringed the

---

[1] Notably, the Nov. 4, 2024, photograph copyright was registered nearly two years after Plaintiff first "discovered" the allegedly infringing works, seven months after it sent the cease-and-desist letter, and three weeks before it filed this lawsuit. (FAC, ¶¶7, 145.)

sculpture copyright by allegedly reproducing ***photographs***. (FAC, ¶100.) That proposition makes no sense, in that it contradicts well-established law that rights in photographs do not extend to the underlying objects, merchandise, or artwork depicted by the photographs, as these are separate works. *See Meshwerks, Inc. v. Toyota Motor Sales U.S.A., Inc.*, 528 F.3d 1258 (10th Cir. 2008); *Masterson Marketing, Inc. v. KSL Recreation Corp.*, 495 F. Supp. 2d 1044, 1048 (S.D. Cal. 2007) ("[A] photograph does not and cannot create a copyright in the underlying subject matter."). Accordingly, the alleged act of copying the photographs does not constitute infringement of the sculpture. Yet, Plaintiff nevertheless attempts to bootstrap these claims, appearing to add the sculptural work to this suit for the sole purpose of seeking damages to which it is not entitled. Having pleaded no other acts to establish that Romo, Inc. accessed or copied the sculpture itself, Plaintiff's copyright infringement claims should be dismissed.

Second, with respect to the photographs, Plaintiff fails to identify any copyrightable aspect of the photographs that was allegedly infringed. *See Meshwerks*, 528 F.3d at 1264 (A photograph may show copyrightable authorship involved in its creation, for instance, "positioning, background, lighting, shading, and the like[.]"). To the extent the First Amended Complaint can be interpreted to imply that the angles and lighting of the photographs comprise Plaintiff's creative and original contribution (FAC, ¶4), Plaintiff fails to allege that any of these aspects were infringed, and certainly does not allege that any of Romo, Inc.'s interiors products, as well as its marketing materials of the same, copied the photographs' angles and lighting. Indeed, Plaintiff's own side-by-side comparison of these materials confirms that that it lacks a legally cognizable claim for copyright infringement.[2]

Third, Plaintiff fails to plausibly allege facts in support of its claims of vicarious and

---

[2] For the very same reasons, Plaintiff's claim of willful infringement likewise fails.

contributory infringement against Romo, Inc. At bottom, Plaintiff alleges that every defendant is simultaneously supervised and controlled by, and supervising and controlling, the acts of every other defendant. That's non-sensical. Worse, Plaintiff accuses Romo, Inc. of being vicariously liable for the acts of its foreign *owners*, and, somehow, vicariously liable for the acts of the Temperley Defendants—foreign entities that are not part of the Romo corporate family. Plaintiff does not provide information to support these paradoxical allegations. In fact, Plaintiff fails to allege any facts that Romo, Inc. had knowledge of, or materially contributed to, any alleged copyright infringement on the part of its parent companies and the Temperley Defendants. Plaintiff likewise fails to describe how Romo, Inc. supervised or wielded control of any kind over its foreign parents and the Temperley Defendants. Rather, Plaintiff alleges that Romo, Inc. is a wholly-owned *subsidiary*, a status in the corporate ladder from which the power to "supervise and control" cannot reasonably be inferred. (FAC, ¶52)

Fourth, Plaintiff improperly attempts to transmute its deficient copyright infringement claims into DMCA claims. (FAC, ¶¶177-186); *see* 17 U.S.C. §1202 (for the distribution of false copyright management information ("CMI") and removal of CMI). Yet Plaintiff does not—because it cannot—allege that ***Plaintiff*** created Romo, Inc.'s PDF printouts and interiors products, or that Romo, Inc. removed Plaintiff's copyright management information from PDFs, advertisements, pillows, and swatch books that Plaintiff did not create. Rather, Plaintiff alleges that Romo, Inc.'s products are derivative works of Plaintiff's photographs, and that therefore, Romo, Inc.'s distribution of Romo products and Romo advertisements constituted the removal of Plaintiff's CMI and the distribution of false CMI. (FAC, ¶¶177-186.) Plaintiff's DMCA claims lack factual underpinning. *See* 17 U.S.C. §1202. Ultimately, Plaintiff does not allege the requisite facts indicating that Romo, Inc. (1) provided or distributed Plaintiff's sculpture and photographs,

(2) provided or distributed *false* copyright management information (least of all false copyright management information with the intent to conceal infringement), or (3) intentionally removed Plaintiff's copyright management information from its sculpture and photographs.

Fifth, the copyright registrations at issue indicate that Plaintiff "created" and publicized the works in 2019 and 2020 yet did not register them until 2023 and 2024. Given the works were registered well outside the three-month post-publication window, under the Copyright Act, Plaintiff cannot seek statutory damages and attorney's fees, and those claims should therefore be dismissed. 17 U.S.C. § 412 (requiring registration within three months of publication as a prerequisite for seeking statutory damages and attorney's fees). Even though Plaintiff's counsel publicly advertises this information to prospective clients on her own website[3], Plaintiff nevertheless re-raised its demand for statutory damages in the First Amended Complaint, incorrectly representing that it is entitled to such relief. (FAC, ¶¶153, 163; Prayer for Relief, ¶3.)

Finally, Plaintiff attempts to obfuscate the conclusory character of its allegations with the same tired phrase: "upon information and belief."[4] Reciting these words cannot rescue this First Amended Complaint from dismissal when Plaintiff repeatedly fails to disclose the basis of the alleged factual "information" or the basis for its "beliefs".

