# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| SOPHIA PARKER STUDIOS, INC. (t/a WIFE NYC),<br><br>                    Plaintiff,<br><br>v.<br><br>ALICE TEMPERLEY MBE, TMLL LTD. (t/a TEMPERLEY LONDON), TEMPERLEY HOLDINGS LTD. (t/a TEMPERLEY HOLDINGS), ROMO LTD. (t/a ROMO and/or THE ROMO GROUP), ROMO (HOLDINGS) LTD., ROMO, INC. (t/a ROMO FABRICS AND WALLCOVERINGS and ROMO USA), THE ROMO GROUP LTD., AND DOES 1-20, inclusive,<br><br>                    Defendants. | **Case No. 1:24-cv-02086-PAB**<br><br>Judge Pamela A. Barker<br><br>Magistrate Judge Reuben J. Shepherd<br><br>**PLAINTIFF SOPHIA PARKER STUDIOS, INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR RECONSIDERATION OF THE COURT'S MAY 9, 2025 ORDER GRANTING DEFENDANTS' "MOTION FOR SETTING OF DEADLINE FOR RESPONSE TO FIRST AMENDED COMPLAINT OR, ALTERNATIVELY, FOR EXTENSION OF TIME TO RESPOND" AND REPLY TO DEFENDANTS' "OPPOSITION TO PLAINTIFF SOPHIA PARKER STUDIOS, INC.'S REQUESTS FOR CLERK'S ENTRY OF DEFAULT"** |

      Plaintiff Sophia Parker Studios, Inc. (t/a WIFE NYC) ("**Plaintiff**") respectfully files the within Memorandum and requests that the Court reconsiders its May 9, 2025 Non-Document Order granting the U.K.-based Defendants' "Motion for Setting of Deadline for Response to First Amended Complaint Or, Alternatively, for Extension of Time to Respond" and providing them until May 27, 2025 to file a response to the First Amended Complaint. Plaintiff requests that this Court directs the Clerk to enter Default against the

1

U.K.-based Defendants, Defendants Alice Temperley MBE ("**Temperley**"), TMLL Ltd. ("**TMLL**"), Temperley Holdings Ltd. ("**Temperley Holdings**"), Romo Ltd. ("**Romo Ltd.**"), Romo (Holdings) Ltd. ("**Romo Holdings**"), and The Romo Group Ltd. ("**Romo Group**") for their failure to file an answer or otherwise defend within 21 days of being served with Plaintiff's First Amended Complaint in compliance with Fed. R. Civ. P. 12(a)(1)(A) and 55(a).

Fed. R. Civ. P. 12(a)(1)(A) states: "A defendant must serve an answer; (i) within 21 days *after being served with the summons and complaint*" unless defendant has timely waived service under Rule 4(d).

Fed. R. Civ. P. 55(a) states: "When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk **must** enter the party's default." (emphasis added).

As evidenced by the Proof of Service forms and declarations of Plaintiff's counsel, Alyssa M. Bruno, Esq. ("**Attorney Bruno**"), filed with the Court, service has been properly effectuated upon all of the U.K.-based Defendants pursuant to the Hague Convention on Service Abroad of Judicial and Extrajudicial Documents in Civil and Commercial Matters ("**Hague Convention**"). (See Return of Service Forms, *Docs.* #32, 33, 34, 35, 43) (See Bruno Declarations as Attachment #1 at *Docs.* #36, 37, 38, 39, 40, 44). The completed Hague Certificate Attestation ("**Hague Certificate**") issued for all of these Defendants and returned to Plaintiff after service had been effectuated "establishes *prima facie* evidence" of proper service in compliance with the Hague Convention. See Northrup King Co. v. Compania Productora Semillas Algodoneras Selectas, S.A., 51 F.3d 1383, 1389 (8th Cir. 1995) ("The Spanish Central Authority's return of a completed certificate of service is *prima*

