## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| Sophia Parker Studios, Inc., trading as WIFE NYC, | Case No. 1:24-cv-02086-PAB |
| Plaintiff, | Judge Pamela A. Barker |
| | Magistrate Judge Reuben J. Shepherd |
| v. | |
| Alice Temperley MBE, TMLL Ltd. (trading as Temperley London), Temperley Holdings Ltd. (t/a Temperley Holdings), Romo Ltd. (t/a ROMO and/or Romo Group), Romo (Holdings) Ltd., Romo, Inc. (t/a ROMO Fabrics and Wallcoverings and ROMO USA, and Does 1-20, Inclusive, | **DEFENDANT ROMO, INC.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS FIRST AMENDED COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)** |
| Defendants. | |

### DEFENDANT ROMO, INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendant Romo, Inc., by and through the undersigned counsel, submits this Reply in support of their Motion to Dismiss (Doc. 26).

## TABLE OF CONTENTS

BRIEF STATEMENT OF ISSUES TO BE DECIDED .................................................................. 1

SUMMARY OF ARGUMENT ................................................................................................... 2

I.    INTRODUCTION ............................................................................................................ 3

II.    ARGUMENT .................................................................................................................. 4

  A.  Plaintiff Does Not Plausibly Allege Copyright Infringement ............................................ 4

    1.    Alleged Copying of the Sculpture (Registration VA 2-342-734) and Photographs (VA 2-352-960 (Registered April 27, 2023) and VA 2-420-961 (Registered Nov. 4, 2024)) ....... 4

    2.    The MEMPHIS CHAINSAW Sculpture (Registration VA 2-342-734) and Photographs (VA 2-352-960 (Registered April 27, 2023) and VA 2-420-961 (Registered Nov. 4, 2024)) – Access ............................................................................................................. 11

  B.  Plaintiff's Vicarious and Contributory Infringement Claims Should Be Dismissed ........ 12

  C.  Plaintiff is Attempting to Rewrite the DMCA ............................................................... 14

  D.  Plaintiff Knows it is Not Entitled to Statutory Damages and Attorney's Fees ................ 17

III.    CONCLUSION ............................................................................................................. 19

# <u>TABLE OF AUTHORITIES</u>

Page(s)

Cases

*ADR International Limited v. Institute for Supply Management Inc.*,
   667 F. Supp. 3d 411 (S.D. Tex. 2023) .............................................................................. 15, 16

*Apple Computer, Inc. v. Microsoft Corp.*,
   35 F.3d 1435 (9th Cir. 1994) ........................................................................................... 7, 8

*Art Attacks Ink, LLC v. MGA Ent. Inc.*,
   581 F.3d 1138 (9th Cir. 2009) ............................................................................................ 12

*Ashcroft v. Iqbal*,
   556 U.S. 662 (U.S. 2009) .................................................................................................... 17

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ............................................................................................................ 17

*Blizzard Entertainment, Inc. v. Lilith Games (Shanghai) Co. Ltd.*,
   149 F. Supp. 3d 1167 (N.D. Cal. 2015) .............................................................................. 7

*Bridgeport Music, Inc. v. WM Music Corp.*,
   508 F.3d 394 (6th Cir. 2007) .............................................................................................. 13

*Christianson v. West Pub. Co.*,
   149 F.2d 202 (9th Cir. 1945) .............................................................................................. 10

*DC Comics v. Towle*,
   802 F.3d 1012 (9th Cir. 2015) ......................................................................................... 6, 7

*Faulkner Press, L.L.C. v. Class Notes, L.L.C.*,
   756 F. Supp. 2d 1352 (N.D. Fla. 2010) ............................................................................. 15

*Gamma Audio & Video, Inc. v. Ean-Chea*,
   11 F.3d 1106 (1st Cir. 1993) ............................................................................................ 8, 9

*GC2 Inc. v. International Game Technology, IGT, Doubledown Interactive LLC*,
   391 F. Supp. 3d 828 (N.D. Ill. 2019) ................................................................................. 16

*Gorski v. The Gymboree Corp.*,
   No. 14–CV–01314–LHK, 2014 WL 3533324 (N.D. Cal. July 16, 2014) ................................ 7

iii

*Johnson v. Jones*,
  149 F.3d 494 (6th Cir. 1998) ................................................................................. 17

*Kipp Flores Architects, LLC v. Pradera SFR, LLC*,
  SA-21-CV-00673-XR, 2022 WL 1105751 (W.D. Tex. 2022) ................................. 16

*Latimer v. Roaring Toyz, Inc.*,
  601 F.3d 1224 (11th Cir. 2010) ............................................................................... 5

*Loomis v. Cornish*,
  836 F.3d 991 (9th Cir. 2016) ................................................................................. 12

*Malibu Textiles, Inc. v. Label Lane Int'l, Inc.*,
  922 F.3d 946 (9th Cir. 2019) ................................................................................. 10

*Masterson Marketing, Inc. v. KSL Recreation Corp.*,
  495 F. Supp. 2d 1044 (S.D. Cal. April 13, 2007) ................................................... 4

*New Parent World, LLC v. True to Life Productions, Inc.*,
  No. CV-23-08089-PCT-DGC, 2024 WL 4277865 (D. Ariz. Sept. 24, 2024) ......... 16

*Parker v. Google, Inc.*,
  242 F. App'x 833 (3d Cir. 2007) ........................................................................... 14

*Pohl v. MH Sub I LLC*,
  770 F. App'x 482 (11th Cir. 2019) ........................................................................... 5

