# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| Sophia Parker Studios, Inc., trading as WIFE NYC, <br><br>     Plaintiff, <br><br> v. <br><br> Alice Temperley MBE, TMLL Ltd. (trading as Temperley London), Temperley Holdings Ltd. (t/a Temperley Holdings), Romo Ltd. (t/a ROMO and/or Romo Group), Romo (Holdings) Ltd., Romo UK (t/a ROMO Fabrics and Wallcoverings and ROMO USA, and Does 1-20, Inclusive, <br><br>     Defendants. | Case No. 1:24-cv-02086-PAB <br><br> Judge Pamela A. Barker <br><br> Magistrate Judge Reuben J. Shepherd <br><br> **DEFENDANTS THE ROMO GROUP LTD., ROMO LTD., AND ROMO (HOLDINGS) LTD.'S MOTION TO DISMISS FIRST AMENDED COMPLAINT PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(b)(2) AND (6)** |

## <u>DEFENDANTS THE ROMO GROUP LTD., ROMO LTD., AND ROMO (HOLDINGS) LTD.'S MOTION TO DISMISS FIRST AMENDED COMPLAINT PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(b)(2) AND (6)</u>

Pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6), Defendants The Romo Group Ltd., Romo Ltd., and Romo (Holdings) Ltd., (collectively "Romo UK"), by and through the undersigned counsel, hereby move to dismiss the First Amended Complaint (FAC) for lack of personal jurisdiction and to dismiss Plaintiff's (1) claims for copyright infringement, as well as contributory, vicarious, and willful copyright infringement, (2) claims for false distribution of copyright management information and removal of copyright management information, and (3) claims for statutory damages and attorneys' fees. In support, Romo UK submits this Memorandum of Law contemporaneously with this Motion.

## TABLE OF CONTENTS

BRIEF STATEMENT OF ISSUES TO BE DECIDED .................................................................. vi

SUMMARY OF ARGUMENT .......................................................................................... vii

I.   LEGAL STANDARD.......................................................................................... 1

II.  ARGUMENT ........................................................................................................ 1

   A.   This Court Lacks Personal Jurisdiction Over Romo UK...................................... 1

     1.   General Jurisdiction Does Not Apply ........................................................ 2

     2.   Specific Jurisdiction and Ohio's Long Arm Statute Do Not Apply ............................. 3

      a. Plaintiff's claims do not arise from Romo UK contacts ............................. 4

      b. Romo UK does not have sufficient minimum contacts in Ohio ................................ 6

      c. Exercising Jurisdiction Over Romo UK is unreasonable........................................... 8

   B.   Plaintiff's Copyright Infringement Claims Should Be Dismissed..................................... 9

     1.   Plaintiff fails to plausibly allege that Romo UK accessed its works ........................... 10

     2.   The Accused Products Are Not Substantially Similar to the Works ........................... 13

   C.   Plaintiff's Indirect Infringement Claims Should Be Dismissed ...................................... 16

   D.   Plaintiff's DMCA Claims Should Be Dismissed............................................................. 17

   E.   Plaintiff Is Not Entitled to Statutory Damages or Attorney's Fees ................................. 20

III.  CONCLUSION.............................................................................................. 20

**<u>TABLE OF AUTHORITIES</u>**

Page(s)

Cases

*A&M Records, Inc. v. Napster, Inc.*,
    239 F.3d 1004 (9th Cir. 2001) ........................................................................ 17
*Antony v. Buena Vista Books, Inc.*,
    Civ. A. No. 18-205-DLB-CJS, 2020 WL 5995590 (E.D.Ky., 2020) ....................... 9
*Arista Recs., LLC v. Doe 3*,
    604 F.3d 110 (2d Cir. 2010) ........................................................................... 16
*Art Attacks Ink, LLC v. MGA Ent. Inc.*,
    581 F.3d 1138 (9th Cir. 2009) ................................................................... 10, 11
*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ............................................................................... 1, 5, 10
*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ............................................................................... 1, 6, 10
*Bird v. Parsons*,
    289 F.3d 865 (6th Cir. 2002) ........................................................................... 2
*Bridgeport Music, Inc. v. Rhyme Syndicate Music*,
    376 F.3d 615 (6th Cir. 2004) ......................................................................... 16
*Bridgeport Music, Inc. v. Still N The Water Pub.*,
    327 F.3d 472 (6th Cir. 2003) ....................................................................... 1, 8
*Bridgeport Music, Inc. v. WM Music Corp.*,
    508 F.3d 394 (6th Cir. 2007) ......................................................................... 17
*Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cnty.*,
    582 U.S. 255 (2017) ........................................................................................ 4
*Burger King Corp. v. Rudzewicz*,
    471 U.S. 462 (1985) ........................................................................................ 6
*Burnshire Development, LLC v. Cliffs Reduced Iron Corp.*,
    198 F. App'x 425 (6th Cir. 2006) .................................................................... 6
*Calphalon Corp. v. Rowlette*,
    228 F.3d 718 (6th Cir. 2000) ....................................................................... 6, 7
*Campinha-Bacote v. Wick*,
    1:15-CV-277, 2015 WL 7354014 (S.D. Ohio Nov. 20, 2015) ............................. 5
*Christianson v. W. Pub. Co.*,
    149 F.2d 202 (9th Cir. 1945) ......................................................................... 14
*CompuServe, Inc. v. Patterson*,
    89 F.3d 1257 (6th Cir. 1996) ................................................................... 2, 3, 6
*Craig v. UMG Recordings, Inc.*,
    380 F. Supp. 3d 324 (S.D.N.Y. 2019) ............................................................ 18
*Daimler AG v. Bauman*,
    571 U.S. 117 (2014) .................................................................................... 2, 3
*Ellis v. Diffie*,
    177 F.3d 503 (6th Cir. 1999) ........................................................................... 9

*Enchant Christmas Light Maze & Market Ltd. v. Glowco, LLC*,
   958 F.3d 532 (6th Cir. 2020) ....................................................................... 9, 14

*Ets-Hokin v. Skyy Spirits, Inc.*,
   225 F.3d 1068 (9th Cir. 2000) ........................................................................ 14

*Faulkner Press, L.L.C. v. Class Notes, L.L.C.*
   756 F. Supp. 2d 1352 (N.D. Fla. 2010) ..................................................... 18, 19

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc.*,
   499 U.S. 340 (1991) ......................................................................................... 9

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
   564 U.S. 915 (2011) ......................................................................................... 2

*Harrington v. Pinterest, Inc.*,
   No. 5:20-cv-05290-EJD, 2022 WL 4348460 (N.D. Cal. Sept. 19, 2022) ............... 19

*Harris v. Lloyds TSB Bank, PLC*,
   281 Fed. Appx. 489 (6th Cir. 2008) .................................................................. 6

*Hitachi Med. Sys. Am., Inc. v. St. Louis Gynecology & Oncology, LLC*,
   2011 WL 711568 (N.D. Ohio Feb. 22, 2011) .................................................... 5

*Intera Corp. v. Henderson*,
   428 F.3d 605 (6th Cir. 2005) ....................................................................... 6, 8

*Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*,
   326 U.S. 310 (1945) ......................................................................................... 3

*J. McIntyre Mach. v. Nicastro*,
   564 U.S. 873 (2011) ......................................................................................... 8

*Jason v. Fonda*,
   526 F. Supp. 774 (C.D. Cal. 1981) .................................................................. 13

*Joe Solo Productions, Inc. v. Dawson*,
   1:09 CV 555, 2009 WL 2232856 (N.D. Ohio July 23, 2009) ................................ 8

*Johnson v. Jones*,
   149 F.3d 494 (6th Cir. 1998) .......................................................................... 20

*Jones v. Blige*,
   558 F.3d 485 (6th Cir. 2009) ..................................................................... 13, 14

*King Records, Inc. v. Bennett*,
   438 F. Supp. 2d 812 (M.D. Tenn. 2006) .......................................................... 10

*Kohus v. Mariol*,
   328 F.3d 848 (6th Cir. 2003) ........................................................................... 9

*Loomis v. Cornish*,
   836 F.3d 991 (9th Cir. 2016) .......................................................................... 11

*Mango v. BuzzFeed, Inc.*,
   356 F. Supp. 3d 368 (S.D.N.Y. 2019) ........................................................ 18, 19

*Murray Hill Publications, Inc. v. Twentieth Century Fox Film Corp.*,
   361 F.3d 312 (6th Cir. 2004) .......................................................................... 14

*Parker v. Google, Inc.*,
   242 F. App'x 833 (3d Cir. 2007) ..................................................................... 16

*Parker v. Winwood*,
   938 F.3d 833 (6th Cir. 2019) ........................................................................... 9

*Pay(q)r, LLC v. Sibble*,
   5:15CV1038, 2015 WL 9583034 (N.D. Ohio Dec. 31, 2015) ........................ 2, 3, 6

*Rentmeester v. Nike, Inc.*,
  883 F.3d 1111 (9th Cir. 2018) ................................................................ 14
*Reynolds v. Int'l Amateur Athletic Fed'n*,
  23 F.3d 1110 (6th Cir. 1994) .................................................................... 3
*Rice v. Fox Broad. Co.*,
  330 F.3d 1170 (9th Cir. 2003) ................................................................ 13
*Rottlund Co. v. Pinnacle Corp.*,
  452 F.3d 726 (8th Cir. 2006) .................................................................... 9
*Stevens v. Corelogic, Inc.*,
  899 F.3d 666 (9th Cir. 2018) .................................................................. 19
*Stromback v. New Line Cinema*,
  384 F.3d 283 (6th Cir. 2004) .................................................................... 9
*Theunissen v. Matthews*,
  935 F.2d 1454 (6th Cir. 1991) .................................................................. 2
*Three Boys Music Corp. v. Bolton*,
  212 F.3d 477 (9th Cir. 2000) .............................................................. 10, 11
*Tiseo Architects, Inc. v. B & B Pools Service and Supply Co.*,
  495 F.3d 344 (6th Cir. 2007) .................................................................... 9
*United States v. Am. Libr. Ass'n, Inc.*,
  539 U.S. 194 (2003) .............................................................................. 11
*Weller v. Cromwell Oil Co.*,
  504 F.2d 927 (6th Cir. 1974) .................................................................... 2
*Wireless Env't, LLC v. HooToo.com, Inc.*,
  1:15CV1215, 2016 WL 4530617 (N.D. Ohio Aug. 30, 2016) ................ 7, 8
*Woodland v. Hill*,
  No. 23-55418, 2025 WL 1417103 (9th Cir. 2025) ................ 10, 11, 12, 13
*World-Wide Volkswagen Corp. v. Woodson*,
  444 U.S. 286 (1980) ................................................................................ 8

Statutes

17 U.S.C. § 412 ............................................................................................ 20
17 U.S.C. § 504(c) ........................................................................................ 20
17 U.S.C. § 1202 ...................................................................................... 17, 18
OH ST § 2307.382 ................................................................................... 2, 3, 5

Rules

Fed. R. Civ. P. 12 ...................................................................................... 2, 9

## BRIEF STATEMENT OF ISSUES TO BE DECIDED

1. Should Plaintiff's First Amended Complaint be dismissed given this Court lacks personal jurisdiction over Romo UK, and that, in any event, Plaintiff has failed to sufficiently plead facts tending to show this Court has jurisdiction?

2. Does Plaintiff fail to state a claim for direct copyright infringement against Romo UK where Plaintiff alleges that Romo UK infringed the copyrights in the sculpture and photographs by allegedly reproducing photographs, even though (1) Plaintiff's photograph registrations specifically exclude the sculpture, (2) Plaintiff has not adequately described the copyrightable subject matter of either the sculpture or the photographs, (3) Plaintiff has not delineated the subject matter between the works, (4) Plaintiff's narrative lacks supporting factual allegations, (5) Plaintiff instead relies on purely speculative claims about the reproduction of Instagram photographs to then be used to create infringing products, and (6) in any event, Plaintiff fails to plausibly allege that Romo UK had access to the photographs since the claim that the photographs were widely disseminated is wholly unsupported and insufficient as a matter of law?

3. Does Plaintiff fail to state a claim for vicarious or contributory infringement against Romo UK where Plaintiff fails to allege any facts that suggest Romo UK either had knowledge of any allegedly infringing activity of any other Defendant, or materially contributed to the alleged infringement?

4. Does Plaintiff fail to state a cognizable claim under the Digital Millenium Copyright Act (DMCA) where Plaintiff does not allege that its works included proper copyright management information and that Romo UK removed Plaintiff's copyright management information (CMI) or distributed works with Plaintiff's CMI altered or removed?

5. Does Plaintiff fail to state a cognizable claim under the DMCA where Plaintiff (1) does not allege that its works included proper CMI, (2) does not actually allege that the accused products are "copies" subject to the DMCA, (3) does not allege that Romo UK removed Plaintiff's CMI, if any, from Plaintiff's works, (4) does not allege Romo UK distributed Plaintiff's works with Plaintiff's CMI altered or removed, and (5) does not allege that Romo UK had knowledge of any of the above?

6. Is Plaintiff precluded from seeking statutory damages and/or attorneys' fees for alleged copyright infringement when Plaintiff registered its works well beyond the three-month post-publication window under the Copyright Act, 17 U.S.C. § 412?

## SUMMARY OF ARGUMENT

1. Where this Court lacks personal jurisdiction over Romo UK, and Plaintiff has failed to otherwise plead sufficient facts tending to establish this Court's jurisdiction over Romo UK, the Court should dismiss the Romo UK entities from this suit.

2. Where the plaintiff fails to plausibly allege any facts that a defendant engaged in purported copyright infringement, the plaintiff fails to state a claim for direct copyright infringement?

