# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | |
|---|---|
| Sophia Parker Studios, Inc., trading as WIFE NYC, | Case No. 1:24-cv-02086-PAB |
|      Plaintiff, | Judge Pamela A. Barker |
| v. | Magistrate Judge Reuben J. Shepherd |
| Alice Temperley MBE, TMLL Ltd. (trading as Temperley London), Temperley Holdings Ltd. (t/a Temperley Holdings), Romo Ltd. (t/a ROMO and/or Romo Group), Romo (Holdings) Ltd., Romo, Inc. (t/a ROMO Fabrics and Wallcoverings and ROMO USA, and Does 1-20, Inclusive, | **DEFENDANTS ALICE TEMPERLEY, TMLL LTD., TEMPERLEY HOLDINGS, LTD.'S MOTION TO DISMISS FIRST AMENDED COMPLAINT PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(b)(2) AND (6)** |
|      Defendants. | |

## DEFENDANTS ALICE TEMPERLEY, MBE, TMLL LTD., AND TEMPERLEY HOLDINGS, LTD.'S MOTION TO DISMISS FIRST AMENDED COMPLAINT PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(b)(2) AND (6)

Pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6), Defendants Alice Temperley, MBE, TMLL Ltd., and Temperley Holdings Ltd. (collectively "Temperley London"), by and through the undersigned counsel, hereby moves to dismiss the First Amended Complaint (FAC) for lack of personal jurisdiction and to dismiss Plaintiff's (1) claims for copyright infringement, as well as contributory, vicarious, and willful copyright infringement, (2) claims for false distribution of copyright management information and removal of copyright management information, and (3) claims for statutory damages and attorneys' fees. In support, Temperley London submits this Memorandum of Law contemporaneously with this Motion.

## <u>TABLE OF CONTENTS</u>

BRIEF STATEMENT OF ISSUES TO BE DECIDED ................................................................ vi

SUMMARY OF ARGUMENT ............................................................................................... vii

I.    LEGAL STANDARD ................................................................................................... 1

II.   ARGUMENT .............................................................................................................. 1

   A.   This Court Lacks Personal Jurisdiction Over Temperley London ...................... 1

      1.   General Jurisdiction Does Not Apply .......................................................... 2

      2.   Specific Jurisdiction and Ohio's Long Arm Statute Do Not Apply .............. 3

         a. Plaintiff's claims do not arise from Temperley contacts ........................... 4

         b. Temperley London does not have sufficient minimum contacts in Ohio ... 6

         c. Exercising Jurisdiction Over Temperley is unreasonable ........................... 8

   B.   Plaintiff's Copyright Infringement Claims Should Be Dismissed ...................... 9

      1.   Plaintiff Does Not Plausibly Allege Access ................................................ 9

      2.   The Accused Products Are Not Substantially Similar to the Works ........... 13

   C.   Plaintiff's Indirect Infringement Claims Should Be Dismissed ....................... 16

   D.   Plaintiff's DMCA Claims Should Be Dismissed ............................................. 17

   E.   Plaintiff Is Not Entitled to Statutory Damages or Attorney's Fees .................. 19

III.  CONCLUSION ......................................................................................................... 20

# TABLE OF AUTHORITIES

Page(s)

Cases

*A&M Records, Inc. v. Napster, Inc.*,
239 F.3d 1004 (9th Cir. 2001) ............................................................................................. 16

*AlixPartners, LLP v. Brewington*,
836 F.3d 543 (6th Cir. 2016) ................................................................................................. 4

*Antony v. Buena Vista Books, Inc.*,
Civ. A. No. 18-205-DLB-CJS, 2020 WL 5995590 (E.D. Ky., 2020) ..................................... 9

*Arista Recs., LLC v. Doe 3*,
604 F.3d 110 (2d Cir. 2010).................................................................................................. 16

*Art Attacks Ink, LLC v. MGA Ent. Inc.*,
581 F.3d 1138 (9th Cir. 2009) ......................................................................................... 10, 11

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009).................................................................................................... 1, 6, 10

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007).................................................................................................... 1, 6, 10

*Bird v. Parsons*,
289 F.3d 865 (6th Cir. 2002) ................................................................................................. 2

*Bridgeport Music, Inc. v. Rhyme Syndicate Music*,
376 F.3d 615 (6th Cir. 2004) ............................................................................................... 16

*Bridgeport Music, Inc. v. Still N The Water Pub.*,
327 F.3d 472 (6th Cir. 2003) ................................................................................................. 1

*Bridgeport Music, Inc. v. WM Music Corp.*,
508 F.3d 394 (6th Cir. 2007) ............................................................................................... 16

*Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cnty.*,
582 U.S. 255 (2017)................................................................................................................ 4

*Burger King Corp. v. Rudzewicz*,
471 U.S. 462 (1985)................................................................................................................ 6

*Burnshire Development, LLC v. Cliffs Reduced Iron Corp.*,
198 F. App'x 425 (6th Cir. 2006) ........................................................................................... 6

*Calphalon Corp. v. Rowlette*,
228 F.3d 718 (6th Cir. 2000) ................................................................................................. 6

*Campinha-Bacote v. Wick*,
1:15-CV-277, 2015 WL 7354014 (S.D. Ohio Nov. 20, 2015) ............................................... 5

*Christianson v. W. Pub. Co.*,
149 F.2d 202 (9th Cir. 1945) ............................................................................................... 14

*CompuServe, Inc. v. Patterson*,
89 F.3d 1257 (6th Cir. 1996) ......................................................................................... 2, 3, 6

*Craig v. UMG Recordings, Inc.*,
380 F. Supp. 3d 324 (S.D.N.Y. 2019)................................................................................... 18

*Daimler AG v. Bauman*,
571 U.S. 117 (2014)......................................................................................................... 2, 3

iii

*Enchant Christmas Light Maze & Market Ltd. v. Glowco, LLC*,
   958 F.3d 532 (6th Cir. 2020) .................................................................................. 9, 13, 14

*Faulkner Press, L.L.C. v. Class Notes, L.L.C.*
   756 F. Supp. 2d 1352 (N.D. Fla. 2010) .......................................................................... 18

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc.*,
   499 U.S. 340 (1991) ........................................................................................................... 9

*Ford Motor Co. v. Montana Eighth Judicial Dist. Court*,
   592 U.S. 351 (2021) ........................................................................................................... 3

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
   564 U.S. 915 (2011) ........................................................................................................... 2

*Hanson v. Denckla*,
   357 U.S. 235 (1958) ........................................................................................................... 8

*Harrington v. Pinterest, Inc.*,
   No. 5:20-cv-05290-EJD, 2022 WL 4348460 (N.D. Cal. Sept. 19, 2022) ........................ 19

*Harris v. Lloyds TSB Bank, PLC*,
   281 Fed. Appx. 489 (6th Cir. 2008) .................................................................................. 7

