IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| **SOPHIA PARKER STUDIOS, INC.** t/a WIFE NYC | Case No. 1:24-cv-2086 |
| Plaintiff, | |
| -vs- | JUDGE PAMELA A. BARKER |
| **ALICE TEMPERLEY, et al.,** | |
| Defendants. | **MEMORANDUM OPINION AND ORDER** |

This matter is before the Court upon Plaintiff Sophia Parker Studios, Inc. t/a Wife NYC's ("Plaintiff" or "Sophia Parker") Motion for Reconsideration of the Court's May 9, 2025 Order granting Defendants' Motion for Setting of Deadline for Response to First Amended Complaint, or Alternatively, for Extension of Time to Respond and Reply to Defendants Opposition to Plaintiff Sophia Parker Studios, Inc.'s Requests for Clerk's Entry of Default, filed on May 12, 2025 ("Plaintiff's Motion").  (Doc. No. 48.)

On May 19, 2025, Defendants Alice Temperley, Temperley Holdings Ltd., Romo Ltd., Romo (Holdings) Ltd., Romo Group Ltd., and TMLL Ltd. (together, the "Foreign Defendants") filed their Opposition to Plaintiff's Motion ("Foreign Defendants' Opposition").  (Doc. No. 50.)  On June 2, 2025, Plaintiff filed its Reply ("Plaintiff's Reply").  (Doc. No. 54.)

For the following reasons, Plaintiff's Motion is DENIED.

**I.      Background**

This case concerns Plaintiff's allegations that the Foreign Defendants, Defendant Romo, Inc., and 1-20 Doe Defendants infringed Plaintiff's copyrights in its plant-based artwork by selling, distributing, and displaying luxury fashion items. (Doc. No. 1.)

On November 30, 2024, Plaintiff filed a Complaint asserting copyright infringement claims in this Court against the Foreign Defendants,[1] Defendant Romo, Inc., and 1-20 Doe Defendants, asserting the following four claims: (1) direct copyright infringement under 17 U.S.C. § 501; (2) vicarious and contributory copyright infringement; (3) distribution of false copyright management information in violation of 17 U.S.C. § 1202; and (4) accounting.[2] (*Id.*) On December 20, 2024, the Court issued Original Summones to counsel for Plaintiff to serve upon the Foreign Defendants.[3] (Doc. No. 11.)

On January 11, 2025, Plaintiff filed a Motion for Alternative Service on Defendants' Counsel Via Email or Through Service to His Law Office, which this Court denied on February 3, 2025. (Doc. No. 12; Doc. No. 16.) The Court ordered Plaintiff to "proceed with service consistent with the requirements of Rule 4" and permitted Plaintiff to "file a renewed motion to serve the Defendants by alternative means that sets forth Plaintiff's documented good-faith service efforts" if Plaintiff was still unable to serve the Defendants within ninety (90) days, or by May 4, 2025. (Doc. No. 16 at PageID# 989.) On March 13, 2025, Plaintiff filed its First Amended Complaint adding Romo Group Ltd. as a Defendant. (Doc. No. 22.)

---

[1] Plaintiff's original Complaint did not include Romo Group Ltd., which was only added as a Defendant after Plaintiff filed its First Amended Complaint. (Doc. No. 22.)

[2] On that same date, Plaintiff filed a Motion for Temporary Restraining Order and an Order to Show Cause Regarding a Preliminary Injunction, which this Court denied on December 4, 2024. (Doc. No. 3; Doc. No. 7.)

[3] The Court issued the Original Summons for service upon Romo Group. Ltd. after it was added as a Defendant on March 14, 2025. (Doc. No. 24)

On May 4, 2025, Plaintiff filed returns of service which purported to have been executed in the United Kingdom pursuant to the Hague Convention upon Defendants Alice Temperley, Temperley Holdings Ltd., Romo Ltd., Romo (Holdings) Ltd., and Romo Group Ltd. (but not TMLL Ltd.)[4] on April 4, April 7, and April 8, 2025. (Doc. No. 31; Doc. No. 32; Doc. No. 33; Doc. No. 34; Doc. No. 35; Doc. No. 43.)

