## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO

|  |  |
|---|---|
| SOPHIA PARKER STUDIOS, INC. (t/a WIFE NYC),<br><br>               Plaintiff,<br><br>v.<br><br>ALICE TEMPERLEY MBE, TMLL LTD. (t/a TEMPERLEY LONDON), TEMPERLEY HOLDINGS LTD. (t/a TEMPERLEY HOLDINGS), ROMO LTD. (t/a ROMO and/or THE ROMO GROUP), ROMO (HOLDINGS) LTD., ROMO, INC. (t/a ROMO FABRICS AND WALLCOVERINGS and ROMO USA), THE ROMO GROUP LTD., AND DOES 1-20, inclusive,<br><br>               Defendants. | **Case No. 1:24-cv-02086-PAB**<br><br>Judge Pamela A. Barker<br><br>Magistrate Judge Reuben J. Shepherd<br><br>**PLAINTIFF SOPHIA PARKER STUDIOS, INC.'S MEMORANDUM IN OPPOSITION TO DEFENDANT ALICE TEMPERLEY'S AND TEMPERLEY LONDON DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(b)(2) AND (6)** |

# TABLE OF CONTENTS

**Page**

**TABLE OF CONTENTS**………………………………………………………….....ii-iii

**TABLE OF AUTHORITIES**……………………………………………………....iv-vii

**BRIEF STATEMENT OF ISSUES TO BE DECIDED**…………………………….viii-x

**SUMMARY OF ARGUMENT**……………………………………………………...x-xii

I.      **INTRODUCTION**……………………………………………………………1

II.     **LEGAL STANDARD**……...…………………………………………………1

III.    **ARGUMENT**………………………………………………………………....2

    **A.** This Court has personal jurisdiction over Alice Temperley and Temperley London pursuant to Ohio's long-arm statue……………………………….………………………3

    **B.** Alternatively, this Court has personal jurisdiction over Alice Temperley and Temperley London pursuant to Fed. R. Civ. P. 4(k)(2)………….……………………4

    **C.** Constitutional Basis for Personal Jurisdiction…………………………………..5

        a.   In the event the Ohio long-arm statute applies, there is a constitutional basis for specific personal jurisdiction……………………………………………5

            1)  Prong #1 – Purposeful Availment is Met……………………………6

            2)  Prong #2 – Cause of Action "Arises From" Alice Temperley's and Temperley London's Activities in Ohio………………....7

            3)  Prong #3 – It is Reasonable to Exercise Specific Personal Jurisdiction Over Alice Temperley and Temperley London….8

        b.  In the event that the federal long-arm statute, Fed. R. Civ. P. 4(k)(2), applies, there is a constitutional basis for personal jurisdiction………………………9

            1)  Prong #1 – Purposeful Availment is Met……………………..9

            2)  Prong #2 – Cause of Action "Arises From" Alice Temperley's and Temperley London's Activities in U.S………………....10

            3)  Prong #3 – It is Reasonable to Exercise Specific Personal Jurisdiction Over Alice Temperley and Temperley London...10

    **D.** Plaintiff Plausibly Alleged Alice Temperley and Temperley London's Direct Infringement of Plaintiff's "Memphis Chainsaw" Sculpture ("the Artwork") (U.S. Copyright Registration No. VA 2-342-734) in its …………………………………..11

        1)     Plaintiff has plausibly alleged that Alice Temperley and Temperley London unlawfully copied the underlying "Memphis Chainsaw" sculptural Artwork................................................................................11

2)      The FAC sufficiently alleges that Alice Temperley and Temperley London had access to the Artwork……………………………..………...15

**E.**   Plaintiff Plausibly Alleged Facts Supporting its Claim that Alice Temperley and Temperley London Infringed the Photographs (VA 2-352-960 (Registered April 27, 2023) and VA 2-420-961 (Registered Nov. 4, 2024))……………………………17

1)      The FAC sufficiently alleges that Alice Temperley and Temperley London unlawfully copied the Photographs………………………………………17

2)      Plaintiff has sufficiently alleged that Alice Temperley and Temperley London had access to the Photographs………………………………19

**F.**   Plaintiff Plausibly Alleged Sufficient Facts Supporting a Claim for Vicarious and Contributory Infringement Against Alice Temperley and Temperley London in its FAC…..........................................................................................................……..19

**G.**   Plaintiff Adequately Pleaded DMCA Claims for Violation of 17 U.S.C. § 1202 in its FAC………………………………………………………………………..…21

1)      Plaintiff's CMI removal claims under § 1202(b)(1) and (3) should not be dismissed.....................................................................................................21

2)      Plaintiff's claim for the provision and distribution of false CMI under § 1202(a)(1) and (2) should not be dismissed……………..…………...23

**H.**   Plaintiff May Seek Statutory Damages and Attorneys' Fees for Alice Temperley and Temperley London's Copyright Infringement…………………………….…...24

**IV.    CONCLUSION**………………………………………………………………25

# TABLE OF AUTHORITIES

**Page**

**Cases**

NOCO Company v. Shenzhen Valuelink E-Commerce Co., Ltd.,
    550 F. Supp. 3d 488, 493 (N.D. Ohio 2021)…………………….. 3, 4, 5, 6, 7, 9, 10, 11

Neogen Corp. v. Neo Gen Screening, Inc.,
    282 F.3d 883, 887 (6th Cir. 2002) ………………………………………….…..1, 7

Bell Atl. Corp. v. Twombly,
    550 U.S. 544, 127 S.Ct. 1955 (U.S. 2007) …………………………………….......2

Ashcroft v. Iqbal,
    556 U.S. 662, 678 (U.S. 2009) ………………………………………………….2

Directv, Inc. v. Treesh,
    487 F.3d 471, 476 (6th Cir. 2007) …………………………………………...…2, 18

Hale v. Atl. Recording Corp.,
    2013 WL 12138708, at *3 (C.D. Cal. Sept. 3, 2013)…………………………………..2

Mid America Title Co. v. Kirk,
    991 F.2d 417, 421 (7th Cir. 1993)…………………………………………...…2

Kentucky Oaks Mall Co. v. Mitchell's Formal Wear, Inc.,
    559 N.E.2d 477, 480 (Ohio 1990)………………………………………...…………..3

Zoya Co. v. NIOS, Inc.,
    2013 WL 4511922, *2-3 (N.D. Ohio Aug. 23, 2013)………………………………3

Lyngaas v. Curaden Ag,
    992 F.3d 412, 422 (6th Cir. 2021) ……………………………………………5, 10

Critical Device Corp. v. Enteral Access Tech. Ltd.,
    2023 WL 11780380, at *3 (N.D. Ohio. 2023) ……………………………………5

In re Stingray IP Sols., LLC,
    56 F.4th 1379, 1385 (Fed. Cir. 2023) ……………………………………………..5

Int'l Shoe Co. v. State of Washington,
    326 U.S. 310, 316 (U.S. 1945) …………………………………………..………..6

See, Inc. v. Imago Eyewear Pty, Ltd.,
    167 F. App'x 518 (6th Cir. 2006) …………………………………………...…7

Zippo Mfg. Co. v. Zippo Dot Com, Inc.,
    952 F. Supp. 1119, 1124 (W.D. Pa. 1997) …………………………………...7

Invisible Fence, Inc. v. Protect Animals With Satellites, Inc.,
    2024 WL 4375755, at *6 (E.D. Tenn. Oct. 2, 2024……………………………..7

Asahi Metal Indus. Co. v. Superior Court of Cal.,
    408 U.S. 102, 110 (U.S. 1987)………………………………………………......8

CompuServe, Inc. v. Patterson,
    89 F.3d 1257, 1265 (6th Cir. 1996)………………………………………………..8

Bird v. Parsons,
    289 F.3d 865, 875 (6th Cir. 2002)………………………………………………...…9

Schwanger v. Munchkin, Inc.,
    1999 WL 820449, at *6 (Fed. Cir. Oct. 7, 1999)………………………………….9

Am. Greetings Corp. v. Cohen,
    839 F.2d 1164, 1168 (6th Cir 1988)………………………………………...…9

Burger King Corp. v. Rudzewicz,
    471 U.S. 462, 477 (U.S. 1985)………………………………………….…....9

Murry Hill Publ., Inc. v. Twentieth Century Fox Film Corp.,
    361 F.3d 312, 316 (6th Cir. 2004)……………………………………………12, 16, 17

Kohus v. Mariol,
    328 F.3d 848, 853 (6th Cir. 2003) ………………………………….....12, 13, 14, 16

Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc.,
    499 U.S. 340, 361 (U.S. 1991)………………………………………………12, 13, 14

Lexmark Intern., Inc. v. Static Control Components, Inc.,
    387 F.3d 522, 534 (6th Cir. 2004)……………………………….........13, 16

Stokes v. Brinor, Inc.,
    683 F. Supp. 3d 713, 726 (N.D. Ohio 2023)………………………………...13, 19

