**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| Sophia Parker Studios, Inc., trading as WIFE NYC, | Case No. 1:24-cv-02086-PAB |
| Plaintiff, | Judge Pamela A. Barker |
| v. | Magistrate Judge Reuben J. Shepherd |
| Alice Temperley MBE, TMLL Ltd. (trading as Temperley London), Temperley Holdings Ltd. (t/a Temperley Holdings), Romo Ltd. (t/a ROMO and/or Romo Group), Romo (Holdings) Ltd., Romo, Inc. (t/a ROMO Fabrics and Wallcoverings and ROMO USA, and Does 1-20, Inclusive, | **DEFENDANTS THE ROMO GROUP LTD., ROMO LTD., AND ROMO (HOLDINGS) LTD.'S REPLY IN SUPPORT OF THEIR MOTION TO DISMISS FIRST AMENDED COMPLAINT PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(b)(2) AND (6)** |
| Defendants. | |

### DEFENDANTS THE ROMO GROUP LTD., ROMO LTD., AND ROMO (HOLDINGS) LTD.'S REPLY IN SUPPORT OF THEIR MOTION TO DISMISS FIRST AMENDED COMPLAINT PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(b)(2) AND (6)

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendants 12(b)(2) and 12(b)(6),

Defendants The Romo Group Ltd., Romo Ltd., and Romo (Holdings) Ltd., (collectively "Romo

UK"), by and through the undersigned counsel, hereby submits this Reply in support of their

Motion to Dismiss (ECF No. 51).

## TABLE OF CONTENTS

Page

BRIEF STATEMENT OF ISSUES TO BE DECIDED .................................................................. v

SUMMARY OF ARGUMENT ................................................................................... vi

I.   INTRODUCTION ....................................................................................... 1

II.  ARGUMENT ............................................................................................. 2

  A.   Plaintiff Fails to Establish Personal Jurisdiction Over Romo UK .................................... 2

    1.   Ohio's Long-Arm Statute Does Not Apply .......................................................... 3

    2.   The Federal Long-Arm Statute Does Not Apply ..................................................... 7

    3.   Exercising Jurisdiction Would Not Comport With Due Process ................................... 8

  B.   Plaintiff's Copyright Infringement Claims Should Be Dismissed .................................. 14

    1.   Plaintiff does not plausibly allege that Romo UK accessed its works......................... 14

    2.   Plaintiff does not meaningfully address substantial similarity. .................................. 16

  C.   Plaintiff's Indirect Infringement Claims Fall Short ................................................... 17

  D.   Plaintiff Attempts to Self-Servingly Rewrite the DMCA ............................................ 18

  E.   Plaintiff's Statutory Damages Argument Is Illogical.................................................. 19

III. CONCLUSION ......................................................................................... 20

# TABLE OF AUTHORITIES

Page(s)

Cases

*A&M Records, Inc. v. Napster, Inc.*,
239 F.3d 1004 (9th Cir. 2001) ................................................................... 18
*ADR Int'l Ltd. v. Inst. for Supply Mgmt.*,
667 F. Supp. 3d 411 (S.D. Tex. 2023) ..................................................... 18
*Apple Computer, Inc. v. Microsoft Corp.*,
35 F.3d 1435 (9th Cir. 1994) ..................................................................... 17
*Arista Recs., LLC v. Doe 3*,
604 F.3d 110 (2d Cir. 2010) ...................................................................... 18
*Art Attacks Ink, LLC v. MGA Ent. Inc.*,
581 F.3d 1138 (9th Cir. 2009) ................................................................... 15
*Beverly Hills Fan Co. v. Royal Sovereign Corp.*,
21 F.2d 1558 (Fed. Cir. 1994) ................................................................... 12
*Beydoun v. Wataniya Rests. Holding, Q.S.C.*,
768 F.3d 499 (6th Cir. 2014) ....................................................................... 5
*Bird v. Parsons*,
289 F.3d 865 (6th Cir. 2002) ..................................................................... 12
*Bridgeport Music, Inc. v. Rhyme Syndicate Music*,
376 F.3d 615 (6th Cir. 2004) ..................................................................... 18
*Bridgeport Music, Inc. v. Still N The Water Pub.*,
327 F.3d 472 (6th Cir. 2003) ....................................................................... 3
*Burger King Corp. v. Rudzewicz*,
471 U.S. 462 (1985) ............................................................................. 8, 13
*Calder v. Jones*,
465 U.S. 783 (1984) ..................................................................................... 4
*Calphalon Corp. v. Rowlette*,
228 F.3d 718 (6th Cir. 2000) ....................................................................... 9
*Clark v. Connor*,
82 Ohio St.3d 309 (Ohio Sup. Ct. 1998) ................................................... 6
*CompuServe Inc. v. Patterson*,
89 F.3d 1257 (6th Cir. 1996) ................................................................. 3, 4
*Critical Device Corp. v. Enteral Access Tech. Ltd.*,
Case No. 1:22-cv-01050-PAB, 2023 WL 11780380 (N.D. Ohio. Aug. 8, 2023) ...................... 7
*Daimler AG v. Bauman*,
571 U.S. 117 (2014) ..................................................................................... 2
*DC Comics v. Towle*,
802 F.3d 1012 (9th Cir. 2015) ................................................................... 17
*Dean v. Motel 6 Operating L.P.*,
134 F.3d 1269 (6th Cir. 1998) ................................................................... 11
*Faulkner Press, L.L.C. v. Class Notes, L.L.C.*,
756 F. Supp. 2d 1352 (N.D. Fla. 2010) ..................................................... 18