## II.   LEGAL STANDARD

A plaintiff is required to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This requires more than labels and

---

[3] "Moreover, in instances where a copyright holder took the initiative to register their work within three (3) months after first publishing it or prior to the infringement at issue taking place, the law provides that the copyright holder can pursue the recovery of attorneys' fees and statutory damages in a copyright infringement lawsuit. Because there are certain instances where the pursuit of statutory damages is more advantageous than the pursuit of actual damages, it is ideal for a work or art to be timely registered." https://www.abrunolaw.com/copyright-regstrations

[4] Plaintiff does so no fewer than 69 times in its First Amended Complaint.

conclusions, and a formulaic recitation of the elements of a cause of action will not do. "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Id.* at 545; *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). While courts must accept a complaint's allegations as true, this applies only to well-pleaded factual allegations, not to legal conclusions. A pleading that offers mere "labels and conclusions" is insufficient, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

## III.   ARGUMENT

Plaintiff has not plausibly alleged facts to support a claim that Romo, Inc. infringed, willfully or otherwise, its sculpture and photograph copyrights. Moreover, even if it did properly plead a claim for copyright infringement, Plaintiff has not plausibly alleged facts that Romo, Inc. is liable for contributory and vicarious infringement. Similarly, Plaintiff has not plausibly alleged facts to support its claim that Romo, Inc. distributed false CMI or removed Plaintiff's CMI in violation of 17 U.S.C. § 1202. Finally, Plaintiff fails to plausibly allege facts to support a claim for recovery of statutory damages and attorney's fees because Plaintiff did not register its copyrights within three months of publication and before the alleged infringement. Plaintiff's First Amended Complaint against Romo, Inc. should therefore be dismissed pursuant to Rule 12(b)(6).

### A.   Plaintiff Fails to Plausibly Allege Infringement of the MEMPHIS CHAINSAW Sculpture (Registration VA 2-342-734).

#### 1.   Romo, Inc. did not copy the sculpture.

The Court should dismiss all claims with respect to U.S. Copyright Reg. No. VA 2-342-734 (MEMPHIS CHAINSAW). Plaintiff has not alleged that Romo, Inc. infringed the copyright to the sculpture. Plaintiff does not claim that Romo, Inc. created replicas of the sculpture, molds

or miniatures of the sculpture, or other substantially similar plant sculptures. Plaintiff has not cited to any Romo, Inc. product that could conceivably be interpreted as a sculpture. Instead, Plaintiff alleges—unsurprisingly, "[u]pon information and belief"—that "Romo, Inc. *reproduced one or more of the Photographs* found on Plaintiff's Instagram account, @wifenyc, to create a pattern or digitally rendered copy of the [sculpture] that was then used to create the Unauthorized Farrah Interiors Products." (FAC, ¶100 (emphasis added).)

Here, the works that are alleged to have been copied are the photographs, not the sculpture, and Plaintiff represents to this Court that these photographs are original works of authorship that have been granted copyrights of their own. (FAC, ¶¶1, 4.) Yet Plaintiff is attempting to plead infringement of the sculpture by dint of photograph infringement, *even though the sculpture is specifically excluded on the face of the photograph's copyright registration*. ECF Doc. 22-2, 7 (Ex. B) ("Limitation of copyright claim . . . *Material excluded from this claim: sculpture*") (emphasis added).

In any event, for copyrightability, courts have repeatedly delineated the distinction between images and the underlying subject matter they depict. There may be copyrightable authorship involved in creating a photograph, for example, "positioning, background, lighting, shading, and the like." *Meshwerks*, 528 F.3d at 1264. Even so, "the law is becoming increasingly clear: one possesses no copyright interest in reproductions . . . when these reproductions do nothing more than accurately convey the underlying image." *Id.* at 1267 (citation omitted). In fact, "a photograph does not and cannot create a copyright in the underlying subject matter." *Masterson Marketing*, 495 F. Supp. 2d at 1048. Indeed, "[t]o be original, the work must be 'original to the author.'" *Tomaydo-Tomahhdo, LLC v. Vozary*, 629 F. App'x 658, 660 (6th Cir. 2015). "In other words, it must be 'independently created by the author' and possess 'at least some minimal degree of

6

creativity.'" *Id.* (quoting *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 343 (1991)).

For example, in *Pohl v. MH Sub I LLC*, the Eleventh Circuit noted that what makes a photograph

of a sculpture sufficiently original are the photographer's—rather than the sculptor's—creative

choices:

> For example, this Court has noted that a photograph of a sculptural artwork—the
> Bird Girl statue in Savannah's Bonaventure Cemetery—was sufficiently original
> for copyright protection, as it involved minimal creativity in the "selection of
> lighting, shading, timing, angle, and film" for the picture. *Leigh v. Warner Bros.,
> Inc.*, 212 F.3d 1210, 1215 (11th Cir. 2000). Likewise, we have recognized that
> photographs of motorcycles taken for advertising materials were copyrightable
> where the photographer "made all decisions regarding lighting, appropriate camera
> equipment and lens, camera settings and use of the white background, which was
> consistent with the industry practice he had noted in studying other advertising
> photographs." *Latimer v. Roaring Toyz, Inc.*, 601 F.3d 1224, 1233-35 (11th Cir.
> 2010).

770 F. App'x 482, 487 (11th Cir. 2019).

Consistent with this principle, in *Meshwerks*, the Tenth Circuit found no originality in the

digital images at issue because "Meshwerks' models depict[ed] nothing more than unadorned

Toyota vehicles—the car *as* car":

> As applied to a photograph of a pre-existing product, that bedrock principle [of
> originality] means that the photographer manifestly cannot claim to have originated
> the matter depicted therein . . . The upshot is that the photographer is entitled to
> copyright ***solely based on lighting, angle, perspective, and the other ingredients
> that traditionally apply to that art-form***." . . . [T]he facts in this case
> unambiguously show that Meshwerks did not make any decisions regarding
> lighting, shading, the background in front of which a vehicle would be posed, the
> angle at which to pose it, or the like—in short, its models reflect none of the
> decisions that can make depictions of things or facts in the world, whether Oscar
> Wilde or a Toyota Camry, new expressions subject to copyright protection.