2

*facie* evidence that the Authority's service on [defendant] was made in compliance with the [Hague] Convention."); see also Unite Nat. Retirement Fund v. Ariela, Inc., 643 F. Supp. 2d 328, 334 (S.D.N.Y. 2008); Myrtle v. Graham, 2011 WL 446397 (E.D. La. 2011) (return of certificate of service by state's central authority is *prima facie* evidence of proper service in compliance with Hague Convention that can be rebutted only when defendant does not have actual notice and would be prejudiced from improper service) (See Return of Service Forms, *Docs.* #32, 33, 34, 35, 43).  Importantly, in their "Opposition to Plaintiff's Requests for Clerk's Entry of Default," the U.K.-based Defendants acknowledge that service has been properly effectuated upon them and that they do not intend to challenge the sufficiency of service on them.  (See *Doc.* #46, at 2 n. 2).  Moreover, as further set forth below, although the U.K.-based Defendants claim that they had "no reason to know, prior to May 4, 2025, that service was properly effectuated within the United Kingdom" and that they "had no reason to know that service had been authorized by the U.K. Central Authority until May 4, 2025," these assertions are demonstrably false.  (See *Doc.* #46, at 1-2; *Doc.* #47, at 1-2).

The U.K.-based Defendants claim that although they were properly served in the United Kingdom in early April 2025, this Court should provide them with additional time to answer the First Amended Complaint because they "believe it is fair that the date triggering their obligation to respond to the first Amended Complaint be the date on which the returns of service were filed, namely, May 4, 2025." (*Doc.* #47, at 2).  Defendants do not provide any case law or rule in support of this assertion, likely because none exists.  In support of their plea for additional time to respond, the U.K.-based Defendants argue that because they were not provided with the Hague Certificates at the time they were personally served the summons and First Amended Complaint or before Plaintiff filed the Hague Certificates as

3

Proof of Service with the Court, they "had no reason to know" that service had been effectuated until May 4, 2025. (*Doc.* #47, at 1-2; see also *Doc.* #46, at 1-2). This argument is disingenuous at best as 1) counsel for Plaintiff did in fact provide counsel for the U.K.-Defendants with actual notice that their clients had been served pursuant to the Hague Convention via a response email to Attorney Jeffer Ali ("**Attorney Ali**") and Attorney Sharif Ahmed ("**Attorney Ahmed**") sent on April 17, 2025; 2) the Hague Certificate is a document that is issued by the U.K. Central Authority and provided to the applicant who initiated service *after* service has been effectuated upon the foreign-based defendants; it is not something that is provided to the party being served at the time of service, and it is not something that is required to make service upon foreign defendants proper under the Hague Convention; and 3) the 21-day clock for serving an answer or response to a complaint starts when a foreign defendant receives the complaint, not when proof of service is filed. See Hague Convention, Art. 6; see also Fed. R. Civ. P. 4(l)(2)(A); Fox v. Regie Nationale des Usines Renault, 103 F.R.D. 453, 455 (W.D. Tenn. 1984) (holding the return of a properly executed Hague Certificate is not essential to proper service pursuant to the Hague Convention and Rule 4 of the Federal Rules of Civil Procedure); see also Burda Media, Inc. v. Viertel, 417 F.3d 292, 301-2 (2d Cir. 2005) (same); WhatsApp Inc. v. NSO Group Tech. Limited, 2020 WL 7133769, at *2 n. 2 (N.D. Cal. March 25, 2020) (holding that March 12th, the date that defendants received the pleadings and summons, and not March 16th, the date when the Israeli Central Authority issued a formal certificate of service, constituted the date service was effectuated on defendants pursuant to Fed. R. Civ. P. 4(h)(2) and 4(f)(1) and that the certificate of service was merely the means by which plaintiffs proved service pursuant to Fed. R. Civ. P. 4(l)(2)(A)).

According to the issued Hague Certificate and accompanying Witness Statements, personal service pursuant to Article 5 of the Hague Convention was effectuated upon Alice Temperley MBE on April 7, 2025, Temperley Holdings and TMLL on April 8, 2025, and Romo Ltd., Romo Holdings, and Romo Group on April 4, 2025. (See Return of Service Forms, *Docs.* #31, 32, 33, 34, 35, 43). Thus, as it is established law that service upon a foreign defendant is effectuated when the summons and complaint is served upon a defendant, not when the Hague Certificate is issued, an answer or response to the First Amended Complaint was due by April 28, 2025 for Alice Temperley, by April 29, 2025 for Temperley Holdings and TMLL, and by April 25, 2025 for Romo Ltd., Romo Holdings, and Romo Group. See Fed. R. Civ. P. 12(a)(1)(A); see also WhatsApp Inc., 2020 WL 7133769, at *2 n. 2. Because none of the U.K.-based Defendants filed an answer or response to the First Amended Complaint by the due date, they thus failed to "plead or otherwise defend" within the 21-day period allotted to them by Fed. R. Civ. P. 12(a)(1)(A). See Fed. R. Civ. P. 55(a). Accordingly, when Plaintiff moved to request that default be entered by the Clerk against the U.K.-based Defendants for their failure to plead or otherwise defend after they had been properly served, the Clerk was **required** to enter a default against all of the U.K.-based Defendants pursuant to Fed. R. Civ. P. 55(a).