*Unicolors, Inc. v. H&M Hennes & Mauritz, L.P.*,
  52 F.4th 1054 (9th Cir. 2022) ............................................................................... 10

*Walker v. Time Life Films, Inc.*,
  784 F.2d 44 (2d Cir. 1986) ....................................................................................... 5

Statutes

17 U.S.C. § 102 ............................................................................................................ 7
17 U.S.C. § 412 .................................................................................................... 2, 3, 17
17 U.S.C. § 501 ........................................................................................................... 15
17 U.S.C. § 1202 .................................................................................................... 3, 15

Rules

Fed. R. Civ. P. 12(b)(6) ................................................................................................. i

## BRIEF STATEMENT OF ISSUES TO BE DECIDED

1. Does Plaintiff fail to state a claim for direct copyright infringement against Romo, Inc. where Plaintiff alleges that Romo, Inc. infringed the copyrights in the sculpture and photographs by allegedly reproducing photographs, even though (1) Plaintiff's photograph registrations specifically exclude the sculpture, (2) Plaintiff has not adequately described the copyrightable subject matter of either the sculpture or the photographs, (3) Plaintiff has not delineated the subject matter between the works, (4) Plaintiff's narrative lacks supporting factual allegations, (5) Plaintiff instead relies on purely speculative claims about the reproduction of Instagram photographs to then be used to create infringing products, and (6) in any event, Plaintiff fails to plausibly allege that Romo, Inc. had access to the photographs since the claim that the photographs were widely disseminated is wholly unsupported?

2. Does Plaintiff fail to state a claim for vicarious or contributory infringement against Romo, Inc. where Plaintiff fails to allege any facts that in any way suggest Romo, Inc. either had knowledge of any allegedly infringing activity of any other Defendant, induced or encouraged infringement, or materially contributed to the alleged infringement?

3. Does Plaintiff fail to state a cognizable claim under the Digital Millenium Copyright Act (DMCA) where Plaintiff does not actually allege that the accused products are "copies" subject to the DMCA, nor adequately allege that its works included proper copyright management information, that Romo, Inc. removed Plaintiff's copyright management information from Plaintiff's works, that Romo, Inc. distributed Plaintiff's works with Plaintiff's copyright management information altered or removed, or that Romo, Inc. had knowledge of any of the above?

4. Is Plaintiff precluded from seeking statutory damages and/or attorneys' fees for alleged copyright infringement when Plaintiff registered its works well beyond the three-month post-publication window under the Copyright Act, 17 U.S.C. § 412?

## SUMMARY OF ARGUMENT

1. Where the plaintiff fails to plausibly allege any facts that a defendant engaged in purported copyright infringement, the plaintiff fails to state a claim for direct copyright infringement.

2. Plaintiff fails to plausibly allege copyright infringement of either the sculpture or photograph given that (1) Plaintiff's photograph registrations specifically exclude the sculpture, (2) Plaintiff has not adequately described the copyrightable subject matter of either the sculpture or the photographs, (3) Plaintiff has not delineated the subject matter between the works, (4) Plaintiff's narrative lacks supporting factual allegations, (5) Plaintiff instead relies on purely speculative claims about the reproduction of Instagram photographs to then be used to create infringing products, and (6) in any event, Plaintiff fails to plausibly allege that Romo, Inc. had access to the photographs since the claim that the photographs were widely disseminated is based solely on Plaintiff's allegation that the photographs exist on the Internet.

3. Where a plaintiff fails to plausibly allege any facts that a defendant copied or accessed the plaintiff's photographs or sculpture, the plaintiff fails to state a claim for direct copyright infringement.

4. Where the plaintiff fails to allege that a defendant infringed any copyrightable aspect of a photograph, the plaintiff fails to state a cognizable claim for copyright infringement.

5. Where the plaintiff fails to plausibly allege any facts suggesting that an individual defendant had knowledge of any allegedly infringing activity—much less materially

contributed to or supervised it—the plaintiff fails to state a claim for vicarious or contributory infringement against the individual defendant.

6. Where the plaintiff fails to allege that its works were published in connection with its copyright management information, and that the defendant removed the plaintiff's copyright management information or distributed any of the plaintiff's copyright management information, the plaintiff fails to plead a cognizable claim under the Digital Millenium Copyright Act, 17 U.S.C. § 1202.

7. A plaintiff is precluded from recovering statutory damages or attorneys' fees pursuant to 17 U.S.C. § 412 where the plaintiff did not register a copyright for its work within three months of the work's initial publication.

## I.     INTRODUCTION

Plaintiff presupposes that its counsel's *arguments* in opposition to Romo, Inc.'s Motion to Dismiss (Doc. 26) suffices as a substitute for factual allegations missing from the First Amended Complaint (FAC). Tellingly, Plaintiff rarely cites the FAC in its Opposition, and, when it does, it fails to point to specific *factual* allegations to plausibly state a claim for relief, opting instead to rely on attorney argument. Indeed, Plaintiff spends pages reiterating the unremarkable position that copyright owners have the right to make derivative works, just to assert that (1) Plaintiff considers its photographs to be derivative works that completely convey the sculpture's protectible subject matter, and (2) therefore, Plaintiff is free to rest its sweeping copyright infringement case on a handful of photographs posted to an obscure Instagram account nearly six years ago. In the process, however, Plaintiff's Opposition fails to adequately address the core points of Romo, Inc.'s opening brief. Plaintiff's Opposition only highlights its failure to plead factual allegations to plausibly state claims for relief. Accordingly, the FAC should be dismissed with prejudice.