3. Plaintiff fails to plausibly allege copyright infringement of either the sculpture or photograph given that (1) Plaintiff's photograph registrations specifically exclude the sculpture, (2) Plaintiff has not adequately described the copyrightable subject matter of either the sculpture or the photographs, (3) Plaintiff has not delineated the subject matter between the works, (4) Plaintiff's narrative lacks supporting factual allegations, (5) Plaintiff instead relies on purely speculative claims about the reproduction of Instagram photographs to then be used to create infringing products, and (6) in any event, Plaintiff fails to plausibly allege that Romo UK had access to the photographs since the claim that

the photographs were widely disseminated is based solely on Plaintiff's allegation that the photographs exist on the Internet.

4.  Where a plaintiff fails to plausibly allege any facts that a defendant copied or accessed the plaintiff's photographs or sculpture, the plaintiff fails to state a claim for direct copyright infringement.

5.  Where the plaintiff fails to allege that a defendant infringed any copyrightable aspect of a photograph, the plaintiff fails to state a cognizable claim for copyright infringement.

6.  Where the plaintiff fails to plausibly allege any facts suggesting that an individual defendant had knowledge of any allegedly infringing activity—much less materially contributed to or supervised it—the plaintiff fails to state a claim for vicarious or contributory infringement against the individual defendant.

7.  Where the plaintiff fails to allege that its works were published in connection with its CMI, and that the defendant removed the plaintiff's CMI or distributed any of the plaintiff's CMI, the plaintiff fails to plead a cognizable claim under the DMCA, 17 U.S.C. § 1202.

8.  A plaintiff is precluded from recovering statutory damages or attorneys' fees pursuant to 17 U.S.C. § 412 where the plaintiff did not register a copyright for its work within three months of the work's initial publication.

This Court lacks personal jurisdiction over Romo UK.[1] Moreover, Plaintiff fails to state a copyright infringement claim, given that it has not alleged that Romo UK reasonably accessed its works, nor that the works are substantially similar to the accused designs. Likewise, Plaintiff's conclusory theories of indirect infringement are unsupported, and its Digital Millenium Copyright Act (DMCA) claims are inapplicable. Finally, Plaintiff's statutory damages and attorneys' fees claims are time barred.

## I.  LEGAL STANDARD

A plaintiff is required to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Id.* at 545; *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). While courts must accept a complaint's allegations as true, this applies only to well-pleaded factual allegations, not to legal conclusions. A pleading that offers mere "labels and conclusions" is insufficient, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft*, 556 U.S. at 678.

## II.  ARGUMENT

### A.  This Court Lacks Personal Jurisdiction Over Romo UK.

Jurisdiction can be exercised over Romo UK only to the extent authorized by Ohio's Long-Arm statute and the Fourteenth Amendment's Due Process Clause. *Bridgeport Music, Inc. v. Still*

---

[1] Plaintiff accuses Romo UK of infringing three copyrights. A sculpture (U.S. Copyright Reg. No. VA 2-342-734 (MEMPHIS CHAINSAW)); (2) Photographs of the sculpture (U.S. Copyright Reg. No. VA 2-352-960 (Registered April 27, 2023)); and (3) more Photographs of the sculpture (U.S. Copyright Reg. No. VA 2-420-961 (Registered November 4, 2024)). ECF No. 22, ¶1 (First Amended Complaint, "FAC").

*N The Water Pub.*, 327 F.3d 472, 477 (6th Cir. 2003).[2] Under Ohio's Long-Arm statute, jurisdiction arises out of a defendant's (1) business transactions, (2) contracts to supply goods or services, (3) tortious conduct, or (4) tortious injury to others within the state. OH ST § 2307.382; *Pay(q)r, LLC v. Sibble*, 5:15CV1038, 2015 WL 9583034, at *5 (N.D. Ohio Dec. 31, 2015). To satisfy due process, "personal jurisdiction can be either general or specific, depending upon the nature of the contacts that the defendant has with the forum state." *Bird v. Parsons*, 289 F.3d 865, 873 (6th Cir. 2002). When considering Rule 12(b)(2) motions, the Court is not bound by the pleadings and may consider affidavits from the moving party. *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991). To establish jurisdiction, a plaintiff's conclusory allegations in the complaint are insufficient. *Weller v. Cromwell Oil Co.*, 504 F.2d 927, 930 (6th Cir. 1974) (noting "the non-moving party may not rest upon allegations or denials in his pleadings but his response by affidavit or otherwise must set forth ***specific facts*** showing that the court has jurisdiction") (emphasis added). Here, Plaintiff has not—because it cannot—establish that this Court has personal jurisdiction over Romo UK. Instead of pleading facts, Plaintiff refashions legal elements. That is inadequate, and Plaintiff cannot circumvent its responsibility to plead factual allegations by restating legal terms of art.

### 1. General Jurisdiction Does Not Apply.

"[O]nly a limited set of affiliations with a forum will render a defendant amenable to all-purpose jurisdiction there." *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014). General jurisdiction requires "that corporation's affiliations with the State [to be] so continuous and systematic as to render [it] essentially at home in the forum State." *Daimler*, 571 U.S. at 138–39 (citing *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (internal quotations omitted).

---

[2] Plaintiff bears the burden of establishing that personal jurisdiction exists over Romo UK. *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir. 1996).

Ordinarily, a corporation is "at home" in its state of incorporation and the state where it has its principal place of business. *Id.* at 137. Accordingly, Plaintiff must plead facts plausibly supporting its claim that Romo UK had a continuous, systematic, and routine presence in Ohio.

Plaintiff's FAC falls short. Romo UK is not domiciled in Ohio, does not have its principal place of business in Ohio, and does not have any employees in the United States. Romo UK is based entirely out of the United Kingdom (U.K.). (Neil Sexton Decl., ¶¶3-8.) Plaintiff does not point to any Romo UK business operations, real property, bank accounts, assets, or interests of any kind in Ohio. The property that U.S.-based defendant Romo, Inc. uses in Ohio belongs to 16722 WPCD, a U.S. entity that leases the office to Romo, Inc. (*Id.* at ¶11.) Likewise, neither Romo UK nor Romo, Inc. own any showroom in the United States, and Romo, Inc. is the named lessee for the showrooms. (*Id.* at ¶¶10-12.) Thus, Romo UK is not "at home" in Ohio, and general jurisdiction does not apply.

### 2. Specific Jurisdiction and Ohio's Long Arm Statute Do Not Apply.

Specific jurisdiction is proper only if the defendant has minimum contacts with the forum state, such that maintenance of the suit does not offend traditional notions of fair play and substantial justice. *CompuServe*, 89 F.3d at 1264 (citing *Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945)). For specific jurisdiction to apply, (1) the plaintiff's claim must arise out of or relate to the defendant's contacts with the forum; (2); the defendant must have sufficient minimum contacts with the forum; and (3) the forum's exercise of jurisdiction over the defendant must be fair and reasonable. *Id.* at 1263 (citing *Reynolds v. Int'l Amateur Athletic Fed'n*, 23 F.3d 1110, 1116 (6th Cir. 1994)). These factors are similar to those considered under Ohio's Long Arm statute. For instance, to apply the statute, this Court should consider whether Romo UK transacted business in the State of Ohio or tortiously injured Plaintiff in Ohio. OH ST § 2307.382; *Pay(q)r*, 2015 WL 9583034, at *5.