*Hitachi Med. Sys. Am., Inc. v. St. Louis Gynecology & Oncology, LLC*,
   No. 5:09-cv-2613, 2011 WL 711568 (N.D. Ohio Feb. 22, 2011) ...................................... 4

*Intera Corp. v. Henderson*,
   428 F.3d 605 (6th Cir. 2005) ......................................................................................... 6, 8

*Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*,
   326 U.S. 310 (1945) ........................................................................................................... 3

*Joe Solo Productions, Inc. v. Dawson*,
   1:09 CV 555, 2009 WL 2232856 (N.D. Ohio July 23, 2009) ............................................ 6

*Johnson v. Jones*,
   149 F.3d 494 (6th Cir. 1998) ........................................................................................... 20

*Jones v. Blige*,
   558 F.3d 485 (6th Cir. 2009) ..................................................................................... 12, 13

*King Records, Inc. v. Bennett*,
   438 F. Supp. 2d 812 (M.D. Tenn. 2006) ........................................................................ 10

*Kohus v. Mariol*,
   328 F.3d 848 (6th Cir. 2003) ............................................................................................ 9

*Loomis v. Cornish*,
   836 F.3d 991 (9th Cir. 2016) ........................................................................................... 11

*Mango v. BuzzFeed, Inc.*,
   356 F. Supp. 3d 368 (S.D.N.Y. 2019) ....................................................................... 17, 18

*Murray Hill Publications, Inc. v. Twentieth Century Fox Film Corp.*,
   361 F.3d 312 (6th Cir. 2004) ........................................................................................... 13

*Parker v. Google, Inc.*,
   242 F. App'x 833 (3d Cir. 2007) ..................................................................................... 16

*Parker v. Winwood*,
   938 F.3d 833 (6th Cir. 2019) ............................................................................................ 9

*Pay(q)r, LLC v. Sibble*,
   5:15CV1038, 2015 WL 9583034 (N.D. Ohio Dec. 31, 2015) ................................... 2, 4, 6

*Stevens v. Corelogic, Inc.*,
   899 F.3d 666 (9th Cir. 2018) ........................................................................................... 19

*Stromback v. New Line Cinema,*
   384 F.3d 283 (6th Cir. 2004) ................................................................ 9

*Sullivan v. LG Chem, Ltd.,*
   79 F.4th 651 (6th Cir. 2023) ................................................................ 3

*Theunissen v. Matthews,*
   935 F.2d 1454 (6th Cir. 1991) .............................................................. 2

*Three Boys Music Corp. v. Bolton,*
   212 F.3d 477 (9th Cir. 2000) .............................................................. 10

*Tiseo Architects, Inc. v. B & B Pools Service and Supply Co.,*
   495 F.3d 344 (6th Cir. 2007) ................................................................ 9

*United States v. Am. Libr. Ass'n, Inc.,*
   539 U.S. 194 (2003) ........................................................................... 11

*Weller v. Cromwell Oil Co.,*
   504 F.2d 927 (6th Cir. 1974) ................................................................ 2

*Wireless Env't, LLC v. HooToo.com, Inc.,*
   1:15CV1215, 2016 WL 4530617 (N.D. Ohio Aug. 30, 2016) ............... 7

*Woodland v. Hill,*
   No. 23-55418, 2025 WL 1417103 (9th Cir. 2025) .................... 10, 11, 12

*World-Wide Volkswagen Corp. v. Woodson,*
   444 U.S. 286 (1980) ............................................................................ 8

Statutes

17 U.S.C. § 412 .................................................................................... 20
17 U.S.C. § 504 .................................................................................... 20
17 U.S.C. § 1202 ............................................................................ 17, 18
OH ST § 2307.382 ........................................................................ 2, 4, 5

Rules

Fed. R. Civ. P. 12 ........................................................................... 2, 8, 9

## BRIEF STATEMENT OF ISSUES TO BE DECIDED

1. Should Plaintiff's First Amended Complaint be dismissed on the basis that this Court lacks personal jurisdiction over Temperley London, and that, in any event, Plaintiff has failed to sufficiently plead facts tending to show this Court has jurisdiction?

2. Does Plaintiff fail to state a claim for direct copyright infringement against Temperley London where Plaintiff alleges that Temperley London infringed the copyrights in the sculpture and photographs by allegedly reproducing photographs, even though (1) Plaintiff's photograph registrations specifically exclude the sculpture, (2) Plaintiff has not adequately described the copyrightable subject matter of either the sculpture or the photographs, (3) Plaintiff has not delineated the subject matter between the works, (4) Plaintiff's narrative lacks supporting factual allegations, (5) Plaintiff instead relies on purely speculative claims about the reproduction of Instagram photographs to then be used to create infringing products, and (6) in any event, Plaintiff fails to plausibly allege that Temperley London had access to the photographs since the claim that the photographs were widely disseminated is wholly unsupported and insufficient as a matter of law?

3. Does Plaintiff fail to state a claim for vicarious or contributory infringement against Temperley London where Plaintiff fails to allege any facts that suggest Temperley London either had knowledge of any allegedly infringing activity of any other Defendant, or materially contributed to the alleged infringement?

4. Does Plaintiff fail to state a cognizable claim under the Digital Millenium Copyright Act (DMCA) where Plaintiff does not allege that its works included proper copyright management information (CMI), and that Temperley London removed Plaintiff's CMI or distributed works with Plaintiff's CMI altered or removed?

5. Does Plaintiff fail to state a cognizable claim under the DMCA where Plaintiff (1) does not allege that its works included proper CMI, (2) does not actually allege that the accused products are "copies" subject to the DMCA, (3) does not allege that Temperley London removed Plaintiff's CMI, if any, from Plaintiff's works, (4) does not allege Temperley London distributed Plaintiff's works with Plaintiff's CMI altered or removed, and (5) does not allege that Temperley London had knowledge of any of the above?

6. Is Plaintiff precluded from seeking statutory damages and/or attorneys' fees for alleged copyright infringement when Plaintiff registered its works well beyond the three-month post-publication window under the Copyright Act, 17 U.S.C. § 412?

## SUMMARY OF ARGUMENT

1. Where this Court lacks personal jurisdiction over Temperley London, and Plaintiff has failed to otherwise plead sufficient facts tending to establish jurisdiction over Temperley London, the Court should dismiss Alice Temperley, MBE and the Temperley London entities from this suit.

2. Where the plaintiff fails to plausibly allege any facts that a defendant engaged in purported copyright infringement, the plaintiff fails to state a claim for direct copyright infringement?

3. Plaintiff fails to plausibly allege copyright infringement of either the sculpture or photograph given that (1) Plaintiff's photograph registrations specifically exclude the sculpture, (2) Plaintiff has not adequately described the copyrightable subject matter of either the sculpture or the photographs, (3) Plaintiff has not delineated the subject matter between the works, (4) Plaintiff's narrative lacks supporting factual allegations, (5) Plaintiff instead relies on purely speculative claims about the reproduction of Instagram photographs to then be used to create infringing products, and (6) in any event, Plaintiff fails to plausibly allege that Temperley London had access to the photographs since the

claim that the photographs were widely disseminated is based solely on Plaintiff's allegation that the photographs exist on the Internet.