On May 5, 2025, Plaintiff filed Requests for Clerk's Entry of Default against the Foreign Defendants (the "Requests"). (Doc. No. 36; Doc. No. 37; Doc. No. 38; Doc No. 39; Doc. No. 40; Doc. No. 44.) Later that day, Attorneys Meredith K. Collier, Jeffer Ali, Sharif Ahmed, and Todd Tucker entered a Notice of Limited Appearance on behalf of the Foreign Defendants for the purpose of contesting service. (Doc. No. 41; Doc. No. 45.)

On May 6, 2025, Attorney Ali filed a "Letter to Judge Barker" (the "Letter") requesting an opportunity to respond to the Requests. (Doc. No. 42.)

On May 7, 2025, the Court issued an order notifying Attorney Ali that a letter is not the appropriate method to seek an extension and directing the Foreign Defendants to instead file a motion through counsel to request an extension by May 9, 2025. (Non-Doc Order of May 7, 2025.) The order additionally provided that "[i]n the interim, the Court will not have the Clerk enter the entries of default as requested by Plaintiff." (*Id.*) Later that day, the Foreign Defendants filed their Opposition to Plaintiff Sophia Parker Studio, Inc.'s Requests for Clerk's Entry of Default ("Foreign Defendants' Opposition to Default") and, separately, a Motion for Setting of Deadline for Response to First Amended Complaint or, Alternatively, For Extension of Time to Respond ("Foreign

---

[4] Plaintiff made the same filings with respect to Defendant TMLL Ltd. on May 7, 2025, rather than May 4, 2025. (Doc. No. 43; Doc. No. 44.)

3

Defendants' Motion"). (Doc. No. 46; Doc. No. 47.)  In the Foreign Defendants' Motion, they requested an extension of time to respond to Plaintiff's First Amended Complaint through May 27, 2025. (Doc. No. 47 at PageID#s 6827-28.) On May 9, 2025, the Court issued an order granting the Foreign Defendants an extension of time to respond until May 27, 2025 (the "May 9 Order"). (First Non-Doc Order of May 9, 2025.)

On May 12, 2025, Plaintiff filed Plaintiff's Motion, requesting that the Court reconsider the May 9 Order. (Doc. No. 48.) On May 19, 2025, the Foreign Defendants filed their Opposition. (Doc. No. 50.) On June 2, 2025, Plaintiff filed its Reply. (Doc. No. 54.)

**II.     Standard of Review**

A court may grant reconsideration if there is a clear error of law, newly discovered evidence, an intervening change in controlling law, or to prevent manifest injustice. *See Brumley v. United Parcel Service, Inc.*, 909 F.3d 834, 841 (6th Cir. 2018); *Gencorp, Inc. v. Am. Int'l Underwriters*, 178 F.3d 804, 834 (6th Cir. 1999).  "It is not the function of a motion to reconsider either to renew arguments already considered and rejected by a court or 'to proffer a new legal theory or new evidence to support a prior argument when the legal theory or argument could, with due diligence, have been discovered and offered during the initial consideration of the issue.'" *McConocha v. Blue Cross & Blue Shield Mut. of Ohio*, 930 F. Supp. 1182, 1184 (N.D. Ohio 1996); *see also Brumley*, 909 F.3d at 841.  Motions to alter or amend are extraordinary and should be sparingly granted. *See Cequent Trailer Products, Inc. v. Intradin (Shanghai) Machinery Co., Ltd.*, 2007 WL 1362457 at *2 (N.D.

4

Ohio May 7, 2007); *Plaskon Elec. Materials, Inc. v. Allied-Signal, Inc.*, 904 F. Supp. 644, 669 (N.D. Ohio 1995).[5]

Despite this well-established legal standard for motions for reconsideration, Plaintiff's Motion does not apply it.  Rather, Plaintiff attempts to relitigate the merits of its already-rejected contention that the Clerk should be directed to enter default under Rule 55 because Plaintiff perfected service and the Foreign Defendants failed to timely respond.