Enchant Christmas Light Maze & Mtk. v. Glowco, LLC,
      958 F.3d 532, 536 (6th Cir. 2020)……………………………………………..13

DC Comics v. Towle,
      , 802 F.3d 1012, 1023 (9th Cir. 2015) ……………………………………....13, 16, 18

Apple Computer, Inc. v. Microsoft Corp.,
      35 F.3d 1435, 1447-48 (9th Cir. 1994)………………………………………14, 16, 18

Gamma Audio & Video, Inc. v. Ean-Chea,
      11 F.3d 1106, 1111-12 (1st Cir. 1993) …………………………….......14, 16, 18

Sheldon v. Metro-Goldwyn Pictures Corp.,
      81 F.2d 49, 55 (2d Cir. 1936) ………………………………………………......…14

Harper & Row, Publishers, Inc. v. Nation Enters.,
      471 U.S. 539, 565 (1985)………………………………………………….......14

Unicolors, Inc. v. Urban Outfitters, Inc.,
      853 F.3d 980, 985-987 (9th Cir. 2017)…………………………………….......14

L.A. Printex Indus., Inc. v. Aeropostale, Inc.,
      676 F.3d 841, 851 (9th Cir. 2012) ……………………………………….......15

Rogers v. Koons,
      960 F.2d 301, 307-8 (2d Cir. 1992)………………………………………......15

Malibu Textile, Inc. v. Label Lane Int'l, Inc.,
      922 F.3d 946, 953-4 (9th Cir. 2019)……………………………………………...15

Warhol v. Goldsmith,
      598 U.S. 508, 541 (2023)……………………………………………………………15

Ty Inc. v. Publications Intern. Ltd.,
      292 F.3d 512, 519 (7th Cir. 2002) ……………………………………………………16

Ellis v. Diffie,
      177 F.3d 503, 507 (6th Cir. 1999) ……………………………………….......16

King Records, Inc. v. Bennett,
      438 F. Supp. 2d 812, 846 (M.D. Tenn. 2006) …………………………….......16, 17

Starkey v. JPMorgan Chase Bank, NA,
      558 F.3d 485, 491 (6th Cir. 2009)………………………………………………...17

vi

Bouchat v. Baltimore Ravens, Inc.,
 241 F.3d 350, 356 (4th Cir. 2000)………………………………………....…17, 19

Stokes v. Brinor, Inc.,
 683 F. Supp. 3d 713, 726 (N.D. Ohio 2023)………………………………………...17

Enchant Christmas Light Maze & Mtk. v. Glowco, LLC,
 958 F.3d 532, 536 (6th Cir. 2020)……………………………………………………17

Ets-Hokin v. Skyy Spirits, Inc.,
 225 F.3d 1068, 1074 (9th Cir. 2000) …………………………………………………19

Burrow-Giles Lithographic Co. v. Sarony,
 111 U.S. 53, 60 (U.S. 1884)  …………………………………………...……19

United States v. Hamilton,
 583 F.2d 448, 452 (9th Cir. 1978) ……………………………………………...19

Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.,
 545 U.S. 913, 930 (U.S. 2005)……………………………………………………...20

**Statutes**                   **Page**

17 U.S.C. § 1202(a) ……………………………………………….........1, 3, 17, 21, 24

17 U.S.C. § 1202(b) …………………………………………………………1, 3, 17, 18

O.R.C. § 2307.382(A)(1), (2), (3)…………………………………….........................3, 4

17 U.S.C. § 201(a) …………………………………………………………………12

17 U.S.C. § 106…………………………………………………………………………4

17 U.S.C. § 101……………………………………………………………….....14

17 U.S.C. § 501(b)………………………………………………………….........5

17 U.S.C. § 1202(c) ………………………………………………………17, 18, 19

17 U.S.C. § 504 ………………………………………………………………………24

17 U.S.C. § 505………………………………………………………………………24

17 U.S.C. § 412 ………………………………………………………………………24

17 U.S.C. § 504(c)(1) …………………………………………………………….....25

**Rules**

Fed. R. Civ. P. 12(b)(6) …………………………………………………………….…2, 11

Fed. R. Civ. P. 12(b)(2) …………………………………………………………….…2

Fed. R. Civ. P. 4(k)(2)……………………………………………………………..2, 5, 10

**Treatises**

1 Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 3.05, at 3-34.31 (Matthew Bender, Rev. Ed.)……………………………………………………….……………......7

4 Nimmer on Copyright § 12A.10 at 19…………………………………………....……23

## **BRIEF STATEMENT OF ISSUES TO BE DECIDED**

1) Does Plaintiff establish a *prima facie* case of personal jurisdiction over Alice Temperley and Temperley London where Plaintiff has alleged that Alice Temperley and Temperley London have sufficient minimum contacts with Ohio such that specific personal jurisdiction attaches, or in the alternative, personal jurisdiction is appropriate pursuant to Fed. R. Civ. P 4(k)(2)?

2) Does Plaintiff state a claim for direct copyright infringement against Alice Temperley and Temperley London where Plaintiff alleges that Alice Temperley and Temperley London infringed upon the copyright in the underlying sculptural artwork where the sculptural work is a registered work of art with the U.S. Copyright Office, and Alice Temperley and Temperley London copied the derivative Photographs of the sculptural work as well as all of the protected elements of the underlying sculptural work, which Plaintiff have specifically identified in the FAC?

3) Does Plaintiff state a claim for direct copyright infringement against Alice Temperley and Temperley London where Plaintiff plausibly alleges sufficient facts indicating that Alice Temperley and Temperley London engaged in unlawful copying of original copyright protected elements of both the underlying sculptural artwork and the Photographs and has identified the protected elements in the FAC?

4) Does Plaintiff state a claim for direct copyright infringement against Alice Temperley and Temperley London where Plaintiff plausibly alleges that Alice Temperley and Temperley London accessed the underlying sculptural work and the Photographs through Plaintiff's widely disseminated Instagram account, @wifenyc, or through the other Defendants or a third party and where striking similarities or at a minimum substantial similarities, exist between the Unauthorized Farrah Interiors Products and Unauthorized Advertising Work and the underlying sculptural work and Photographs?

5) Does Plaintiff state a claim for vicarious and contributory infringement against Alice Temperley and Temperley London where Plaintiff alleges that Alice Temperley and Temperley London closely collaborated with, knowingly induced, caused, participated in, aided and abetted, and profited from the infringing acts of the other Defendants pertaining to the infringing works and also had the right and ability to supervise and exercise control over the actions of the other Defendants concerning these infringements and profit from these infringements?

6) Does Plaintiff state a cognizable claim under the Digital Millennium Copyright Act § 1202(b)(1) and (3) where Plaintiff alleges that it displayed Photographs of the underlying sculptural work on its Instagram account in connection with its trade name and Instagram account handle, @wifenyc, as well as the titles of the Photographs and the underlying artwork, which constitute copyright management information under the governing statute, and that Alice Temperley and Temperley London removed this copyright management information and published and distributed unauthorized copies of the underlying sculptural artwork and Photographs in the form of identical copies of the Photographs and derivative apparel and advertising works of the Artwork and Photographs on their website and elsewhere without Plaintiff's copyright management information included and when Alice Temperley and Temperley London distributed these copies knowing and with the intent to induce, enable, and facilitate their infringements and the infringement of others of Plaintiff's works?

7) Does Plaintiff state a cognizable claim under the Digital Millennium Copyright Act § 1202(a)(1) and (2) where Plaintiff alleges that Alice Temperley and Temperley London published and distributed unauthorized copies of Plaintiff's underlying sculptural artwork and Photographs in the form of identical copies of the Photographs and derivative apparel and advertising works on their website and elsewhere with Alice Temperley's and Temperley London's copyright management information in connection with these works, which is false copyright management information

x

concerning the works, knowing and with the intent to induce, enable, and facilitate Defendants' infringements and the infringement of others of Plaintiff's works?

8) Is Plaintiff precluded from seeking statutory damages and attorneys' fees when Plaintiff registered its copyright in the underlying sculptural work prior to the time when Alice Temperley and Temperley London committed their "first act" of infringement concerning the Unauthorized Farrah Interiors Products, thereby complying with the time period set forth in 17 U.S.C. § 412?

## SUMMARY OF ARGUMENT

1) Where Plaintiff has established a *prima facie* case of personal jurisdiction over Alice Temperley and Temperley London, the Court should not dismiss Alice Temperley and Temperley London entities from this suit.

2) Where has alleged that Alice Temperley and Temperley London infringed upon the copyright in the underlying sculptural artwork where the sculptural work is a registered work of art with the U.S. Copyright Office, and Alice Temperley and Temperley London copied the derivative Photographs of the sculptural work as well as all of the protected elements of the underlying sculptural work, which Plaintiff have specifically identified in the FAC, Plaintiff has plausibly alleged sufficient facts that Alice Temperley and Temperley London engaged in direct copyright infringement.