*Freres v. SPI Pharma, Inc.*,
  629 F. Supp. 2d 374 (D. Del. 2009).................................................................. 10
*Fuld v. Palestine Liberation Org.*,
  145 S.Ct. 2090 (2025)....................................................................................... 3
*Gamma Audio & Video, Inc. v. Ean-Chea*,
  11 F.3d 1106 (1st Cir. 1993).............................................................................. 17
*GC2 Inc. v. Int'l Game Tech.*,
  391 F. Supp. 3d 828 (N.D. Ill. 2019)................................................................. 18
*Harris v. Lloyds TSB Bank, PLC*,
  281 F. App'x 489 (6th Cir. 2008).................................................................... 7, 8
*In re Chocolate Confectionary Antitrust Litigation*,
  602 F. Supp. 2d 538 (M.D. Pa. 2009)............................................................... 10
*In re ZF-TRW Airbag Control Units Products Liability Litigation*,
  601 F. Supp. 3d 625 (C.D. Cal. 2022) .............................................................. 11
*Int'l Shoe Co. v. Washington*,
  326 U.S. 310 (1945)............................................................................................ 3
*Invisible Fence, Inc. v. Protect Animals With Satellites, Inc.*, No. 3:23-CV-00403-JRG-JEM,
  2024 WL 4375755 (E.D. Tenn. Oct. 2, 2024) ................................................... 9
*Joe Solo Prods., Inc. v. Dawson*,
  No. 1:09-cv-555, 2009 WL 2232856 (N.D. Ohio July 23, 2009)...................... 11
*Jones v. Blige*,
  558 F.3d 485 (6th Cir. 2009) ............................................................................ 16
*Kipp Flores Architects, LLC v. Pradera SFR, LLC*,
  SA-21-CV-00673-XR, 2022 WL 1105751 (W.D. Tex. April 13, 2022)............. 19
*Lyngaas v. Curaden Ag*,
  992 F.3d 412 (6th Cir. 2021) .............................................................................. 7
*New Parent World, LLC v. True to Life Productions, Inc.*,
  No. CV-23-08089-PCT-DGC, 2024 WL 4277865 (D. Ariz. Sept. 24, 2024) ....... 19
*Noco Co. v. Doe*,
  No. 1:19-CV-2260, 2020 WL 836757 (N.D. Ohio Feb. 20, 2020)...................... 10
*NOCO Co. v. Shenzhen Valuelink E-Com. Co.*,
  550 F. Supp. 3d 488 (N.D. Ohio 2021).....................................................passim
*Nottingham-Spirk Design Assocs., Inc. v. Halo Innovations, Inc.*,
  603 F. Supp. 3d 561 (N.D. Ohio 2022)............................................................... 1
*Pay(q)r, LLC v. Sibble*,
  No. 5:15-CV-1038, 2015 WL 9583034 (N.D. Ohio Dec. 31, 2015) ................... 4
*Reynolds v. Int'l Amateur Athletic Fed'n*,
  23 F.3d 1110 (6th Cir. 1994) .............................................................................. 3
*Schwanger v. Munchkin, Inc.*,
  No. 99-1049, 1999 WL 820449 (Fed. Cir. 1999) .............................................. 12
*See, Inc. v. Imago Eyewear Pty, Ltd.*,
  167 F. App'x 518 (6th Cir. 2006) .................................................................. 8, 13
*Stevens v. Corelogic, Inc.*,
  899 F.3d 666 (9th Cir. 2018) ............................................................................ 19
*Touchcom, Inc. v. Bereskin & Parr*,
  574 F.3d 1403 (Fed. Cir. 2009)........................................................................... 7

*Weller v. Cromwell Oil Co.*,
    504 F.2d 927 (6th Cir. 1974) ................................................................ 1
*Wireless Env't, LLC v. HooToo.com*,
    No. 1:15-CV-1215, 2016 WL 4530617 (N.D. Ohio Aug. 30, 2016)........................... 9, 10, 11
*Woodland v. Hill*,
    136 F.4th 1199 (9th Cir. 2025) ................................................................ 14, 15
*Zoya Co. v. NIOS, Inc.*,
    No. 1:13-cv-00780-DCN, 2013 WL 4511922 (N.D. Ohio 2013)................................. 3, 4, 5, 6

Statutes

17 U.S.C. § 102(a)(5)............................................................................... 17
17 U.S.C. § 412 ..................................................................................... vi, viii
17 U.S.C. § 501 ..................................................................................... 18
17 U.S.C. § 1202 .................................................................................... viii
OH ST § 2307.382 ................................................................................... 4

Rules

Federal Rule of Civil Procedure 4(k)(2) ........................................................ 2, 3, 7, 8
Federal Rule of Civil Procedure 12(b)(2) ....................................................... 1
Federal Rule of Civil Procedure 12(b)(6) ....................................................... 1

**BRIEF STATEMENT OF ISSUES TO BE DECIDED**

1. Should Plaintiff's First Amended Complaint be dismissed given this Court lacks personal jurisdiction over Romo UK, and that, in any event, Plaintiff has failed to sufficiently plead facts tending to show this Court has jurisdiction?

2. Does Plaintiff fail to state a claim for direct copyright infringement against Romo UK where Plaintiff alleges that Romo UK infringed the copyrights in the sculpture and photographs by allegedly reproducing photographs, even though (1) Plaintiff's photograph registrations specifically exclude the sculpture, (2) Plaintiff has not adequately described the copyrightable subject matter of either the sculpture or the photographs, (3) Plaintiff has not delineated the subject matter between the works, (4) Plaintiff's narrative lacks supporting factual allegations, (5) Plaintiff instead relies on purely speculative claims about the reproduction of Instagram photographs to then be used to create infringing products, and (6) in any event, Plaintiff fails to plausibly allege that Romo UK had access to the photographs since the claim that the photographs were widely disseminated is wholly unsupported and insufficient as a matter of law?

3. Does Plaintiff fail to state a claim for vicarious or contributory infringement against Romo UK where Plaintiff fails to allege any facts that suggest Romo UK either had knowledge of any allegedly infringing activity of any other Defendant, or materially contributed to the alleged infringement?

4. Does Plaintiff fail to state a cognizable claim under the Digital Millenium Copyright Act (DMCA) where Plaintiff does not allege that its works included proper copyright management information and that Romo UK removed Plaintiff's copyright management information (CMI) or distributed works with Plaintiff's CMI altered or removed?

5. Does Plaintiff fail to state a cognizable claim under the DMCA where Plaintiff (1) does not allege that its works included proper CMI, (2) does not actually allege that the accused products are "copies" subject to the DMCA, (3) does not allege that Romo UK removed Plaintiff's CMI, if any, from Plaintiff's works, (4) does not allege Romo UK distributed Plaintiff's works with Plaintiff's CMI altered or removed, and (5) does not allege that Romo UK had knowledge of any of the above?

6. Is Plaintiff precluded from seeking statutory damages and/or attorneys' fees for alleged copyright infringement when Plaintiff registered its works well beyond the three-month post-publication window under the Copyright Act, 17 U.S.C. § 412?

## SUMMARY OF ARGUMENT

1. Where this Court lacks personal jurisdiction over Romo UK, and Plaintiff has failed to otherwise plead sufficient facts tending to establish this Court's jurisdiction over Romo UK, the Court should dismiss the Romo UK entities from this suit.

2. Where the plaintiff fails to plausibly allege any facts that a defendant engaged in purported copyright infringement, the plaintiff fails to state a claim for direct copyright infringement.

3. Plaintiff fails to plausibly allege copyright infringement of either the sculpture or photograph given that (1) Plaintiff's photograph registrations specifically exclude the sculpture, (2) Plaintiff has not adequately described the copyrightable subject matter of either the sculpture or the photographs, (3) Plaintiff has not delineated the subject matter between the works, (4) Plaintiff's narrative lacks supporting factual allegations, (5) Plaintiff instead relies on purely speculative claims about the reproduction of Instagram photographs to then be used to create infringing products, (6) the accused products are neither substantially nor strikingly similar to the copyrighted works, and (7) in any event, Plaintiff fails to plausibly allege that Romo UK had access to the photographs since the

claim that the photographs were widely disseminated is based solely on Plaintiff's allegation that the photographs exist on the Internet.

4. Where a plaintiff fails to plausibly allege any facts that a defendant copied or accessed the plaintiff's photographs or sculpture, the plaintiff fails to state a claim for direct copyright infringement.

5. Where the plaintiff fails to allege that a defendant infringed any copyrightable aspect of a photograph, the plaintiff fails to state a cognizable claim for copyright infringement.

6. Where the plaintiff fails to plausibly allege any facts suggesting that an individual defendant had knowledge of any allegedly infringing activity—much less materially contributed to or supervised it—the plaintiff fails to state a claim for vicarious or contributory infringement against the individual defendant.

7. Where the plaintiff fails to allege that its works were published in connection with its CMI, and that the defendant removed the plaintiff's CMI or distributed any of the plaintiff's CMI, the plaintiff fails to plead a cognizable claim under the DMCA, 17 U.S.C. § 1202.