528 F.3d at 1265 (internal citations omitted).

Similarly, in *ABS Ent., Inc. v. CBS Corp.*, the Ninth Circuit reiterated and applied this

principle from *Mershwerks*, observing in the context of remastered sound recordings that "it should

be evident that a remastered sound recording is not eligible for independent copyright protection

as a derivative work unless its essential character and identity reflect a level of independent sound recording authorship that makes it a variation distinguishable from the underlying work." 908 F.3d 405, 417 (9th Cir. 2018).

Here, Plaintiff cannot permissibly allege facts that Romo, Inc. accessed and copied the sculpture by alleging that Romo, Inc. reproduced the copyrighted photographs because the sculpture and photographs are separate works. Thus, Plaintiff's "reach-through" allegation is improper, since as discussed above, the works must be distinctly original and independently creative to be copyrightable. *See Pohl*, 770 F. App'x at 487 ("[E]lements of originality in a photograph may include 'posing the subjects, lighting, angle, selection of film and camera, evoking the desired expression, and almost any other variant involved.'") (quoting *Latimer*, 601 F.3d at 1234). And only by "copying of constituent elements of the work that are ***original***" can there be a claim for copyright infringement. *Feist*, 499 U.S. at 361 (emphasis added). In short, what is original to the sculpture as to make it copyrightable cannot be what makes the photographs original and copyrightable. Therefore, Plaintiff's claim that Defendants impermissibly copied the photographs' original and creative expression (by reproducing the photographs) cannot be transmuted into an allegation that Defendants copied the sculpture's original and creative expression. Since Plaintiff has failed to plausibly allege facts that Romo, Inc. copied ***the sculpture***, Plaintiff has not pleaded a legally cognizable claim for copyright infringement, let alone willful infringement, of the sculpture.

### 2. Romo, Inc. never accessed or had the opportunity to access the sculpture.

More fundamentally, Plaintiff has not plausibly alleged facts to support a claim for copyright infringement against Romo, Inc. because Plaintiff has not alleged facts tending to establish that Romo, Inc. ever saw the sculptural work, or that it ever had an opportunity to see the

sculptural work. Indeed, Plaintiff has provided nothing to establish that the sculptural work was widely disseminated and commercially well-known. *See Loomis v. Cornish*, 836 F.3d 991, 995 (9th Cir. 2016) (to demonstrate widespread dissemination, the plaintiff can rely on "the degree of a work's commercial success and on its distribution through . . . relevant mediums"); *Art Attacks Ink, LLC v. MGA Ent. Inc.*, 581 F.3d 1138, 1143-45 (9th Cir. 2009) (no access shown under wide dissemination theory); *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 482 (9th Cir. 2000) (upholding the jury's conclusion that there was not widespread dissemination of a song given that it "never topped the Billboard charts or even made the top 100 for a single week," "was not released on an album or compact disc until . . . after [defendants] wrote their song," the experts "testified that they never heard" the song, and defendants "produced copies of 'TV Guide' from 1966 [the year the protected song was released] suggesting that the television shows playing the song never aired in Connecticut [where defendants lived at the time]"). Plaintiff does not allege that the sculpture was displayed anywhere outside of its New York studios, nor that any individual or entity based in this District—let alone the State of Ohio—has ever heard of the sculpture's existence. The only conclusory allegation being made against the Romo, Inc. is that it (upon information and belief) viewed photographic works on an Instagram page. FAC, ¶100. This allegation is baseless. Plaintiff has not claimed that Romo, Inc. even has its own Instagram page, or that it followed and interacted in any way with Plaintiff's Instagram account. The mere allegation that Plaintiff posted online about the sculpture is insufficient, since Plaintiff must plead sufficient facts to demonstrate that access was "a reasonable possibility, not merely a bare possibility." *Art Attacks*, 581 F.3d at 1143, 1145 (insufficient that the work was on a website).

### B. Plaintiff Fails to Plausibly Allege Facts Supporting its Claim that Romo, Inc. Infringed the Photographs (VA 2-352-960 (Registered April 27, 2023) and VA 2-420-961 (Registered Nov. 4, 2024)).

Plaintiff's copyright infringement claims with respect to the photographs should also be

dismissed because Plaintiff does not allege that Romo, Inc. copied the allegedly "original" elements of its copyrighted photographs. Likewise, Plaintiff does not plausibly allege that Romo, Inc. had access to Plaintiff's photographs on its Instagram page. Ultimately, the Court should determine that Romo's products and advertising do not infringe the photographs, dismissing those claims with prejudice.

### 1. Plaintiff does not allege that Romo, Inc. copied the photographs.

To state a claim for copyright infringement of its photographs, Plaintiff must plausibly allege two things: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *ATC Distribution Grp., Inc. v. Whatever It Takes Transmissions & Parts, Inc.*, 402 F.3d 700, 705 (6th Cir. 2005) (quoting *Feist*, 499 U.S. at 361); *Malibu Textiles, Inc. v. Label Lane Int'l, Inc.*, 922 F.3d 946, 951 (9th Cir. 2019) (citations omitted). Moreover, Plaintiff must plausibly allege that Romo, Inc. had access to the allegedly infringed work, and that the two works are substantially similar in both idea and expression of that idea. *Pasillas v. McDonald's Corp.*, 927 F.2d 440, 442 (9th Cir. 1991) (citation omitted). Indeed, copyright protection extends only to those elements of a work original to the author, and thus, assessing substantial similarity requires close consideration of the aspects of the plaintiff's work that are protectable, and whether "the defendant's copying substantially appropriated those protected elements." *Harney v. Sony Pictures TV, Inc.*, 704 F.3d 173, 179 (1st Cir. 2013). This is so because a work that is sufficiently original to be copyrighted may nonetheless contain unoriginal elements. *Id.* at 178 (citing *Feist,* 499 U.S. at 348). Any determination regarding the protectable aspects of the work thus requires the Court to "dissect[] the copyrighted work and separate[] its original expressive elements from its unprotected [elements]." *Coquico, Inc. v. Rodriguez-Miranda*, 562 F.3d 62, 68 (1st Cir. 2009).