Plaintiff hereby respectfully requests that this Court reverses its decision to grant the U.K.-based Defendants with additional time to answer Plaintiff's First Amended Complaint as 1) service was properly effectuated upon all of the U.K.-based Defendants in early April 2025; 2) the U.K.-based Defendants had actual notice of the litigation and do not dispute that they physically received the summons and First Amended Complaint in early April 2025 and that service was proper (See *Doc.* #46, at 2 n. 2); 3) Plaintiff's counsel confirmed

via email to counsel for the U.K.-based Defendants on April 17, 2025 that service had been effectuated upon their clients at the direction of the U.K. Central Authority; and 4) the U.K. Defendants have failed to show "good cause" as to why they failed to file an answer or respond to the First Amended Complaint within the 21-day period for responses to complaints mandated by Fed. R. Civ. P. 12(a)(1)(A); thus, the Federal Rules of Civil Procedure require that default be entered against all of the U.K.-based Defendants.

Pursuant to Rule 4 of the Federal Rules of Civil Procedure and the Hague Convention, when a plaintiff moves to serve a defendant based in a foreign country that is a signatory of the Hague Convention, such as the U.K., an applicant must first send a request for service to the Central Authority designated by the government of the receiving country. See Hague Convention, Art. 2-5; see also Unite Nat., 643 F. Supp. 2d at 333; Myrtle, 2011 WL 446397 at *1; Northrup King, 51 F.3d at 1389; Fed. R. Civ. P. 4 – "Notes and Annotations to the Convention." In this case, this was done as the USM-94: United States Marshal Service (Request for Service Abroad of Judicial or Extrajudicial Documents) Forms, including the blank "Certificate Attestation" of service form, "Warning" page stating to the ultimate recipient that the enclosed document is of legal nature, and "Summary of the Document to be Served" page, all in duplicates and filled out by Plaintiff's counsel, as well as two (2) copies of the summons and Amended Complaint and the other documents to be served, were sent to the U.K. Central Authority by the U.K. National Process Servers (process serving company hired by Plaintiff) at the direction of Plaintiff. Then, after the U.K. Central Authority reviews the USM-94 forms and documents to be served, it authorizes service upon the individual defendants to take place. This was done in this case. Thereafter, if proceeding under the personal service option of Article 5 of the Hague

Convention, the process server at the direction of the U.K. Central Authority personally serves the defendants with the summons, complaint, and other documents to be served. Again, this was done in this case. (See Return of Service Forms, *Docs.* #31, 32, 33, 34, 35, 43). Once the papers are served upon the defendants, service has been properly effectuated, and the 21-day clock for a response to the issued complaint starts. See WhatsApp Inc., 2020 WL 7133769, at *2 n. 2. Then, as a final step, the Central Authority must complete the Hague Certificate, which details how, where, and when service was made, or explains why service did not occur, and return it to the applicant so that it can be filed as proof of service with the court. See Hague Convention, Art. 5-6; see also Unite Nat., 643 F. Supp. at 333; see also Burda, 417 F.3d at 300; Myrtle, 2011 WL 446397 at *1; Northrup King, 51 F.3d at 1389; Fed. R. Civ. P. 4 – "Notes and Annotations to the Convention." Again, all of these steps took place here, and a completed Hague Certificate, establishing *prima facie* evidence of proper service, was issued for all of the U.K.-based Defendants and returned to Plaintiff along with detailed, sworn witness statements of the process servers. See Unite Nat., 643 F. Supp. at 334; see also Myrtle, 2011 WL 446397 at *2; Northrup King, 51 F.3d at 1389; Fed. R. Civ. P. 4(l)(2)(A). Once Plaintiff received the Hague Certificates and Witness Statements from the process servers, it filed them with the Court.