## II.     ARGUMENT

### A.     Plaintiff Does Not Plausibly Allege Copyright Infringement.

#### 1.     Alleged Copying of the Sculpture (Registration VA 2-342-734) and Photographs (VA 2-352-960 (Registered April 27, 2023) and VA 2-420-961 (Registered Nov. 4, 2024))

As an initial matter, Plaintiff tacitly admits that its entire infringement case (for both the sculpture and photographs) boils down to a single act of alleged copying: the "reproduction" of Instagram photographs. First, Plaintiff continues to assume that merely labeling Romo, Inc.'s interiors products as "derivative works" makes them so and is thus sufficient to state a claim. Yet, Plaintiff has not sufficiently established, let alone settled on the sculpture's copyrightable subject matter, instead pleading illusory categories of unknown expression such as bent plants, "geometric paint patterns", "color-tipped fronds", and "color blocking expressions and color schemes . . .", whatever that may mean. (FAC, ¶¶12, 24.)  Likewise, Plaintiff has yet to settle on the photographs' copyrightable subject matter, referring first to the protectable material as "the angles and particular compositions of the [p]hotographs", and then, later blurring the lines between the photographs and the sculpture by referring to the photograph's protectable material as "the selection ***and arrangement*** of the [sculpture]." (Opp'n, 12) (emphasis added). Having failed to adequately define and delineate the sculpture's allegedly original elements from those of the photographs, Plaintiff nevertheless insists that the Court reach through the photographs to find that they fully convey the original elements of the sculpture. As Romo, Inc. noted in its opening brief, this would be legally inappropriate because the sculpture is excluded on the face of the photograph's copyright registration. ECF No. 22-2, 7 (Ex. B) ("Limitation of copyright claim . . . ***Material excluded from this claim: sculpture***") (emphasis added). Plaintiff is attempting to do exactly what it is prohibited from doing, *i.e.*, establish a copyright to the underlying sculpture with a photograph. *Masterson*

*Marketing, Inc. v. KSL Recreation Corp.*, 495 F. Supp. 2d 1044, 1048 (S.D. Cal. April 13, 2007) ("[A] photograph does not and cannot create a copyright in the underlying subject matter.").

Being that the sculpture and photographs have their own separate copyrights, and Plaintiff disavowed the sculpture itself from any copyrightable subject matter in the photographs, Plaintiff must delineate what it believes the protectable subject matter to be. Plaintiff's FAC does not do that. Plaintiff does not delineate between the elements that make the sculpture distinctly original and independently creative over the photographs (or vice-versa), even though many of the photographer's original choices significantly impact—if not transform entirely—one's perception of the underlying subject matter. *See Pohl v. MH Sub I LLC*, 770 F. App'x 482, 487 (11th Cir. 2019) ("[E]lements of originality in a photograph may include 'posing the subjects, lighting, angle, selection of film and camera, evoking the desired expression, and almost any other variant involved.'") (quoting *Latimer v. Roaring Toyz, Inc.*, 601 F.3d 1224, 1234 (11th Cir. 2010)). In theory, it would be possible to infringe a copyright in a photograph of a sculpture without infringing the copyright to the sculpture, and vice versa. Plaintiff's habit in the FAC of shifting its definition of the sculpture and photographs with overlapping copyrightable elements makes it impossible to delineate what allegedly does or does not infringe. *See Walker v. Time Life Films, Inc.*, 784 F.2d 44, 52 (2d Cir. 1986) ("[I]n copyright infringement cases the works themselves supersede and control contrary descriptions of them.").

Another glaring flaw in Plaintiff's pleading is its creation of an imagined "factual" basis— without any support whatsoever—that, in any event, fails to make Plaintiff's copyright claim plausible. Plaintiff alleges Romo, Inc.'s creation of an ***intermediary*** "derivative work" and the practice of a series of imagined steps using that intermediary work: "the FAC asserts that Defendant Romo, Inc. made identical copies of the Photographs posted on Plaintiff's Instagram .

5

. . and then used those copies of the Photographs on an 'inspiration' board or something similar 'so that the . . . ROMO Defendants could view the Photographs and create subsequent infringing fabrics and cushions from the copies of the Photographs.'" (Opp'n, 19.) Despite Rule 11's requirement that factual contentions in a pleading have evidentiary support or are likely to have evidentiary support with discovery, Plaintiff does not refer to a single exhibit or fact in the FAC to make this narrative plausible. Instead, in responding to Romo, Inc.'s opening brief about the implausibility of this allegation, Plaintiff makes the astonishing and cite-less claim that its "assertion is based on ***Plaintiff's observation of an Instagram post posted on Temperley London's Instagram account***, @temperleylondon, which shows ***<u>what appears to be copies of the Artwork or Photographs</u>*** on the walls of a work room where employees/contractors are located" and is further based on Defendants alleged depiction of "various forms of 'inspiration' boards on their Instagram accounts." (Opp'n, 19) (emphasis added). Where are these posts? Why did Plaintiff not include them in the FAC? And, more importantly, what does this even mean for the claims? Plaintiff then uses this baseless narrative as the foundation for its ultimate conclusory allegation that "[w]hen Defendant Romo, Inc. copied Plaintiff's 2-D Photographs to create the Unauthorized Farrah Interiors Products, it copied almost the entire expression of the Photographs, but most importantly, it copied all of the protected elements of the underlying Artwork itself." (Opp'n., 8.) Plaintiff's case against Romo, Inc. is based on nonsense, not on allegations with any good-faith basis in fact.