Here, the statute does not reach Romo UK because there are no facts from the FAC demonstrating that Romo UK transacted business in the State of Ohio or tortiously injured Plaintiff. Likewise, specific jurisdiction does not apply because the FAC does not allege facts to establish that the claims asserted against Romo UK arise from Romo UK's contacts with Ohio, that Romo UK has sufficient minimum contacts with Ohio, or that the exercise of jurisdiction over Romo UK would be reasonable. In the FAC, Plaintiff does nothing more than rehash the legal elements of specific jurisdiction and Ohio's Long Arm statute and broadly claim that (1) Romo UK injured Plaintiff in Ohio, (2) Romo UK "purposefully availed [itself] of the state", and (3) the "events" underlying this case "arose from Defendants' transaction of business" in Ohio. (FAC ¶¶27, 31.)

### a.    Plaintiff's claims do not arise from Romo UK contacts.

To the extent any exist, Romo UK's contacts with Ohio have no causal relationship to Plaintiff's claims. Rather, it appears Plaintiff named Romo UK in this lawsuit solely because the Romo UK entities are part of the same corporate family as Romo, Inc. *See Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cnty.*, 582 U.S. 255, 263 (2017) (noting there must be "an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation."). Plaintiff attempts to gloss over the lack of any relationship of Romo UK to Plaintiff's claims by lumping the Defendants altogether in a single convoluted multi-page narrative, without any factual basis. (FAC ¶¶27-31.) None of Plaintiff's conclusory allegations are sufficient. Simply because the accused products ended up in a stream of commerce, which included minimal sales to Ohio consumers, is not enough. Moreover, Plaintiff's claim that consumers can purchase products in Romo, Inc.'s showrooms is incorrect, and its claim that Romo UK's website and social media account is targeted to Ohio is also incorrect. (Sexton Decl., ¶21 ("[C]onsumers cannot purchase

any products directly from these showrooms and are referred to trade customers for purchases.").) Likewise, Plaintiff's argument that jurisdiction is proper because Romo UK owns one hundred percent of the shares in Romo, Inc., and therefore "profited financially", deliberately ignores the distinct legal identity of a corporation. *Hitachi Med. Sys. Am., Inc. v. St. Louis Gynecology & Oncology, LLC*, 2011 WL 711568, at *4 (N.D. Ohio Feb. 22, 2011) (highlighting that whether a defendant transacts any business in Ohio is determined on a case-by-case basis). The Court should consider the acts of Romo UK separately and apart from U.S.-based Romo, Inc. and the other foreign defendants.

Additionally, to establish that its claims arise from Romo UK's contacts in Ohio, or that Ohio's Long-Arm statute should apply, Plaintiff must do more than simply allege some wrongdoing, such as copyright infringement. Plaintiff must show that Romo UK directed the alleged tortious conduct ***towards Ohio***, i.e., that Romo UK "[c]aused [Plaintiff] tortious injury in [Ohio] . . . with the purpose of injuring [Plaintiff], when [it] might reasonably have expected that [Plaintiff] would be injured thereby in [Ohio]." OH ST § 2307.382(A)(6) (2025). In doing so, Plaintiff ***must allege facts*** to support its copyright infringement claims. *See Campinha-Bacote v. Wick*, 1:15-CV-277, 2015 WL 7354014, at *3 (S.D. Ohio Nov. 20, 2015) (holding that Ohio's long-arm did not extend to a defendant where the plaintiff's argument rested entirely on unsworn, unverified allegations of copyright infringement and severe harm in the plaintiff's domicile). Instead, Plaintiff advances ***legal conclusions***—not factual allegations sufficient for this Court to exercise jurisdiction over Romo UK. (*See* FAC ¶¶27, 31 (where Plaintiff broadly alleges that "***all of the Defendants*** conduct continuous, systematic, and routine business" within Ohio and that Plaintiff was injured by Defendants).) The *Twombly/Iqbal* pleading standard requires a pleading of factual allegations that are plausible, not merely possible. *See Ashcroft*, 556 U.S. at 678;

*Twombly*, 550 U.S. at 570. The Court should disregard Plaintiff's bald assertion that its claims arise from Romo UK's contacts with Ohio.

### b. Romo UK does not have sufficient minimum contacts in Ohio.

"Minimum contacts" requires that a defendant purposefully avail itself of the privilege of conducting activities in the forum, invoking the benefits and protections of its laws. *CompuServe,* 89 F.3d at 1263. "The purposeful availment requirement serves to protect a defendant from being haled into a jurisdiction by virtue of 'random,' 'fortuitous,' or 'attenuated' contacts." *Intera Corp. v. Henderson*, 428 F.3d 605, 616 (6th Cir. 2005); *Calphalon Corp. v. Rowlette*, 228 F.3d 718 (6th Cir. 2000). The contacts must create a "substantial connection" with Ohio, such that Romo UK "should reasonably anticipate being haled into court there." *CompuServe,* 89 F.3d at 1263 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474–75 (1985); *Burnshire Development, LLC v. Cliffs Reduced Iron Corp.*, 198 F. App'x 425, 431 (6th Cir. 2006) (while transacting business may involve contracts, "the mere existence of a contract is insufficient to support jurisdiction"). Further, when determining whether Ohio's Long-Arm statute applies, courts in this District have identified two pertinent factors: (1) whether the foreign defendant initiated dealings to create a business relationship in the forum; and (2) "whether the parties conducted their negotiations or discussions" there, or on terms affecting it. *Pay(q)r*, 2015 WL 9583034, at *4.

Here, yet again, Plaintiff offers nothing other than a baseless, conclusory allegation that Romo UK purposefully availed itself of Ohio's privileges by engaging in business in Ohio. First, Romo, Inc.'s sales are not Romo UK's sales, and even those Romo, Inc. sales have been minimal and have not been directed to consumers in Ohio. Indeed, between 2020 and April of 2025, Romo Inc.'s sales in the State of Ohio accounted for just 1.6% of all U.S. sales. (Sexton Decl., ¶25); *Harris v. Lloyds TSB Bank, PLC*, 281 Fed. Appx. 489 (6th Cir. 2008) ("merely fortuitous" that less than one percent of a defendant-bank's account holders had residential forum addresses where

it marketed and sold accounts in the United Kingdom).

Second, that representatives of Romo UK's board of directors occasionally visited Romo, Inc.'s head office does not mean that Romo UK was directing its activities towards the Ohio market specifically. *Calphalon*, 228 F.3d at 722-23 (contractual performance in the forum and physical visits for that purpose were "random," "fortuitous," and "attenuated"). Third, Romo UK does not have an interactive website where customers in Ohio—or even the United States—can place orders. (Sexton Decl., ¶¶15-21); *Wireless Env't, LLC v. HooToo.com, Inc.*, 1:15CV1215, 2016 WL 4530617, at *4 (N.D. Ohio Aug. 30, 2016) ("As to websites, a defendant purposely avails itself of the privilege of acting in a state through its website if the website is interactive to a degree that reveals specifically intended interaction with residents of the state.") (internal quotations omitted). The consumer-facing version is, effectively, an online brochure, and the trade customer version of the website does not allow orders to be placed either; trade customers must instead reach out to a Romo, Inc. sales representative via phone or e-mail. (Sexton Decl., ¶¶18-20); *Wireless*, 2016 WL 4530617, at *4 (finding no personal jurisdiction where plaintiff failed to allege that the defendant's "website allows users to place orders nor store users' personal information, including names, email addresses, phone numbers and credit card data").