4.  Where a plaintiff fails to plausibly allege any facts that a defendant copied or accessed the plaintiff's photographs or sculpture, the plaintiff fails to state a claim for direct copyright infringement.

5.  Where the plaintiff fails to allege that a defendant infringed any copyrightable aspect of a photograph, the plaintiff fails to state a cognizable claim for copyright infringement.

6.  Where the plaintiff fails to plausibly allege any facts suggesting that an individual defendant had knowledge of any allegedly infringing activity—much less materially contributed to or supervised it—the plaintiff fails to state a claim for vicarious or contributory infringement against the individual defendant.

7.  Where the plaintiff fails to allege that its works were published in connection with its CMI, and that the defendant removed the plaintiff's CMI or distributed any of the plaintiff's CMI, the plaintiff fails to plead a cognizable claim under the DMCA, 17 U.S.C. § 1202.

8.  A plaintiff is precluded from recovering statutory damages or attorneys' fees pursuant to 17 U.S.C. § 412 where the plaintiff did not register a copyright for its work within three months of the work's initial publication.

This Court lacks personal jurisdiction over Alice Temperley, MBE, and the Temperley London entities.[1] Moreover, Plaintiff fails to state a copyright infringement claim, given that it has not alleged that Temperley London reasonably accessed its works, nor that the works are substantially similar to the accused designs. Likewise, Plaintiff's conclusory theories of indirect infringement are unsupported, and its Digital Millenium Copyright Act (DMCA) claims are inapplicable. Finally, Plaintiff's statutory damages and attorneys' fees claims are time barred.

## I.    LEGAL STANDARD

A plaintiff is required to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Id.* at 545; *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). While courts must accept a complaint's allegations as true, this applies only to well-pleaded factual allegations, not to legal conclusions. A pleading that offers mere "labels and conclusions" is insufficient, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft*, 556 U.S. at 678.

## II.   ARGUMENT

### A.    This Court Lacks Personal Jurisdiction Over Temperley London.

Jurisdiction can be exercised over Temperley London only to the extent authorized by Ohio's Long-Arm statute and the Fourteenth Amendment's Due Process Clause. *Bridgeport*

---

[1] Plaintiff accuses Temperley London of infringing three copyrights. A sculpture (U.S. Copyright Reg. No. VA 2-342-734 (MEMPHIS CHAINSAW)); (2) Photographs of the sculpture (U.S. Copyright Reg. No. VA 2-352-960 (Registered April 27, 2023)); and (3) more Photographs of the sculpture (U.S. Copyright Reg. No. VA 2-420-961 (Registered November 4, 2024)). ECF No. 22, ¶1 (First Amended Complaint, "FAC").

*Music, Inc. v. Still N The Water Pub.*, 327 F.3d 472, 477 (6th Cir. 2003).[2] Jurisdiction arises out of a defendant's (1) business transactions, (2) contracts to supply goods or services, (3) tortious conduct, or (4) tortious injury to others within the state. OH ST § 2307.382; *Pay(q)r, LLC v. Sibble*, 5:15CV1038, 2015 WL 9583034, at *5 (N.D. Ohio Dec. 31, 2015).[3] Moreover, "personal jurisdiction can be either general or specific, depending upon the nature of the contacts that the defendant has with the forum state." *Bird v. Parsons*, 289 F.3d 865, 873 (6th Cir. 2002). To establish jurisdiction, "the non-moving party may not rest upon allegations or denials in his pleadings but his response by affidavit or otherwise must set forth ***specific facts*** showing that the court has jurisdiction". *Weller v. Cromwell Oil Co.*, 504 F.2d 927, 930 (6th Cir. 1974) (emphasis added). Here, there is no personal jurisdiction over the Temperley London entities, and especially no personal jurisdiction over Alice Temperley, MBE.

### 1.    General Jurisdiction Does Not Apply.

Temperley London is not at home in Ohio. "[O]nly a limited set of affiliations with a forum will render a defendant amenable to all-purpose jurisdiction there." *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014). General jurisdiction requires "that corporation's affiliations with the State [to be] so continuous and systematic as to render [it] essentially at home in the forum State." *Daimler*, 571 U.S. at 138–39 (citing *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (internal quotations omitted). Ordinarily, a corporation is "at home" in its state of incorporation and the state where it has its principal place of business. *Id.* at 137. Accordingly, Plaintiff must plead facts plausibly supporting its claim that Temperley London had a continuous, systematic, and routine presence in Ohio. Plaintiff's FAC falls short. Here, Alice Temperley is a

---

[2] Plaintiff bears the burden of establishing that personal jurisdiction exists over Temperley London. *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir. 1996).

[3] For Rule 12(b)(2) motions, the Court is not bound by the pleadings and may consider affidavits from the moving party. *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991).

citizen of the United Kingdom and resides in London, England (Alice Temperley Decl., ¶¶2-3.) Indeed, Ms. Temperley has never been a citizen or resident of the United States (*Id.*) Ms. Temperley does not own any property, assets, bank accounts, personal or business interests, contractual obligations, residential properties, or commercial properties in the United States (*Id.* at ¶4.) Ms. Temperley has never set foot in the State of Ohio (*Id.* at ¶5) and has no licenses or addresses in the United States. (*Id.* at ¶¶6-7.) Similarly, the Temperley London entities are either based in the United Kingdom or the Isle of Man, a British Crown dependency. (Sarita Jha Decl., ¶¶4-6.) The Temperley London entities have no assets, entities, licenses, real property, or offices in the United States (*Id.* at ¶6.) Temperley London does not have any storefronts in the State of Ohio and has never contracted with any retailers there (*Id.* at ¶ 11), and all its own retail channels and physical storefronts are located in London, Ilminster, and Dubai. (*Id.* at ¶7.) Indeed, Temperley London does not have its own warehouse in the United States and ships all products to its United States retail partners from its local U.K. warehouse. (*Id.* at ¶14.) Far from having "continuous and systematic" affiliations with Ohio, Temperley London has no affiliations with Ohio at all. *Daimler*, 571 U.S. at 138–39. General jurisdiction does not apply.

2. <strong>Specific Jurisdiction and Ohio's Long Arm Statute Do Not Apply.</strong>

Specific jurisdiction is proper only if the defendant has minimum contacts with the forum state, such that maintenance of the suit does not offend traditional notions of fair play and substantial justice. *CompuServe*, 89 F.3d at 1264 (citing *Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945)). For specific jurisdiction to apply, (1) the plaintiff's claim must arise out of or relate to the defendant's contacts with the forum; (2); the defendant must have sufficient minimum contacts with the forum; and (3) the forum's exercise of jurisdiction over the defendant must be fair and reasonable. *Sullivan v. LG Chem, Ltd.*, 79 F.4th 651, 670 (6th Cir. 2023) (citing *Ford Motor Co. v. Montana Eighth Judicial Dist. Court*, 592 U.S.