**III.   Analysis**

   **A.  Summary of Arguments**

In each of Plaintiff's Requests and the declarations in support, Plaintiff requested that the Clerk enter default against the Foreign Defendants on the basis that Plaintiff properly served the Defendants with a copy of the summons, Amended Complaint, and other documents on April 4, April 7, or April 8, 2025; their Answers were due twenty-one (21) days later; and they had not appeared in the action and therefore had failed to plead or otherwise defend by the applicable deadline for pleading.  (Doc. Nos. 36-40, 41, Plaintiff's Request at pgs. 1-2.)

Plaintiff contends that it "hired The UK National Process Servers and M Private Investigations Ltd. to effectuate service upon the foreign Defendant in accordance with Article 5 of the Hague Convention" and that Ally McIllroy and Mark Shaw, agents of M Private Investigations Ltd., served the required documents at the registered office address of the Foreign Defendants.  (*Id.*, Plaintiff's Declaration at pgs. 1-2.)  Further, Plaintiff maintains that "on May 1, 2025, the court master in the U.K. Central Authority signed, stamped, and sealed the Hague Certificate of Attestation Form

---

[5]*See also Kidd v. Shoop*, 2019 WL 1325558 at *1 (S.D. Ohio Apr. 15, 2019).  ("Courts disfavor motions for reconsideration because they consume a court's scarce time for attention to a matter that has already been decided.  They are subject to limitations based on that disfavor.").

5

complete with the seal of the Senior Courts in conformity with Article 6 of the Hague Convention[,]" but that despite receiving service of process and notice of this action, the Foreign Defendants failed to plead or otherwise defend. (*Id.*)

In the Foreign Defendant's Opposition to Default they make two arguments in response. (Doc. No. 46.) First, they maintain that their failure to respond was "neither culpable nor willful" because they "had no reason to know, prior to May 4, 2025, that service was properly effectuated within the United Kingdom[,]" as "Plaintiff's counsel did not receive the signed attestation forms from the U.K. Central Authority until May 1, 2025" and Plaintiff did not file the returns of service until May 4, 2025. (Doc. No. 47 at PageID#s 6823-24.) Second, they contend that Plaintiff would suffer no prejudice if the Clerk did not enter default because Plaintiff would be limited to litigating on the merits, and that they can assert meritorious defenses to the Complaint.[6] (*Id.* at PageID# 6825.)

In Plaintiff's Motion, Plaintiff asserts that the Court should reconsider the May 9 Order granting the Foreign Defendants the extension to respond to Plaintiff's First Amended Complaint, and should direct the Clerk to enter default because: (1) "service was properly effectuated;" (2) the Foreign Defendants "had notice of the litigation and do not dispute that they physically received the summons and First Amended Complaint in early April 2025 and that service was proper;" (3) Attorney Bruno emailed Attorney Ali to notify him on April 17, 2025, that service had been effectuated; and (4) "Defendants have failed to show 'good cause' as to why they failed to answer or respond." (Doc. No. 48-1 at PageID#s 6838-39.)

---

[6] In the Foreign Defendant's Motion, they reiterated the same arguments and requested an extension to respond to the Complaint until May 27, 2025, which this Court granted. (*Id.* at PageID# 6828; Entry of May 9, 2023.)

In the Foreign Defendants' Opposition, they respond that Plaintiff is rehashing previously raised arguments and fails to explain how the Court 'abused its discretion' in granting the Foreign Defendant's Motion. (Doc. No. 50 at PageID# 6890.) As in their Opposition to Default, the Foreign Defendants continue to maintain that they "had no reason to know that service had been authorized by the U.K. Central Authority until May 4, 2025" and thus, until May 4, 2025, had no reason to know that service had been effectuated. (Doc. No. 50 at PageID# 6891.) Again, they contend that Plaintiff would not suffer prejudice if the Clerk were to not enter default because Plaintiff would suffer a delay of "only a few days" and be required to litigate on the merits of their defenses, which at this stage of the litigation, requires only a defense "recognized by the law." (Doc. No. 50 at PageID#s 6892-93.) As an example, they point out that the Court already acknowledged its concern about lack of personal jurisdiction. (*Id.* at PageID# 6893.)