3) Where Plaintiff has alleged sufficient facts indicating that Alice Temperley and Temperley London engaged in unlawful copying of original copyright protected elements of both the underlying sculptural artwork and the Photographs and identified the protected elements in the FAC, Plaintiff has plausibly alleged direct copyright infringement of the sculptural work and the Photographs.

4) Where Plaintiff has alleged sufficient facts that Alice Temperley and Temperley London accessed the underlying sculptural work and the Photographs through Plaintiff's widely disseminated Instagram account, @wifenyc, or through the other Defendants or a third party and where striking similarities, or at a minimum substantial similarities, exist between the Unauthorized Farrah Apparel Products, Unauthorized Palmae Apparel Products, and Unauthorized Advertising Work and the underlying sculptural work and Photographs, Plaintiff has plausibly alleged direct copyright infringement of the sculptural work and the Photographs.

5) Where Plaintiff has alleged sufficient facts that Alice Temperley and Temperley London closely collaborated with, knowingly induced, caused, participated in, aided and abetted, and profited from the infringing acts of the other Defendants and also had the right and ability to supervise and exercise control over the actions of the other Defendants concerning these infringements and profit from these infringements, Plaintiff has stated a claim for vicarious and contributory infringement against Alice Temperley and Temperley London.

6) Where Plaintiff has alleged that it displayed Photographs of the underlying sculptural work on its Instagram account in connection with its trade name and Instagram account handle, @wifenyc, as well as the titles of the Photographs and the underlying artwork, which constitute copyright management information under the governing statute, and that Alice Temperley and Temperley London removed this copyright management information and published and distributed unauthorized copies of the underlying sculptural artwork and Photographs in the form of identical copies of the Photographs and derivative apparel and advertising works of the Artwork and Photographs on their website and elsewhere without Plaintiff's copyright management information included and when Alice Temperley and Temperley London distributed these copies knowing and with the intent to induce, enable, and facilitate their infringements and the infringement of others of Plaintiff's works,

Plaintiff has stated a cognizable claim under the Digital Millennium Copyright Act § 1202(b)(1) and (3).

7) Where Plaintiff has alleged that Alice Temperley and Temperley London published and distributed unauthorized copies of Plaintiff's underlying sculptural artwork and Photographs in the form of identical copies of the Photographs and derivative apparel and advertising works on their website and elsewhere with Alice Temperley's and Temperley London's copyright management information in connection with these works, which is false copyright management information concerning the works, knowing and with the intent to induce, enable, and facilitate their infringements and the infringement of others of Plaintiff's works, Plaintiff has stated a cognizable claim under the Digital Millennium Copyright Act § 1202(a)(1) and (2).

8) Where Plaintiff registered its copyright in the underlying sculptural work prior to the time when Alice Temperley and Temperley London committed their "first act" of infringement concerning the Unauthorized Farrah Interiors Products, thereby complying with the time period set forth in 17 U.S.C. § 412, Plaintiff is not precluded from seeking statutory damages and attorneys' fees.

## I.    INTRODUCTION

Plaintiff has sufficiently pleaded its claims for direct copyright infringement, contributory and vicarious copyright infringement, willful infringement, distribution of false copyright management information in violation of 17 U.S.C. § 1202(a), and removal of copyright management information in violation of 17 U.S.C. § 1202(b) against Defendants Alice Temperley MBE ("**Alice Temperley**") and TMLL Ltd. and Temperley Holdings Ltd. ("**Temperley London**") in its First Amended Complaint ("**FAC**") and has established a *prima facie* case of specific personal jurisdiction against these Defendants, which is bolstered by the admissions set forth in the Declarations of Alice Temperley MBE (*See Dec. 52-1*) and Sarita Jha, a board member and the Interim CEO of Temperley Holdings Ltd. (*See Doc. 52-2*).

## II.   LEGAL STANDARD

When making determinations of jurisdiction based on a Rule 12(b)(2) motion without holding an evidentiary hearing, the court must "view allegations in the pleadings and the documentary evidence in a light most favorable to the plaintiffs, resolving all reasonable competing inferences in their favor."  NOCO Company v. Shenzhen Valuelink E-Commerce Co., Ltd., 550 F. Supp. 3d 488, 493 (N.D. Ohio July 22, 2021) (citing Goldstein v. Christiansen, 638 N.E.2d 541, 544 (Ohio 1994)).  A plaintiff need only make a *prima facie* showing of personal jurisdiction, which is made by "establishing with reasonable particularity sufficient contacts between [the defendant] and the forum state to support jurisdiction."  Neogen Corp. v. Neo Gen Screening, Inc., 282 F.3d 883, 887 (6th Cir. 2002).

To defeat a Rule 12(b)(6) motion to dismiss, the complaint must provide enough factual detail to "give the defendant fair notice of what the … claim is and the grounds upon which it rests." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955 (U.S. 2007). The complaint must also be "plausible on its face." Id. Thus, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (U.S. 2009) (quoting Twombly, 550 U.S. at 570). "In reviewing a motion to dismiss, [a district court must] construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." Directv, Inc. v. Treesh, 487 F.3d 471, 476 (6th Cir. 2007).

Courts do not require plaintiffs to plead copyright claims with particularity. See Hale v. Atl. Recording Corp., 2013 WL 12138708, at *3 (C.D. Cal. Sept. 3, 2013) ("allegations of copyright infringement need only satisfy the minimal notice-pleading requirements of Federal Rule of Civil Procedure 8") (citing Mid America Title Co. v. Kirk, 991 F.2d 417, 421 (7th Cir. 1993)). A "short and plain statement" will suffice. Fed. R. Civ. P. 8(a)(2). "Under the notice pleading standard of the Federal Rules, courts are reluctant to dismiss colorable claims which have not had the benefit of factual discovery." Directv, Inc., 487 F.3d at 477.

## III.    ARGUMENT

This Court has personal jurisdiction over Alice Temperley and Temperley London under Ohio's long-arm statute, or alternatively, pursuant to Fed. R. Civ. P. 4(k)(2), and there is a constitutional basis for specific personal jurisdiction to attach to these Defendants; thus, their motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(2) should be denied. Moreover, Plaintiff has plausibly alleged sufficient facts to support all of its claims; thus, Defendants' motion to dismiss the FAC pursuant to Fed. R. Civ. P. 12(b)(6) should be denied.

2

**A. This Court has personal jurisdiction over Alice Temperley and Temperley London pursuant to Ohio's long-arm statute.**

Under Ohio's long-arm statute, "[t]ransacting any business in [Ohio]," "[c]ontracting to supply services or goods in [Ohio]," or "[c]ausing tortious injury by an act or omission in [Ohio]" confers personal jurisdiction over a defendant. O.R.C. § 2307.382(A)(1), (2), (3); see also Shenzhen Valuelink, 550 F. Supp. 3d 488, 493 (N.D. Ohio 2021). "The Supreme Court of Ohio has adopted an expansive interpretation of 'transact.'" Shenzhen Valuelink, 550 F. Supp. 3d at 493. In Kentucky Oaks Mall Co. v. Mitchell's Formal Wear, Inc., the Ohio Supreme Court interpreted the prior version of the Ohio long-arm statute to encompass all defendants who "carry[] on or prosecute [] business negotiations" with citizens of Ohio. Id., at 493-94 (citing 559 N.E.2d 477, 480 (Ohio 1990)). Additionally, in the context of internet sales, a judge in the Northern District of Ohio has found that a single online sale suffices to establish personal jurisdiction under Ohio's long-arm statute. See Shenzhen Valuelink, 550 F. Supp. 3d at 494 (citing Zoya Co. v. NIOS, Inc., 2013 WL 4511922, *2-3 (N.D. Ohio Aug. 23, 2013)).

Here, Temperley London has admitted through the Declaration of Sarita Jha, a member of the board of directors and the Interim CEO for Temperley Holdings Ltd., that Temperley London transacts business negotiations and conducts business activities with customers in Ohio. (*See Doc. 52-2, at 12*, 17, 19). Temperley London ships and distributes the products that it designs and produces in the U.K. to customers in the U.S., including customers in Ohio. (*See id., at 12, 17, 19*). Temperley London also has a website ("**the Temperley London Website**") through which consumers in the U.S., including customers in Ohio, can view and purchase Temperley London products, including the products at issue in this lawsuit. (*See id., at 12, 17, 19*). Temperley London further advertises on U.S. internet platforms, such as Meta and Google,

3

as well as via social media posts/ads/videos, which are available to be viewed in Ohio and through which consumers in Ohio can purchase items directly. (*See id., at 20, 21, 22*). Temperley London's sales in the state of Ohio account for less than one (1%) percent of Temperley London's net sales. (*See id., at 17*). These activities plainly satisfy O.R.C. § 2307.382(A)(1) and (2)'s "[t]ransacting any business" and "[c]ontracting to supply services or goods" in Ohio requirements. See <u>Shenzhen Valuelink</u>, 550 F. Supp. 3d at 494 (holding that the defendant's actions in selling 2.37% of its total Amazon sales over a certain time period to Ohio consumers as well as an additional $4,875.07 of products to Ohio consumers on another e-commerce platform plainly satisfied O.R.C. § 2307.382(A)(1)'s "[t]ransacting any business" in Ohio requirement). Alice Temperley has also admitted to conducting business in Ohio as she admitted that she posts Temperley London products on her personal social media pages, which are viewable in the U.S. and Ohio, and that she directs her friends and followers through these posts to view Temperley London's collections. (*See Doc. 52-1, at 15*). She also admits that she promotes Temperley London's products at her own discretion, which would include the infringing photos of the Unauthorized Farrah Apparel Products that she posted on her personal Instagram account, which is viewable and able to be interacted with in Ohio. (*See id., at 15-16*).