8. A plaintiff is precluded from recovering statutory damages or attorneys' fees pursuant to 17 U.S.C. § 412 where the plaintiff did not register a copyright for its work within three months of the work's initial publication.

# I.     INTRODUCTION

Plaintiff's Opposition (ECF No. 61, "Opp'n") fails to cure the fundamental jurisdictional and substantive defects in its First Amended Complaint (ECF No. 22, "FAC"), and instead, attempts to overcome those defects with attorney argument and mischaracterizations of both Mr. Neil Sexton's Declaration[1] and at times, the applicable law. Plaintiff ignores the distinct corporate identities of the Romo UK entities, fails to tether any of its claims to factual allegations, and has not made the *prima facie* showing required for this Court to exercise personal jurisdiction over the Romo UK entities. *Nottingham-Spirk Design Assocs., Inc. v. Halo Innovations, Inc.*, 603 F. Supp. 3d 561, 567 (N.D. Ohio 2022) (finding that the plaintiff failed to meet "its slight burden to make out even a prima facie case that the Ohio long-arm statute reache[d]" the defendant, where "it ha[d] no office in Ohio, own[ed] no real estate in Ohio, and ha[d] no employees in the State"); *Weller v. Cromwell Oil Co.*, 504 F.2d 927, 930 (6th Cir. 1974) (noting "the non-moving party may not rest upon allegations or denials in his pleadings but his response by affidavit or otherwise must set forth specific facts showing that the court has jurisdiction").

Plaintiff argues that jurisdiction over Romo UK is appropriate because Romo Ltd. is a foreign shareholder of and fulfillment source for U.S. company Romo, Inc – nothing more.[2] Indeed, Plaintiff cannot premise its jurisdictional argument on anything else because it is Romo, Inc., not Romo UK, that engages in the allegedly offending activities in the United States.[3] ECF No. 51-1 Declaration of Neil Sexton "Decl.," ¶18. Accordingly, this Court does not have jurisdiction over Romo UK under Ohio's long-arm statute, and in any event, the exercise of

---

[1] Plaintiff's jurisdictional arguments collapse upon a cursory review of Mr. Sexton's Declaration.
[2] While Plaintiff simply asserts that these two facts satisfy the "transacting business" prong (Opp'n, 3), Plaintiff cites no authority for the proposition that a foreign company shipping products to the United States based on an order from a U.S. company is subject to jurisdiction in Ohio.
[3] In fact, only one of the Romo UK entities, Romo Ltd., engages in business of any kind. At minimum, Romo (Holdings) Ltd. should be dismissed from this suit.

jurisdiction under either Ohio's long-arm statute or Federal Rule of Civil Procedure 4(k)(2) would not comport with due process. The Court should dismiss the FAC on that basis alone.

Likewise, Plaintiff's copyright infringement, indirect infringement, DMCA, and statutory damages claims should be dismissed with prejudice. Plaintiff fixates on highly distinguishable case law and the concept of derivative works, refashions the DMCA, and advances a self-serving, illogical, and internally inconsistent theory on statutory damages that if accepted as true, would still warrant dismissal of all claims as against Romo UK.[4] Ultimately, Plaintiff fails to meaningfully engage with any of the central arguments in Romo UK's Motion (ECF No. 51), and its FAC fails to plausibly support its claims. The FAC should therefore be dismissed with prejudice.

## II. ARGUMENT

### A. Plaintiff Fails to Establish Personal Jurisdiction Over Romo UK

Plaintiff's Opposition underscores and highlights the gaps in the FAC. First, Plaintiff implicitly concedes that general jurisdiction does not apply to Romo UK by not addressing it at all. *See Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) (requiring "that corporation's affiliations with the State [to be] so continuous and systematic as to render [it] essentially at home in the forum State"). The Court does not have general jurisdiction over Romo UK because Romo Ltd. is merely a shareholder of the Ohio-based company, Romo, Inc., and this cause of action does not arise from Romo UK's ownership interest, but rather Romo, Inc.'s allegedly infringing U.S. sales. Romo UK is based entirely out of the United Kingdom (U.K.) and does not own any real property, bank accounts, assets, or interests in the U.S. other than Romo Ltd.'s shares of Romo,

---

[4] In conceding that the alleged copyright infringement did not begin until Romo, Inc. launched the interiors collection in the U.S., Plaintiff concedes that none of Romo UK's alleged pre-launch preparation, design, and manufacture of the accused designs and products amount to copyright infringement. Romo UK should therefore be dismissed from this suit.

Inc. Decl., ¶¶3, 30. To the extent Romo UK's fulfillment of Romo, Inc.'s orders qualifies as the kind of contact from which the current dispute arises, "the volume and quality of the contacts" are neither meaningful nor sufficient for Romo UK to be considered "at home" in Ohio. *Zoya Co. v. NIOS, Inc.*, No. 1:13-cv-00780-DCN, 2013 WL 4511922, at *5 (N.D. Ohio 2013). General jurisdiction does not apply.

Nor is there specific jurisdiction over Romo UK. The simple fact that Romo Ltd. owns Romo, Inc., and ships products ordered via Romo, Inc., does not make Ohio's exercise of jurisdiction reasonable. As the Sixth Circuit and Supreme Court have held, the Court may exercise jurisdiction over a foreign defendant only to the extent permitted by the forum's long-arm statute and the due process clause. *Bridgeport Music, Inc. v. Still N The Water Pub.*, 327 F.3d 472, 477 (6th Cir. 2003) (Fourteenth Amendment due process when the forum is a state); *Fuld v. Palestine Liberation Org.*, 145 S.Ct. 2090, 2105 (2025) (Fifth Amendment due process when the forum is the United States). Here, Plaintiff asserts that due process is satisfied, and that specific jurisdiction is proper under either Ohio's Long-Arm statute or the Federal long-arm provision, Fed. R. Civ. P. 4(k)(2). Plaintiff is wrong on both fronts.

1. **Ohio's Long-Arm Statute Does Not Apply**

It is Plaintiff's burden to demonstrate that Romo UK has established minimum contacts with Ohio, such that maintaining the lawsuit does not violate traditional principles of fair play and substantial justice. *See CompuServe Inc. v. Patterson*, 89 F.3d 1257, 1263-64 (6th Cir. 1996) (noting (1) the plaintiff's claim must arise out of or relate to the defendant's contacts with the forum; (2) the defendant must have sufficient minimum contacts with the forum; and (3) the forum's exercise of jurisdiction over the defendant must be fair and reasonable); *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945); *Reynolds v. Int'l Amateur Athletic Fed'n*, 23 F.3d 1110, 1116 (6th Cir. 1994)). Likewise, under Ohio's Long-Arm statute, jurisdiction arises out of a

defendant's (1) business transactions, (2) contracts to supply goods or services, (3) tortious conduct, or (4) tortious injury to others within the state. OH ST § 2307.382; *Pay(q)r, LLC v. Sibble*, No. 5:15-CV-1038, 2015 WL 9583034, at *5 (N.D. Ohio Dec. 31, 2015).