Moreover, absent evidence of direct copying, a plaintiff must establish substantial

similarity between the protected aspects of their copyrighted work vis-à-vis the defendant's work to succeed on a copyright infringement claim. *See, e.g., Pasillas*, 927 F.2d at 440. To analyze substantial similarity, courts conduct an extrinsic test and an intrinsic test; the extrinsic test is an objective comparison between the elements of each work and the intrinsic test is a subjective comparison between the impression that each work created. *See, e.g., Unicolors, Inc. v. H&M Hennes & Mauritz, L.P.*, 52 F.4th 1054, 1084 (9th Cir. 2022); *Malibu Textiles*, 922 F.3d at 952. "There is ample authority for holding that when the copyrighted work and the alleged infringement are both before the court, capable of examination and comparison, non-infringement can be determined on a motion to dismiss." *Christianson v. W. Pub. Co.*, 149 F.2d 202, 203 (9th Cir. 1945); *see also Advanta-STAR Automotive Research Corp of America v. Search Optics, LLC*, 672 F. Supp. 3d 1035, 1046 (S.D. Cal. 2023); *Campbell v. Walt Disney Co.*, 718 F. Supp. 2d 1108, 1111-12 (N.D. Cal. 2010).

Here, Plaintiff fails to identify any copyrightable aspect of the photographs that was allegedly copied by Romo, Inc. Plaintiff implies that the photographs contain some degree of creativity, from which one might infer a belief by Plaintiff in some protectable elements, namely, Plaintiff's "depict[ion] [of] different angles and lighting of the Artwork." (FAC, ¶4.) Plaintiff's pleading does not refer to any other alleged creative or expressive elements. However, an objective side-by-side comparison of Plaintiff's photographs and Romo, Inc.'s products demonstrates that none of Plaintiff's choices with respect to shading, lighting, or angling are present in any of the allegedly infringing products or advertising works:



(FAC, ¶4.)





(FAC, ¶31.)

Plaintiff asserts that the products are strikingly and substantially similar to the photographs. Yet Plaintiff does not specify what those striking photographic similarities are, other than to highlight the features of the underlying sculptural work. However, given that the photographs and allegedly infringing products are both before this Court, the Court may objectively compare the photographic elements to the allegedly infringing products and determine that the materials plainly do not infringe the photographs and dismiss these claims with prejudice. *See, e.g., Unicolors*, 52

F.4th at 1084; *Malibu Textiles*, 922 F.3d at 952; *Christianson*, 149 F.2d at 203. Still, even without the benefit of this objective side-by-side comparison, that Romo, Inc. did not copy any of Plaintiff's original or creative choices is apparent from Plaintiff's own allegations. Other than in paragraph 4, the words "lighting" and "angles" do not appear anywhere else in the First Amended Complaint. Plaintiff attempts to cure this fatal deficiency by focusing on the sculpture's qualities, rather than the photographs' allegedly original, expressive, and copyrightable elements. Tellingly, throughout the amended pleading, Plaintiff repeatedly interjects references to the sculpture whenever it asserts a photograph infringement claim. These deliberate pleading choices appear calculated to improperly "boost" the photograph infringement claims and to blur the lines between the photographs' and sculpture's original, expressive, and independently copyrightable elements. Given these deficiencies, Plaintiff has not alleged facts plausibly supporting a claim that Romo, Inc. copied the photographs, and the claim should be dismissed on that basis alone.

> **2.     Plaintiff does not plausibly allege that Romo, Inc. had access to Plaintiff's photographs.**

Plaintiff also fails to allege that Romo, Inc., including any employee of Romo, Inc., had access to Plaintiff's Instagram page. Plaintiff simply claims that Romo, Inc. is liable for directly reproducing the Photographs from Plaintiff's Instagram account (e.g., direct copyright infringement): "[u]pon information and belief, Romo, Inc. reproduced one or more of the Photographs found on Plaintiff's Instagram account, @wifenyc, to create a pattern or digitally rendered copy of the [sculpture] that was then used to create the Unauthorized Farrah Interiors Product." (FAC, ¶100.) But Plaintiff does not plead any factual allegations making this possible, not even alleging that Romo, Inc. has an Instagram account. Plaintiff certainly could have done this, as it alleges that Alice Temperley and Temperley London have distinct Instagram accounts but makes no attempt at naming the specific owner of the @romo_fabrics Instagram account.

14

(FAC, ¶108 ("ROMO's Instagram account, @romo_fabrics".)

Likewise, Plaintiff does not adequately allege that "access" to the photographs was a reasonable possibility. Just as it failed to do with respect to the sculptural work, Plaintiff has not pleaded any fact that would establish that the photographs were widely disseminated or commercially available, either in 2019, 2020, or 2022. *See Loomis*, 836 F.3d at 995; *Art Attacks*, 581 F.3d at 1143-45. Plaintiff does not share how many Instagram followers it had as of 2019, 2020, or 2022. It only shares that "[a]s of ***the date of this First Amended Complaint***, Plaintiff's Instagram account has 98,000 followers." (FAC, ¶66 (emphasis added).) Indeed, based on Plaintiff's screenshots, the Instagram posts at issue appear to have had a rough average of 1,500 "likes" or user interactions, and at most, 2,708 "likes" between September 30, 2019, and March 13, 2025, the date of the First Amended Complaint. (FAC, ¶4. (nearly four and a half years).) Plaintiff provides no explanation for such plain evidence of low user awareness—evidence that directly contradicts its "wide dissemination" claims.