Contrary to Defendants' assertions, it is not necessary for a plaintiff to provide proof of service forms or the Hague Certificates provided by the Central Authority to a defendant to start the 21-day clock set forth in Rule 12. See Fed. R. Civ. P. 12(a)(1)(A); see also WhatsApp Inc., 2020 WL 7133769, at *2 n. 2. Rather, the law is clear that the clock for calculating when a response to a complaint is due starts on the day that the defendant was served with the summons and complaint. See ids. Since none of the U.K. Defendants

appeared in the action, filed a response to the First Amended Complaint, or otherwise defended by these set deadlines mandated by Rule 12 of the Federal Rules of Civil Procedure, all of the U.K. Defendants are in default. See ids. Accordingly, this Court should reverse its May 9, 2025 Non-Document Order and direct the Clerk to enter default for all of the U.K.-based Defendants in compliance with Fed. R. Civ. P. 55(a) and as requested by Plaintiff through its Requests for Clerk's Entry of Default. (See *Docs.* #36, 37, 38, 39, 40, 44). It is clear that this is a case where all of the defendants had proper notice of the action. To start, all of the U.K.-based Defendants here were personally served with the documents by a process server in that they were physically handed the summons, First Amended Complaint, and other documents in person. On April 7, 2025, Alice Temperley answered the doorbell at her property, confirmed her identity, and then drove up to the house to meet with the process server who then personally handed the documents to her. (See *Doc.* #31). For all of the other U.K.-based Defendants, they were served by the process server at their registered office address in early April 2025 when the process server physically handed the documents to an authorized company representative there. (See *Docs.* #32, 33, 34, 35, 43). Thus, all of the U.K.-based Defendants had actual notice of the lawsuit (which they have known about for months) and the documents being served. Notably, on the first page of the summons, its states:

> A lawsuit has been filed against you.
>
> **Within 21 days after service of this summons on you** (not counting the day you received it) – or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P 12(a)(2) or (3) – you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

> …
>
> If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You must also file you answer or motion with the court.

(See *Docs.* #31, 32, 33, 34, 35, 43). The onus is on Defendants to comply with this deadline.

Additionally, counsel for all of the U.K.-based Defendants was aware by at least April 17, 2025 that the U.K.-based Defendants had been served in the U.K. pursuant to the Hague Convention and authorized by the U.K. Central Authority. Indeed, on April 16, 2025, counsel for the U.K.-based Defendants, Attorney Ahmed, sent Attorney Bruno an email with Attorney Ali copied on the email, which states:

> "Our docket indicates that the deadline for you to effectuate service on the foreign defendants is May 4. Please let us know if you plan to effectuate service by the deadline."

See **Exhibit A**, attached hereto.

In response, on the following day, April 17, 2025, Attorney Bruno emailed Attorney Ahmed and Attorney Ali and stated:

> "Service has been effectuated upon all of the named defendants. We are awaiting certificate of service forms from the Central Authority."

See **Exhibit B**, attached hereto.

Default is proper in this case and should have been entered by the Clerk. Moreover, even if this case is analyzed under the standard for setting aside an entry of default under Fed. R. Civ. P. 55(c), there are no grounds to set aside an entry of default as the U.K.-based Defendants were culpable in failing to file their answers or responses within the 21-day time