The case law on which Plaintiff relies further highlights the deficiencies in Plaintiff's pleading. For instance, Plaintiff's overt reliance on *DC Comics* is completely irrelevant. *DC Comics v. Towle*, 802 F.3d 1012 (9th Cir. 2015). In *DC Comics*, the Ninth Circuit was applying the unique copyrightability test for characters from literary works (e.g., *comic books characters*)

in other mediums. 802 F.3d at 1021 ("[1] [T]he character must generally have physical as well as conceptual qualities . . . [2] the character must be sufficiently delineated to be recognizable as the same character whenever it appears . . . [c]onsidering the character as it has appeared in different productions, it must display consistent, identifiable character traits and attributes, although the character need not have a consistent appearance . . . [3] the character must be especially distinctive and contain some unique elements of expression.") (internal quotations and citations omitted). Indeed, the Ninth Circuit "extended copyright protection to the Batmobile 'character' *only after extensively cataloging* the car's distinctive characteristics." *Blizzard Entertainment, Inc. v. Lilith Games (Shanghai) Co. Ltd.*, 149 F. Supp. 3d 1167, 1173–76 (N.D. Cal. 2015) (noting that, in contrast to the Batmobile case, Blizzard "plead no facts demonstrating that any one of the dozens of characters are plausibly copyrightable" and "[i]nstead, Plaintiffs make conclusory statements that their characters are 'distinctive . . . with names, distinctive physical appearances, clothing, weapons, traits, abilities, and ongoing stories"); *see also Gorski v. The Gymboree Corp.*, No. 14–CV–01314–LHK, 2014 WL 3533324, at *5 (N.D. Cal. July 16, 2014) ("[T]he Court concludes that Gorski has not alleged any protectable elements, [thus] Gorski has not alleged sufficient facts to suggest that Gorski's designs can pass the extrinsic test for substantial similarity."). Moreover, contrary to Plaintiff's entire position, the Ninth Circuit specifically noted that its holding *did not reach the issue* of whether "Batmobiles were entitled to copyright protection as a sculptural work under 17 U.S.C. § 102(a)(5)." *DC Comics*, 802 F.3d. at 1018, n.4 ("Because we agree that the Batmobile is a character entitled to copyright protection, we need not reach this issue.").

Likewise, Plaintiff's reliance on *Apple* makes no sense in this case, since Romo, Inc. is not arguing that Plaintiff is not entitled to make derivate works of its sculpture. *Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1448 (9th Cir. 1994) ("[Apple] may base its claims on both the

Finder and the Lisa."). Rather, Romo, Inc. has challenged the sufficiency of the FAC in asserting that infringement of the photographs amounts to infringement of the underlying sculpture, when the elements of neither of these works has been properly delineated or defined in any way. Indeed, Plaintiff's reliance on *Apple* makes even less sense given the case involved a license[1] between Apple and Microsoft, and an upheld district court finding that "almost all the similarities [between the products at issue] spring either from the license or from basic ideas and their obvious expression" and that "illicit copying could occur only if the works as a whole ***are virtually identical***." *Id.* at 1447 (emphasis added).

Plaintiff's reliance on *Gamma* is similarly irrelevant. *Gamma Audio & Video, Inc. v. Ean-Chea*, 11 F.3d 1106 (1st Cir. 1993). There, the plaintiff had "obtained the [exclusive] right to dub TVB videotapes into Cambodian, to duplicate the dubbed versions, and to distribute by rental the Cambodian versions in thirty-seven states including Massachusetts." *Id.* at 1109. However, the defendant, who was an authorized distributor of Cambodian versions of the programs ***for the plaintiff's predecessor*** (a previous exclusive licensee) continued to rent out the Cambodian versions without receiving the plaintiff's authorization. *Id.* While the dubbed Cambodian soundtrack was different from the Chinese soundtrack, the visual works themselves were the same, of the same medium, and constituting the exact same artistic choices, being that they were __identical__ but for the soundtrack. Thus, the Court found that, in reality, the plaintiff had been granted an exclusive license to distribute the registered "video images of the Chinese production", and the fact they had also been granted the right to distribute a derivative and unregistered

---

[1] In complete contrast to this case, Microsoft had already conceded via a license agreement "that the 'visual displays' generated by Windows 1.0 'are derivative works of the visual displays generated by Apple's Lisa and Macintosh graphic user interface programs.'" *Apple*, 35 F.3d at 1440, n.8. Ultimately, the main issue was whether Microsoft's changes exceeded the license. *Id.* at 1438.

"Cambodian language soundtrack" in conjunction with the registered work was ultimately immaterial in the analysis. *Id.* at 1112 ("In the present case, Gamma is the exclusive licensee of the right to distribute, in Massachusetts, the video images of the Chinese production of *Jade Fox,* in conjunction with a Cambodian language soundtrack."). Therefore, *Gamma* is inapposite, and its relevance to the circumstances here is a complete mystery, since (1) the defendant in Gamma was distributing the **actual registered visual work** and (2) the plaintiff in Gamma was suing based on its exclusive rights to the registered, rather than derivative, work.