The Declaration of Neil Sexton on behalf of Romo UK shows that Romo UK has not directed any business activity towards Ohio consumers. And Plaintiff's FAC does not assert any factual allegations showing anything to the contrary. *Wireless*, 2016 WL 4530617, at *4 ("There is no evidence that Sunvalleytek designed nightlights or spotlights for the Ohio market.").

Fifth, although Romo UK leads global advertising and promotional campaigns, these campaigns are run out of the U.K., and Plaintiff does not point to anything in the substance of the advertisements (or the manner of their presentation) that would suggest that they specifically target

Ohio. (Sexton Decl., ¶¶24-25); *Wireless*, 2016 WL 4530617, at *4 ("Although Sunvalleytek made use of keywords and pop-ups from browser histories, there is no evidence that Sunvalleytek directed advertising or promotion of the accused products specifically to residents of the State of Ohio."). Sixth, that Romo UK ships products into the United States is insufficient on its own, especially given that **Romo, Inc.** is invoiced for any orders that are placed, and Romo UK is not the importer of those goods into the U.S. (Sexton Decl., ¶23); *Bridgeport*, 327 F.3d at 479–80 (merely placing "a product into the stream of commerce, without more, is not an act of the defendant purposely directed toward the forum state"); *Joe Solo Productions, Inc. v. Dawson*, 1:09 CV 555, 2009 WL 2232856 (N.D. Ohio July 23, 2009) ("Plaintiffs must show something more than passive availment of Ohio's opportunities to confer specific jurisdiction.").

Plaintiff's FAC does not plausibly allege facts to show that Romo UK "followed a course of conduct directed at" Ohio. *J. McIntyre Mach. v. Nicastro*, 564 U.S. 873, 883 (2011).

### c.    Exercising Jurisdiction Over Romo UK is unreasonable.

Ultimately, the Court should dismiss the Romo UK entities from this suit because Romo UK, its board members, executives, and employees are located on another continent thousands of miles away, and haling Romo UK into the Northern District of Ohio would be extremely burdensome, highly inconvenient, and generally unreasonable. *Intera*, 428 F.3d at 618 (noting the factors courts consider in determining whether the exercise of jurisdiction is reasonable); *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980) (the burden on the defendant to answer a suit in the forum is of foremost importance). It appears that the only reason Plaintiff filed suit in the Northern District of Ohio is simply because Romo, Inc., has an office there, and nothing more. None of the operative facts underlying the allegations against any defendant, much-less U.K.-based Romo UK, occurred in Ohio. *See Intera*, 428 F.3d at 618. Together, these circumstances make the exercise of jurisdiction over Romo UK untenable. Accordingly, pursuant

to Fed. R. Civ. P. 12(b)(2), Romo UK respectfully requests the Court dismiss Romo UK from this case.

### B. Plaintiff's Copyright Infringement Claims Should Be Dismissed.

The FAC should also be dismissed for failure to state a claim against Romo UK. *See* Fed. R. Civ. P. 12(b)(6). To prevail on a claim of copyright infringement, Plaintiff must demonstrate "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 361 (1991). To show "copying", "[P]laintiff may demonstrate that original elements of its work were copied through direct or indirect evidence." *Enchant Christmas Light Maze & Market Ltd. v. Glowco, LLC*, 958 F.3d 532, 536 (6th Cir. 2020) ("Direct evidence of copying is rare[.]"). "Since direct evidence of copying is rarely available, a plaintiff may establish an inference of copying by showing (1) access to the allegedly-infringed work by the defendant(s) and (2) a substantial similarity between the two works at issue." *Tiseo Architects, Inc. v. B & B Pools Service and Supply Co.*, 495 F.3d 344, 347 (6th Cir. 2007) (citing *Stromback v. New Line Cinema,* 384 F.3d 283, 293 (6th Cir. 2004)); *Kohus v. Mariol*, 328 F.3d 848, 853–54 (6th Cir. 2003).

Plaintiff's claims fall short on both fronts. As an initial matter, Plaintiff does not allege any of the hallmarks of "direct evidence" copying by Romo UK, "such as party admissions, witness accounts of the physical act of copying, and common errors in the works of plaintiffs and the defendants[.]" *Enchant*, 958 F.3d at 536 (citing *Parker v. Winwood*, 938 F.3d 833, 836 (6th Cir. 2019); *Ellis v. Diffie*, 177 F.3d 503, 506 (6th Cir. 1999); *Rottlund Co. v. Pinnacle Corp.*, 452 F.3d 726, 732 (8th Cir. 2006)). Accordingly, "access will be an essential element of the case." *Antony v. Buena Vista Books, Inc.*, Civ. A. No. 18-205-DLB-CJS, 2020 WL 5995590, at *5 (E.D.Ky., 2020) ("Access is an element of proving copyright infringement if there is no proof of direct copying.").

### 1.     Plaintiff fails to plausibly allege that Romo UK accessed its works.

Plaintiff's failure to plausibly allege that Romo UK accessed Plaintiff's Instagram photographs[3] dooms its claims. Since "access" is rarely a focus in Sixth Circuit appeals, courts in the Sixth Circuit have found the Ninth Circuit's jurisprudence particularly instructive on the issue. *See King Records, Inc. v. Bennett*, 438 F. Supp. 2d 812, 846 (M.D. Tenn. 2006) ("Two forms of circumstantial evidence are accepted as evidence of reasonable access: (1) a particular chain of events establishing defendant's access to plaintiff's work, or (2) plaintiff's work has been widely disseminated") (citing *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 482 (9th Cir. 2000)). Here, Plaintiff makes the conclusory allegation that its Instagram posts were so widely disseminated that either Romo UK saw its posts, or alternatively, the other Defendants (or some other third-party) saw the posts, and thereafter, gave Romo UK the photographs. (FAC, ¶¶66-69.) These allegations are wholly conclusory; they fall far short of being "plausible," as required for pleading under *Iqbal/Twombly*. *See Ashcroft*, 556 U.S. at 678; *Twombly*, 550 U.S. at 570. As insufficient as these conclusory allegations are, they make clear that Plaintiff is relying primarily on the "wide dissemination" theory, which requires Plaintiff's works to be so widely disseminated such that it raises "'a reasonable possibility' for [Romo UK] to have viewed [its] work[s]—'not merely a bare possibility.'" *Woodland v. Hill*, No. 23-55418, 2025 WL 1417103, at *3 (9th Cir. 2025) (quoting *Art Attacks Ink, LLC v. MGA Ent. Inc.*, 581 F.3d 1138, 1143 (9th Cir. 2009). Indeed, the Court should be wary of speculative "wide dissemination" claims. *Woodland*, 2025 WL 1417103, at *3 ("A theory of access cannot be 'mere speculation or conjecture.'") (quoting *Three Boys*, 212 F.3d