3

351, 362 (2021) and *AlixPartners, LLP v. Brewington*, 836 F.3d 543, 549 (6th Cir. 2016)). Similarly, when applying Ohio's Long-Arm statute, this Court should consider whether Temperley London transacted business in the State of Ohio or tortiously injured Plaintiff in Ohio. OH ST § 2307.382; *Pay(q)r*, 2015 WL 9583034, at *5. Here, the statute does not reach Temperley London because there are no facts from the FAC demonstrating that Temperley London transacted business in the State of Ohio or tortiously injured Plaintiff. Indeed, it does not allege facts to establish that the claims asserted against Temperley London arise from Ohio contacts. Likewise, specific jurisdiction does not apply because the FAC does not allege facts to establish that Ms. Temperley or the Temperley entities have sufficient minimum contacts in Ohio (or the United States), that they purposefully availed themselves of Ohio's privileges by conducting activity in Ohio (or the United States), or that the exercise of jurisdiction over them would be reasonable.

### a. Plaintiff's claims do not arise from Temperley contacts.[4]

There is no causal relationship between Plaintiff's claims and Temperley activities in the U.S. Rather, it appears Plaintiff named Temperley London in this lawsuit solely because Temperley London was a part of a joint collection with the U.K. parent companies of Romo, Inc. *See Hitachi Med. Sys. Am., Inc. v. St. Louis Gynecology & Oncology, LLC*, No. 5:09-cv-2613, 2011 WL 711568, at *4 (N.D. Ohio Feb. 22, 2011) (highlighting that whether a defendant transacts any business in Ohio is determined on a case-by-case basis); *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cnty.*, 582 U.S. 255, 263 (2017) (noting there must be "an affiliation between the forum and the underlying controversy, principally, [an] activity or an

---

[4] Plaintiff provides no factual basis whatsoever for naming Ms. Temperley individually in this lawsuit. Although she is the founder and lead designer of the Temperley London brand, Plaintiff does not allege an alter ego theory of liability and certainly does not claim that Ms. Temperley engaged in some sort of act beyond the ordinary scope of her duties at Temperley London. Indeed, Plaintiff does not—because it cannot—assert that Ms. Temperley is responsible for Temperley London and its parent companies.

occurrence that takes place in the forum State and is therefore subject to the State's regulation"). Once again, Plaintiff lumps all the Defendants altogether in a single convoluted multi-page narrative, without any factual basis. (FAC ¶¶27-31.) None of Plaintiff's conclusory allegations are sufficient. Promotional events for the accused products were largely held in London, U.K., and although Ms. Temperley arrived briefly in the United States in 2022 to promote one of the Temperley London collections, Ms. Temperley's trip was limited to Los Angeles and Orange County, CA, as well as New York City, NY. (Temperley Decl., ¶20.) Likewise, even assuming that any of the accused products were sold in the United States, Temperley London does not have its own stores in the country, and only works through boutiques, retail partners, or trunk shows in specific cities (Palm Beach, Dallas, Houston, New York City, Arkansas, and Orange County) (*Id.*, ¶21); (Jha Decl., ¶9 (New York, Texas, Arkansas, Florida).) It is unclear how Plaintiff's claim could have arisen from Temperley's non-existent contacts with Ohio.

Plaintiff's veiled suggestion that jurisdiction is proper because Temperley products may have found their way to Ohio consumers is unavailing. Indeed, the United States accounts for just sixteen percent (16%) of Temperley London's net sales, with Ohio accounting for less than one percent (1%) of *those* net sales (Jha Decl., ¶17.) In fact, Temperley London is currently only aware of two recorded sales in the entire State of Ohio over the last twenty-four months (*Id.*, ¶19.) Plaintiff's claims therefore cannot have arisen from Temperley contacts with Ohio. For the very same reason, Plaintiff cannot establish that Ohio's Long-Arm statute should apply, since Plaintiff does not adequately plead that Temperley London directed the alleged tortious conduct ***towards Ohio***. OH ST § 2307.382(A)(6) (2025). Instead of alleging facts to support its copyright infringement claims, Plaintiff advances ***legal conclusions***. (FAC ¶¶27, 31); *see Campinha-Bacote v. Wick*, 1:15-CV-277, 2015 WL 7354014, at *3 (S.D. Ohio Nov. 20, 2015) (holding that Ohio's

long-arm did not extend to a defendant where the plaintiff's argument rested entirely on unsworn, unverified allegations of copyright infringement and severe harm in the plaintiff's domicile). The *Twombly/Iqbal* pleading standard requires a pleading of factual allegations that are plausible, not merely possible. *See Ashcroft*, 556 U.S. at 678; *Twombly*, 550 U.S. at 570. On these facts alone, the Court should dismiss the Complaint for lack of personal jurisdiction.

### b.   Temperley London does not have minimum contacts in Ohio.

"Minimum contacts" requires that a defendant purposefully avail itself of the privilege of conducting activities in the forum, invoking the benefits and protections of its laws. *CompuServe,* 89 F.3d at 1263. "The purposeful availment requirement serves to protect a defendant from being haled into a jurisdiction by virtue of 'random,' 'fortuitous,' or 'attenuated' contacts." *Intera Corp. v. Henderson*, 428 F.3d 605, 616 (6th Cir. 2005); *Calphalon Corp. v. Rowlette*, 228 F.3d 718 (6th Cir. 2000). The contacts must create a "substantial connection" with Ohio, such that Temperley London "should reasonably anticipate being haled into court there." *CompuServe,* 89 F.3d at 1263 (quoting *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474–75 (1985); *Burnshire Development, LLC v. Cliffs Reduced Iron Corp.*, 198 F. App'x 425, 431 (6th Cir. 2006) (while transacting business may involve contracts, "the mere existence of a contract is insufficient to support jurisdiction"). Further, when determining whether Ohio's Long-Arm statute applies, courts in this District have identified two pertinent factors: (1) whether the foreign defendant initiated dealings to create a business relationship in the forum; and (2) "whether the parties conducted their negotiations or discussions" there, or on terms affecting it. *Pay(q)r*, 2015 WL 9583034, at *4.