**B. Good Cause Exists to Set Aside an Entry of Default**

Although Plaintiff's Motion is primarily directed at establishing that Plaintiff perfected service on the Foreign Defendants, the court need not evaluate those arguments because the Foreign Defendants "have decided not to contest the manner of service." (Doc. No. 50 at PageID# 6891.) However, assuming arguendo that service on the Foreign Defendants was proper and that the Court had granted Plaintiff's request to direct the Clerk to enter default accordingly, the Court would set aside the default under Rule 55(c) because the Foreign Defendants have established "good cause" to do so. Thus, the Court denies Plaintiff's Motion.

Under Fed. R. Civ. P. 55(c), "[t]he court may set aside an entry of default for good cause." In order to determine whether a party has shown "good cause" for the purposes of setting aside an entry of default, the court considers the following factors: (1) whether the plaintiff will suffer

7

prejudice, (2) whether the defendant has a meritorious defense, and (3) whether culpable conduct of the defendant led to the default. *See Waifersong, Inc. v. Classic Music Vending*, 976 F.2d 290, 292 (6th Cir. 1992) (citing *United Coin Meter Co. v. Seaboard Coastline R.R.*, 705 F.2d 839, 845 (6th Cir. 1983); 10 Wright & Miller, *Federal Practice and Procedure* § 2692, 2694 (1983)). Rule 55(c) leaves the decision to set aside the entry of default to the discretion of the trial judge. *See Shepard Claims Service, Inc. v. William Darrah & Associates*, 796 F.2d 190, 193 (6th Cir. 1986). Indeed, "trials on the merits are favored in federal courts because they serve the best interests of justice, so 'any doubt should be resolved in favor of the petition to set aside the judgment.'" *Unger v. Ohio Flame, LLC*, 2013 WL 12121504 at *2 (W.D. Mich. Nov. 26, 2013) (quoting *United Coin*, 705 F.2d at 846).

### 1. Plaintiff would not "suffer prejudice" by setting aside default.

With respect to the first factor—whether the plaintiff will be prejudiced by the court vacating an entry of default—delay alone is not a sufficient basis for establishing prejudice. *See United Coin*, 705 F.2d at 845; *Berthelsen v. Kane*, 907 F.2d 617, 621 (6th Cir. 1990). Instead, the plaintiff must demonstrate that the delay will cause "loss of evidence, increased difficulties in discovery, or greater opportunities for fraud and collusion." *Berthelsen*, 907 F.2d at 621.

This factor weighs in favor of the Foreign Defendants because, as the Foreign Defendants correctly point out, "Plaintiff does not even allege prejudice in its Motion for Reconsideration." (Doc. No. 50 at PageID# 6892-93.) In its Reply, Plaintiff again fails to explain how it would suffer prejudice if the Court were to set aside the Foreign Defendant's default, limiting its analysis exclusively to its contention that the Foreign Defendants "sat on their hands and failed to abide by the 21-day rule []

8

due to their inexcusable neglect and reckless disregard for the judicial proceedings." (Doc. No. 54 at PageID# 6988-89.) Plaintiff has not even alleged, much less demonstrated prejudice.

### 2. The Foreign Defendants have a "meritorious defense" because lack of personal jurisdiction is a defense recognized by the law.

Next, in determining whether the defendant has a meritorious defense, the Court looks to "whether the defense is one recognized by the law, taking all facts in the light most favorable to the defendant," rather than the defense's likelihood of success. *Unger*, 2013 WL 12121504 at *2. "[I]f any defense relied upon states a defense good at law, then a meritorious defense has been advanced." *Union Coin*, 705 F.2d at 845.