### B. Alternatively, this Court has personal jurisdiction over Temperley London and Alice Temperley pursuant to Fed. R. Civ. P. 4(k)(2).

If this Court declines to find that specific personal jurisdiction over Temperley London and Alice Temperley attaches under Ohio's long-arm statute, then the "federal long-arm statute," – Federal Rule of Civil Procedure 4(k)(2) applies. See <u>Shenzhen Valuelink</u>, 550 F. Supp. 3d at 494 (citing <u>Lyngaas v. Curaden Ag</u>, 992 F.3d 412, 422 (6th Cir. 2021)). To establish jurisdiction under Fed. R. Civ. P. 4(k)(2), "(1) the cause of action must arise under federal law; (2) the

defendant must not be subject to the personal jurisdiction of any state court of general jurisdiction; and (3) the federal court's exercise of personal jurisdiction must comport with due process." Id. This case is a copyright infringement case, which is a federal question case. Moreover, Alice Temperley and Temperley London have not asserted that they are subject to jurisdiction in any state. Thus, the first two prongs of the Rule 4(k)(2) inquiry are satisfied. See Critical Device Corp. v. Enteral Access Tech. Ltd., 2023 WL 11780380, at *3 (N.D. Ohio. 2023) (Judge Pamela A. Barker) (holding that the burden shifts to the defendant to avoid application of Rule 4(k)(2) under the second requirement, which means that the defendant has the burden of "identifying a forum where [plaintiff] could have brought suit – a forum where jurisdiction would have been proper at the time of filing, regardless of consent." (quoting In re Stingray IP Sols., LLC, 56 F.4th 1379, 1385 (Fed. Cir. 2023)). As to the third prong, the due process analysis is also satisfied as set forth below.

### C.  Constitutional Basis for Personal Jurisdiction

#### a.  In the event the Ohio long-arm statute applies, there is a constitutional basis for specific personal jurisdiction.

In the event that this Court determines that the Ohio long-arm statute is satisfied, the Court must then determine if the Due Process Clause prohibits the court from exercising jurisdiction. See Shenzhen Valuelink, 550 F. Supp. 3d at 495. The Sixth Circuit has articulated a three-part test to determine whether exercising specific jurisdiction is proper:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

Shenzhen Valuelink, 550 F. Supp. 3d at 495.

### i.  **Prong #1 – Purposeful Availment is Met.**

Here, the first prong of this test is met as Temperley London purposefully availed itself of the privilege of acting in the state of Ohio and causing a consequence in this state because it distributed Temperley London products designed and produced in the U.K. to consumers in the U.S., including Ohio consumers (*See Doc. 52-2, at 12, 13, 14, 17, 19*); shipped products designed and produced by it in the U.K. to consumers in the U.S., including Ohio (*See id., at 14, 17, 19*); fulfilled product orders placed by customers in the U.S. via the Temperley London website to consumers in Ohio (*See id., at 14, 17, 19*); and posted on social media and other places online advertisements of the products, including the products at issue in this lawsuit, that customers in Ohio could view and purchase (*See id., at 20-22*).  Additionally, Temperley London operates a consumer-facing website, which advertises and sells its goods, including the goods at issue in this lawsuit, to consumers in Ohio (*See id., at 12, 19*).  Under the *Zippo* "sliding scale" framework adopted by the Sixth Circuit, the Temperley London website would be at a minimum considered to be a "hybrid or interactive site" that "allow[s] users to 'exchange information with the host computer.'"  See Shenzhen Valuelink, 550 F. Supp. 3d at 495-96 (citing See, Inc. v. Imago Eyewear Pty, Ltd., 167 F. App'x 518 (6th Cir. 2006) (quoting Zippo Mfg. Co. v. Zippo Dot Com, Inc., 952 F. Supp. 1119, 1124 (W.D. Pa. 1997)).  Purposeful availment by Temperley London could thus be shown as the Temperley London website manifests "a conscious choice to transact business with inhabitants of [Ohio]."  Shenzhen Valuelink, 550 F. Supp. 3d at 496 (citing Neogen Corp. v. Neo Gen Screening, Inc., 282 F.3d 883, 890 (6th Cir. 2002)).  Moreover, while Temperley London attempts to minimize the fact that it ships its products into the U.S., including the state of Ohio, by stating that it "[a]ll Temperley London products are shipped directly to retailers or consumers from a local UK warehouse and are not shipped from anywhere

in the United States" *(See Doc. 52-2, at 14)*, this does not change the fact the Temperley London purposefully availed itself of conducting business in Ohio through, among other things, advertising products in Ohio via the Temperley London website, fulfilling orders placed in Ohio for the products it designed and produced in the U.K., and then shipping those products into Ohio.  (*See id., at 12, 14, 17, 19, 20, 22)*; see Invisible Fence, Inc. v. Protect Animals With Satellites, Inc., 2024 WL 4375755, at *6 (E.D. Tenn. Oct. 2, 2024) (holding that defendant's actions in shipping products at issue in lawsuit regularly to Tennessee consumers supports *prima facie* showing of purposeful availment).  This is not a case "in which the defendant acted by placing a product in the stream of commerce, and the stream eventually swept defendant's products into the forum State."  Asahi Metal Indus. Co. v. Superior Court of Cal., 408 U.S. 102, 110 (U.S. 1987).  Rather, this is a case where Temperley London intentionally marketed and placed its products in Ohio; thus, purposeful availment in established.  See id., at 112. Additionally, although Temperley London alleges that sales in the state of Ohio account for less than one (1%) percent of Temperley London's net sales in the U.S. (*See Doc. 52-2, at 17)*, this is sufficient to establish purposeful availment as "[i]t is the quality of the contacts, and not their number or status, that determines whether they amount to purposeful availment."  CompuServe, Inc. v. Patterson, 89 F.3d 1257, 1265 (6th Cir. 1996).  Alice Temperley has also personally availed herself of the privilege of conducting business in Ohio through her actions in advertising Temperley London's products, including the products at issue in this lawsuit, on her personal social media accounts, which are accessible in Ohio.  (*See Doc. 52-1, at 15-16).*

  **ii.**  **Prong #2 – Cause of Action "Arises From" Alice Temperley's and Temperley London's Activities in Ohio.**

   The second prong of the due process test is also met as Plaintiff's causes of action arise from Defendants' activities in Ohio as the specific infringing Unauthorized Farrah Apparel

Products and Unauthorized Advertising Works at issue in this case were advertised and displayed by Temperley London on the Temperley London Website, which is viewable in Ohio, and were able to be purchased and shipped to Ohio residents through this site. (*See Doc. 52-2 at 12, 13, 14, 17, 19*).  Additionally, the infringing products were advertised by Temperley London online and through its social media accounts, which are viewable and able to be interacted with by Ohio customers and where customers can purchase the items from.  (*See id., at 20-22*).  The infringing social media posts posted by Alice Temperley on her social media accounts were also viewable and able to be interacted with by consumers in Ohio.  (*See Doc. 52-1 at 15, 16*).

These facts sufficiently meet the "arising from" criteria, particularly as the Sixth Circuit has instructed trial courts to apply a "lenient standard … when evaluating the 'arising from' criterion." Shenzhen Valuelink, 550 F. Supp. 3d at 498 (citing Bird v. Parsons, 289 F.3d 865, 875 (6th Cir. 2002)); Schwanger v. Munchkin, Inc., 1999 WL 820449, at *6 (Fed. Cir. Oct. 7, 1999) (concluding that where a defendant shipped an allegedly infringing product into the forum state, the patent infringement cause of action arose out of that activity).