As noted in Romo UK's Motion (ECF No. 51, "Mot."), the Ohio Long-Arm statute does not apply at least because the FAC fails to present any facts showing that Plaintiff was harmed in the state or that Romo UK directed tortious conduct to Ohio. In fact, Plaintiff is based in New York, not Ohio, and it is therefore highly unlikely that "the effects of [Romo UK's] alleged misconduct are . . . felt in Ohio." *See Zoya*, 2013 WL 4511922, at *4 (citing *Calder v. Jones*, 465 U.S. 783 (1984)). Moreover, Plaintiff fails to show that Romo UK directed the alleged tortious conduct **towards Ohio**, i.e., that Romo UK "[c]aused [Plaintiff] tortious injury in [Ohio] . . . with the purpose of injuring [Plaintiff], when [it] might reasonably have expected that [Plaintiff] would be injured thereby in [Ohio]." OH ST § 2307.382(A)(6) (2025). The statute is also inapplicable because the FAC fails to present any facts showing that Romo UK conducted or directed Romo, Inc.'s allegedly offending sales in Ohio or elsewhere in the United States, and does not plausibly allege that the claims against Romo UK stem from its minimal business contacts with Ohio, *e.g.,* its ownership interest in Romo, Inc. and its **subsidiary's** *de minimis* Ohio sales. *See* Decl., ¶ 25. Even so, Plaintiff attempts to argue that these business contacts are meaningful and of sufficient quality that asserting jurisdiction over Romo UK would be reasonable.[5]

Yet Mr. Sexton's Declaration demonstrates that Romo UK was not targeting its conduct towards Ohio or conducting the allegedly offending business in Ohio. Indeed, Romo UK does not

---

[5] Tellingly, Plaintiff refers to "quality" only once in the Opposition (ECF No. 61) and still provides no analysis of the quality of Romo UK's contacts when it asserts that Romo, Inc.'s *de minimis* "1.6% of all U.S. sales" is irrelevant because they are of sufficient quality. Opp'n, 21 (quoting *CompuServe, Inc.*, 89 F.3d at 1265). The Court should reject this unsupported argument, as it is not required to fill-in Plaintiff's analysis for it.

(1) sell any products, (2) import any products, (3) operate a website through which purchases can be made or transactions executed, (4) store products, (5) employ anyone, (6) lease offices or showrooms, (7) put on or host promotional events, (8) visit trade customers with new products, or (9) maintain retail or customer relationships, in Ohio or anywhere in the United States. Decl., ¶¶17-18, 20-21. Apparently, the only reason Romo UK has been sued in this case is because it owns Romo, Inc. Yet personal jurisdiction over Romo UK cannot arise due to that reason alone.

The Opposition ignores glaring deficiencies and instead, Plaintiff opts to mischaracterize Mr. Sexton's Declaration. For example, Plaintiff falsely states that according to Mr. Sexton, "the Romo UK entities transact business negotiations and conduct business activities with . . . individual consumers and trade customers in Ohio" and that Romo UK ships products to Romo, Inc. "whenever a customer in the United States orders a product from Romo, Inc." *See* Opp'n at 16; contra Decl., ¶ 22 ("However, the Romo UK Entities ship the parcels themselves directly to the trade customers that ordered the product, typically via FedEx."). These statements are missing from the Declaration. *See* Decl. Plaintiff also repeatedly mischaracterizes Mr. Sexton's statements by adding clauses such as "including customers in Ohio" or "including a trade customer in the state of Ohio" when Mr. Sexton refers only to shipments to the United States. *See* Opp'n at 16-17. In short, Plaintiff deliberately disregards corporate formalities and the distinctions between Romo, Inc. and Romo UK. *See Beydoun v. Wataniya Rests. Holding*, *Q.S.C.*, 768 F.3d 499, 504 (6th Cir. 2014) (Personal jurisdiction is analyzed and established "over each defendant independently").

Plaintiff also relies on two inapposite and distinguishable cases. First, the court in *Zoya* found that Ohio's Long-Arm statute applied to a New York company due to an online sale to the plaintiff's investigator in Ohio and determined that the sale met "[t]he explicit language of . . . 'any' transaction" in the Ohio Long-Arm. *Zoya*, 2013 WL 4511922, at *1-4. But Romo UK does

not sell anything in the United States, let alone Ohio, and its website does not allow for U.S. trade customers to purchase any products. Decl., ¶ 18 ("U.S. trade customers place all orders with Romo, Inc.") and ¶ 20 ("Regardless of trade customer status, no U.S. consumer can purchase products directly from the Romo website, and must first reach out to Romo, Inc."). Romo UK's shipment invoices and "advertising, promotion, and marketing activities on the Romo Website" also do not qualify under the Ohio Long-Arm, as these are all non-Ohio transactions, originating in the U.K. *Id.*, ¶ 23. Tellingly, although Plaintiff highlights *Zoya*, Plaintiff ignores that case's ultimate holding, which found "that it [was] unreasonable to exercise jurisdiction over [the] [d]efendant in Ohio based on the singular internet sale for a trademark infringement claim[.]" *Zoya Co.*, 2013 WL 4511922, at *4 (noting application of Ohio's Long-Arm statute "should be resolved on 'highly particularized fact situations, thus rendering any generalization unwarranted'") *Id.* at *3 (quoting *Clark v. Connor,* 82 Ohio St.3d 309, 312 (Ohio Sup. Ct. 1998)). Plaintiff's reliance on *Shenzhen* is likewise misplaced. *See NOCO Co. v. Shenzhen Valuelink E-Com. Co.*, 550 F. Supp. 3d 488, 494 (N.D. Ohio 2021). In *Shenzhen*, the plaintiff was **an Ohio entity** that sold automotive accessories on Amazon and the defendants, a California entity and its parent companies based in China, sold similar products on Amazon and other e-commerce platforms. *Id.* at 492. The Court held that jurisdiction under the Ohio Long-Arm's "transacting business" provision was proper for the California-based defendant. *Id.* at 494-495. However, as in *Zoya* and unlike Romo UK, the California-based defendant in *Shenzhen* **directly sold products** to Ohio consumers via Amazon storefronts and other internet retailers, selling "$271,839.18 worth of products to Ohio consumers on the Amazon Marketplace[.]" *Id.* at 494. Here, Plaintiff does not allege that Romo UK used its website in a manner so inextricably intertwined with Plaintiff's underlying copyright infringement claims, nor does Plaintiff point to any Romo UK-specific business activity within Ohio's borders.

Moreover, Plaintiff ignores the fact that Romo UK does not directly sell products in the U.S. Decl., ¶¶ 18, 20. Plaintiff cites no authority that a mere 1.6% of *a subsidiary company's* total U.S. sales over a five-year period, standing alone, is sufficient to confer jurisdiction under the business transactions provision of Ohio's Long-Arm statute. *See Harris v. Lloyds TSB Bank, PLC*, 281 F. App'x 489, 493 (6th Cir. 2008) (finding it "merely fortuitous" that less than one percent of defendant's account holders resided in the forum state, where all marketing and sales occurred abroad). Ohio's Long-Arm statute does not apply to Romo UK.