Tellingly, Plaintiff does not provide any metrics that would indicate whether its photographs reached audiences far and wide, or that the photographs were ever republished by widely disseminated magazines, newspapers, or other online media. Plaintiff does not describe anyone of note or mass following who may have discussed, highlighted, or reposted the photographs. Plaintiff does not allege that any defendant ever followed or otherwise interacted with Plaintiff's Instagram page. Indeed, Plaintiff does not allege that any individual or social media account based in this District—let alone the State of Ohio—has ever interacted with its Instagram page or been aware of Plaintiff's existence. Plaintiff simply released the photographs into the global square—the internet—and deems that to be sufficient enough. As discussed above, the allegation that Plaintiff posted online about the photographs is insufficient. Plaintiff is required to

15

plead sufficient facts to demonstrate that access was "a reasonable possibility, not merely a bare possibility." *Art Attacks*, 581 F.3d at 1143 (insufficient that the work was on a website). Accordingly, Plaintiff's claims regarding the photographs, including its claims for willful infringement, should be dismissed.

### C. The Complaint Fails to Plausibly Allege Sufficient Facts Supporting a Claim for Vicarious or Contributory Infringement Against Romo, Inc.

To state a claim for contributory infringement, a plaintiff must allege facts that a defendant "with knowledge of the infringing activity, induces, causes, or materially contributes to the infringing conduct of another." *Bridgeport Music, Inc. v. Rhyme Syndicate Music*, 376 F.3d 615, 621 (6th Cir. 2004); *Bridgeport Music, Inc. v. WM Music Corp.*, 508 F.3d 394, 398 (6th Cir. 2007) (internal punctuation and citations omitted). That is, "a plaintiff must allege: (1) direct copyright infringement [by] a third-party; (2) knowledge by the defendant that the third-party was directly infringing; and (3) [defendant's] material contribution to the infringement." *Parker v. Google, Inc*., 242 F. App'x 833, 837 (3d Cir. 2007). And with respect to scienter requirement, contributory infringement requires that the secondary infringer ***know or have reason to know*** of the direct infringement. *Arista Recs., LLC v. Doe 3*, 604 F.3d 110, 118 (2d Cir. 2010); *A&M Records, Inc. v. Napster, Inc*., 239 F.3d 1004, 1020 (9th Cir. 2001). To state a claim for vicarious infringement, a plaintiff must allege facts that the defendant had the right and ability to supervise the infringing activity. *WM Music Corp.*, 508 F.3d at 400 (citation omitted).

Here, Plaintiff makes sweeping indirect infringement claims, asserting that each defendant supervised, controlled, or otherwise contributed to the allegedly infringing acts of every other defendant. (FAC, ¶66-69.) Plaintiff's sole allegation offered in support of these claims is premised on nothing more than defendants' ownership structure. (FAC, ¶¶52-55, 158-159) However, Plaintiff admits that Romo, Inc. is a "wholly owned subsidiary" of an entire lineage of foreign

16

companies. (FAC, ¶¶52-54.) Of these companies, only The Romo Group, Ltd. and Romo (Holdings) Ltd. are accused of any involvement in product design. (FAC, ¶¶54-55.) In fact, Plaintiff accuses Romo, Inc. only of manufacturing and selling products. (FAC, ¶52.) Nothing more. Yet, Plaintiff claims (without any basis) that "[a]ll Defendants had an active role in the design process of the Temperley London x ROMO 'A World Less Ordinary' Interiors collection." (FAC, ¶69.) Plaintiff directly contradicted this allegation by its earlier allegations against Romo, Inc. in Paragraph 52. In any event, Plaintiff's allegations fail to plausibly support a claim for contributory infringement against Romo, Inc. because Plaintiff does not allege facts suggesting that Romo, Inc. had knowledge of any allegedly infringing activity of any other defendant, much less having materially contributed to it. Plaintiff fails to state a claim for vicarious liability against Romo, Inc. because Plaintiff fails to allege that Romo, Inc. had the right and ability to supervise any other defendants' allegedly infringing activities. Rather, Plaintiff's allegation that Romo, Inc. is on the lowest rung of the Romo corporate structure supports precisely the opposite inference.

### D. Plaintiff Fails to Adequately Plead a DMCA Claim for Violation of 17 U.S.C. § 1202.

Plaintiff also fails to plausibly allege facts to support a claim that Romo, Inc. violated the DMCA, 17 U.S.C. § 1202. In addition to copyright infringement, Plaintiff is asserting claims for "Distribution of False Copyright Management Information in Violation of 17 U.S.C. § 1202." (FAC, ¶¶177-186.) As pleaded, Plaintiff's DMCA claims are equally as meritless as its copyright claims. The DMCA protects against the removal or alteration of copyright management information ("CMI"), which is defined in part as identifying information about the author of a work "conveyed in connection with" the copyrighted work. 17 U.S.C. § 1202(c). *Mango v. BuzzFeed, Inc.*, 356 F. Supp. 3d 368, 376 (S.D.N.Y. 2019), *aff'd*, 970 F.3d 167 (2d Cir. 2020). To establish a removal violation under the DMCA, a plaintiff must plead (1) the existence of CMI on

the infringed work, (2) removal or alteration of that information, and (3) the removal or alteration was done intentionally. *Craig v. UMG Recordings, Inc.*, 380 F. Supp. 3d 324, 337 (S.D.N.Y. 2019). Here, the screenshots of the photographs provided by Plaintiff demonstrate that Plaintiff did not include its identifying information when it allegedly posted the photographs. (FAC, ¶4.) As shown, there is no copyright notice or any reference to Sophia Parker Studios, Inc. in connection with the photographs. (FAC, ¶4.) Instead, Plaintiff alleges that the photographs were posted to an Instagram account called @WIFENYC, which Plaintiff now claims as its trade name. (FAC, ¶166.) However, Plaintiff has not alleged or provided any documentation showing that WIFENYC was its copyright ownership information and Sophia Parker Studios' trade name.[5]