period. Pursuant to Fed. R. Civ. P. 55(c), an entry of default may only be set aside for "good cause" where a defendant was not culpable in failing to file an answer within the set time period established by Rule 12. See Shepard Claims Service, Inc. v. William Darrah & Assoc., 796 F.2d 190, 194-95 (6th Cir. 1986) (holding that for a defendant to be deemed culpable for the default, he "must display either an intent to thwart judicial proceedings or a reckless disregard for the effect of its conduct on judicial proceedings" while noting that while courts have been inclined towards leniency, "clearly, however, the court may refuse to set aside a default, where the defaulting party has no meritorious defense, where the default is due to willfulness or bad faith, or where the defendant offers no excuse at all for the default."); see also Weiss v. St. Paul Fire and Marine Ins. Co., 283 F.3d 790, 794 (6th Cir. 2022). Here, the U.K.-Defendants have not offered a credible explanation for their failure to file an answer or response to the First Amended Complaint within the 21-day period set forth in Rule 12 but have merely averred that although they received service of the summons and First Amended Complaint in early April 2025, they did not know that service was property effectuated until the Hague Certificates were filed with the Court. As there is no legal justification that supports this assertion or their lack of action to meet the deadline, the U.K.-based Defendants have exhibited a reckless disregard for the judicial proceedings, and their conduct is culpable. See Shepard Claims, 796 F.2d at 95 (holding that a defendant's explanation for the delay must be *credible* in order for a default to be properly set aside); see also In re Bishop, 2008 WL 2448072 at *1-2 (W.D. Ken. 2008) (holding that plaintiff followed all of the rules of proper service, and defendant failed to establish sufficient reasons for setting aside the default judgment because defendant's error in failing to respond to the complaint within 21 days of service due to misplacing the process after service was

10

effectuated upon its registered agent and service of process was forwarded to it constituted negligence and thus, "a reckless disregard for the effect of its conduct on the proceedings;" therefore, defendant failed to meet its initial burden of establishing excusable neglect); In re Bradbury, 310 B.R. 313, 318-320 (N.D. Ohio April 21, 2003) (holding that even where it claimed it did not receive the service of process served upon its registered agent, defendant's conduct in not answering the complaint within the 21-day period constituted a "reckless disregard for the judicial process" (i.e. culpable conduct) where defendant had numerous notices concerning plaintiff's lawsuit over a significant period of time, and a representative of defendant was in direct contact with plaintiff concerning the default judgment); *Compare* Simmons v. Ohio Civil Service Emp. Assoc., 259 F. Supp. 2d 677, 685-6 (S.D. Ohio 2003) (holding that defendant's actions do not demonstrate culpability for its failure to respond to plaintiff's amended complaint where the record contained "ample evidence supporting [the court's] conclusion that [d]efendant did not receive each pleading that [p]laintiff filed" with the court). Although it is true that the courts have a preference for deciding matters on the merits, courts have also ruled in instances such as the present case where a defendant's conduct is culpable that a default should not be set aside as there is an "important policy in favor of preserving the finality of judgments, even if they are rendered by default" and that "…there has to come a point where procedure prevails, otherwise rules of procedure would not actually be rules, but instead would merely become guidelines or suggestions." In re Bishop, 2008 WL 2448072 at *1-2; see also In re Bradbury, 310 B.R. at 320. Finally, in instances where a court has set aside a default merely on the basis of wanting to hear the case on its merits, it has been deemed a reversible error. See African Methodist Episcopal Church, Inc. v. Ward, 185 F.3d 1201, 1202-3 (11th Cir. 1999) (providing that the party

11

seeking relief bears the burden of establishing basis to set aside the entry of default and holding that the district court abused its discretion in providing no reason for granting the motion to set aside the default and the default judgment other than that the case ought to be decided on its merits). Because the U.K.-based Defendants were culpable and have failed to assert any good cause that would excuse their failure to abide by the 21-day deadline set forth in Rule 12, Plaintiff respectfully requests that this Court reverses its May 9, 2025 Order granting Defendants with additional time to answer the First Amended Complaint and directs the Clerk to enter default against all of the U.K.-based Defendants pursuant to Fed. R. Civ. P. 55(a). See ids.

As an additional note, it is noteworthy to mention that Plaintiff previously requested that the U.K.-based Defendants waive service of process pursuant to Fed. R. Civ. P. 4(d), which would have afforded them with ninety (90) days after the request to waive service was sent to them to file an answer to the complaint, but they refused. See Fed. R. Civ. P. 4(d)(3); see also Fed. R. Civ. P. 12(a)(1)(A)(ii). Thereafter, Plaintiff then requested that counsel for the U.K.-based Defendants accept service on their clients' behalves, and this too was refused. Then, Plaintiff filed a Motion for Alternative Service with this Court asking the Court to grant alternative service upon Defendants' counsel at his office or via email so that preliminary injunction proceedings could move forward in a timely manner. (See *Doc.* #12). This Court denied that motion. (See *Doc.* #16). Subsequently, Plaintiff, an independent artist whose copyrighted works were stolen by Defendants, all of whom are much larger entities with exponentially greater financial resources than Plaintiff, gathered the necessary resources to effectuate service pursuant to the Hague Convention. Then, those same U.K.-based Defendants who demanded that service be effectuated upon them through