  In short, none of the authority cited in the Opposition is applicable here. At bottom, Plaintiff not only fails to identify the elements of the sculpture that consistently carry through to the photographs but also shifts the scope of its rights. As noted above, Plaintiff is altering the scope of its rights depending on the products being accused. For example, with respect to its allegations against the apparel lines, for now, Plaintiff regards the sculpture's copyright-protected elements as a (i) hook-shaped palm, (ii) three black and white checkered palm fronds, (iii) "***the signature and distinctive blue stems . . . in a cool medium blue paint tone***", (iv) the "***light blue-and light pink-painted palm fronds located in the center*** of the curved hook", (v) unknown geometric paint patterns, (vi) unknown color-tipped fronds, and (vii) unknown "color blocking expressions and color schemes . . .." (FAC, ¶¶12, 24) (emphasis added). Yet, with respect to the allegations against the interiors products at issue here, Plaintiff changes its tune and eliminates any reference to roughly half these allegedly "signature and distinctive" contributions, effectively expanding the scope of its copyright. (FAC, ¶38.) This is especially problematic because later in the FAC, Plaintiff submits the ***blue*** hue, the specifically proportioned ***blue and pink*** paint patterns, and the particular curve in the stem as its *core* creative "contributions" to the otherwise living plant. (FAC, ¶¶59-60, "Allegations Common to All Claims . . . Plaintiff's Copyright-Protected Artwork".)

Accordingly, Plaintiff's argument that the fabrics at issue are "substantially similar" (let alone strikingly similar) to a series of ever-shifting copyrightable elements is unavailing. Ultimately, Plaintiff does not allege *facts* that tie the sculpture's or photographs' elements to the accused fabrics at any point in the FAC.[2] And as Romo, Inc. explained in its opening brief, the Court need not accept as true Plaintiff's bald assertion that the fabrics are substantially or strikingly similar to the sculpture and photographs.[3] Rather, on a motion to dismiss, the Court should treat as true only factual allegations that tie the infringing aspects of the fabrics to the protectible aspects of the copyrighted works. To the extent the Court nevertheless decides to conduct a *de novo* review of the materials, and assess the FAC's images of the accused fabrics, the Court should readily find that the fabrics displaying plant fronds—a motif that has long been ubiquitous in design—are neither substantially nor strikingly similar to the sculpture or photographs. *See, e.g., Unicolors, Inc. v. H&M Hennes & Mauritz, L.P.*, 52 F.4th 1054, 1084 (9th Cir. 2022); *Malibu Textiles, Inc. v. Label Lane Int'l, Inc.*, 922 F.3d 946,  952 (9th Cir. 2019); *Christianson v. West Pub. Co.*, 149 F.2d 202, 203 (9th Cir. 1945).

This is especially true with respect to the photographs. Assuming Plaintiff commits to the angles, shading, and lighting elements as the photographs' allegedly original elements (FAC, ¶4), Plaintiff does not—because it cannot—identify these elements (or anything similar) in the accused fabrics. The angles, shading, and lighting from the photographs are nowhere to be found in the Romo, Inc. products. Ultimately, Plaintiff's Opposition recites paragraphs from the FAC that

---

[2] Plaintiff's argument that Romo, Inc. only discussed the angles of two representative photographs is irrelevant. (Opp'n, 13.) Romo, Inc.'s opening brief makes clear that Plaintiff did not even clear the low bar of pleading factual detail tending to show the allegedly infringed angles and lighting in the interiors products.
[3] Plaintiff completely ignores that other than in paragraph 4 of the FAC, the words "lighting" and "angles" do not appear anywhere else in the FAC, and certainly not in any paragraph accusing the products of infringing the photographs.

simply repeat the exact same legal conclusion in dozens of different ways: the works are substantially similar, or strikingly similar, and infringe. Nothing more. This is insufficient.

### 2. The MEMPHIS CHAINSAW Sculpture (Registration VA 2-342-734) and Photographs (VA 2-352-960 (Registered April 27, 2023) and VA 2-420-961 (Registered Nov. 4, 2024)) – Access

Plaintiff's FAC fails to plausibly state a claim of copyright infringement against Romo, Inc. for the additional reason that Plaintiff fails to plausibly allege access to the photographs.[4] While Plaintiff claims that the photographs were widely disseminated, such that Romo, Inc. would have had a reasonable opportunity to view the photographs, Romo, Inc. explained in its opening brief and cited multiple cases that the allegation without more is insufficient to plausibly establish wide dissemination. (Doc. 26 (Mot., p. 8-9; 15).) Plaintiff ignored this entirely, and worse, refuted the fact that it must plead plausible facts, repeating the same circular allegation from its FAC that "access" is established by "accessing," and claiming without any factual underpinning that the photographs from its Instagram account were either widely disseminated to Romo, Inc. in Ohio, or widely disseminated across the Atlantic to the UK Defendants for distribution to Romo, Inc.[5] (Opp'n p. 10 ("Here, the FAC provides that Defendant had access to the underlying copyright work . . . through accessing Plaintiff's public and widely disseminated Instagram account . . . or through accessing/receiving copies . . . from the other Defendants . . .").)[6] Indeed, every paragraph cited by Plaintiff in this section of the FAC is conclusory, and devoid of any factual basis. Plaintiff must do more than simply repeat the words "widely disseminated" to plausibly allege access to

---

[4] Plaintiff tacitly admits that its FAC does not allege that Romo, Inc. ever had direct access to the sculpture. Instead, Plaintiff is relying entirely on the Instagram posts.

[5] Plaintiff still relies on the wide dissemination theory, whether Romo, Inc. allegedly accessed the photographs directly, or a UK Defendant accessed them directly before allegedly sharing them with Romo, Inc.