---

[3] Plaintiff does not allege that Romo UK ever saw the sculptural work, or that it ever had an opportunity to see the sculptural work (direct access). Plaintiff does not allege that the sculpture was displayed anywhere outside of its New York studios, nor that any individual or entity based in this District—let alone the State of Ohio—has ever heard of the sculpture's existence. Instead, Plaintiff is asserting that Romo UK accessed both its sculpture and photographs via Plaintiff's Instagram posts. (FAC, ¶¶66-68.)

at 482). For a work is not "widely disseminated" just because its creator self-servingly labels it so. Rather, courts have looked at certain objective indicia that tend to support a claim that the work is widely disseminated. *See, e.g., Three Boys*, 212 F.3d at 482 (finding no widespread dissemination of a song where the song "never topped the Billboard charts" and never aired in defendants home state at the time of its release).[4] Likewise, plaintiffs rely on "the degree of a work's commercial success and on its distribution through . . . relevant mediums" *Loomis v. Cornish*, 836 F.3d 991, 997 (9th Cir. 2016).

Naturally, distribution of works online looks quite different from distribution in the physical world. Still, though the Internet is vast, "*availability* should not be confused with *access*." *Woodland*, 2025 WL 1417103, at *4 (emphasis in original) ("It is not easy to stumble upon a single webpage amid the 'vast quantity of material on the Internet'") (quoting *United States v. Am. Libr. Ass'n, Inc.*, 539 U.S. 194, 208 (2003)). In fact, courts have found the mere allegation that a plaintiff posted their works online is insufficient, since a plaintiff (in satisfying the *Iqbal/Twombly* standard) must plead sufficient facts to demonstrate that access was "a reasonable possibility, not merely a bare possibility." *Art Attacks*, 581 F.3d at 1145 (insufficient that the work was on a website). Helpfully, about ten days ago, the Ninth Circuit directly addressed the evolving nature of online distribution, where works are increasingly posted on algorithm-based social media platforms, like Instagram:

> While standalone websites make content available to anyone in the world, digital platforms do that and more. Digital platforms create online communities and actively connect content creators with content consumers. Platforms like Instagram are designed to facilitate the discovery and sharing of available content *by using algorithms to recommend tailored content to consumers* [and to] continually push *individualized* content to consumers *based on each individual's preferences, usage, and habits* . . .. To sum up, social media and other digital-sharing platforms could make it easier for plaintiffs to show that defendants

---

[4] For that reason, it is not uncommon to find that, when tested, a plaintiff's "wide dissemination" claim falls short. *Art Attacks*, 581 F.3d at 1143-45 (no wide dissemination found).

had access to their materials—***but only if they can show that the defendants had a reasonable chance of seeing their work under that platform's algorithm or content-sharing policy. That is a big "if"—and, as explained below, Woodland has fallen short here.***

*Woodland*, 2025 WL 1417103, at *4-5 (emphasis added).

Here, Plaintiff does not plausibly allege any facts that Instagram uses an algorithm to recommended content tailored to Romo UK such that Romo UK would have seen the subject Instagram photos. In fact, Plaintiff does not even make the conclusory allegation; i.e., that "Instagram's recommendation algorithm increased the chances that [Romo UK] viewed [Plaintiff's] works" or that the parties' "respective Instagram profiles 'share[] in sub-genres of similar content . . .' [such that] Instagram's algorithm would likely have recommended [Plaintiff's] posts to [Romo UK]." *Id.* at *5 (noting that "Instagram's purported policy does not support" that theory anyway). Plaintiff has not claimed (1) that Romo UK, any employee of Romo UK, nor any individual in the UK, ever followed and interacted in any way with Plaintiff's Instagram account; (2) that Romo UK likes, shares, comments on, or follows similar accounts; (3) that the photographs reached audiences far and wide, or that the photographs were ever republished by widely disseminated magazines, newspapers, or other online media; or (4) that anyone of note or mass following discussed, highlighted, or reposted the photographs. *See id.* ("Woodland's sources explain that Instagram suggests posts based on the accounts that users follow; the posts users like, share, and comment on; users' history of connecting with accounts; and how popular a particular post is and how others have interacted with that post."). Instead, as in *Woodland*, Plaintiff only advances the insufficient allegation that Romo UK has an Instagram account. *See id.* ("[I]t is not enough to simply allege that Hill is an active user of Instagram and thus had a reasonable possibility of viewing Woodland's photos" on Instagram, a platform that has "over a billion users

and many more posts[.]").[5]

Further, Plaintiff does not even identify how many Instagram followers it had as of 2019, 2020, or 2022. It only shares that "[a]s of **the date of this First Amended Complaint**, Plaintiff's Instagram account has 98,000 followers." (FAC, ¶66 (emphasis added).) Indeed, based on Plaintiff's screenshots, the Instagram posts at issue appear to have had a rough average of 1,500 "likes" or user interactions, and at most, 2,708 "likes" between September 30, 2019, and March 13, 2025, the date of the First Amended Complaint. (FAC, ¶4. (nearly four and a half years)); *see, e.g., Rice v. Fox Broad. Co.*, 330 F.3d 1170, 1178 (9th Cir. 2003) (no access found given only 17,000 copies sold); *Jason v. Fonda*, 526 F. Supp. 774, 776 (C.D. Cal. 1981), *adopted and aff'd by Jason v. Fonda*, 698 F.2d 966, 967 (9th Cir. 1982) (plaintiff failed to show access where book sold fewer than 1,000 copies). Plaintiff provides no explanation for such plain evidence of low user awareness on a platform hosting **billions** of posts. Accordingly, Plaintiff does not adequately allege that "access" to the photographs was a reasonable possibility, and its copyright infringement claims fail for that reason alone.

### 2. The Accused Products Are Not Substantially Similar to the Works.

In this Circuit, Plaintiff's failure to allege access means that any *substantial* similarities are ultimately irrelevant. *See Jones v. Blige*, 558 F.3d 485, 493 (6th Cir. 2009). Indeed, "[t]he failure to offer proof of access cannot be excused in this case, because the [accused products and works at] issue are not so **strikingly** similar as to 'preclude the possibility of independent creation.'" *Id.*

---

[5] Similarly, just like the plaintiff in *Woodland*, here, Plaintiff constructs "a [speculative] chain of events to bolster [its] claim that [Romo UK] had a reasonable possibility of viewing [Plaintiff's] photos on Instagram." *Woodland*, 2025 WL 1417103, at *5; (FAC, ¶¶101-03 (alleging that Romo UK "reproduced one or more of the Photographs found on Plaintiff's Instagram account, @wifenyc, to create a pattern or digitally rendered copy . . . that was then used to create the Unauthorized Farrah Interiors Products"). Still, Plaintiff utterly fails to plead that any Defendant had contacted Plaintiff, "even indirectly." *Jones v. Blige*, 558 F.3d 485, 492 (6th Cir. 2009).