Once again, Plaintiff offers nothing other than the conclusory allegation that Temperley London purposefully availed itself of Ohio's privileges by engaging in business in Ohio. First, as noted above, Temperley London sales in Ohio were virtually nonexistent. (Jha Decl., ¶¶17-19); *see Joe Solo Productions, Inc. v. Dawson*, 1:09 CV 555, 2009 WL 2232856 (N.D. Ohio July 23,

2009) ("Plaintiffs must show something more than passive availment of Ohio's opportunities to confer specific jurisdiction"); *Harris v. Lloyds TSB Bank, PLC*, 281 Fed. Appx. 489 (6th Cir. 2008) ("merely fortuitous" that less than one percent of a defendant-bank's account holders had residential forum addresses where it marketed and sold accounts in the United Kingdom). Likewise, Temperley London's sales activity in the United States certainly was not targeted to consumers in Ohio. Indeed, the typical Temperley London customer resides in large urban centers like London or New York City, and Temperley's promotional tours target these areas. (Temperley Decl., ¶10). Likewise, Temperley London's designs are largely appealing to consumers in communities like Palm Beach, FL or Dallas, TX, and that is reflected by Temperley's retail partnerships with boutiques local to these areas. (Jha Decl., ¶9); *Wireless Env't, LLC v. HooToo.com, Inc.*, 1:15CV1215, 2016 WL 4530617, at *4 (N.D. Ohio Aug. 30, 2016) ("There is no evidence that Sunvalleytek designed nightlights or spotlights for the Ohio market."). Moreover, Plaintiff cannot rely on Temperley London's online marketing—which originates in the U.K.—to assert that the brand was attempting to exploit the Ohio market specifically. Indeed, the brand's digital marketing is managed by platforms such as Meta and Google, which have their own black-box algorithms that targets advertisement based on their content policies and user preferences. (Jha Decl., ¶20.) Moreover, Temperley London's social media pages are passively managed by e-commerce support personnel, with minimal engagement with other users, and the brand does not strategically time posts for United States time-zones and does not collect or analyze social media and marketing engagement data for insights on United States customers. (*Id.* at ¶¶21-22.) Likewise, Ms. Temperley manages her own personal social media pages, where she promotes her products at her own discretion, but Ms. Temperley does not have any control over the brand's official websites or social media pages. (Temperley Decl., ¶¶15-17); *Wireless*, 2016 WL 4530617,

at *4 ("Although Sunvalleytek made use of keywords and pop-ups from browser histories, there is no evidence that Sunvalleytek directed advertising or promotion of the accused products specifically to residents of the State of Ohio."). Accordingly, Temperley London does not have sufficient minimum contacts with Ohio.

### c. Exercising Jurisdiction Over Temperley is unreasonable.

Ultimately, the Court should dismiss Ms. Temperley and the Temperley London entities from this suit. Exercising jurisdiction over Ms. Temperley would not comport with traditional notions of fair play and substantial justice, given her lack of presence and business operations in the U.S. (Temperley Decl., ¶¶2-7.) The very fact that Ms. Temperley does not have minimal contacts with Ohio forecloses any argument that jurisdiction is reasonable. *See Hanson v. Denckla*, 357 U.S. 235, 251 (1958) ("However minimal the burden of defending in a foreign tribunal, a defendant may not be called upon to do so unless he has had the 'minimal contacts' with that State that are a prerequisite to its exercise of power over him.").

Likewise, the Temperley London entities, their board members, executives, and employees are all based on other continents thousands of miles away, and haling Temperley London into the Northern District of Ohio would be extremely burdensome and highly inconvenient. (Jha Decl, ¶¶2-7); *Intera*, 428 F.3d at 618 (noting the factors courts consider in determining whether the exercise of jurisdiction is reasonable); *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980) (the burden on the defendant to answer a suit in the forum is of foremost importance). It appears that the only reason Plaintiff filed suit in the Northern District of Ohio is simply because a different company, Romo, Inc., has an office there, and nothing more. Moreover, none of the operative facts underlying the allegations against any defendant, much less Temperley London, occurred in Ohio. *See Intera*, 428 F.3d at 618. Jurisdiction over Temperley London would be inappropriate, and therefore, pursuant to Fed.R.Civ.P. 12(b)(2), Temperley London respectfully

requests the Court dismiss the Temperley parties from this case.

**B.    Plaintiff's Copyright Infringement Claims Should Be Dismissed.**

The FAC should also be dismissed for failure to state a claim against Temperley London. *See* Fed. R. Civ. P. 12(b)(6). To prevail on a claim of copyright infringement, Plaintiff must demonstrate "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 361 (1991). To show "copying", "[P]laintiff may demonstrate that original elements of its work were copied through direct or indirect evidence." *Enchant Christmas Light Maze & Market Ltd. v. Glowco, LLC*, 958 F.3d 532, 536 (6th Cir. 2020) ("Direct evidence of copying is rare[.]"). "Since direct evidence of copying is rarely available, a plaintiff may establish an inference of copying by showing (1) access to the allegedly-infringed work by the defendant(s) and (2) a substantial similarity between the two works at issue." *Tiseo Architects, Inc. v. B & B Pools Service and Supply Co.*, 495 F.3d 344, 347 (6th Cir. 2007) (citing *Stromback v. New Line Cinema,* 384 F.3d 283, 293 (6th Cir. 2004)); *Kohus v. Mariol*, 328 F.3d 848, 853–54 (6th Cir. 2003). Here, Plaintiff does not allege any "direct evidence" of copying by Temperley London, "such as party admissions, witness accounts of the physical act of copying, and common errors in the works of plaintiffs and the defendants[.]" *Enchant*, 958 F.3d at 536 (citing *Parker v. Winwood*, 938 F.3d 833, 836 (6th Cir. 2019)). Thus, "access will be an essential element of the case." *Antony v. Buena Vista Books, Inc.*, Civ. A. No. 18-205-DLB-CJS, 2020 WL 5995590, at *5 (E.D. Ky., 2020) ("Access is an element of proving copyright infringement if there is no proof of direct copying.").

**1.    Plaintiff Does Not Plausibly Allege Access.**

Plaintiff does not plausibly allege that Temperley London accessed Plaintiff's Instagram

photographs.[5] "Two forms of circumstantial evidence are accepted as evidence of reasonable access: (1) a particular chain of events establishing defendant's access to plaintiff's work, or (2) plaintiff's work has been widely disseminated." *King Records, Inc. v. Bennett*, 438 F. Supp. 2d 812, 846 (M.D. Tenn. 2006) (citing *Three Boys Music Corp. v. Bolton,* 212 F.3d 477, 482 (9th Cir. 2000)). Here, Plaintiff alleges that its Instagram posts were so widely disseminated that either Temperley London saw its posts, or alternatively, the other Defendants (or some other third-party) saw the posts, and thereafter, gave Temperley London the photographs. (FAC, ¶¶66-69.) These allegations are wholly conclusory; they fall far short of being "plausible," as required for pleading under *Iqbal/Twombly*. *See Ashcroft*, 556 U.S. at 678; *Twombly*, 550 U.S. at 570. To establish "wide dissemination", Plaintiff's works must be so widely disseminated such that it raises "'a reasonable possibility' for [Temperley London] to have viewed [its] work[s]—'not merely a bare possibility.'" *Woodland v. Hill*, No. 23-55418, 2025 WL 1417103, at *3 (9th Cir. 2025)[6] (quoting *Art Attacks Ink, LLC v. MGA Ent. Inc.*, 581 F.3d 1138, 1143 (9th Cir. 2009)). Speculative "wide dissemination" claims will not do. *Id.* at *3 ("A theory of access cannot be 'mere speculation or conjecture.'") (quoting *Three Boys*, 212 F.3d at 482). Accordingly, courts look to objective indicia that tend to support a claim that the work is widely disseminated. *See, e.g., Three Boys*, 212 F.3d at 482 (finding no widespread dissemination of a song where the song "never topped the Billboard charts" and never aired in defendants' home state at the time of its release). Likewise, plaintiffs