This factor slightly favors the Foreign Defendants. Plaintiff's Motion does not include any assertion or argument that the Foreign Defendants lack any meritorious defense. The Foreign Defendants note in their Opposition that this Court already raised the possibility that the Defendants could assert a lack of personal jurisdiction as a meritorious defense.[7] *See Sophia Parker Studios, Inc. v. Temperley*, 2024 WL 4956689 at *12 (N.D. Ohio Dec. 3, 2024) ("[T]he Court has concerns regarding whether it has personal jurisdiction over these Defendants."). (Doc. No. 50 at PageID# 6893.) While the Foreign Defendants did not elaborate or otherwise develop their argument against personal jurisdiction, they have already filed motions to dismiss raising lack of personal jurisdiction. (*Id.*; Doc. No. 51; Doc. No. 52.) Thus, despite the Foreign Defendant's weak explanation, Plaintiff entirely failed to respond to this contention in its Reply. (*Compare* Doc. No. 50 at PageID# 6893 *with* Doc. No. 54 at PageID#s 6986-87.)

---

[7] "[L]ack of personal jurisdiction provides a meritorious defense to a plaintiff's action and provides good cause for setting aside an entry of default." *Jarrett v. Duro-Med Indus.*, 2007 WL 628146 at *2 (E.D. Ky. Feb. 26, 2007); *Hale v. McCall*, 425 F. Supp. 396, 399 (E.D. Tenn. 1976) (citing *Cent. Operating Co. v. Utilities Workers of Am.*, 491 F.2d 245, 252 (4th Cir. 1974)) (same).

9

Accordingly, the Court concludes that this factor slightly favors the Foreign Defendants.

### 3.  The Foreign Defendants have not engaged in "culpable conduct."

Finally, the Court finds that the Foreign Defendants have not engaged in culpable conduct. "To be treated as culpable, the conduct of a defendant must display either an intent to thwart judicial proceedings or a reckless disregard for the effect of its conduct on those proceedings." *Shepard*, 796 F.2d at 194. "[M]ere negligence or failure to act reasonably is not enough to sustain a default." *United States v. $22,050.00 U.S. Currency*, 595 F.3d 318, 327 (6th Cir. 2010).  "Where the party in default satisfies the first two requirements for relief and moves promptly to set aside the default before a judgment is entered, the district court should grant the motion if the party offers a credible explanation for the delay that does not exhibit disregard for the judicial proceedings." *Shepard*, 796 F.2d at 195. For instance, "'[w]here the defaulting party and counsel have not shown disrespect for the court, or have given evidence of respect for the court's process by their haste in acting to set aside the default, the courts have been inclined towards leniency.'" *United States Commodities Futures Trading Comm'n v. Galemno*, 2016 WL 11597823 at *1 (S.D. Ohio Mar. 30, 2016) (quoting *Shepard*, 796 F.2d at 194).

This factor weighs in favor of the Foreign Defendants.  Unlike Plaintiff's failure to meaningfully engage the Foreign Defendants' arguments concerning the two factors above, Plaintiff contends under this prong of the analysis that the Foreign Defendants have demonstrated culpable conduct— but Plaintiff's only supporting evidence is that the Foreign Defendants failed to answer without offering a credible explanation.  (Doc. No. 48 at PageID# 6833, 6843-45.)   The Foreign Defendants' explanation is that they "had no reason to know, prior to May 4, 2025, that service was properly effectuated within the United Kingdom.  (Doc. No.  47 at PageID#s 6823-24.)

As Plaintiff's cited cases demonstrate, the Foreign Defendants' mere failure to recognize that they had been served followed by near instant action following that recognition means their conduct does not rise to the high standard required for a finding of culpability.  Plaintiffs cite to two bankruptcy cases, *In re Bradbury*, 310 B.R. 313, 318 (Bankr. N.D. Ohio 2003) and *In re Bishop*, 2008 WL 2448072 (Bankr. W.D. Ky. June 16, 2008).  (Doc. No. 48-1 at PageID# 6844.)  In *Bradbury*, the court found culpable conduct where the defendant delayed "taking an action prescribed by the rules of procedure" for sixteen (16) months and received "numerous notices concerning the Plaintiff's lawsuit . . . over a significant period of time—e.g., notice of the lawsuit itself, plus multiple notices concerning the default judgment. Yet, despite these numerous notices, the relationship between the Defendant and its agent for service of process did not lead to any response on the part of the Defendant." *Id.* at 318-19.  In *Bishop*, the plaintiff served the defendant on December 3, 2007, and moved for default judgment on March 12, 2008.  *See* 2008 WL 2448072 at *2.  Yet the defendant waited until March 31, 2008, to file a Motion to Set Aside Default Judgment and File an Answer.  *See id.*  The court concluded that the defendant's months-long delay, which the defendants explained only on the basis that it "misplaced" the file, amounted to culpable conduct.  *Id.* at *2.