### iii. Prong #3 – It is Reasonable to Exercise Specific Personal Jurisdiction Over Alice Temperley and Temperley London

"When the first two prongs of the due process test are met, as they are here, "[a]n inference arises that the third factor is satisfied." Bird v. Parsons, 289 F.3d 865, 875 (6th Cir. 2002).  To overcome this inference, a defendant must "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." Am. Greetings Corp. v. Cohen, 839 F.2d 1164, 1168 (6th Cir 1988).  These considerations may include "the burden on the defendant, the forum's interest, and the interest of the interstate judicial system." Id.; see also Burger King Corp. v. Rudzewicz, 471 U.S. 462, 477 (U.S. 1985).  Although Temperley London alleges that the Court should dismiss Temperley London from the case

because "the Temperley London entities, their board members, executives, and employees are all based on other continents thousands of miles away, and haling Temperley London into the Northern District of Ohio would be extremely burdensome and highly inconvenient," Temperley London does not allege any specific facts in support of this claim and thus cannot meet its burden.  (*See Doc. 52, at 16*).  Alice Temperley also fails to meet her burden to show that it would unreasonable for her to be subject to this Court's jurisdiction.  (*See Doc. 52, at 16*; *see also Doc. 52-1 at 15, 16).*  Seeing as Alice Temperley and presumably other Temperley London employees visited U.S., including New York, Orange County, and Los Angeles, to promote the Unauthorized Farrah and Palmae Apparel Products at issue in this lawsuit (*See Doc. 52-1, at ¶ 20*), it does not appear that it would be overly burdensome or unreasonable for Alice Temperley or Temperley London's board members, executives, and employees to travel to this District to appear in this lawsuit.  The state of Ohio has an interest in enjoining further copyright infringement of Plaintiff's Artwork and Photographs from occurring within the state by Defendants.  The exercise of personal jurisdiction over Defendants is thus reasonable.

### b.  In the event that the federal long-arm statute, Fed. R. Civ. P. 4(k)(2), applies, there is a constitutional basis for personal jurisdiction.

In the event that the Court finds that Rule 4(k)(2) provides the statutory basis for personal jurisdiction as to Alice Temperley and Temperley London, the court must then evaluate Defendants' contacts "in reference to the United States as a whole, rather than a particular state." Lyngaas, 992 F.3d at 422.

### i.  Prong #1 – Purposeful Availment is Met.

Temperley London admits that it designs, fulfills, and ships products, including the products at issue in this case, to consumers and boutique retailers in the U.S.  (*See Doc. 52-2, at*

¶¶ 9,10, 12-15, 17-19).  It has also admitted that it participates in trunk shows hosted by retailers in the U.S. to display, sell, and distribute its products, including the products at issue in this lawsuit.  (*See id., at ¶ 15*).   In addition, Temperley London advertises to U.S. consumers with its website and through digital marketing efforts as well as through social media.  (*See id., at ¶¶ 12-14, 20-22*).  "The United States accounts for … sixteen (16%) percent of Temperley London's net sales…." (*Id., at ¶ 17*).  Thus, the case for purposeful availment is clear.  See <u>Shenzhen Valuelink</u>, 550 F. Supp. 3d at 497.  The case for purposeful availment as to Alice Temperley is also clear as she advertises Temperley London products, including the products at issue in this lawsuit, to U.S. consumers via her personal social media accounts (*See Doc. 52-1, at ¶¶ 15, 16*) and has traveled to New York City, Los Angeles, and Orange County to promote the Temperley London apparel collection at issue in this lawsuit.  (*See Doc. 52-1, at ¶ 20*).

### ii.    Prong #2 – Cause of Action "Arises From" Alice Temperley's and Temperley London's Activities in U.S.

While Alice Temperley and the Temperley London entities are based in the U.K., a defendant's physical location "is neither dispositive nor especially probative."  See <u>Shenzhen Valuelink</u>, 550 F. Supp. 3d at 498.  Rather, as the focus is on the relationship between Plaintiff's claims and Defendants' contacts with the U.S., and it has been established that the Alice Temperley and Temperley London displayed, sold, marketed, and distributed the infringing products at issue in this lawsuit in the U.S., the relatedness requirement has been satisfied.  (*See Doc. 52-2, at ¶¶ 9, 10, 12-15, 17-19, 20-22; Doc. 52-1, at ¶¶ 15, 16, 20*).

### iii.    Prong #3 – It is Reasonable to Exercise Specific Personal Jurisdiction Over Alice Temperley and Temperley London.

Finally, in the context of Rule 4(k)(2), the forum under consideration is the U.S. as a whole, not just Ohio.  See <u>Shenzhen Valuelink</u>, 550 F. Supp. 3d at 499.  Because the purposeful

10

availment and relatedness prongs as to Alice Temperley and Temperley London have been satisfied, this Court should also find the reasonability requirement satisfied.  See id.

### D. Plaintiff Plausibly Alleged Alice Temperley and Temperley London's Direct Infringement of Plaintiff's "Memphis Chainsaw" Sculpture ("the Artwork") (U.S. Copyright Registration No. VA 2-342-734) in its FAC.

Plaintiff has plausibly alleged that Alice Temperley and Temperley London accessed the registered Artwork and Photographs found on Plaintiff's widely disseminated Instagram account, @wifenyc, and that they then unlawfully copied Plaintiff's works to create unauthorized derivative works in the form of the Unauthorized Farrah Apparel Products, Unauthorized Palmae Apparel Products, and Unauthorized Advertising Works, which they then displayed, reproduced, sold, marketed, and distributed without Plaintiff's consent.

#### 1) Plaintiff has plausibly alleged that Alice Temperley and Temperley London unlawfully copied the underlying "Memphis Chainsaw" sculptural Artwork.

In their Memorandum of Law, Alice Temperley and Temperley London include several photos of the Unauthorized Farrah Apparel Products and Unauthorized Palmae Apparel Products and claim that "the products have different patterns, plant motifs, color choices, arrangements, and compositions, as compared to [Plaintiff's] sculpture."  (See id.).  Defendants state that "[t]he products lack the sculpture's allegedly characteristic blue hue, the specifically proportioned blue-pink paint patterns, and the entire second frond and its distinctive curve."  (See id.).  Defendants argue that Plaintiff's claims should be dismissed on this basis, but they are mistaken.

Copyright owners have the exclusive right to "reproduce the protected work, to prepare derivative works, and to distribute copies to the public."  Murry Hill Publ., Inc. v. Twentieth Century Fox Film Corp., 361 F.3d 312, 316 (6th Cir 2004) (citing 17 U.S.C. § 106(1)–(3)).  "To

succeed in a copyright infringement action, a plaintiff must establish that he or she owns the copyrighted creation, and that the defendant copied it." Kohus v. Mariol, 328 F.3d 848, 853 (6th Cir. 2003); see also Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc., 499 U.S. 340, 361 (U.S. 1991) (a copyright infringement claim has two elements: "(1) ownership of a valid copyright; and (2) copying of constituent elements of the work that are original."). The Sixth Circuit has explained that the first prong "tests the originality and non-functionality of the work, …, both of which are presumptively established by the copyright registration," while "[t]he second prong tests whether any copying occurred (a factual matter) and whether the portions of the work copied were entitled to copyright protection (a legal matter)." Lexmark Intern., Inc. v. Static Control Components, Inc., 387 F.3d 522, 534 (6th Cir. 2004). "Unlawful copying of copyrighted material can be established through direct or indirect evidence." Stokes v. Brinor, Inc., 683 F. Supp. 3d 713, 726 (N.D. Ohio 2023) (citing Enchant Christmas Light Maze & Mtk. v. Glowco, LLC, 958 F.3d 532, 536 (6th Cir. 2020)). In Kohus, the Sixth Circuit adopted a two-step approach for determining "substantial similarity;" "the first step 'requires identifying which aspects of the artist's work, if any, are protectable by copyright; the second 'involves determining whether the allegedly infringing work is 'substantially similar' to protectible elements of the artist's work." Id., at 855. To determine whether the allegedly infringing work is "substantially similar" to the protectable elements of the copyright holder's work, the "ordinary observer" test is used in which the "ordinary reasonable person (i.e., the ordinary lay observer)" is to determine whether the allegedly infringing work is substantially similar to the protectable elements of the original work. Kohus, 328 F.3d at 856.

Here, Plaintiff has plausibly alleged her rights as a copyright holder to the Artwork and the Photographs by providing the copyright registration certificates for the works. See FAC, at

12

¶¶ 1, 144-145; see also <u>Feist</u>, 499 U.S. at 361; see also <u>Lexmark Intern.</u>, 387 F.3d at 534.

Plaintiff has also plausibly alleged that Alice Temperley and Temperley London unlawfully

copied one or more of Plaintiff's Photographs, which were authorized derivative works of

Plaintiff's 3-D sculptural Artwork authored by Plaintiff, and the underlying Artwork itself.  See

FAC, at ¶¶ 1, 10, 11, 12, 16-19, 21-22, 65, 67, 68, 74-77, 80-83, 97-99; see also <u>DC Comics v.