## 2. The Federal Long-Arm Statute Does Not Apply

For the very first time, Plaintiff raises an alternative basis for exercising jurisdiction over Romo UK: the "'federal long-arm statute'–Federal Rule of Civil Procedure 4(k)(2)." *Shenzhen*, 550 F. Supp. 3d at 494 (quoting *Lyngaas v. Curaden Ag*, 992 F.3d 412, 422 (6th Cir. 2021) (internal quotation omitted)). "To establish jurisdiction under Rule 4(k)(2), '(1) the cause of action must arise under federal law; (2) the defendant must not be subject to the personal jurisdiction of any state court of general jurisdiction; and (3) the federal court's exercise of personal jurisdiction must comport with due process.'" *Id.* (quoting *Lyngaas*, 992 F.3d at 422). Moreover, "a court is entitled to use Rule 4(k)(2) to determine whether it possesses personal jurisdiction over the defendant unless the defendant names a state in which the suit can proceed." *Touchcom, Inc. v. Bereskin & Parr*, 574 F.3d 1403, 1414 (Fed. Cir. 2009); *Critical Device Corp. v. Enteral Access Tech. Ltd.*, Case No. 1:22-cv-01050-PAB, 2023 WL 11780380, at *3 (N.D. Ohio. Aug. 8, 2023) (Barker, J.) (dismissing the case for lack of jurisdiction where the defendant consented to jurisdiction in Illinois and established sufficient contacts in the forum). Here, Plaintiff alleges that this is a federal-question case (FAC, ¶ 45), and Romo UK maintains that it is not subject to personal jurisdiction in any state court of general jurisdiction. Even so, as discussed below, the exercise of jurisdiction does not "comport with due process", and application of the federal long-arm is therefore

inappropriate. *Shenzhen*, 550 F. Supp. 3d at 494.

### 3. Exercising Jurisdiction Would Not Comport With Due Process

First, if the Ohio Long-Arm statute applies (which it does not), jurisdiction still does not comport with due process because the FAC fails to allege facts showing that the claims stem from Romo UK's contacts with Ohio, that Romo UK maintains sufficient minimum contacts with the state, or that asserting jurisdiction over Romo UK would be reasonable. *See, Inc. v. Imago Eyewear Pty, Ltd.*, 167 F. App'x 518, 520-21 (6th Cir. 2006) (affirming the district court's dismissal, reasoning that "jurisdiction would offend due process based on the [Australian-based defendants'] contacts with Michigan" where they "never sold any products to Michigan residents," they targeted consumers around the world, and users could not "purchase products online, but instead [could] only view the available products."). Second, even were the Federal long-arm statute to apply, Romo UK's contacts with the United States are insufficient to maintain jurisdiction pursuant to Rule 4(k)(2). Application of the Ohio Long-Arm statute or the Federal long-arm and the exercise of personal jurisdiction is neither fair nor reasonable. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474-75 (1985).

### a. There is no purposeful availment or minimum contacts.

As noted in Romo UK's Motion (ECF No. 51), Plaintiff fails to allege facts showing Romo UK purposefully availed itself of Ohio's laws. Romo, Inc.'s minimal Ohio sales (1.6% of U.S. sales) are not attributable to Romo UK.[6] Decl., ¶ 25; *Harris*, 281 F. App'x at 489 ("merely fortuitous" that less than one percent of a defendant-bank's account holders had residential forum addresses where it marketed and sold accounts in the United Kingdom). Occasional and attenuated visits by Romo UK board members to Romo, Inc. do not establish targeted Ohio activity.

---

[6] Plaintiff argues that the "quality", rather than the quantity of contacts matters, but does not even attempt to explain the alleged "quality." The Court is not obligated to accept this *ipse dixit*.

*Calphalon Corp. v. Rowlette*, 228 F.3d 718, 722-23 (6th Cir. 2000) (contractual performance in the forum and physical visits for that purpose were "random," "fortuitous," and "attenuated"). Critically, Romo UK's website is non-interactive and does not allow direct orders from Ohio residents. Decl., ¶¶ 15–21; *Wireless Env't, LLC v. HooToo.com*, No. 1:15-CV-1215, 2016 WL 4530617, at *4 (N.D. Ohio Aug. 30, 2016) ("As to websites, a defendant purposely avails itself of the privilege of acting in a state through its website if the website is interactive to a degree that reveals specifically intended interaction with residents of the state.") (internal quotations omitted).

Plaintiff does not address any of these facts and instead baselessly claims that "Romo UK intentionally marketed and placed its products in Ohio[.]" Opp'n, 21. Plaintiff does not cite to anything in the FAC or Sexton Declaration to support this claim, or any other claim, including the suggestion that Romo UK *regularly* shipped the products at issue to trade customers in Ohio. *Contra Invisible Fence, Inc. v. Protect Animals With Satellites, Inc.*, No. 3:23-CV-00403-JRG-JEM, 2024 WL 4375755, at *6 (E.D. Tenn. Oct. 2, 2024) (finding purposeful availment where defendant's ***regularly*** shipped the products at issue to Tennessee consumers). Unlike the China-based defendant in *Shenzhen*, Romo UK does not regularly sell products into Ohio or store any allegedly infringing products in the United States, and simply fulfills Romo, Inc.'s orders and ships those products to the trade customers that ordered from Romo, Inc. Decl. ¶¶14, 16, 22-23; *see, e.g.*, *Shenzhen*, 550 F. Supp. 3d at 498 (relying on the defendant's "***substantial and repeated*** sales to the United States over many years" to find purposeful availment) (emphasis added).[7] Notably,

---

[7] While Plaintiff relies heavily on *Shenzhen* throughout its Opposition, *Shenzen* actually supports Romo UK's position. In fact, the *Shenzhen* court placed particular emphasis on the "quality" of the California-defendant's contacts with Ohio and "the fact that [it] relied on e-commerce platforms to cultivate its Ohio market[.]" *Shenzhen*, 550 F. Supp. 3d at 497. Plaintiff has not analyzed the quality of Romo UK's contacts in any meaningful way, and Mr. Sexton unambiguously declares that none of the Romo entities rely on the Romo Website to cultivate sales or operate it as "an online platform [] used as a means for establishing regular business with a

the *Shenzhen* court expressly distinguished cases in which there is no "commercial connection" between the defendant and Ohio. *Shenzhen*, 550 F. Supp. 3d at 496 (noting that this element was "the key rationale underpinning 12(b)(2) dismissal in *Doe*[.]") (citing *Noco Co. v. Doe*, No. 1:19-CV-2260, 2020 WL 836757, at *4-5 (N.D. Ohio Feb. 20, 2020). *Id.* Likewise, the Court also distinguished cases in which a defendant's website merely links consumers to a third-party retailer generally, rather than to its own storefront as operated through a third-party retailer. *Shenzhen*, 550 F. Supp. 3d at 496 (citing *Wireless Env't*, 2016 WL 4530617, at *3-4).