### 1.   Plaintiff's CMI removal claims should be dismissed.

Despite Plaintiff's habit of referencing its sculptural and photographic works interchangeably, Plaintiff does not allege that any defendant removed Plaintiff's CMI from the sculptural work. Instead, Plaintiff alleges that "upon information and belief", Romo, Inc. "made identical copies of the Photographs posted on Plaintiff's Instagram sans Plaintiff's copyright management information to be used in an **'inspiration' board or something similar** so that the employees/agents of the Temperley London Defendants and employees/agents of the ROMO Defendants could view the Photographs and create the subsequent infringing fabrics and cushions from the copies of the Photographs." (FAC, ¶180 (emphasis added).) Plaintiff then claims that Romo, Inc. made digital copies of the photographs which were then used by every single defendant "to create digital and/or physical renderings of Plaintiff's [sculpture]." (FAC, ¶180.) Then, from

---

[5] For example, Plaintiff has not alleged that it obtained a Certificate of Assumed Name from the City of New York or that it had filed a certificate with the New York Department of State. "Without this certificate, a business must operate under its legal name, and use its legal name everywhere. The legal name is the name on documents used for incorporation." https://nyc-business.nyc.gov/nycbusiness/description/certificate-of-assumed-name-for-corporations-llcs-lps-and-notforprofits, *last accessed March 26, 2025.*

those renderings, Romo, Inc. created, photographed, and advertised embroidered products. (FAC, ¶180.)

Not one iota of factual detail is given to show that these allegations are anything other than an elaborate work of fiction. On a motion to dismiss, the Court must credit only Plaintiff's factual allegations, rather than allegations that do nothing more than demonstrate Plaintiff's vast imagination. For example, Plaintiff does not describe how it came to believe Romo, Inc. made copies of the photographs to be used as an "'inspiration' board or something similar", or what it did to investigate whether Romo, Inc. even creates "digital and/or physical renderings" to produce embroidered products. Even if Romo, Inc. did create "digital and/or physical renderings" of products, no basis is given for the allegation that Romo, Inc. makes "identical copies" of digital subject matter beforehand, rather than simply create the renderings at the outset of any process.

Frankly, Plaintiff's baseless insistence on asserting that there be an act of carbon-copy "reproduction" is illuminating. It appears Plaintiff is weaving this multi-step "reproduction" narrative to create a DMCA claim where no plausible claim exists. For example, Plaintiff identifies interiors products and advertisements that it did not create. Plaintiff then asserts that these materials infringe its copyrights and therefore constitute "unauthorized copies of Plaintiff's [sculpture] and Photographs." (FAC, ¶180.) However, Plaintiff also alleges without factual basis that Defendants' creation of these materials must have involved an initial step of making "identical copies of the Photographs posted on Plaintiff's Instagram[.]" (FAC, ¶180.) Then, tellingly, Plaintiff asserts that because the "identical copies" were made without Plaintiff's CMI, Defendants surely must have removed Plaintiff's CMI. This is a self-serving story—not an allegation with factual underpinnings. Ultimately, these circumstances are like those in *Faulkner Press, L.L.C. v. Class Notes, L.L.C.*, where the Court noted that "[a]n action for removal of copyright management

information *requires the information to be removed from a plaintiff's product or original work*" and found that, instead of the CMI having been "removed from the copyrighted works", the copyrighted "information from [the professor's] courses was allegedly *copied into a different form and then incorporated into the* [alleged infringer's] note packages" being sold to students. 756 F. Supp. 2d 1352, 1359 (N.D. Fla. 2010) ("No copyright management information was removed from Dr. Moulton's product or original work."). Even if one assumed that Romo, Inc.'s interiors products infringed Plaintiff's copyrights, Plaintiff would still lack a viable DMCA claim, as the sculptures and photographs would have been copied and incorporated into entirely different mediums and products. *See id.* The Court should dismiss Plaintiff's CMI removal claims for failure to state a claim.

### 2.    Plaintiff's distribution of false CMI claims should be dismissed.

Plaintiff does not allege that Romo, Inc. ever distributed the sculpture (Reg. No. VA 2-342-734) or Plaintiff's Photographs of the sculpture (Reg. Nos. VA 2-352-960 and Reg. No. VA 2-420-961). It certainly does not allege that Romo, Inc. ever distributed the works knowing both that the CMI was altered or incorrect and that distribution would induce infringement. *See Mango*, 356 F. Supp. 3d at 377 ("[T]he elements of the Distribution Prohibition are: (1) the existence of CMI on *the infringed work*; (2) distribution of *the infringed work* containing missing and/or altered CMI; (3) that the distribution was done *knowing* that the CMI was removed and/or altered without permission; and (4) that the distribution was done *knowing* that it would induce, enable, facilitate, or conceal an infringement") (emphasis added). Rather, the products that were allegedly distributed are Romo, Inc.'s products and materials, not Plaintiff's sculpture and photographs. Ultimately, Plaintiff does not—because it cannot—plead that it ever had its CMI attached to Romo, Inc.'s swatch books, PDFs, and products. Plaintiff did not create or assemble the swatch books, author the PDFs, embroider the products, snap photographs of the interiors, or develop Romo,

Inc.'s advertising campaigns. Nor did Romo, Inc. ever remove Plaintiff's non-existent CMI from Romo, Inc.'s materials. There is therefore no cognizable false distribution claim to be made pursuant to 17 U.S.C. § 1202.