international channels ignored the 21-day time period to file an answer or response to Plaintiff's First Amended Complaint pursuant to Rule 12 and then boldly represented to the Court that they "had no reason to know, prior to May 4, 2025, that service was properly effectuated within the United Kingdom" even where Plaintiff's counsel had explicitly told Defendants' counsel via email that service had been effectuated prior to that time and where the U.K.-based Defendants had all received personal service of the documents in early April 2025. (See Exhibit B; see also *Doc.* #46, at 1-2; *Doc.* #47, at 1-2). Plaintiff contends that it has been Defendants' modus operandi to delay proceedings in this case and to force Plaintiff to expend significant funds and other resources in an effort to avoid being held accountable for their infringing conduct. A letter from Attorney Ali dated January 9, 2025 that was previously submitted to this Court in redacted form and is now submitted in un-redacted form supports this assertion. See Exhibit C, attached hereto. Plaintiff contends that the U.K. Defendants should not be permitted to delay proceedings in this case any longer, and they should not be immune from complying with the time periods set forth in Rule 12 of the Federal Rules of Civil Procedure. Default is proper in this case.

Finally, because the Court entered its Order granting Defendants' "Motion for Setting of Deadline for Response to First Amended Complaint Or, Alternatively, for Extension of Time To Respond" on May 9, 2025 before Plaintiff was provided sufficient time to respond to this Motion or Defendants' Opposition filed on May 7, 2025, Plaintiff respectfully requests that the Court considers the merits of this filing.

**CONCLUSION**

For the foregoing reasons, Plaintiff Sophia Parker Studios, Inc. hereby respectfully requests that this Court reverses its May 9, 2025 Non-Document Order granting the U.K.-based Defendants until May 27, 2025 to file an answer or response to Plaintiff's First Amended Complaint and directs the Clerk to enter Default pursuant to Fed. R. Civ. P. 55(a) against Defendants Alice Temperley MBE, TMLL Ltd., Temperley Holdings Ltd., Romo Ltd., Romo (Holdings) Ltd., and The Romo Group Ltd. for their failure to file a response or otherwise defend within the 21-day period set forth in Fed. R. Civ. P. 12(a)(1)(A).

Respectfully submitted,

*/s/ Alyssa M. Bruno*

By: _____

Dated:  May 12, 2025

Alyssa M. Bruno
(PA ID #321345; NJ ID #152382016)
[*Admitted to this Court*]
**A. BRUNO LAW**
P.O. Box 468
Easton, PA 18044
Telephone: (610) 258-4003
Email: abruno@abrunolaw.com

*Attorney for Plaintiff Sophia Parker Studios, Inc. (t/a WIFE NYC)*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing "Plaintiff Sophia Parker Studios, Inc.'s Memorandum of Law in Support of its Motion for Reconsideration of Court's May 9, 2025 Order Granting Defendants' 'Motion for Setting of Deadline for Response to First Amended Complaint Or, Alternatively, for Extension of Time to Respond' and Reply to Defendants' 'Opposition to Plaintiff Sophia Parker Studios, Inc.'s Requests for Clerk's Entry of Default'" was electronically filed on May 12, 2025 with the United States District Court for the Northern District of Ohio through the Court's CM/ECF system. Notice of the filing will be sent by email to all counsel by operation of the Court's electronic filing system and all parties may access this filing through that system.

Date:   May 12, 2025

By: */s/ Alyssa M. Bruno*
_____
*Attorney for Plaintiff Sophia Parker Studios, Inc. (t/a WIFE NYC)*

**LOCAL RULE 7.1(f) CERTIFICATION**

Pursuant to Local Civil Rule 7.1(f), I hereby certify that this case has not been assigned to any track and that the foregoing Memorandum adheres to the page limitation set forth in Local Civil Rule 7.1(f).

Date: May 12, 2025

By: */s/ Alyssa M. Bruno*
_____
*Attorney for Plaintiff Sophia Parker Studios, Inc. (t/a WIFE NYC)*