[6] Worse, Plaintiff goes further, arguing that Romo, Inc. could have received the photographs from anyone, anywhere. (Opp'n p. 10 ("[O]r a third party[.]")).

the photographs. It has not done so, and for that reason alone, Plaintiff has failed to state any copyright infringement claim against Romo, Inc. at all.

Yet, Plaintiff insists that it does not need to plead any specific information to plausibly establish wide dissemination and perhaps for that reason does not address any of the case law cited by Romo, Inc. in its opening brief. Instead, Plaintiff mischaracterizes the basics of notice pleading as "evidence [that] is not necessary to include at the pleading stage." (Opp'n, 15.) However, information that would tend to (1) indicate whether Plaintiff's photographs reached audiences far and wide; (2) demonstrate that the photographs were republished by widely disseminated magazines, newspapers, or other online media; (3) describe anyone of note or mass following who may have discussed, highlighted, or reposted the photographs; or (4) show that any person in Ohio or the UK (let alone any Defendant) ever followed or otherwise interacted with Plaintiff's Instagram page, is the kind of information that Plaintiff will need to establish a claim of either direct access, or indirect access through wide dissemination. This is not information that requires discovery—rather, it is information that is uniquely in Plaintiff's possession. Plaintiff should not be permitted to proceed with the assertion that its art is simply famous and widely disseminated because it merely posted the photographs online. *See Loomis v. Cornish*, 836 F.3d 991,  995 (9th Cir. 2016); *Art Attacks Ink, LLC v. MGA Ent. Inc.*, 581 F.3d 1138, 1143-45 (9th Cir. 2009).

## B.    Plaintiff's Vicarious and Contributory Infringement Claims Should Be Dismissed

Consistent with the rest of the FAC, Plaintiff fails to allege any act done by Romo, Inc. that could plausibly be interpreted as "inducing or encouraging" infringement, let alone any "intentional" infringement. In its Opposition, Plaintiff repeats buzz words that are just verbs or adjectives pulled directly from an indirect liability cause of action. (Opp'n, 16–17 ("intentionally inducing or encouraging . . . collaborated with, knowingly induced, caused, participated in, aided

and abetted, and profited . . . promote, display, sell, distribute . . . while knowing")). Plaintiff's cited paragraphs from the FAC fare no better. Indeed, Plaintiff's entire theory of contributory and vicarious infringement is more appropriately characterized as "guilt by association." That is, because Romo, Inc. is owned by a foreign Romo defendant, who does business with the Temperley London Defendants, it is therefore (somehow) engaged in and liable for discrete acts of alleged copyright infringement of other Defendants. As Romo, Inc. explained in its opening brief, Plaintiff's vicarious infringement claim, without more, is absurd on its face. (Mot., 16–17.) Plaintiff makes no attempt to allege facts tending to establish that Romo, Inc. had any right or ability to supervise the allegedly infringing activity of any other Defendant. *Bridgeport Music, Inc. v. WM Music Corp.*, 508 F.3d 394, 400 (6th Cir. 2007) (citation omitted).

Likewise, with respect to contributory infringement, Plaintiff's Opposition does not address a glaring omission from the FAC: knowledge. Not one fact is alleged to plausibly establish that Romo, Inc. knew or would have reason to know of the alleged direct infringement of any other Defendant. Plaintiff's own alternative theories of direct infringement make this plain. On the one hand, Plaintiff asserts that Romo, Inc. may have received copies of the Instagram photographs from "the Temperley London" Defendants, or even some third party, but then does not advance any plausible factual allegation that would demonstrate how Romo, Inc. would come to recognize the copies as unauthorized reproductions. Importantly, Plaintiff does not allege that Romo, Inc. (or any other Romo entity for that matter) are one and the same, have common ownership, or do anything other than conduct business pursuant to an arms-length business relationship. Thus, how "the Temperley London" Defendants could commit copyright infringement of which Romo, Inc. would have known is not explained in the FAC. Despite Plaintiff's evidently vast imagination and

habit of weaving highly convenient and unsupported narratives in the FAC, Plaintiff's story here is not even haphazardly conceived.

Moreover, Plaintiff does not address the typical third prong of the analysis: material contribution. *Parker v. Google, Inc.*, 242 F. App'x 833, 837 (3d Cir. 2007). Nothing from the FAC would tend to show Romo, Inc. induced, caused, aided, or abetted any infringing act at all. Worse, Plaintiff does not provide a basis for alleging that Romo, Inc. chooses any designs, let alone participated in the design of any product. Plaintiff groups all the Defendants together based solely on their general business association.

It bears noting that Plaintiff's vicarious and contributory theories and claims are emblematic of Plaintiff's entire pleading approach. Plaintiff has no specific facts to support a theory or claim, so it alleges that anyone and everyone it names as a Defendant was the mastermind behind the allegedly illegal activity, even though information about these Defendants is largely public and available.

## C.      Plaintiff is Attempting to Rewrite the DMCA

The photographs upon which Plaintiff bases its DMCA claim against Romo, Inc. are not Plaintiff's photographs, and thus, Plaintiff's DMCA claim makes no sense. Plaintiff does not claim that it took the advertising photographs of the accused pillows, fabrics, or interiors products. Nor does Plaintiff allege that Plaintiff embroidered or otherwise manufactured these products. Accordingly, Plaintiff fails to state a claim, because the photographs upon which Plaintiff's claim is based are not Plaintiff's photographs. Thus, there should have been no attribution given to Plaintiff for purposes of the DMCA.[7]

---

[7] Additionally, as Romo, Inc. noted in its opening brief, Plaintiff has not even established that Sophia Parker Studios had any identifying CMI on the pictures posted to the personal Instagram account, @WIFENYC.