(quoting *Murray Hill Publications, Inc. v. Twentieth Century Fox Film Corp.*, 361 F.3d 312, 317 (6th Cir. 2004)). Accordingly, it is not enough to allege that Romo UK's products "bear a passing resemblance" to the copyrighted works—rather, the similarities must be striking. *Id.* Yet, not only does Plaintiff fail to plausibly allege striking similarity, Plaintiff also does not plausibly meet the much lower bar of substantial similarity. Substantial similarity, which is measured from the viewpoint of "the ordinary reasonable person", requires that two works be "so alike that the later (unprotected) work can fairly be regarded as appropriating the original expression of the earlier (protected) work." *Enchant Christmas*, 958 F.3d at 538–39 (cleaned up and citations omitted). To analyze substantial similarity, courts (1) "filter out the unoriginal, unprotectible elements"; and (2) "determine whether the allegedly infringing works, or elements of those works, are substantially similar to [the] protected works, or protected elements of [the] work." *Id.* at 537.[6]

Here, Plaintiff asserts that the only copyrightable elements of its photographs—the "elements that reflect [Plaintiff's] creative choices" as a photographer—are the "different angles and lighting of the Artwork." (FAC, ¶4); *Rentmeester v. Nike, Inc.*, 883 F.3d 1111, 1119 (9th Cir. 2018); *see also Ets-Hokin v. Skyy Spirits, Inc.*, 225 F.3d 1068, 1077 (9th Cir. 2000) (noting photographs' objective elements). Yet, looking at these photographs, not one allegedly original element from them was appropriated by Romo UK. Indeed, an objective side-by-side comparison of Plaintiff's photographs and the accused interiors products demonstrates that none of Plaintiff's choices with respect to shading, lighting, or angling are incorporated into the accused products and advertising:

---

[6] "[N]on-infringement can be determined on a motion to dismiss." *Christianson v. W. Pub. Co.*, 149 F.2d 202, 203 (9th Cir. 1945).



(FAC, ¶¶4; 31.) It is clear that Plaintiff's "shadows" or "lighting arrangements" are nowhere to be found in the accused products. Accordingly, Plaintiff's photographs are neither substantially, nor strikingly, similar to the accused interiors products.

Further, Plaintiff does not plausibly allege that the sculpture is strikingly similar to the accused interiors products. Despite Plaintiff's lengthy FAC, Plaintiff does not settle on the elements that it considers protectable, instead pleading illusory categories of unknown expression such as bent plants, "geometric paint patterns", "color-tipped fronds", and "color blocking expressions and color schemes . . . ." (FAC, ¶¶12, 24.)[7] Illusory as Plaintiff's pleading is, Plaintiff's identification of these elements is quite telling. None of Plaintiff's color and pattern choices are *substantially* or *strikingly* similar to Romo UK's products:

---

[7] Plaintiff not only fails to identify the elements of the sculpture that consistently carry through to the photographs but also repeatedly shifts the scope of its rights depending on the products and Defendant being accused. *Cf.* FAC, ¶¶12, 24 and FAC, ¶38 (missing the blue hue and the specifically proportioned blue and pink paint patterns).



*Certain Differences

(FAC, ¶31.)

As shown above, the fabrics have different paint patterns, color schemes, and compositions from the sculpture. Indeed, it is apparent that the fabrics are missing the blue hue, the specifically proportioned blue and pink paint patterns, and the entire second frond and its distinctive curve, which Plaintiff claims as its core creative "contributions" to the otherwise living plant. (FAC, ¶¶59-60.) Accordingly, Plaintiff does not plausibly allege that Romo UK copied anything, and Plaintiff's copyright infringement claims should therefore be dismissed.

### C. Plaintiff's Indirect Infringement Claims Should Be Dismissed.

To state a claim for contributory infringement, a plaintiff must allege facts that a defendant "with knowledge of the infringing activity, induces, causes, or materially contributes to the infringing conduct of another." *Bridgeport Music, Inc. v. Rhyme Syndicate Music*, 376 F.3d 615, 621 (6th Cir. 2004). That is, "a plaintiff must allege: (1) direct copyright infringement [by] a third-party; (2) knowledge by the defendant that the third-party was directly infringing; and (3) [defendant's] material contribution to the infringement." *Parker v. Google, Inc.*, 242 F. App'x 833, 837 (3d Cir. 2007). And with respect to scienter requirement, contributory infringement requires that the secondary infringer **know or have reason to know** of the direct infringement. *Arista Recs.,*

16

*LLC v. Doe 3*, 604 F.3d 110, 118 (2d Cir. 2010); *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1020 (9th Cir. 2001). To state a claim for vicarious infringement, a plaintiff must allege facts that the defendant had the right and ability to supervise the infringing activity. *Bridgeport Music, Inc. v. WM Music Corp.*, 508 F.3d 394, 400 (6th Cir. 2007) (citation omitted). Here, Plaintiff fails to advance a claim of direct copyright infringement, and its indirect infringement claims fail for that reason alone. Plaintiff's indirect infringement claims must also be dismissed given that there is no rhyme or reason for its *ad hoc* approach to pleading. Indeed, Plaintiff asserts that every defendant supervised, controlled, or otherwise contributed to the allegedly infringing acts of every other defendant. (FAC, ¶¶66-69.) Plaintiff sweepingly claims (without any basis) that "[a]ll Defendants had an active role in the design process of the Temperley London x ROMO 'A World Less Ordinary' Interiors collection." (FAC, ¶69.) Yet, Plaintiff does not allege facts suggesting that Romo UK had knowledge of any allegedly infringing activity of any other defendant, much less having materially contributed to or supervised it. Indeed, Plaintiff does not explain its allegation that the Romo entities share the same board of directors, nor its relevance to the vicarious and contributory infringement claims. What do these individuals have to do with the accused activities. Tellingly, critical questions such as "who", "what", "when", "where", "why", and "how" are ignored entirely. Plaintiff has not alleged facts that plausibly establish that Romo UK had anything to do with the claims against the other defendants, much less controlled them or know about their alleged infringement of Plaintiff's copyrights. Accordingly, Plaintiff's reductive vicarious and contributory infringement allegations should be dismissed with prejudice.

### D. Plaintiff's DMCA Claims Should Be Dismissed.

In addition to copyright infringement, Plaintiff is asserting claims for the removal of copyright management information (CMI) and the distribution of false CMI under the Digital Millenium Copyright Act (DMCA), 17 U.S.C. § 1202. (FAC, ¶¶177-186.) It is unclear why

Plaintiff is doing so. The DMCA protects against the removal or alteration of copyright management information ("CMI"), which is defined in part as identifying information about the author of a work "conveyed in connection with" the copyrighted work. 17 U.S.C. § 1202(c); *Mango v. BuzzFeed, Inc.*, 356 F. Supp. 3d 368, 376 (S.D.N.Y. 2019), *aff'd*, 970 F.3d 167 (2d Cir. 2020). To establish a removal violation under the DMCA, a plaintiff must plead (1) the existence of CMI on the infringed work, (2) removal or alteration of that information, and (3) the removal or alteration was done intentionally. *Craig v. UMG Recordings, Inc*., 380 F. Supp. 3d 324, 337 (S.D.N.Y. 2019).