---

[5] Plaintiff does not allege that Ms. Temperley or anyone from Temperley London ever saw the sculptural work, or that they ever had an opportunity to see the sculptural work (direct access). Plaintiff does not allege that the sculpture was displayed anywhere outside of its New York studios, nor that any individual or entity based in this District—let alone the State of Ohio—has ever heard of the sculpture's existence. Instead, Plaintiff is asserting that Temperley London accessed both its sculpture and photographs via Plaintiff's Instagram posts. (FAC, ¶¶14-19.)

[6] Since "access" is rarely a focus in Sixth Circuit appeals, courts in the Sixth Circuit have cited to Ninth Circuit cases on the issue.

rely on "the degree of a work's commercial success and on its distribution through . . . relevant mediums" *Loomis v. Cornish*, 836 F.3d 991, 997 (9th Cir. 2016).

Though a work can find greater reach online, "*availability* should not be confused with *access*." *Woodland*, 2025 WL 1417103, at *4 (emphasis in original) ("It is not easy to stumble upon a single webpage amid the 'vast quantity of material on the Internet'") (quoting *United States v. Am. Libr. Ass'n, Inc.*, 539 U.S. 194, 208 (2003)). Indeed, the mere allegation that a plaintiff posted their works online is insufficient, since a plaintiff must plead sufficient facts to demonstrate that access was "a reasonable possibility, not merely a bare possibility." *Art Attacks*, 581 F.3d at 1145 (insufficient that the work was on a website).

The Ninth Circuit recently clarified the "Access" doctrine in the context of algorithm-based social media platforms, like Instagram:

> While standalone websites make content available to anyone in the world, digital platforms do that and more. Digital platforms create online communities and actively connect content creators with content consumers. Platforms like Instagram are designed to facilitate the discovery and sharing of available content ***by using algorithms to recommend tailored content to consumers*** [and to] continually push ***individualized*** content to consumers ***based on each individual's preferences, usage, and habits*** . . .. To sum up, social media and other digital-sharing platforms could make it easier for plaintiffs to show that defendants had access to their materials—***but only if they can show that the defendants had a reasonable chance of seeing their work under that platform's algorithm or content-sharing policy. That is a big "if"—and, as explained below, Woodland has fallen short here.***

*Woodland*, 2025 WL 1417103, at *4-5 (emphasis added).

Here, Plaintiff does not plausibly allege any facts that Instagram uses an algorithm to recommended content tailored to Temperley London such that Temperley London would have seen the subject Instagram photos. In fact, Plaintiff does not even make the conclusory allegation, *i.e.*, that "Instagram's recommendation algorithm increased the chances that [Temperley London] viewed [Plaintiff's] works" or that the parties' "respective Instagram profiles 'share[] in sub-

11

genres of similar content . . .' [such that] Instagram's algorithm would likely have recommended [Plaintiff's] posts to [Temperley London]." *Id.* at *5 (noting that "Instagram's purported policy does not support" that theory anyway). Plaintiff has not claimed (1) that Alice Temperley, any employee of Temperley London, or any individual in the U.K. ever followed and interacted in any way with Plaintiff's Instagram account; (2) that Temperley London likes, shares, comments on, or follows similar accounts;[7] (3) that the photographs reached audiences far and wide, or that the photographs were ever republished by widely disseminated magazines, newspapers, or other online media; or (4) that anyone of note or mass following discussed, highlighted, or reposted the photographs. *See id.* ("Woodland's sources explain that Instagram suggests posts based on the accounts that users follow; the posts users like, share, and comment on; users' history of connecting with accounts; and how popular a particular post is and how others have interacted with that post."). Instead, as in *Woodland*, Plaintiff only advances the insufficient allegation that Alice Temperley, or someone else at Temperley London, has an Instagram account. *See id.* ("[I]t is not enough to simply allege that Hill is an active user of Instagram and thus had a reasonable possibility of viewing Woodland's photos" on Instagram, a platform that has "over a billion users and many more posts[.]").[8] Plaintiff does not share how many Instagram followers it had during

---

[7] Plaintiff asserts that "[m]any of the followers who view, follow, and share photographs of Plaintiff's artworks on her Instagram account are fellow designers, artists, and creators." (FAC, ¶66.) Yet this unsupported claim has no relevance to *Temperley London* or *Alice Temperley's* accounts, and *their* followers.

[8] Similarly, just like the plaintiff in *Woodland*, here, Plaintiff constructs "a [speculative] chain of events to bolster [its] claim that [Temperley London] had a reasonable possibility of viewing [Plaintiff's] photos on Instagram." *Woodland*, 2025 WL 1417103, at *5; (FAC, ¶¶77, 83, 97-99 (alleging that Temperley London "reproduced one or more of the Photographs found on Plaintiff's Instagram account, @wifenyc, to create a pattern or digitally rendering that was then used to create the Unauthorized [Farrah and Palmae Apparel, or Farrah Interiors] Products"). Still, Plaintiff utterly fails to plead that any Defendant had contacted Plaintiff, "even indirectly." *Jones*, 558 F.3d at 492.

the time period of alleged infringement. It only shares that "[a]s of *the date of this First Amended Complaint*, Plaintiff's Instagram account has 98,000 followers." (FAC, ¶66 (emphasis added).) Based on Plaintiff's screenshots, the Instagram posts at issue appear to have had a rough average of 1,500 "likes" or user interactions, and at most, 2,708 "likes" between September 30, 2019, and March 13, 2025, the date of the First Amended Complaint. (FAC, ¶4 (nearly four and a half years).) Plaintiff provides no explanation for such plain evidence of low user awareness on a platform hosting *billions* of posts. Plaintiff does not allege that "access" to the photographs was a reasonable possibility, and its copyright infringement claims fail for that reason alone.