In contrast to *Bradford* and *Bishop*, even assuming that the Foreign Defendants were served in early April 2025 and received a single confirmation of service on April 17, 2025, as Plaintiff contends, the Foreign Defendants acted much more diligently (and therefore less culpably) than the defendants in those cases.  Here, the Foreign Defendants filed the Letter requesting time to respond on May 6, 2025, and formally moved to extend on May 7, 2025, only approximately one (1) week after the Foreign Defendants' response was allegedly due and only one (1) day after Plaintiff filed the Requests on May 5, 2025.  (Doc. No. 42.)  Thus, unlike the many months between service and

11

response by the defendants in *Bradbury* and *Bishop*, the Foreign Defendants here acted swiftly to rectify their oversight. Additionally, as noted above, a defendant's "haste in acting to set aside default" is "evidence of respect for the court's process" that warrants "leniency." *Shepard*, 796 F.2d at 194; *see Doe v. Bd. of Educ. of Jefferson Cnty.*, 2017 WL 11722216 at *1 (W.D. Ky. Oct. 20, 2017) ("[C]ourts have overwhelmingly held that an entry of default is not warranted where, as here, a party makes an appearance the same day that the opposing party files its motion for entry of default.").

Furthermore, unlike the defendants in *Bradbury* and *Bishop*, the Foreign Defendants point to evidence that they proactively sought to confirm service. They claim that one of their paralegals, Dr. Janet Strath, contacted the Kings Bench on April 22, 2025, and spoke with a representative thereof regarding service who conveyed to Dr. Strath that service had not been perfected and that no action was required.[8] (Doc. No. 50 at PageID# 6888-89.) Therefore, the Defendants have established that they did not engage in culpable conduct.

Accordingly, the Court concludes that because Plaintiff would not suffer prejudice from setting aside an entry of default, and because the Foreign Defendants can raise a defense recognized by the law and did not engage in culpable conduct, the Court would set aside Plaintiff's requested entry of default under Rule 55(c) for "good cause." Because the Court cannot conclude that the

---

[8] In Plaintiff's Reply, Plaintiff contends that Dr. Strath's declaration is hearsay. (Doc. No. 54 at PageID# 6988.) "Hearsay is defined as an out-of-court statement that is repeated in court and offered to prove the truth of the matter asserted." *United States v. Burrell*, 114 F.4th 537, 555 (6th Cir. 2024) (citing Fed. R. Evid. 801(c)). Dr. Strath declares that a representative of the King's Bench "stated that there was no activity on the file since March 28, 2025, and that the King's Bench was waiting for a response from Plaintiff . . . the representative confirmed that the claim had not been served yet, nothing had been issued to that effect, and that as representatives of Temperley Holdings Ltd., no action was required." (Doc. No. 50-1 at PageID# 6898.) The King's Bench's representative's statement is not hearsay because although it is an out-of-court statement, the Foreign Defendants do not offer the representative's statement to prove the truth of the matter asserted (i.e., that the claim had not, in fact, been served) but to support their contention that one of their agents made a good-faith effort to contact the applicable authorities regarding service and therefore the Foreign Defendants did not engage in culpable conduct.

12

Foreign Defendants "should suffer the ultimate sanction of losing [their] case without any consideration of the merits," *Shepard*, 796 F.2d at 195, Plaintiff's Motion must be denied.

IV. Conclusion

For the reasons set forth above, Plaintiff's Motion (Doc. No. 48) is DENIED.

**IT IS SO ORDERED.**

Date: June 5, 2025

 *s/Pamela A. Barker*
PAMELA A. BARKER
U. S. DISTRICT JUDGE