Towle</u>, 802 F.3d 1012, 1023 (9th Cir. 2015) (a copyright owner has the exclusive right to

"authorize others to prepare derivative works based on their copyrighted works" and "if a third

party copies a derivative work without authorization, it infringes the original copyright owner's

copyright in the underlying work to the extent the unauthorized copy of the derivative work also

copies the underlying work."); 17 U.S.C. §§ 101, 106; <u>Apple Computer, Inc. v. Microsoft Corp.</u>,

35 F.3d 1435, 1447-48 (9th Cir. 1994).  Moreover, in Paragraph 12 of the FAC, Plaintiff

delineates the specific protectable elements of the Artwork that were copied by Alice Temperley

and Temperley London and are found in the Unauthorized Farrah Apparel Products.  See FAC,

at ¶ 12.  Plaintiff does the same in regards to the Unauthorized Palmae Apparel Products.  See

<u>id</u>., at ¶ 24.  Plaintiff also alleges that Temperley London infringed upon the Artwork through

producing, displaying, and distributing the interiors products and advertising works related to the

Temperley London x ROMO "A World Less Ordinary" interiors collection.  See <u>id</u>., at ¶¶ 28, 40.

Plaintiff alleges that Alice Temperley and Temperley London both factually copied the Artwork

and unlawfully misappropriated the protectable elements of expression of the Artwork as the

Unauthorized Farrah Apparel Products, Unauthorized Palmae Apparel Products, Unauthorized

Farrah Interiors Products, and Unauthorized Advertising Works are strikingly similar, or at a

minimum, substantially similar to the protectable elements of the Photographs and the

underlying Artwork.  See <u>id</u>., at ¶¶ 11, 13, 16-19, 25, 40, 67, 74-85, 89, 90, 96, 97-99, 112-115,

120-123; see Kohus, 328 F.3d at 855. Finally, Plaintiff alleges that Alice Temperley and

Temperley London infringed upon Plaintiff's exclusive rights as a copyright holder through their

actions in producing, displaying, selling, and distributing the apparel, interiors, and advertising

works, which are unauthorized derivatives of Plaintiff's Artwork. See id., at ¶¶ 13, 25, 39, 40,

46-47, 75, 79, 85, 95, 104, 115, 124, 138, 146, 167.

Contrary to the Alice Temperley and Temperley London's assertions, identifying minor

differences between two works will not prevent a claim of copyright infringement. See Sheldon

v. Metro-Goldwyn Pictures Corp., 81 F.2d 49, 55 (2d Cir. 1936) (Judge Hand) ("No plagiarist

can excuse the wrong by showing how much of his work he did not pirate."); see also Harper &

Row, Publishers, Inc. v. Nation Enters., 471 U.S. 539, 565 (1985); Unicolors, Inc. v. Urban

Outfitters, Inc., 853 F.3d 980, 985-987 (9th Cir. 2017) (finding striking similarity as a matter of

law where the subject design and accused dress include "complex patterns with nearly identical

orientation, spacing, and group of complicated florets and features," and noting that "[a]lthough

the colors vary slightly, each has an ombre color pattern and uses colors in similar ways for

highlight and contrast;" thus, the district court properly concluded that the works are "so

overwhelmingly identical that the possibility of independent creation is precluded"); L.A. Printex

Indus., Inc. v. Aeropostale, Inc., 676 F.3d 841, 851 (9th Cir. 2012) (quoting 4 Nimmer on

Copyright 13.03[B][1][a] ("It is entirely immaterial that, in many respects, plaintiff's and

defendant's works are dissimilar, if in other respects, similarity as to a substantial element of

plaintiff's work can be shown.")); Rogers v. Koons, 960 F.2d 301, 307-8 (2d Cir. 1992)

("[s]ubstantial similarity does not require literally identical copying of every detail. … small

changes here and there made by the copier are unavailing. It is only where the points of

dissimilarity exceed those that are similar and those similar are – when compared to the original

14

work – of small import quantitatively or qualitatively that a finding of no infringement is appropriate.").   In fact, minor differences between two works may support a claim of willful infringement.  See Malibu Textile, Inc. v. Label Lane Int'l, Inc., 922 F.3d 946, 953-4 (9th Cir. 2019) (stating that a jury could find that the minor differences between the subject work and defendants' work to be knowing modifications, which could be evidence of willful copying). Moreover, as to the Unauthorized Advertising Works, these are strikingly similar, or at a minimum substantially similar, to the Artwork and the Photographs as they show the Unauthorized Farrah Apparel Products and Unauthorized Palmae Apparel Products in full.  See id., 922 F.3d at 954.  Finally, the fact that the Unauthorized Farrah Apparel Products and Unauthorized Palmae Apparel Products depict the Artwork in a different medium (i.e. sculptural artwork v. fashion apparel products) does not negate the striking similarities, or at a minimum, substantial similarities between the works.  See Warhol v. Goldsmith, 598 U.S. 508, 541 (2023). In sum, Plaintiff has sufficiently alleged that Alice Temperley and Temperley London infringed upon its copyright rights through copying and unlawfully appropriating protectable elements of Plaintiff's Artwork, and that the apparel products and advertising works produced, displayed, sold, marketed, and distributed by Temperley London and the advertising works displayed, marketed, and distributed by Alice Temperley via her social media accounts violated Plaintiff's exclusive rights as they are unauthorized derivative works of the Artwork and Photographs.  See DC Comics, 802 F.3d at 1023; see also 17 U.S.C. §§ 101, 106; see also Apple Computer, 35 F.3d at 1447-48; Ty Inc. v. Publications Intern. Ltd., 292 F.3d 512, 519 (7th Cir. 2002).

### 2) The FAC sufficiently alleges that Alice Temperley and Temperley London had access to the Artwork.

"If no direct evidence of copying is available, a claimant may establish this element by showing that the defendant had access to the copyrighted work and that the copyrighted work

and the allegedly copied work are substantially similar." Lexmark, 387 F. 3d at 534 (citing Kohus, 328 F.3d at 853-54). "Access is proven when a plaintiff shows that the defendant saw or had a reasonable opportunity to see plaintiff's work, and therefore had the opportunity to copy." Ellis v. Diffie, 177 F.3d 503, 507 (6th Cir. 1999). When there is no direct evidence of access, circumstantial evidence may be used to demonstrate reasonable access. See King Records, Inc. v. Bennett, 438 F. Supp. 2d 812, 846 (M.D. Tenn. 2006). "Two forms of circumstantial evidence are accepted as evidence of reasonable access: (1) a particular chain of events establishing defendant's access to plaintiff's work, or (2) plaintiff's work has been widely disseminated. See id. In instances where access cannot be proved through either direct or circumstantial evidence, the plaintiff must show a "striking similarity" between the allegedly infringed work and defendant's work, rather than the lower substantially similar standard, to prove access. See Murray Hill, 361 F.3d at 317. The quantum of similarity that will substitute for proof of access is "striking similarity," which "preclude[s] the possibility of independent creation." Id. If a plaintiff can prove striking similarity, additional proof of access is not required. See Kohus, 328 F.3d at 856; see also Jones v. Bliges, 558 F.3d 485, 491 (6th Cir. 2009); King Records, Inc., 438 F. Supp. 2 at 846. This is because "striking similarity carries the burdens of proof that the infringing work is sufficient[ly] similar as to intrude into the copyrighted work's protection *and* that the defendant must have had access to the copyrighted work, even if the plaintiff can provide no extrinsic proof of that fact." Murray Hill, 361 F.3d at 317; see also Ty. Inc. v. GMA Accessories, Inc., 132 F.3d 1167, 1170 (7th Cir. 1997); Bouchat v. Baltimore Ravens, Inc., 241 F.3d 350, 356 (4th Cir. 2000).

Here, Plaintiff contends that direct evidence of access and infringement is present as there are numerous "common errors" between Plaintiff's works and Temperley London's works,

16

including the precise way that the individual fronds are laid upon each other in the Artwork as depicted in the Photographs as well as in the Unauthorized Farrah Apparel Products.  See <u>Stokes v. Brinor, Inc.</u>, 683 F. Supp. 3d 713, 726 (N.D. Ohio 2023) (citing <u>Enchant Christmas Light Maze & Mtk. v. Glowco, LLC</u>, 958 F.3d 532, 536 (6th Cir. 2020)).  Further, the FAC provides that Alice Temperley and Temperley London had access to the Artwork, through accessing Plaintiff's public and widely disseminated Instagram account, @wifenyc, or through accessing/receiving copies of Plaintiff's Photographs from the other Defendants in this case, or a third party, and that factual and legal copying can be established because the infringing Unauthorized Farrah Apparel Products and Unauthorized Advertising Works are strikingly similar, or at a minimum, substantially similar to Plaintiff's Artwork.  See FAC at ¶¶ 14, 15, 66, 67, 68, 69, 79, 85.  The FAC also alleges that Defendants' access to the Artwork can be inferred due to the striking similarities between the works.  See <u>id</u>., at ¶¶ 11, 12, 67, 68; see also <u>Ty. Inc.</u>, 132 F.3d at 1170; <u>Bouchat</u>, 241 F.3d at 356.  Alice Temperley's access to the Artwork or advertisements showing the infringing apparel products, which are derivative works of the Artwork, has also been sufficiently alleged.  See <u>id</u>., at ¶¶ 67, 113.  Thus, contrary to Defendants' assertions, Plaintiff has sufficiently alleged that Alice Temperley and Temperley London had access to the underlying Artwork. See <u>id</u>.; see also <u>DC Comics</u>, 802 F.3d at 1023-25; see also <u>Apple Computer</u>, 35 F.3d at 1447-48; <u>Gamma Audio & Video, Inc.</u>, 11 F.3d at 1112.