Clearly, Plaintiff misunderstands the law. Plaintiff argues that Romo UK "attempts to minimize" its shipments by noting that Romo, Inc. is the importer of goods into the U.S. and accordingly, is the only entity invoiced for those orders. Opp'n, 20. That is the point. This is a relevant fact demonstrating that, in contrast to Romo, Inc., Romo UK is not directing any activity to the State of Ohio, least of all directing the allegedly offending conduct at Ohio. *In re Chocolate Confectionary Antitrust Litigation*, 602 F. Supp. 2d 538, 562 (M.D. Pa. 2009) (finding no purposeful availment where foreign manufacturers merely supplied products to U.S. subsidiaries without retaining control over post-transfer activities); *Freres v. SPI Pharma, Inc.*, 629 F. Supp. 2d 374, 386-389 (D. Del. 2009) (finding that British manufacturers of allegedly infringing product sold by Delaware corporation were not subject to specific personal jurisdiction in Delaware in patent infringement action given that all manufacturing occurred outside Delaware, the manufacturers were not the importers of the accused products, and shipment records noted the Delaware corporation as the importer, owner, and responsible party for the products). Ultimately, simply shipping products to the United States, but not importing them into the United States, is

---

remote forum." *Shenzhen*, 550 F. Supp. 3d at 496-497 (citing *Wireless Env't*, 2016 WL 4530617, at *3-4).

insufficient for purposeful availment. *In re ZF-TRW Airbag Control Units Products Liability Litigation*, 601 F. Supp. 3d 625, 714 (C.D. Cal. 2022) (holding that merely placing products into the stream of commerce with the expectation that they would reach the United States was not enough to establish purposeful direction and noting that additional conduct showing targeting of the forum state is required). Plaintiff does not allege anywhere in the FAC or its Opposition that Romo UK engaged in conduct above and beyond placement in the stream of commerce that demonstrates an intent to serve the Ohio market. Plaintiff does not point to any advertising, promotions, or marketing activities that show Romo UK specifically directed its activities to the State of Ohio or consumers in Ohio. *Wireless*, 2016 WL 4530617, at *4 (finding no personal jurisdiction where plaintiff failed to allege that the defendant's "website allows users to place orders nor store users' personal information, including names, email addresses, phone numbers and credit card data"). Plaintiff does not allege that Romo UK (1) designed the accused products for the Ohio or United States markets, (2) sold the products to United States or Ohio trade customers, (3) retained control over Romo, Inc.'s distribution process after Romo, Inc. imports the product, or (4) structured its relationship with Romo, Inc. such that Romo UK retains control over after-sale repairs and services, including installation. Accordingly, Plaintiff has failed to make a *prima facie* showing that the Romo UK entities purposefully availed themselves of the benefits of Ohio. *See Joe Solo Prods., Inc. v. Dawson*, No. 1:09-cv-555, 2009 WL 2232856, at *5 (N.D. Ohio July 23, 2009) (requiring more than passive availment of Ohio's market). Since jurisdiction is untenable in the absence of purposeful availment, the FAC as to Romo UK should be dismissed. *Dean v. Motel 6 Operating L.P.*, 134 F.3d 1269, 1273 (6th Cir. 1998) ("The *sine qua non* of personal jurisdiction is the purposeful availment factor.").

### b. Plaintiff's claims do not arise from Romo UK contacts.

Plaintiff contends that its causes of action arise out of Romo UK contacts with Ohio

because (1) the Romo Website "advertised and displayed" the allegedly infringing products, (2) product orders were "fulfilled by Romo UK," and (3) the products were "shipped by Romo UK to Romo Inc. in Ohio to be promoted and presented to Trade customers." Opp'n at 21-22. But Plaintiff fails to show how the first two of these activities amounts to a contact with Ohio in the first instance. Moreover, even if Plaintiff's "claims of copyright…violations stem from [Romo UK's] operation of the [Romo Website]," their contacts do not. *Contra Bird v. Parsons*, 289 F.3d 865, 875 (6th Cir. 2002) ("***Both*** the Dotster defendants' contacts with Ohio ***and*** Bird's claim of copyright and trademark violations stem from these defendants' operation of the Dotster website.") (emphasis added). Moreover, Plaintiff's attempt to liken Romo UK's shipments to the United States to those in *Schwanger* is unavailing. Specifically, the *Schwanger* defendant shipped products to Ohio Wal-Marts to be sold. *Schwanger v. Munchkin, Inc.*, No. 99-1049, 1999 WL 820449, at *1, 6 (Fed. Cir. 1999). Conversely, Romo, Inc. does not sell any products at its Ohio facility. Decl., ¶10. Moreover, once again, Plaintiff mischaracterizes Mr. Sexton's Declaration. Specifically, Plaintiff asserts that "Romo UK displayed, sold, marketed, and distributed the infringing products at issue in this lawsuit in the U.S." and that the products "were available to be purchased from Romo UK by Ohio consumers and trade customer." Opp'n at 21, 23-24. The Declaration states precisely the opposite, noting that Romo UK does not sell any products in the United States and that all U.S. activities are that of Romo, Inc., the U.S.-based company. The fact that Plaintiff repeatedly mischaracterizes the facts shows that Plaintiff cannot defeat Romo UK's motion for lack of personal jurisdiction based on the facts as they are.

### c. Exercising jurisdiction over Romo UK is plainly unreasonable.

"[E]ven if the requisite minimum contacts have been found, . . . if it would be unreasonable for the forum to assert jurisdiction under all the facts and circumstances, then due process requires that jurisdiction be denied." *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.2d 1558, 1568

(Fed. Cir. 1994). Here, both Plaintiff's and the State of Ohio's "interest in adjudicating the dispute in the forum are so attenuated that they are clearly outweighed by the burden of subjecting [Romo UK] to litigation within [Ohio]." *Id.* (citing *Burger King,* 471 U.S. at 477).

Plaintiff does not truly address the reasonability prong of the due process analysis, ignoring Romo UK's cited authorities entirely. Instead, Plaintiff asserts that since Romo UK board members previously visited Chagrin Falls, and Romo UK employees have previously traveled to Los Angeles and New York, "it does not appear that it would be overly burdensome or unreasonable for Romo UK and its board members, executives, and employees to travel to this District to appear in this lawsuit." Opp'n, 22. Nothing more. Romo UK already explained in its Motion that requiring witnesses to travel thousands of miles to appear in this District "would be extremely burdensome, highly inconvenient, and generally unreasonable." ECF No. 51, 16. Plaintiff's assertion that Romo UK does not address these burdens is patently false. In contrast, Plaintiff cites no authority to support its conclusory argument that these individuals' prior travel renders it reasonable to subject Romo UK witnesses to being hauled into court for a copyright litigation thousands of miles away. Similarly, Plaintiff gives short shrift to Ohio's alleged interest in a copyright lawsuit where both Plaintiff and Romo UK are non-Ohio entities.

In addition, Plaintiff has not explained how jurisdiction pursuant to Rule 4(k)(2) would be fair or reasonable when the sales and conduct at issue are attributed to a U.S.-based company that is already in this case. *Imago Eyewear*, 167 F'Appx at 523 (holding that an Australian-defendant's "attendance at one trade show in New York and [] website [] permit[ting] users to contact the company through an on-line form [were] simply insufficient contacts with the United States to satisfy due process"); *Shenzhen*, 550 F. Supp. 3d at 498 ("[M]ost of the [China-based defendants'] relevant contacts stem[med] from their Amazon storefronts."). The United States' interest in

adjudicating copyright infringement is already served by Plaintiff's suit against Romo, Inc. The exercise of jurisdiction does not comport with due process as to Romo UK, and the FAC should be dismissed as to Romo UK.