Regardless, even if Plaintiff raised a claim that Romo, Inc. featured Plaintiff's sculpture and photographs, Plaintiff's allegation pursuant to § 1202(a) is still unavailing. Plaintiff improperly groups the Romo entities together, alleging a violation of § 1202(a) by stating that on "ROMO's website . . . [t]he PDFs for the Farrah Agave and Farrah Lilac Ash fabrics and the Farrah Agave and Farrah Lilac Ash cushions include the following copyright management statement: © Copyright The Romo Group 2024. All Rights Reserved" (FAC, ¶109) and alleges that this "statement is a 'blatant misrepresentation in violation of 17 U.S.C. § 1202(a) as Plaintiff is the copyright holder to the [sculpture] featured on the Unauthorized Farrah Interiors Products, not the ROMO Defendants." (FAC, ¶110.) Nothing more. Of course, The Romo Group copyright management statement is not false at all. *See Faulkner*, 756 F. Supp. 2d at 1359 ("Class Notes did not add false copyright management information in violation of the DMCA by printing 'Einstein's Notes (C)' on its note packages. The note packages that Class Notes produced ***were a different product*** from Dr. Moulton's work even if, as Faulkner Press alleges, they included materials from Dr. Moulton's work.") (emphasis added).

Compounding these deficiencies is the fact that Plaintiff also fails to allege that Romo, Inc. acted with the necessary intent. In evaluating the statute's scienter requirements, the court in *Harrington* dismissed the plaintiff's claim for not pleading sufficient facts to infer that the defendant "knew or had a reasonable basis to know that the removal or alteration of [copyright management information] or the distribution of [w]orks with [copyright management information] removed ***will*** aid infringement." *Harrington v. Pinterest, Inc.*, No. 5:20-cv-05290-EJD, 2022 WL

4348460, at *14-15 (N.D. Cal. Sept. 19, 2022) (emphasis added); *see also Stevens v. Corelogic, Inc.*, 899 F.3d 666, 674 (9th Cir. 2018) (requiring a plaintiff to demonstrate a "past pattern of conduct or modus operandi" to establish the requisite mental state in the context of the DMCA, a statute "requiring knowledge that a future action 'will' occur"). Instead of providing any factual allegation that, when accepted as true, would tend to demonstrate a past pattern or *modus operandi*, Plaintiff simply states the words "modus operandi" in a conclusory paragraph in which it circularly claims that because Romo, Inc. distributes materials without Plaintiff's CMI, it must be Romo, Inc.'s pattern to do so. (FAC, ¶183.) For the foregoing reasons, Plaintiff's DMCA claims should be dismissed entirely.

**E.      Plaintiff May Not Seek Statutory Damages or Attorney's Fees for the Alleged Copyright Infringement.**

The law is clear and 17 U.S.C. § 412 is unambiguous: A copyright holder cannot be awarded statutory damages or attorney's fees if the infringing activity started after the date of first publication but before the effective date of registration of the work, ***unless the copyright for the infringed work was registered within three months after the work was first published***. 17 U.S.C. § 412. The Sixth Circuit has already conclusively addressed this issue:

> Section 412(1), however, limits the scope of [sections 504 and 505] by providing that 'no award of statutory damages or of attorney's fees . . . shall be made . . . [if] infringement of copyright in an unpublished work commenced before the effective date of its registration.' 17 U.S.C. § 412(1). Thus, Johnson cannot recover statutory damages or attorney's fees under the Copyright Act if Tosch's infringement 'commenced' before the copyright was registered. . . [T]he simplicity of § 412 confers upon all parties involved the clarity and low administrative costs of ***a brightline rule***. These purposes [of the statute] would be thwarted by holding that infringement is 'commenced' for the purposes of § 412 each time an infringer commits another in an ongoing series of infringing acts. Under § 412, statutory damages and attorney's fees are reserved for infringers who had constructive notice that the work was covered by a valid copyright. ***Had Tosch checked the federal register when he first began his infringing activity, he would have discovered that Johnson's copyright was not registered.*** If the incentive structure of § 412 is to be properly applied, then Johnson should not receive the reward of statutory damages, because he did not satisfy the requirement of prompt registration. ***Every court to***

> **consider this question has come to the same conclusion; namely, that infringement 'commences' for the purposes of § 412 when the first act in a series of acts constituting continuing infringement occurs.**

*Johnson v. Jones*, 149 F.3d 494, 504–06 (6th Cir. 1998)[6]. In fact, Plaintiff's counsel publicly advertises this information to prospective clients on her own website.[7] Yet, Plaintiff still re-raised its demand for statutory damages in the First Amended Complaint, incorrectly representing that it is entitled to such relief under the law.[8]

Here, Plaintiff alleges that the infringement began "in or around February or March 2022", an entire year before it registered the sculpture. (FAC, ¶8.) Coincidentally, Plaintiff did not register the sculptural work until it "discovered" the "Farrah Kimono" in February 2023. (FAC, ¶¶7-8.) The allegedly common infringing activity therefore occurred well before the earliest of the three registration dates. Thus, Plaintiff could recover statutory damages and attorney's fees only if the registrations were made within three months after the works were first published. Yet, although the registrations show the works as published in 2019 and 2020, Plaintiff did not register the works

---

[6] Other Circuits are in accord. *See, e.g., Derek Andrew, Inc. v. Poof Apparel Corp.*, 528 F.3d 696, 699-702 (9th Cir. 2008) (A copyright holder cannot recover statutory damages and attorney's fees when it does not register the copyright before commencement of the infringement); *Bouchat v. Bon–Ton Dept. Stores, Inc.*, 506 F.3d 315, at 330 (4th Cir. 2007); *Troll Co. v. Uneeda Doll Co.*, 483 F.3d 150, 158 (2d Cir. 2007); *Mason v. Montgomery Data, Inc.*, 967 F.2d 135, 144 (5th Cir. 1992).