The fundamental problem with Plaintiff's DMCA claim is that Plaintiff misunderstands the distinction between *copying* under the copyright statute (17 U.S.C. § 501), and what constitutes as "copies" of a work under 17 U.S.C. § 1202(a) and (b). In mistakenly considering them to be one and the same, Plaintiff is effectively arguing that a claim under 17 U.S.C. § 1202 is entirely indistinguishable from a run-of-the-mill copyright infringement cause of action under 17 U.S.C. § 501. Of course, that is not so, because the statute would be completely superfluous. While claims under 17 U.S.C. § 1202(a) and (b) may amount to copyright infringement under 17 U.S.C. § 501, it is not true in reverse. In its opening brief, Romo, Inc. highlighted a case that demonstrated the dichotomy precisely. *See Faulkner Press, L.L.C. v. Class Notes, L.L.C.*, 756 F. Supp. 2d 1352, 1359 (N.D. Fla. 2010).

Tellingly, in its Opposition, Plaintiff misrepresents Romo, Inc.'s argument, incorrectly contending that Romo, Inc. is asserting that the accused products are not subject to the DMCA because they are derivative works, rather than identical copies of Plaintiff's works. To reiterate, the products are neither derivative works that incorporate Plaintiff's works, nor identical copies of Plaintiff's works. Even so, in support of its mischaracterization, Plaintiff cited to a handful of inapposite cases that simply stand for the proposition that a "copy" does not need to be ***exactly the same*** as the original work in order to be considered used up ***in its entirety***, and therefore, subject to the DMCA.[8] *See, e.g.*, *ADR International Limited v. Institute for Supply Management Inc.*, 667 F. Supp. 3d 411, 428 (S.D. Tex. 2023) (where the court noted the actual allegation was that defendants simply "reproduced [p]laintiff's training materials without its CMI and replaced it with

---

[8] Plaintiff homes in on Romo, Inc.'s use of the word "identical" in its opening brief. However, Romo, Inc. pulled that language directly from Plaintiff's allegation in the FAC, that Romo, Inc. was making "**identical** copies of the Photographs posted on Plaintiff's Instagram[.]" (FAC, ¶180) (emphasis added). The Court should see the accused products are plainly not identical.

[d]efendants CMI"); *GC2 Inc. v. International Game Technology, IGT, Doubledown Interactive LLC*, 391 F. Supp. 3d 828, 843–844 (N.D. Ill. 2019) (upholding a jury verdict that the DMCA was violated by the ex-licensee given "GC2 presented **undisputed** [and uncontested] evidence that **it provided the defendants with artwork** . . . for use in the development of land-based games, which was then used, **in its entirety**, in the online versions of the games later developed by the defendants" and where the defendants did "not even contest that the artwork appeared without attribution" but rather argued that they did not violate the DMCA because the accused products were collaborative works "that the companies **were jointly developing**") (emphasis added).

Moreover, Plaintiff's two primary cases only support Romo, Inc.'s position. *See, e.g.*, *ADR*, 667 F. Supp. 3d at 428; *New Parent World, LLC v. True to Life Productions, Inc.*, No. CV-23-08089-PCT-DGC, 2024 WL 4277865, at *2 (D. Ariz. Sept. 24, 2024). In *ADR*, the court specifically distinguished the allegations in its own case (which involved mere reproduction of the entire work with different CMI), from those in another recent case. *ADR*, 667 F. Supp. 3d at 428 ("Here, unlike in *Kipp Flores* . . .") (citing *Kipp Flores Architects, LLC v. Pradera SFR, LLC*, SA-21-CV-00673-XR, 2022 WL 1105751, at *3 (W.D. Tex. 2022)). The *ADR* court highlighted that the *Kipp Flores* court (1) dismissed the DMCA claims, (2) held that "removal of CMI from a copyrighted work **is not the same** as the failure to add CMI to a nonidentical rendition or a derivative of the protected work" and (3) noted that, "**[b]ecause the plaintiff alleged the defendant used her work to generate nonidentical renditions of the copyrighted works**, the new work never included the plaintiff's CMI", given that "CMI cannot be 'removed' from a new work that never included CMI to begin with." *Id.* (quoting *Kipp Flores*, 2022 WL 1105751, at *3) (emphasis added). Likewise, in *New Parent*, the allegedly infringing work was almost an exact copy of a 300-page book, *sans* one sentence, which did not make it any less a copy. The exact opposite issue is

16

presented here, where Plaintiff is only asserting that Romo, Inc. incorporated elements of Plaintiff's sculpture and photographs (whatever those elements may be) into designs of pillows, fabrics, and other physical products, manufactured those products, and then created advertising to promote those products. Of course, Plaintiff's Instagram posts, as shown in the FAC, do not include couches or drapes, or pictures of rooms. They do not capture images of embroidery or fabric swatches. Just as in *Faulkner*, the accused products are different creations that Plaintiff believes incorporate its copyrighted subject matter. Accordingly, even had Plaintiff plausibly stated a claim for copyright infringement, the accused products are not "copies" under the DMCA and thus, Plaintiff has failed to plausibly state a claim for relief under the DMCA.