The DMCA also protects against the creation and distribution of "copies" of a work without attribution. 17 U.S.C. § 1202(a)-(b). Courts have clarified what is and is not a "copy" under the DMCA. For example, in *Faulkner Press, L.L.C. v. Class Notes, L.L.C.*, the court noted that "[a]n action for removal of copyright management information ***requires the information to be removed from a plaintiff's product or original work***" and found that, instead of the CMI having been "removed from the copyrighted works", the copyrighted "information from [the professor's] courses was allegedly ***copied into a different form and then incorporated into the*** [alleged infringer's] note packages" being sold to students. 756 F. Supp. 2d 1352, 1359 (N.D. Fla. 2010) ("No copyright management information was removed from Dr. Moulton's product or original work."). Here, Plaintiff fails to state a claim, because the photographs upon which Plaintiff's claim is based are not Plaintiff's photographs. Likewise, Plaintiff does not claim that it created or captured Romo UK's promotional photographs of the accused pillows, fabrics, or interiors products. Plaintiff did not create Romo UK's swatch books, PDFs, and brochures. Nor does Plaintiff allege any facts tending to establish that Romo UK ever distributed the copyrighted works knowing both that the CMI was altered or incorrect and that distribution would induce

infringement. *See Mango*, 356 F. Supp. 3d at 377. Of course, Romo UK's copyright management statement on its own materials is not false at all. *See Faulkner*, 756 F. Supp. 2d at 1359 ("Class Notes did not add false copyright management information in violation of the DMCA by printing 'Einstein's Notes (C)' on its note packages. The note packages that Class Notes produced ***were a different product*** from Dr. Moulton's work even if, as Faulkner Press alleges, they included materials from Dr. Moulton's work.") (emphasis added). Ultimately, Plaintiff identifies interiors products and advertisements that it did not create, yet insists that they are "copies" of its works. (FAC, ¶¶108-110.)[8] Accordingly, there should have been no attribution given to Plaintiff for purposes of the DMCA.[9] Moreover, Plaintiff does not even make a passing attempt at alleging that Romo UK acted with the necessary intent. For example, the court in *Harrington* dismissed the plaintiff's claim for not pleading sufficient facts to infer that the defendant "knew or had a reasonable basis to know that the removal or alteration of [copyright management information] or the distribution of [w]orks with [copyright management information] removed ***will*** aid infringement." *Harrington v. Pinterest, Inc*., No. 5:20-cv-05290-EJD, 2022 WL 4348460, at *14- 15 (N.D. Cal. Sept. 19, 2022) (emphasis added); *see also Stevens v. Corelogic, Inc.*, 899 F.3d 666, 674 (9th Cir. 2018) (requiring a plaintiff to demonstrate a "past pattern of conduct or modus operandi" to establish the requisite mental state in the context of the DMCA, a statute "requiring knowledge that a future action 'will' occur"). Instead of pleading facts that would demonstrate a past pattern or *modus operandi*, Plaintiff simply points to the present suit as evidence of Romo

---

[8] Perhaps recognizing the infirmity of its claims, Plaintiff constructs (without any factual basis) an imagined step of making "identical copies of the Photographs posted on Plaintiff's Instagram[.]" (FAC, ¶180.) This unsupported allegation, that unidentified copies (e.g., reproductions) of Plaintiff's photographs were made, cannot rescue Plaintiff's DMCA claims.
[9] Additionally, Plaintiff has not established that Sophia Parker Studios had any identifying CMI conveyed in connection with the pictures posted to the personal Instagram account, @WIFENYC.

UK's "modus operandi". (FAC, ¶183.) Plaintiff's DMCA claims against Romo UK should therefore be dismissed.

### E. Plaintiff Is Not Entitled to Statutory Damages or Attorney's Fees.

A copyright holder cannot be awarded statutory damages or attorney's fees if the infringing activity started after the date of first publication but before the effective date of registration of the work, ***unless the copyright for the infringed work was registered within three months after the work was first published***. 17 U.S.C. § 412. The Sixth Circuit has already conclusively addressed this "brightline rule". *Johnson v. Jones*, 149 F.3d 494, 504–06 (6th Cir. 1998) ("Johnson cannot recover statutory damages or attorney's fees under the Copyright Act if Tosch's infringement 'commenced' before the copyright was registered."). "[I]nfringement 'commences' for the purposes of § 412 when the ***first*** act in a series of acts constituting continuing infringement occurs." *Id.* (noting the statute's purposed "would be thwarted by holding that infringement is 'commenced' for the purposes of § 412 each time an infringer commits another in an ongoing series of infringing acts"). Here, Plaintiff alleges that the infringement began "in or around February or March 2022", an entire year before it registered the sculpture. (FAC, ¶8.) Yet, Plaintiff did not register the sculptural work until it "discovered" the "Farrah Kimono" in February 2023. (FAC, ¶¶7-8.). Given the first alleged act began well before the earliest of the three registration dates, the door to statutory damages is fully shut. Plaintiff continues to pursue this claim anyway. The Court should find that Plaintiff is precluded from recovering attorney's fees or statutory damages pursuant to 17 U.S.C. 504(c), and those claims should therefore be dismissed. 17 U.S.C. § 412.

## III. CONCLUSION

For the foregoing reasons, The Romo Group Ltd., Romo Ltd., and Romo (Holdings) Ltd. respectfully request that the Court grant their Motion to Dismiss Plaintiff's First Amended Complaint with prejudice.

Dated: May 27, 2025

Respectfully submitted,

By: */s/ Jeffer Ali*

Meredith K. Collier
Todd R. Tucker
**CALFEE, HALTER & GRISWOLD LLP**
1405 East Sixth Street
Cleveland, OH 44114
Telephone: 216.622.8200
Facsimile: 216.241.0816
mcollier@calfee.com
ttucker@calfee.com

Jeffer Ali*
**HUSCH BLACKWELL LLP**
80 South Eighth Street, Suite 4800
Minneapolis, Minnesota 55402
Telephone: 612.852.2700
Facsimile: 612.852.2701
jeff.ali@huschblackwell.com

Sharif Ahmed*
**HUSCH BLACKWELL LLP**
2415 East Camelback Road, Suite 500
Phoenix, AZ 85016
Telephone: 480.824.7890
Facsimile: 480-824-7905
sharif.ahmed@huschblackwell.com

*Admitted pro hac vice*

**Attorneys for The Romo Group Ltd., Romo Ltd., and Romo (Holdings) Ltd.**

## CERTIFICATE OF SERVICE

I hereby certify that today, this 27th day of May 2025, I caused the foregoing document to be filed electronically with the Clerk of Court, and therefore served upon all counsel of record.

_/s/ Jeffer Ali_

## **LOCAL RULE 7.1(f) CERTIFICATION**

Pursuant to Local Civil Rule 7.1(f), I hereby certify that this case has not been assigned to any track and that the page limitation for this memorandum is fewer than twenty (20) pages. I hereby further certify that the foregoing Memorandum adheres to this limitation.

*/s/ Jeffer Ali*