### 2. The Accused Products Are Not Substantially Similar to the Works.

Plaintiff's failure to allege access means that any *substantial* similarities are ultimately irrelevant. *See Jones v. Blige*, 558 F.3d 485, 493 (6th Cir. 2009). Indeed, "[t]he failure to offer proof of access cannot be excused in this case, because the [accused products and works at] issue are not so *strikingly* similar as to 'preclude the possibility of independent creation.'" *Id.* (quoting *Murray Hill Publications, Inc. v. Twentieth Century Fox Film Corp.*, 361 F.3d 312, 317 (6th Cir. 2004)) (emphasis added). It is not enough to allege that the Farrah and Palmae Apparel products "bear a passing resemblance" to the copyrighted works—rather, the similarities must be striking. *Id.* Yet, the products are neither strikingly nor substantially similar. Substantial similarity, which is measured from the viewpoint of "the ordinary reasonable person," requires that two works be "so alike that the later (unprotected) work can fairly be regarded as appropriating the original expression of the earlier (protected) work." *Enchant*, 958 F.3d at 538–39 (citations omitted). To analyze substantial similarity, courts (1) "filter out the unoriginal, unprotectible elements"; and (2) "determine whether the allegedly infringing works, or elements of those works, are substantially

similar to [the] protected works, or protected elements of [the] work." *Id.* at 537.[9]

Here, Plaintiff asserts that the only copyrightable elements of its photographs—the "elements that reflect [Plaintiff's] creative choices" as a photographer—are the "different angles and lighting of the Artwork." (FAC, ¶4). Yet, an objective side-by-side comparison of Plaintiff's photographs and the accused products demonstrates that none of Plaintiff's choices with respect to shading, lighting, or angling are incorporated into the accused products and advertising:



These elements are completely absent from the accused products. (*See* FAC, ¶23.)

Likewise, Plaintiff does not plausibly allege that the sculpture is strikingly similar to the accused products. Despite Plaintiff's lengthy FAC, Plaintiff is inconsistent and illusory about which sculptural elements it considers protectable.[10]

---

[9] "[N]on-infringement can be determined on a motion to dismiss." *Christianson v. W. Pub. Co.*, 149 F.2d 202, 203 (9th Cir. 1945).

[10] Plaintiff claims murky categories of expression such as bent plants, "geometric paint patterns", "color-tipped fronds", and "color blocking expressions and color schemes . . . ." (FAC, ¶¶12, 24.) Plaintiff not only fails to identify the elements of the sculpture that consistently carry through to the photographs but also repeatedly shifts the scope of its rights depending on the products and

Moreover, none of Plaintiff's color and pattern choices are *substantially* or *strikingly* similar to Temperley London's products:



---

Defendant being accused. *Cf.* (FAC, ¶¶12, 24) and (FAC, ¶38) (missing the blue hue and the specifically proportioned blue and pink paint patterns).

As shown above, the products have different patterns, plant motifs, color choices, arrangements, and compositions, as compared to the sculpture. The products lack the sculpture's allegedly characteristic blue hue, the specifically proportioned blue-pink paint patterns, and the entire second frond and its distinctive curve. (FAC, ¶¶59-60.) Accordingly, Plaintiff does not plausibly allege that the Temperley London products are substantially similar. Even if it did, that would still be insufficient to sustain a claim since, in this Circuit, Plaintiff must establish *striking* similarity in the absence of access. Plaintiff's copyright infringement claims should be dismissed.

### C. Plaintiff's Indirect Infringement Claims Should Be Dismissed.

To state a claim for contributory infringement, a plaintiff must allege facts that a defendant "with knowledge of the infringing activity, induces, causes, or materially contributes to the infringing conduct of another." *Bridgeport Music, Inc. v. Rhyme Syndicate Music*, 376 F.3d 615, 621 (6th Cir. 2004). That is, "a plaintiff must allege: (1) direct copyright infringement [by] a third-party; (2) knowledge by the defendant that the third-party was directly infringing; and (3) [defendant's] material contribution to the infringement." *Parker v. Google, Inc.*, 242 F. App'x 833, 837 (3d Cir. 2007). And with respect to scienter requirement, contributory infringement requires that the secondary infringer **know or have reason to know** of the direct infringement. *Arista Recs., LLC v. Doe 3*, 604 F.3d 110, 118 (2d Cir. 2010); *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1020 (9th Cir. 2001). To state a claim for vicarious infringement, a plaintiff must allege facts that the defendant had the right and ability to supervise the infringing activity. *Bridgeport Music, Inc. v. WM Music Corp.*, 508 F.3d 394, 400 (6th Cir. 2007) (citation omitted). Here, Plaintiff does not advance a claim of direct copyright infringement, and its indirect infringement claims must therefore fail. Regardless, Plaintiff's indirect infringement claims must also be dismissed given that Plaintiff asserts that every defendant supervised, controlled, or otherwise contributed to the allegedly infringing acts of every other defendant solely due to "the close relationships between

the Defendants, including the collaborative nature between the two brands at issue (i.e. Temperley London and ROMO)[.]" (FAC, ¶69.) Yet, Plaintiff only alleges that the accused collections, including the Spring Summer 2022 collection, were "put out by TMLL Ltd.", the brand's actual trading company. (*Id.*) Plaintiff does not allege that any facts showing that the other Temperley entities were engaged in or aware of allegedly infringing activity, yet tries to justify naming these companies solely because they "had the same director[.]" (*Id.* (incorrectly asserting that the other entities share employees with TMLL Ltd.); (*see* Jha Decl., ¶5 ("TMLL Ltd. is responsible for all business operations of the Temperley London brand and is located in Ilminster, England").) Likewise, Plaintiff does not provide any justification for why Alice Temperley's employment and creative director duties at TMLL Ltd. warrants individually naming her in this lawsuit, especially when TMLL Ltd. is already named. Plaintiff has not alleged facts that plausibly establish that Temperley London had anything to do with the claims against the other defendants, much less controlled them or knew about their alleged infringement of Plaintiff's copyrights. Accordingly, Plaintiff's reductive vicarious and contributory infringement allegations should be dismissed with prejudice.

### D.    Plaintiff's DMCA Claims Should Be Dismissed.

In addition to copyright infringement, Plaintiff asserts puzzling claims for the removal of copyright management information (CMI) and the distribution of false CMI under the Digital Millenium Copyright Act (DMCA), 17 U.S.C. § 1202. (FAC, ¶¶177-186.) The DMCA protects against the removal or alteration of copyright management information ("CMI"), which is defined in part as identifying information about the author of a work "conveyed in connection with" the copyrighted work. 17 U.S.C. § 1202(c); *Mango v. BuzzFeed, Inc.*, 356 F. Supp. 3d 368, 376 (S.D.N.Y. 2019), *aff'd*, 970 F.3d 167 (2d Cir. 2020). To establish a removal violation under the DMCA, a plaintiff must plead (1) the existence of CMI on the infringed work, (2) removal or

alteration of that information, and (3) the removal or alteration was done intentionally. *Craig v. UMG Recordings, Inc.*, 380 F. Supp. 3d 324, 337 (S.D.N.Y. 2019). The DMCA also protects against the creation and distribution of "copies" of a work without attribution. 17 U.S.C. § 1202(a)-(b). Courts have clarified what is and is not a "copy" under the DMCA. For example, in *Faulkner Press, L.L.C. v. Class Notes, L.L.C.*, the court noted that "[a]n action for removal of copyright management information ***requires the information to be removed from a plaintiff's product or original work***" and found that, instead of the CMI having been "removed from the copyrighted works", the copyrighted "information from [the professor's] courses was allegedly ***copied into a different form and then incorporated into the*** [alleged infringer's] note packages" being sold to students. 756 F. Supp. 2d 1352, 1359 (N.D. Fla. 2010) ("No copyright management information was removed from Dr. Moulton's product or original work.").