   **E.  Plaintiff Plausibly Alleged Facts Supporting its Claim that Alice Temperley and Temperley London Infringed the Photographs (VA 2-352-960 (Registered April 27, 2023) and VA 2-420-961) (Registered Nov. 4, 2024)**

   **1)  The FAC sufficiently alleges that Alice Temperley and Temperley London unlawfully copied the Photographs.**

Defendants claim that "an objective side-by-side comparison of Plaintiff's photographs and the accused products demonstrates that none of Plaintiff's choices with respect to shading,

lighting, or angling are incorporated into the accused products and advertising."  *(See Doc. 52, at 22)*.  Contrary to Defendants' assertions, the FAC sufficiently alleges protectable elements of the Photographs, namely the different angles, lighting, and specific composition of the Artwork as shown in the Photographs, and further alleges that Alice Temperley and Temperley London copied protectable elements of the Photographs.  See FAC at ¶¶ 1, 4, 10, 11, 13, 22, 97-99, 114, 115, 123, 124, 145, 146.  The FAC also alleges that the Unauthorized Farrah Apparel Products are "strikingly similar or at least substantially similar to Plaintiff's copyright-protected works," including the Photographs, that the Unauthorized Palmae Apparel Products are substantially similar to Plaintiff's copyright-protected works, and that the Unauthorized Advertising Works infringe upon the Photographs.  See id., at ¶¶ 67, 68, 79, 85.  A side-by-side comparison of the Photographs with the Unauthorized Farrah Apparel Products show that protectable elements of expression in the Photographs, i.e. the particular angles and composition of the Artwork as depicted in the Photographs, were unlawfully reproduced in the Unauthorized Farrah Apparel Products and the Unauthorized Advertising Works depicting the same; a simple "flip" or reversal of the side that the "hook" of the plant is facing in the Farrah apparel products is insufficient to negate the striking, or at a minimum substantial similarities, between the protectable elements of the Photographs and Temperley London's apparel products and advertisements of the same.  See id., at 20-23; see Stokes, 683 F. Supp. 3d at 723 ("mirrored" version of the original photo was an infringement).  Thus, Plaintiff has plausibly alleged that the Photographs were unlawfully copied by Alice Temperley and Temperley London.  See  Ets-Hokin v. Skyy Spirits, Inc., 225 F.3d 1068, 1074 (9th Cir. 2000) (holding that the particular selection and arrangement of the elements of a photograph, including the choice of the image frame, arrangement and positioning of the subject, lighting, and the specific angles of the subject captured in the photograph, qualify as

18

protectable expression warranting copyright protection); see also <u>Burrow-Giles Lithographic Co. v. Sarony</u>, 111 U.S. 53, 60 (U.S. 1884); <u>Koons</u>, 960 F. 2d at 307 (2d Cir. 1992); <u>United States v. Hamilton</u>, 583 F.2d 448, 452 (9th Cir. 1978).

### 2) Plaintiff has sufficiently alleged that Alice Temperley and Temperley London had access to the Photographs.

For the reasons set forth above in Section D(2), Plaintiff has sufficiently alleged that Alice Temperley and Temperley London had access to the Photographs depicting the Artwork originally found on Plaintiff's widely disseminated Instagram account, @wifenyc.  The FAC further asserts that the Unauthorized Farrah Apparel Products, Unauthorized Farrah Interiors Products, and Unauthorized Advertising Works are strikingly similar to the Photographs such that access need not be further established for any of the infringing products, including the Unauthorized Palmae Apparel Products.  See FAC, at ¶¶ 67, 68, 89, 90; see also <u>Ty. Inc.</u>, 132 F.3d at 1170; <u>Bouchat</u>, 241 F.3d at 356.

### F. Plaintiff Plausibly Alleged Sufficient Facts Supporting a Claim for Vicarious and Contributory Infringement Against Alice Temperley and Temperley London in its FAC.

"One infringes [a copyright] contributorily by intentionally inducing or encouraging direct infringement, and infringes vicariously by profiting from direct infringement while declining to exercise a right to stop or limit it." <u>Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.</u>, 545 U.S. 913, 930 (U.S. 2005).  The FAC asserts that Alice Temperley knowingly induced, caused, participated in, aided and abetted, and profited from the infringing acts of Temperley London as she was actively involved in the day-to-day operations of designing the Temperley London collection that contains the Unauthorized Farrah Apparel Products and Unauthorized Palmae Apparel Products and also had a direct involvement in the creation of the Temperley

London x ROMO interiors collection, which is further supported by the admissions in her Declaration.  See FAC, at ¶ 168; (*See also Doc. 52-1, at 12-14*).  She also directly promoted the infringing products and had oversight and control over the marketing and promotional tour in the U.S. concerning the infringing products and had a direct financial interest in the infringing activities of the other Defendants.  (*See Doc. 52-1, at 15, 16, 19, 20*).  Thus, the FAC has sufficiently alleged a claim of contributory infringement against Alice Temperley.  See ids.  The FAC further asserts that Temperley London collaborated with, knowingly induced, caused, participated in, aided and abetted, and profited from the infringing acts of the Romo, Inc., Alice Temperley MBE, and the Romo UK entities through their actions in directly collaborating with these Defendants to choose the infringing designs for the infringing Unauthorized Farrah Interiors Products and participating in press tours and marketing endeavors actively promoting the display, sale, and distribution of the resultant interiors collection.  See id., at ¶ 158.  The FAC also asserts that there was a close relationship between all of the Defendants and a collaborative nature between the two brands at issue, i.e. Temperley London and Romo, such that all of the Defendants had collective access to the Artwork as depicted in the Photographs and had knowledge of, directed, induced, and participated in the infringing activities taken place by the other Defendants as set forth in the FAC.  See id., at ¶ 158.  Thus, the FAC has sufficiently alleged a claim of contributory infringement against Temperley London.  See ids.

The FAC additionally asserts that Alice Temperley is vicariously liable for the infringements by the TMLL Ltd. and Temperley (Holdings) Ltd. as she had the right and ability to control the design process that took place by these entities and directly profited from their infringing activities.   FAC, at ¶ 159.  This claim is supported by the admissions in Alice Temperley's Declaration.  (*See Doc. 52-1, at 15, 16, 19, 20*).  The FAC further asserts that

Temperley London is vicariously liable for the infringements of Romo, Inc. and Romo UK as it relates to the Unauthorized Farrah Interiors Products and related Advertising Works as there was a close collaboration between the two brands at issue, i.e. Temperley London and Romo, to design the Temperley London x ROMO interiors collection such that Temperley London had the right and ability to supervise and exercise control over the infringing conduct of the other Defendants in creating the collection and choosing the subsequent marketing endeavors to promote it and also profited directly from the infringements of the Romo Defendants.  See FAC, at ¶ 159.  Notably, the facts set forth in the Sarita Jha Declaration provide that Temperley Holdings Ltd. is the parent company of TMLL Ltd., showing an ability to exercise control over and profit from the activities of TMLL Ltd.  (*See Dec. 52-2, at 3*).  Plaintiff has sufficiently asserted a claim against Alice Temperley and Temperley London for vicarious infringement, and Defendants' motion to dismiss must be denied.

### G.  Plaintiff Adequately Pleaded DMCA Claims for Violation of 17 U.S.C. § 1202.

Plaintiff has plausibly alleged facts sufficient to support its claims against Alice Temperley and Temperley London for their violations of the DMCA, 17 U.S.C. § 1202(a) and (b).  The DMCA protects against the distribution of false copyright management information and the removal of copyright management information ("**CMI**").  Section 1202(c) establishes what constitutes CMI.  See 17 U.S.C. § 1202(c).  Plaintiff asserts in the FAC that "[w]hen Plaintiff posted the Photographs of the Artwork on her Instagram account, the copyright management information of Plaintiff's trade name, WIFE NYC, which is Plaintiff's Instagram handle, @wifenyc, was listed above and below each and every Photograph (as seen on an iPhone) or next to the Photograph (as seen on a computer)."  FAC, at ¶ 166.  Plaintiff's trade name and registered federal trademark, WIFE NYC, constitutes CMI under § 1202(c)(2) and (3).  The FAC

21

further asserts that the titles of each Photograph as listed with the Copyright Office and set forth under or next to each Photograph on Plaintiff's Instagram account constitute CMI.  See id.