### B. Plaintiff's Copyright Infringement Claims Should Be Dismissed

#### 1. Plaintiff does not plausibly allege that Romo UK accessed its works.

Plaintiff asserts for the very first time "that direct evidence of access and infringement is present *as there are numerous 'common errors'* between Plaintiff's works and Romo UK's works, including the precise way that the individual fronds are laid upon each other in the Artwork as depicted in the Photographs as well as in the Unauthorized Farrah Interiors Products." Opp'n, 30 (emphasis added). There is no such allegation in the FAC; the word "error" does not appear anywhere in the pleading. Likewise, Plaintiff returns to the well of conclusory argument by asserting that Romo UK accessed the sculpture "through accessing" Plaintiff's Instagram account or "through accessing" photographs provided to Romo UK by other Defendants. *Id.* (reciting "wide dissemination" and reiterating the conclusory and unsupported chain of events). Plaintiff's "wide dissemination" theory is based on the speculative assertion that Romo UK's employees must have seen Plaintiff's Instagram posts since at least one of the Defendants must have seen the posts because they were "widely disseminated." But Plaintiff's FAC offers no facts or plausible explanation to support this claim—no metrics, no evidence of actual viewership, no indication that anyone at Romo UK ever interacted with Plaintiff's account, or that the posts achieved any notoriety in the UK, United States, or Ohio. While Plaintiff argues that these metrics "are merely some of the many ways of show[sic] accessing", Opp'n, 31, Plaintiff offers no other ways of alleging access either in its FAC or Opposition.

Plaintiff is resting its "wide dissemination" claims on the misguided theory that merely posting content online establishes "access". *Woodland v. Hill*, 136 F.4th 1199, 1205 (9th Cir. 2025)

("The mere fact that Woodland posted his photos on his Instagram page—without more—falls short of plausibly alleging that Hill had "access" to and saw Woodland's photographs"); *Art Attacks Ink, LLC v. MGA Ent. Inc.*, 581 F.3d 1138, 1143-45 (9th Cir. 2009). Indeed, "*availability should not be confused with access.*" *Woodland*, 136 F.4th at 1208 (emphasis in original). Tellingly, Plaintiff's Opposition ignores recent case law which directly addressed the circumstances that would plausibly suggest "access" to its social media posts. *Woodland*, 136 F.4th at 1209 (noting "for plaintiffs to show that defendants had access to their materials" on "social media and other digital-sharing platforms" plaintiffs must "***show that the defendants had a reasonable chance of seeing their work under that platform's algorithm or content-sharing policy***"). As in Woodland, here, Plaintiff has done no such thing, and "has not sufficiently pleaded that [Romo UK] had access to [the] Instagram photos, given that [it] does not plausibly allege that [Romo UK] ***followed, liked, or otherwise interacted with posts or accounts connected to or similar to*** [Romo UK]." *Id.* at 1209. Plaintiff similarly fails to address the lack of factual basis for the implausible allegation that copies of the sculpture were exchanged between Romo UK the other Defendants. *Id.* (remarking that "[p]erhaps recognizing" the weakness of its theory, "Woodland offers a chain of events to bolster his claim that Hill had a reasonable possibility of viewing Woodland's photos on Instagram"). However, like in *Woodland*, Plaintiff's "theory is rooted in speculation." *Id.* Plaintiff cannot elude the requirement that it plead plausible facts tending to show that Romo UK received documents, photographs, or materials from the other Defendants. Simply pleading that it believes the products look similar will not suffice.

Given the apparent weakness of its "access" claims, Plaintiff falls back on an argument that it does not need to show "access" at all. Plaintiff maintains that the "specific copyright-protected components of the [sculpture] . . . are strikingly similar to the embroidered derivative

designs found in the Unauthorized Farrah Interiors Products." Opp'n, 30-31.[8] However, Plaintiff

fails to respond to Romo UK's discussion detailing the meaningful ***differences*** between the works.

Plaintiff's "striking similarity" argument falls flat; the FAC's own side-by-side images show only

generic palm motifs and do not demonstrate the kind of overwhelming similarity that would

preclude independent creation. *Jones v. Blige*, 558 F.3d 485, 493 (6th Cir. 2009). Since Plaintiff

has not adequately pleaded "access", its copyright infringement claims must be dismissed.

### 2. Plaintiff does not meaningfully address substantial similarity.

As an initial matter, Plaintiff remarks in its Opposition that, regarding substantial

similarity, "Romo UK's assertions are inaccurate and do not reflect the established principles of

copyright law." Opp'n, 25. Plaintiff is mistaken. For one, throughout the FAC, Plaintiff claims

various components of the works as its core creative "contributions" to an otherwise

uncopyrightable living plant. (*See, e.g.*, FAC ¶¶59-60). Because the accused products differ on

each of the allegedly core copyrightable components (*e.g.*, paint pattern, curvature, color scheme,

composition, and hue), Plaintiff is now attempting to disavow these contributions and expand the

scope of its copyright, inevitably allowing it to accuse products that would not otherwise infringe

the limited scope of Plaintiff's copyright. That is, of course, improper, contrary to established

principles of copyright, and emblematic of one of the glaring issues of the FAC. *See* Mot., n. 7

("Plaintiff not only fails to identify the elements of the sculpture that consistently carry through to

the photographs but also repeatedly shifts the scope of its rights depending on the products and

Defendant being accused. *Cf.* FAC, ¶¶12, 24 and FAC, ¶38 (missing the blue hue and the

---

[8] In its Opposition, Plaintiff abandons various contradictory allegations describing the scope of the sculpture's protectable subject matter (e.g., FAC, ¶¶ 12, 24, 59-60) and finally settles on a single paragraph from the FAC, identifying it as the allegation that outlines the scope of the sculpture's protectable subject matter. FAC, ¶ 38. These are illusory categories of unknown expression such as bent plants, "geometric paint patterns", "color-tipped fronds", and "color blocking expressions and color schemes . . .." *Id.* Plaintiff proclaims "striking similarity" without any analysis.

specifically proportioned blue and pink paint patterns)"). In short, not only are there differences between the accused products and the asserted works, but they are also ***material and non-trivial*** differences between the accused products and the ***core*** protectable components of the asserted works. Plaintiff grapples with none of these specific differences and instead reiterates case law on derivative works, proclaims that the accused products are nearly identical, and cites various distinguishable cases from different mediums. *See DC Comics v. Towle*, 802 F.3d 1012, 1021 (9th Cir. 2015) (involving the copyrightability of literary characters—like comic book figures—under a specific test requiring physical and conceptual qualities, consistent and recognizable traits, and distinctiveness, where the court explicitly declined to address whether the Batmobile qualified as a sculptural work under 17 U.S.C. § 102(a)(5)) *Id.* at 1018 n.4; *Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1447-48 (9th Cir. 1994) (involving a licensing agreement and a finding that most similarities arose from either the license or basic ideas and their obvious expression, with infringement only possible if the works were virtually identical); *Gamma Audio & Video, Inc. v. Ean-Chea*, 11 F.3d 1106, 1112 (1st Cir. 1993) (involving a defendant distributing the actual registered visual work—videotapes—without authorization and with a Cambodian-language soundtrack dubbed over the original Chinese production). Plaintiff does not plausibly allege facts tending to support a claim that the accused products are substantially similar to its works.