[7] "Moreover, in instances where a copyright holder took the initiative to register their work within three (3) months after first publishing it or prior to the infringement at issue taking place, the law provides that the copyright holder can pursue the recovery of attorneys' fees and statutory damages in a copyright infringement lawsuit. Because there are certain instances where the pursuit of statutory damages is more advantageous than the pursuit of actual damages, it is ideal for a work or art to be timely registered." https://www.abrunolaw.com/copyright-regstrations.

[8] Although this issue was raised in Romo, Inc.'s initial Motion to Dismiss (ECF No. 20), Plaintiff did not provide any legal explanation or statutory basis for re-raising the demand for statutory damages and attorneys fees in its First Amended Complaint. Worse, Plaintiff still has not described what, if any, pre-suit diligence was done to determine that its demands for statutory damages and attorney's fees was appropriate.

until February 2023 (sculpture), April 2023 (Photographs) and November 2024 (Photographs).[9] Accordingly, Plaintiff is precluded from recovering attorney's fees or statutory damages pursuant to 17 U.S.C. 504(c), and those claims should therefore be dismissed. 17 U.S.C. § 412.

### F. Plaintiff's First Amended Complaint rests entirely on "information and belief" pleading.

Though information and belief pleading can render a claim plausible under certain circumstances, that is not so here, as Plaintiff must still plead supporting facts that render its claim plausible beyond a personal belief that it is true. *See, e.g., Germain v. Teva Pharms., USA, Inc.*, 756 F.3d 917, 931 (6th Cir. 2014) ("[t]he mere fact that someone believes something to be true does not create a plausible inference that it is true."). Moreover, "[a] litigant cannot merely plop 'upon information and belief' in front of a conclusory allegation and thereby render it non-conclusory." *Citizens United v. Schneiderman*, 882 F.3d 374, 384–85 (2d Cir. 2018) ("Those magic words will only make otherwise unsupported claims plausible when the facts are peculiarly within the possession and control of the defendant or where the belief is based on factual information ***that makes the inference of culpability plausible***.") (emphasis added and citation omitted). Likewise, "merely pleading on information and belief, without more, is insufficient to survive a motion to dismiss for failure to state a claim." *Kampschroer v. Anoka Cty.*, 57 F. Supp. 3d 1124, 1143-44 (D. Minn. 2014) (finding that the allegation, absent factual support that the defendants actually viewed the plaintiffs' medical and social security information, was insufficient to survive a motion to dismiss "[i]n the post-*Twombly* and *Iqbal* era"); *see also Ritani, LLC v. Aghjayan*, 880 F. Supp. 2d 425, 440–43 (S.D.N.Y., 2012) (finding the plaintiff "summarily assumes or makes the legal conclusion that a copyright violation has been established" yet failed

---

[9] The dates of first publication are: September 30, 2019 (Sculpture, ECF No. 22-1, 2); September 30 to November 17, 2019 (Photographs, ECF No. 22-2, 2); and April 11, 2020 (Photographs, ECF No. 22-2, 7)

to plead (1) any specific actions or facts to support the claim that "any defendant used protected aspects of those copyrighted collections in creating that portfolio", (2) how the works were "substantially similar", (3) "how or when Amazing Settings violated any of the listed copyrights", and (4) whether any of the "listed registered copyrights were violated"). Here, Plaintiff relies on "information and belief" pleading no fewer than 69 times, and almost always for the core infringement allegations against Romo, Inc. (FAC, ¶¶32, 69, 100, 135, 159.) This is not a complaint against Romo, Inc., but rather a statement of personal belief that should be dismissed.

## IV.    CONCLUSION

Plaintiff's First Amended Complaint fails to plausibly allege facts supporting claims for copyright infringement, including willful, contributory, and vicarious infringement, against Romo, Inc. Likewise, Plaintiff fails to advance plausible claims for the removal of CMI and the distribution of false CMI under the DMCA. Finally, Plaintiff is barred from seeking statutory damages under 17 U.S.C. § 504(c)(1), as well as attorney's fees, because the copyrighted works were not registered until after the alleged infringement began and long after the works were first published. For the foregoing reasons, Plaintiff's complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.

Dated: March 27, 2025

Respectfully submitted,

By: */s/ Meredith K. Collier*

Meredith K. Collier (097108)
Todd R. Tucker (0065617)
**CALFEE, HALTER & GRISWOLD LLP**
1405 East Sixth Street
Cleveland, OH 44114
Telephone: 216.622.8200
Facsimile: 216.241.0816
mcollier@calfee.com
ttucker@calfee.com

Jeffer Ali (*pro hac vice*)
**HUSCH BLACKWELL LLP**
80 South Eighth Street, Suite 4800
Minneapolis, Minnesota 55402
Telephone: 612.852.2700
Facsimile: 612.852.2701
jeffer.ali@huschblackwell.com

Sharif Ahmed (*pro hac vice*)
**HUSCH BLACKWELL LLP**
2415 East Camelback Road, Suite 500
Phoenix, AZ 85016
Telephone: 480.824.7890
Facsimile: 480-824-7905
sharif.ahmed@huschblackwell.com

*Attorneys for Defendant Romo, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing *Defendant Romo, Inc.'s Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6)* and accompanying *Memorandum in Support* were electronically filed on March 27, 2025 with the United States District Court for the Northern District of Ohio through the Court's CM/ECF system. Notice of the filing will be sent by email to all counsel by operation of the Court's electronic filing system and all parties may access this filing through that system.

/s/ Meredith K. Collier
One of the Attorneys for Defendant Romo, Inc.

## LOCAL RULE 7.1(f) CERTIFICATION

Pursuant to Local Civil Rule 7.1(f), I hereby certify that this case has not been assigned to any track and that the page limitation for this memorandum is fewer than twenty-five (25) pages, pursuant to the Court's non-document Order dated March 19, 2025. I hereby further certify that the foregoing Memorandum adheres to this limitation.

*/s/ Meredith K. Collier*
One of the Attorneys for Defendant Romo, Inc.

28