Plaintiff's Opposition all but refuses to address any of the arguments raised in Romo, Inc.'s opening brief on this point, once again mischaracterizing basic notice pleading requirements, *i.e.*, the requirements that the pleading (1) "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'" (*Ashcroft v. Iqbal*, 556 U.S. 662, 687 (U.S. 2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) and; (2) "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Simply put, Plaintiff has not pointed to any factual allegation tending to plausibly establish that Romo, Inc. had any "*modus operandi*" for distributing false CMI or knew or had reason to know that CMI was allegedly removed by anyone else. Plaintiff's FAC fails to plausibly state a DMCA claim against Romo, Inc.

### D.     Plaintiff Knows it is Not Entitled to Statutory Damages and Attorney's Fees

Again, presumably understanding the purpose of Rule 11, it is nothing short of astonishing that Plaintiff persists in claiming that it is entitled to statutory damages. The law in this Circuit is crystal clear, as Romo, Inc. explained in its opening brief. "[I]nfringement 'commences' for the purposes of [17 U.S.C. § 412(1)] when the first act in a series of acts constituting continuing infringement occurs." *Johnson v. Jones*, 149 F.3d 494, 504–06 (6th Cir. 1998). Plaintiff alleges

that the infringement began "in or around February or March 2022", an entire year before it registered the sculpture. (FAC, ¶8.) Moreover, Plaintiff's entire theory of infringement turns on the alleged reproduction of Instagram photographs for a 'vision board' or digital rendering, and the subsequent design of "derivative" products.

Yet, now realizing that it has been caught seeking relief to which it knows it is clearly not entitled,[9] Plaintiff attempts to rewrite its infringement timeline, and in the process, contradicts its own FAC, as well as the first 23 pages of its Opposition brief. Plaintiff now tries to silo its infringement claims, asserting that the interiors infringement did not begin until March 9, 2023, the day the Temperley London x Romo "A World Less Ordinary" interiors collection *was launched to the public*. If that were true, then none of the following alleged acts could constitute infringement: (1) reproduction of Instagram images to be used on a 'vision board' to create the products; (2) Romo, Inc.'s alleged receipt of copies of the images to be used to create the products; (3) creating digital renderings based on the photographs to make the interiors products; and (4) taking photographs of the interiors products for use in advertisements. Apparently, according to Plaintiff's Opposition, the "infringement" only began when the products *were launched* to

---

[9] This is not the first time Plaintiff's counsel has advocated for statutory copyright damages and attorney's fees for a client who claimed the alleged copyright infringement occurred after she registered for copyright protection. In 2023, in *Mansfield Media LLC v. Mastercard International, Inc. et al.*, defendant Mastercard moved to dismiss a complaint with allegations similar in many respects to allegations in this case. *Mansfield Media LLC v. Mastercard International, Inc. et al.*, Civil Action No. 2:23-cv-04394-JP (E.D. Pa. 2023). Among other claims in the pleading, the plaintiff claimed entitlement to copyright statutory damages and attorney's fees even though the plaintiff did not register for copyright protection until after the alleged infringement. Doc 17-1. In moving to dismiss for lack of personal jurisdiction and failure to state a claim, Mastercard spent a good four pages explaining that the plaintiff was not entitled to statutory damages or attorney's fees because the plaintiff did not register for copyright protection until after the alleged infringement began. *Id.* at 16-19. Thus, it is all the more stupefying that Plaintiff persists in seeking such damages when it is represented by counsel ostensibly experienced with the issue, and knowing full well that such relief is unavailable.

18

consumers. This self-serving attempt to recreate the infringement timeline to save its claims for statutory damages is futile, and its claims for statutory damages should be rejected and dismissed with prejudice.

## III.      CONCLUSION

For the foregoing reasons and those set forth in Romo, Inc.'s opening brief, Romo, Inc. respectfully requests that the Court grant its motion to dismiss Plaintiff's First Amended Complaint and dismiss the Complaint with prejudice.

Dated: May 16, 2025                    Respectfully submitted,

By: */s/ Jeffer Ali*

Meredith K. Collier
Todd R. Tucker
**CALFEE, HALTER & GRISWOLD LLP**
1405 East Sixth Street
Cleveland, OH 44114
Telephone: 216.622.8200
Facsimile: 216.241.0816
mcollier@calfee.com
ttucker@calfee.com

Jeffer Ali*
**HUSCH BLACKWELL LLP**
80 South Eighth Street, Suite 4800
Minneapolis, Minnesota 55402
Telephone: 612.852.2700
Facsimile: 612.852.2701
jeff.ali@huschblackwell.com

Sharif Ahmed*
**HUSCH BLACKWELL LLP**
2415 East Camelback Road, Suite 500
Phoenix, AZ 85016
Telephone: 480.824.7890
Facsimile: 480-824-7905
sharif.ahmed@huschblackwell.com

*Admitted pro hac vice*

***Attorneys for Defendant Romo, Inc.***

20

## **CERTIFICATE OF SERVICE**

I hereby certify that today, this 16th day of May 2025, I caused the foregoing document to be filed electronically with the Clerk of Court, and therefore served upon all counsel of record.

*/s/ Jeffer Ali*

## <u>LOCAL RULE 7.1(f) CERTIFICATION</u>

Pursuant to Local Civil Rule 7.1(f), I hereby certify that this case has not been assigned to any track and that the page limitation for this memorandum is fewer than twenty (20) pages. I hereby further certify that the foregoing Memorandum adheres to this limitation.

*/s/ Jeffer Ali*