Here, the photographs upon which Plaintiff's claims are based are not Plaintiff's photographs. Plaintiff did not create or capture Temperley London's promotional photographs of the apparel lines, develop Temperley London's advertising campaigns, nor did it embroider or manufacture the products themselves. Simply put, the products are not "copies" of Plaintiff's works, as contemplated under the DMCA. Accordingly, Plaintiff's allegations, that Temperley London removed CMI or distributed the copyrighted works knowing both that the CMI was altered and that distribution would induce infringement, make no sense at all. *See Mango*, 356 F. Supp. 3d at 377. Temperley London's copyright management statement on its own materials is not false. *See Faulkner*, 756 F. Supp. 2d at 1359 ("Class Notes did not add false copyright management information in violation of the DMCA by printing 'Einstein's Notes (C)' on its note packages. The note packages that Class Notes produced ***were a different product*** from Dr. Moulton's work even if, as Faulkner Press alleges, they included materials from Dr. Moulton's work.") (emphasis

18

added). Ultimately, Plaintiff identifies products and advertisements that it did not create yet insists that they are "copies" of its works. (FAC, ¶¶86, 168-76.) Perhaps recognizing the infirmity of its claims, Plaintiff constructs (without any factual basis) an imagined step of making "identical copies of the Photographs posted on Plaintiff's Instagram[.]" (FAC, ¶¶169, 173.) This unsupported allegation, that unidentified copies (e.g., reproductions) of Plaintiff's photographs were made, cannot rescue Plaintiff's DMCA claims. Accordingly, there should have been no attribution given to Plaintiff for purposes of the DMCA.[11]

Moreover, Plaintiff does not even make a passing attempt at alleging that Temperley London acted with the necessary intent. For example, the court in *Harrington* dismissed the plaintiff's claim for not pleading sufficient ***facts*** to infer that the defendant "knew or had a reasonable basis to know that the removal or alteration of [copyright management information] or the distribution of [w]orks with [copyright management information] removed ***will*** aid infringement." *Harrington v. Pinterest, Inc*., No. 5:20-cv-05290-EJD, 2022 WL 4348460, at *14-15 (N.D. Cal. Sept. 19, 2022) (emphasis added); *see also Stevens v. Corelogic, Inc.*, 899 F.3d 666, 674 (9th Cir. 2018) (requiring a plaintiff to demonstrate a "past pattern of conduct or modus operandi" to establish the requisite mental state in the context of the DMCA, a statute "requiring knowledge that a future action 'will' occur"). Rather than plead facts to demonstrate a *modus operandi*, Plaintiff relies on *ipse dixit*, asserting that the present suit is evidence of Temperley London's "modus operandi". (FAC, ¶¶170, 176.) Plaintiff's DMCA claims should be dismissed.

### E.    Plaintiff Is Not Entitled to Statutory Damages or Attorney's Fees.

A copyright holder cannot be awarded statutory damages or attorney's fees if the infringing activity started after the date of first publication but before the effective date of registration of the

---

[11] Additionally, Plaintiff has not established that Sophia Parker Studios had any identifying CMI conveyed in connection with the pictures posted to the personal Instagram account, @WIFENYC.

work, *unless the copyright for the infringed work was registered within three months after the work was first published*. 17 U.S.C. § 412. The Sixth Circuit has already conclusively addressed this "brightline rule". *Johnson v. Jones*, 149 F.3d 494, 504–06 (6th Cir. 1998) ("Johnson cannot recover statutory damages or attorney's fees under the Copyright Act if Tosch's infringement 'commenced' before the copyright was registered."). "[I]nfringement 'commences' for the purposes of § 412 when the *first* act in a series of acts constituting continuing infringement occurs." *Id.* (noting the statute's purposed "would be thwarted by holding that infringement is 'commenced' for the purposes of § 412 each time an infringer commits another in an ongoing series of infringing acts"). Here, the accused apparel collections were from Spring 2022, an entire year before Plaintiff registered the sculpture. (FAC, ¶8.) Indeed, Plaintiff did not register the sculptural work until it "discovered" the "Farrah Kimono" in February 2023. (FAC, ¶¶7-8.). Accordingly, Plaintiff's claim for statutory damages is time-barred, and Plaintiff is precluded from recovering attorney's fees or statutory damages pursuant to 17 U.S.C. 504(c); 17 U.S.C. § 412.

## III. CONCLUSION

For the foregoing reasons, Alice Temperley, MBE, TMLL Ltd., and Temperley Holdings Ltd. respectfully request that the Court grant their Motion to Dismiss Plaintiff's First Amended Complaint with prejudice.

Dated: May 27, 2025

Respectfully submitted,

By: */s/ Jeffer Ali*

Meredith K. Collier
Todd R. Tucker
**CALFEE, HALTER & GRISWOLD LLP**
1405 East Sixth Street
Cleveland, OH 44114
Telephone: 216.622.8200
Facsimile: 216.241.0816
mcollier@calfee.com
ttucker@calfee.com

Jeffer Ali*
**HUSCH BLACKWELL LLP**
80 South Eighth Street, Suite 4800
Minneapolis, Minnesota 55402
Telephone: 612.852.2700
Facsimile: 612.852.2701
jeff.ali@huschblackwell.com

Sharif Ahmed*
**HUSCH BLACKWELL LLP**
2415 East Camelback Road, Suite 500
Phoenix, AZ 85016
Telephone: 480.824.7890
Facsimile: 480-824-7905
sharif.ahmed@huschblackwell.com

*Admitted pro hac vice*

**Attorneys for Defendants Alice Temperley, TMLL Ltd., and Temperley Holdings Ltd.**

21

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that today, this 27 day of May 2025, I caused the foregoing document to be filed electronically with the Clerk of Court, and therefore served upon all counsel of record.

*<u>/s/ Jeffer Ali</u>*

## <u>LOCAL RULE 7.1(f) CERTIFICATION</u>

Pursuant to Local Civil Rule 7.1(f), I hereby certify that this case has not been assigned to any track and that the page limitation for this memorandum is fewer than twenty (20) pages. I hereby further certify that the foregoing Memorandum adheres to this limitation.

*/s/ Jeffer Ali*

23