### 1)  Plaintiff's CMI removal claims under § 1202(b)(1) and (3) should not be dismissed.

Here, the FAC asserts that Alice Temperley and Temperley London violated § 1202(b) by copying the Photographs depicting the Artwork found on Plaintiff's Instagram account and intentionally removing the CMI of Plaintiff's trade name and Instagram handle, @wifenyc, as well as the titles of the Photographs and Artwork displayed under or next to the Photographs on Plaintiff's Instagram account "knowing or having reasonable ground to know that such action would induce, enable, facilitate, or conceal her [sic] own infringement and the infringement of the other Defendants and any third party of Plaintiff's Artwork and the Photographs."  FAC, at ¶¶ 169, 174.  The FAC further asserts other facts in support of this claim.  See ids.  The alleged facts sufficiently support Plaintiff's claim that Defendants violated 17 U.S.C. § 1202(b)(1).  See Friedman v. Live Nation Merchandise, Inc., 833 F.3d 1180, 1187 (9th Cir. 2016); see also Victor Elias Photography, LLC v. Ice Portal, Inc., 43 F.4th 1313, 1320 (11th Cir. 2022).

The FAC also asserts sufficient facts to support Plaintiff's claim that Alice Temperley and Temperley violated 17 U.S.C. § 1202(b)(3).  See FAC, at ¶¶ 170, 175-76.  See Friedman, 833 F.3d at 1187; see also Mango v. BuzzFeed, Inc., 970 F.3d 167, 171 (2d Cir. 2020).  Contrary to Defendants' assertion, it is not necessary for Plaintiff to show evidence of a pattern of conduct or *modus operandi* concerning Defendants' removal of the CMI at this time, and it is not even a requirement that a plaintiff establish such evidence, but rather it is one way in which a plaintiff can meet its burden of proof.  See Victor Elias Photography, LLC, 43 F. 4th at 1323.

### 2) Plaintiff's claim for the provision and distribution of false CMI under § 1202(a)(1) and (2) should not be dismissed.

In the FAC, Plaintiff asserts sufficient facts in support of its claim that Alice Temperley and Temperley London violated § 1202(a)(1) and (2).  See FAC, at ¶¶ 168, 172.  Defendants' claim that Plaintiff has not adequately asserted its claim for the provision and distribution of false CMI because it has not asserted that they distributed *identical* copies of the Photographs or the Artwork with false CMI but rather distributed alleged *derivative works* of the Photographs and the Artwork in the form of the Unauthorized Farrah Apparel Products, Unauthorized Palmae Apparel Products, Unauthorized Farrah Interiors Products, and Unauthorized Advertising Works in connection with false CMI is inaccurate.  *(See Doc. 52, at 26-27)*.  The DMCA does not require the infringing work to be an identical copy of the copyrighted work for a claim under the DMCA to be actionable.  See New Parent World, LLC v. True To Life Productions, Inc., 2024 WL 4277865 at *2 (D. Ariz. September 24, 2024) (denying defendants' Fed. R. Civ. P. 12(c) motion for judgment on the pleadings as to plaintiff's § 1202(a) and (b) claims and holding that an infringing work need not be an identical copy of the copyrighted work to violate the DMCA as the language of the DMCA does not require identical copies); see also Columbia Pictures Indus., Inc. v. Galindo, 2022 WL 17094713, at *8 (C.D. Cal. Nov. 18, 2022).   The New Parent World, LLC, court cited 4 Nimmer on Copyright § 12A.10 at 19 for this principle, which states:

> [T]here is no warrant to conclude … that no DMCA violation exists where the works are not identical.  If plaintiff owns the copyright to a 300-page book and defendant propounds a work in which a single sentence is missing from that work, the two are not identical – but are still beyond doubt substantially similar.  The authority supposedly requiring identity fails to withstand scrutiny.

See New Parent World, 2024 WL 4277865 at *3.  Other courts have ruled similarly.  See e.g., ADR Int'l v. Inst. for Supply Mgt., 667 F. Supp. 3d 411, 429 (S.D. Tex. 2023) ("none of the

cases Defendants cite support the proposition that § 1202 requires a plaintiff to plead the allegedly infringing works are identical copies of the plaintiff's works"); <u>GC2 Inc. v Int'l Game Tech., IGT, Doubledown Interactive  LLC</u>, 391 F. Supp. 3d 828, 843-44 (N.D. Ill. 2019) (rejecting "the broad proposition that derivative or collaborative works are categorically excluded from protection under the DMCA….").

### H.  Plaintiff May Seek Statutory Damages and Attorneys' Fees for Alice Temperley and Temperley London's Copyright Infringement

The undisputed evidence in this case indicates that February 28, 2023 is the effective date of registration for the Artwork (Registration No. VA 2-342-734).  See FAC, at ¶ 144.  Temperley London's infringements concerning the Unauthorized Farrah Interiors Products and related Unauthorized Advertising Works began in March 2023 with the launch of the Temperley London x Romo "A World Less Ordinary" interiors collection, and Alice Temperley's infringements related to these works began after that.  See <u>id</u>., at ¶ 28.  Because Alice Temperley and Temperley London's infringements as to the Romo interiors products and related advertisements began after the registration of the Artwork, 17 U.S.C. § 412 does not preclude the availability of statutory damages, costs, or attorneys' fees for these Defendants' willful infringement of the Artwork as it relates to these items. Defendants' contention that Alice Temperley's and Temperley London's infringement commenced for the purposes of § 412 when Temperley London launched its apparel collection in February or March 2022 is unavailing because the launch of the Temperley London apparel collection does not constitute the "first act" in a series of acts constituting continuing infringement as it relates to the infringing Romo interiors products and advertisements since the apparel infringements by Alice Temperley and Temperley London are distinct from their subsequent infringements concerning the interiors collection and are not **"of the same kind"** as is required to be considered a continuing

24

infringement.  See <u>Derek Andrew, Inc. v. Poof Apparel Corp.</u>, 528 F.3d 696, 701 (9th Cir. 2008) (holding that "*the first act of infringement* in a series of ongoing infringements *__of the same kind__* marks the commencement of one continuing infringement under § 412.").  The infringements at issue here are by two separate brands and several different companies, not the same brand or company; thus, they are not "of the same kind."  See <u>id</u>.; compare <u>Mason v. Montgomery Data</u>, 967 F.2d 135, 144 (5th Cir. 1992) (holding that a "plaintiff may not recover an award of statutory damages and attorneys' fees for infringements that commenced after registration if the *same defendant* commenced an infringement of the *same work* prior to registration."); <u>B2B CFO Partners, LLC v. Kaufman</u>, 787 F. Supp. 2d 1002, 1012 (D. Ariz. 2011) (when the *same person* allegedly copies the same copyrighted work to create two versions of a manual, the second edition of the manual constituted the same kind of alleged copying as the first edition of the manual; thus, the defendant's alleged infringement commenced for § 412 purposes when he distributed the first manual); <u>Dorchen/Martin Assoc., Inc. v. Book of Cheboygan, Inc.</u>, 2013 WL 140790 at *3 (E.D. Mich. 2013); <u>Johnson v. Jones</u>, 149 F.3d 494, 505-6 (6th Cir. 1998).  Additionally, the infringing apparel products produced by Temperley London are wholly separate from the interiors products it produced and displayed in collaboration with Romo.  Thus, the infringements concerning the apparel products and the interiors products are not part of the same "series of ongoing infringements."  Alice Temperley and Temperley London's "first act" of infringement related to the interiors collection took place in March 2023.

## **<u>CONCLUSION</u>**

For the foregoing reasons, Plaintiff respectfully requests that this Court denies Alice Temperley, TMLL Ltd., and Temperley (Holdings) Ltd.'s Motion to Dismiss Plaintiff's First Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(2) and (6).

Respectfully submitted,

*/s/ Alyssa M. Bruno*

By: _____

Dated:  July 1, 2025

Alyssa M. Bruno
(PA ID #321345; NJ ID #152382016)
[*Admitted to this Court*]
**A. BRUNO LAW**
P.O. Box 468
Easton, PA 18044
Telephone: (610) 258-4003
Email: abruno@abrunolaw.com

26

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Memorandum in Opposition to Alice Temperley and Temperley London's Motion to Dismiss First Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(2) and (6) was electronically filed on July 1, 2025 with the United States District Court for the Northern District of Ohio through the Court's CM/ECF system. Notice of the filing will be sent by email to all counsel by operation of the Court's electronic filing system and all parties may access this filing through that system.

By:  */s/ Alyssa M. Bruno*
_____

Dated: July 1, 2025

*Attorney for Plaintiff Sophia Parker Studios, Inc. (t/a WIFE NYC)*

27

## LOCAL RULE 7.1(f) CERTIFICATION

Pursuant to Local Civil Rule 7.1(f), I hereby certify that this case has not been assigned to any track and that the page limitation for this memorandum is twenty-five (25) pages pursuant to the Court's non-document Order dated June 27, 2025.  I hereby further certify that the foregoing Memorandum adheres to this limitation.


By:  */s/ Alyssa M. Bruno*
_____
Dated: July 1, 2025            *Attorney for Plaintiff Sophia Parker Studios, Inc.*
                               *(t/a WIFE NYC)*

28