## C.    Plaintiff's Indirect Infringement Claims Fall Short

Plaintiff continues to maintain its indirect infringement claims despite having failed to plead the requisite factual allegations to support these claims. In the Opposition, Plaintiff recites the text of its conclusory allegations, notes that the Romo entities share a board of directors, and asserts that there was "a collaborative nature between the two brands at issue, i.e. Temperley London and Romo, such that all of the Defendants had collective access to the Artwork as depicted in the Photographs, and had knowledge of, directed, induced, and participated in the infringing

activities taken place by the other Defendants as set forth in the FAC." Opp'n, 33. This is a purely legal conclusion without factual support and of the kind rejected in *Twombly* and *Iqbal*. In short, Plaintiff is recasting the arms-length business relationship between the parties as a collective enterprise for engaging in copyright infringement. Plaintiff, however, does not analyze or identify any fact that warrants this narrative leap. Indeed, Plaintiff skips over the fact that contributory infringement requires that the secondary infringer ***know or have reason to know*** of the direct infringement. *Arista Recs., LLC v. Doe 3*, 604 F.3d 110, 118 (2d Cir. 2010); *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1020 (9th Cir. 2001). Plaintiff does not allege any fact tending to support a claim that Temperley London or Romo UK knew or had reason to know of the other's direct infringement. See *Bridgeport Music, Inc. v. Rhyme Syndicate Music*, 376 F.3d 615, 621 (6th Cir. 2004). Likewise, Plaintiff ignores that vicarious infringement requires pleading facts that show Romo UK had the right and ability to supervise the infringing activity of "the other Defendants", including Temperley London. Accordingly, Plaintiff's claims warrant dismissal.

### D.     Plaintiff Attempts to Self-Servingly Rewrite the DMCA

Plaintiff's DMCA claim against Romo, Inc. fails because it is based on photographs and products that Plaintiff did not create, manufacture, or photograph, and thus no CMI could have been removed from Plaintiff's original work. Plaintiff conflates copyright infringement under 17 U.S.C. § 501 with DMCA violations under § 1202(a)-(b), despite clear legal distinctions. As explained in *Faulkner Press, L.L.C. v. Class Notes, L.L.C.*, 756 F. Supp. 2d 1352, 1359 (N.D. Fla. 2010), CMI must be removed from the plaintiff's own work, not from a different product that allegedly incorporates elements of it. Plaintiff's cited cases, such as *ADR Int'l Ltd. v. Inst. for Supply Mgmt.*, 667 F. Supp. 3d 411, 428 (S.D. Tex. 2023), and *GC2 Inc. v. Int'l Game Tech.*, 391 F. Supp. 3d 828, 843-44 (N.D. Ill. 2019), involved direct copying of entire works with CMI removed or replaced—unlike here, where Plaintiff merely alleges that elements of its sculpture or

photos were used in unrelated product designs. Tellingly, Plaintiff's reliance on *New Parent World, LLC v. True to Life Productions, Inc.*, No. CV-23-08089-PCT-DGC, 2024 WL 4277865 (D. Ariz. Sept. 24, 2024), is misplaced, given that case involved a nearly identical copy of the work (*sans* a single sentence), not the creation of a new product with at most unprotectable elements. Moreover, as noted in *Kipp Flores Architects, LLC v. Pradera SFR, LLC*, SA-21-CV-00673-XR, 2022 WL 1105751, at 3 (W.D. Tex. April 13, 2022), "CMI cannot be 'removed' from a new work that never included" Plaintiff's CMI to begin with. Plaintiff also fails to allege the required scienter, as courts require a showing of intent or a "modus operandi" for DMCA violations. *Stevens v. Corelogic, Inc.*, 899 F.3d 666, 674 (9th Cir. 2018) (requiring a plaintiff to demonstrate a "past pattern of conduct or modus operandi" to establish the requisite mental state in the context of the DMCA, a statute "requiring knowledge that a future action 'will' occur"). The FAC lacks any factual basis to plausibly support the DMCA claims.

### E. Plaintiff's Statutory Damages Argument Is Illogical

Plaintiff has made its own FAC a casualty of its arguments in the Opposition. In the FAC, Plaintiff claims that it first discovered infringement with respect to the Farrah Kimono in February 2023. FAC, ¶ 7. Plaintiff also accuses all Defendants, including Temperley London and Romo, of jointly "creat[ing] four (4) products as part of their Temperley London x ROMO "A World Less Ordinary" interiors collection[.]" *Id.* at ¶ 29; *see also id.* at ¶ 26 ("Temperley London and Romo's 'Farrah' Interiors Infringements"). Plaintiff specifically alleges that the interiors collection came about as a result of "the apparent success of the Temperley London Spring Summer 2022 apparel collection", the collection Plaintiff discovered in February 2023. *Id.*, ¶ 28. Plaintiff highlights that both the 2022 apparel collection and 2023 interiors collection bear the same "Farrah" product names and fabric designs, and that all defendants sell the interiors products. *Id.*, ¶ 30. Plaintiff unequivocally claims that all the Defendants "***collectively*** copied the Artwork as depicted in the

Photographs" and that "[a]ll Defendants had an active role in the design process of the [interiors collection]." *Id.* at ¶ 69 (emphasis added). Stunningly, Plaintiff's Opposition disavows these allegations in a futile attempt to rescue Plaintiff's time-barred claim to statutory damages. Plaintiff now claims that "the launch of the" 2022 apparel collection "does not constitute the 'first act' in a series of acts constituting continuing infringement as it relates to the infringing Romo interiors products[.]" Opp'n, 37-38. Worse, Plaintiff now insists that "Temperley London and Romo are distinct and [their infringements] are not '***of the same kind***' as is required to be considered a continuing infringement[,]" referring to the products as "wholly separate products" from "two separate brands". *Id.* Undermining its personal jurisdiction and indirect infringement theories, Plaintiff argues at the end of its Opposition that the Defendants' allegedly infringing activity is entirely different. *Id.* at 34. Plaintiff engages in this about-face solely to argue that "Romo UK's 'first act' of infringement took place in March 2023." *Id.* at 38. Plaintiff's disavowal of its own pleading is pure gamesmanship and should be rejected. Plaintiff's claim for statutory damages is time-barred and should be dismissed.

## III.  CONCLUSION

For the foregoing reasons and those set forth in Romo UK's opening brief, the Romo UK defendants respectfully request that the Court grant Romo UK's Motion to Dismiss the First Amended Complaint with prejudice.

Dated: July 15, 2025

Respectfully submitted,

By: _/s/ Jeffer Ali_

Meredith K. Collier
Todd R. Tucker
**CALFEE, HALTER & GRISWOLD LLP**
1405 East Sixth Street
Cleveland, OH 44114
Telephone: 216.622.8200
Facsimile: 216.241.0816
mcollier@calfee.com
ttucker@calfee.com

Jeffer Ali*
**HUSCH BLACKWELL LLP**
80 South Eighth Street, Suite 4800
Minneapolis, Minnesota 55402
Telephone: 612.852.2700
Facsimile: 612.852.2701
jeff.ali@huschblackwell.com

Sharif Ahmed*
**HUSCH BLACKWELL LLP**
2415 East Camelback Road, Suite 500
Phoenix, AZ 85016
Telephone: 480.824.7890
Facsimile: 480-824-7905
sharif.ahmed@huschblackwell.com

*Admitted pro hac vice*

**_Attorneys for The Romo Group Ltd., Romo Ltd., and Romo (Holdings) Ltd._**

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that today, this 15th day of July 2025, I caused the foregoing document to be filed electronically with the Clerk of Court, and therefore served upon all counsel of record.

*/s/ Jeffer Ali*

HB: 4932-0022-6129