# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | |
|---|---|
| Sophia Parker Studios, Inc., trading as WIFE NYC, | Case No. 1:24-cv-02086-PAB |
| Plaintiff, | Judge Pamela A. Barker |
| v. | Magistrate Judge Reuben J. Shepherd |
| Alice Temperley MBE, TMLL Ltd. (trading as Temperley London), Temperley Holdings Ltd. (t/a Temperley Holdings), Romo Ltd. (t/a ROMO and/or Romo Group), Romo (Holdings) Ltd., Romo, Inc. (t/a ROMO Fabrics and Wallcoverings and ROMO USA, and Does 1-20, Inclusive, | **DEFENDANTS ALICE TEMPERLEY, TMLL LTD., TEMPERLEY HOLDINGS, LTD.'S REPLY IN SUPPORT OF THEIR MOTION TO DISMISS FIRST AMENDED COMPLAINT PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(b)(2) AND (6)** |
| Defendants. | |

## DEFENDANTS ALICE TEMPERLEY, TMLL LTD., TEMPERLEY HOLDINGS, LTD.'S REPLY IN SUPPORT OF THEIR MOTION TO DISMISS FIRST AMENDED COMPLAINT PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(b)(2) AND (6)

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendants 12(b)(2) and 12(b)(6), Defendants Alice Temperley, MBE, TMLL Ltd., and Temperley Holdings Ltd. (collectively "Temperley London"), by and through the undersigned counsel, hereby submits this Reply in support of their Motion to Dismiss (ECF No. 52).

## <u>TABLE OF CONTENTS</u>

**Page**

BRIEF STATEMENT OF ISSUES TO BE DECIDED ................................................................ iv

SUMMARY OF ARGUMENT ........................................................................................ v

I.    INTRODUCTION ........................................................................................... 1

II.    ARGUMENT ................................................................................................ 2

   A.   Plaintiff Fails to Establish Personal Jurisdiction over Temperley London ........................ 2

      1.   The Court Lacks Personal Jurisdiction Over Temperley London ................................. 3

   B.   Plaintiff's Copyright Infringement Claims Should Be Dismissed ................................... 8

      1.   Plaintiff fails to plausibly allege access. .......................................................... 9

      2.   The Works and Products Are Neither Strikingly Nor Substantially Similar. ............... 11

   C.   Plaintiff's Indirect Infringement Claims Should Be Dismissed ...................................... 14

   D.   Plaintiff Continues to Misinterpret the DMCA .......................................................... 16

   E.   Plaintiff Is Not Entitled to Statutory Damages or Attorney's Fees ................................ 17

III.   CONCLUSION ............................................................................................ 19

i

## TABLE OF AUTHORITIES

Page(s)

Cases

*A&M Records, Inc. v. Napster, Inc.*,
  239 F.3d 1004 (9th Cir. 2001) ................................................................ 16
*ADR Int'l Ltd. v. Inst. for Supply Mgmt.*,
  667 F. Supp. 3d 411 (S.D. Tex. 2023) .................................................... 16
*AlixPartners, LLP v. Brewington*,
  836 F.3d 543 (6th Cir. 2016) .................................................................... 2
*Arista Recs., LLC v. Doe 3*,
  604 F.3d 110 (2d Cir. 2010)...................................................................... 16
*Art Attacks Ink, LLC v. MGA Ent. Inc.*,
  581 F.3d 1138 (9th Cir. 2009) ................................................................ 10
*Asahi Metal Indus. Co. v. Superior Court of Cal.*,
  480 U.S. 102 (1987)................................................................................... 5
*Beverly Hills Fan Co. v. Royal Sovereign Corp.*,
  21 F.2d 1558 (Fed. Cir. 1994).................................................................. 7
*Bridgeport Music, Inc. v. Rhyme Syndicate Music*,
  376 F.3d 615 (6th Cir. 2004) ................................................................... 16
*Burger King Corp. v. Rudzewicz*,
  471 U.S. 462 (1985).............................................................................. 5, 7
*Calder v. Jones*,
  465 U.S. 783 (1984)................................................................................... 3
*Calphalon Corp. v. Rowlette*,
  228 F.3d 718 (6th Cir. 2000) .................................................................... 4
*CompuServe, Inc. v. Patterson*,
  89 F.3d 1257 (6th Cir. 1996) ........................................................ 2, 3, 4, 5
*Daimler AG v. Bauman*,
  571 U.S. 117 (2014)................................................................................... 2
*Ellis v. Diffie*,
  177 F.3d 503 (6th Cir. 1999) ............................................................. 9, 11
*Faulkner Press, L.L.C. v. Class Notes, L.L.C.*,
  756 F. Supp. 2d 1352 (N.D. Fla. 2010).................................................. 16
*Feist Publications, Inc. v. Rural Telephone Service Co.*,
  499 U.S. 340 (1991)................................................................................. 13
*Ford Motor Co. v. Montana Eighth Judicial Dist. Court*,
  592 U.S. 351 (2021)................................................................................... 2
*GC2 Inc. v. Int'l Game Tech.*,
  391 F. Supp. 3d 828 (N.D. Ill. 2019) ..................................................... 17
*Harris v. Lloyds TSB Bank, PLC*,
  281 F. App'x 489 (6th Cir. 2008) ............................................................. 5
*Intera Corp. v. Henderson*,
  428 F.3d 605 (6th Cir. 2005) ............................................................... 4, 7

i

*Joe Solo Prods., Inc. v. Dawson*, Case,
No. 1:09-cv-555, 2009 WL 2232856 (N.D. Ohio July 23, 2009) ............................................ 6
*Jones v. Blige*,
558 F.3d 485 (6th Cir. 2009) ................................................................................................... 13
*Kipp Flores Architects, LLC v. Pradera SFR, LLC*,
SA-21-CV-00673-XR, 2022 WL 1105751 (W.D. Tex. April 13, 2022) ................................. 17
*Kohus v. Mariol*,
328 F.3d 848 (6th Cir. 2003) ................................................................................................... 13
*Neogen Corp. v. Neo Gen Screening, Inc.*,
282 F.3d 883 (6th Cir. 2002) ..................................................................................................... 4
*New Parent World, LLC v. True to Life Productions, Inc.*,
Case No. CV-23-08089-PCT-DGC, 2024 WL 4277865 (D. Ariz. Sept. 24, 2024) ................ 17
*NOCO Company v. Shenzhen Valuelink E-Commerce Co., Ltd.*,
550 F. Supp. 3d 488 (N.D. Ohio 2021) ..................................................................................... 3
*Nottingham-Spirk Design Assocs., Inc. v. Halo Innovations, Inc.*,
603 F. Supp. 3d 561 (N.D. Ohio 2022) ..................................................................................... 1
*Pay(q)r, LLC v. Sibble*,
Case No. 5:15-cv-1038, 2015 WL 9583034 (N.D. Ohio Dec. 31, 2015) .................................. 3
*Peter Pan Fabrics, Inc. v. Martin Weiner Corp.*,
274 F.2d 487 (2d Cir. 1960) .................................................................................................... 14
*Rentmeester v. Nike, Inc.*,
883 F.3d 1111 (9th Cir. 2018) ........................................................................................... 13, 14
*See, Inc. v. Imago Eyewear Pty, Ltd.*,
167 F. App'x 518 (6th Cir. 2006) .............................................................................................. 8
*Stevens v. Corelogic, Inc.*,
899 F.3d 666 (9th Cir. 2018) ................................................................................................... 17
*Sullivan v. LG Chem, Ltd.*,
79 F.4th 651 (6th Cir. 2023) ...................................................................................................... 2
*Weller v. Cromwell Oil Co.*,
504 F.2d 927 (6th Cir. 1974) ..................................................................................................... 1
*Wireless Env't, LLC v. HooToo.com, Inc.*,
Case No. 1:15-cv-1215, 2016 WL 4530617 (N.D. Ohio Aug. 30, 2016) ................................. 4
*Woodland v. Hill*,
136 F.4th 1199 (9th Cir. 2025) ......................................................................................... passim
*World-Wide Volkswagen Corp. v. Woodson*,
444 U.S. 286 (1980) ................................................................................................................... 7
*Zoya Co. v. NIOS, Inc.*,
No. 1:13-cv-00780-DCN, 2013 WL 4511922 ........................................................................... 3

Statutes

17 U.S.C. § 412 ................................................................................................................... v, vi
17 U.S.C. § 501 ...................................................................................................................... 16
17 U.S.C. § 1202 ..................................................................................................................... vi
OH ST § 2307.382 ................................................................................................................. 2, 3

Rules

Fed. R. Civ. P. 4(k)(2) ........................................................................................................ 2
Federal Rule of Civil Procedure 12(b)(2) ........................................................................... 1
Federal Rule of Civil Procedure 12(b)(6) ........................................................................... 1

## BRIEF STATEMENT OF ISSUES TO BE DECIDED

1. Should Plaintiff's First Amended Complaint be dismissed on the basis that this Court lacks personal jurisdiction over Temperley London, and that, in any event, Plaintiff has sufficiently plead facts tending to show this Court has jurisdiction?

2. Does Plaintiff fail to state a claim for direct copyright infringement against Temperley London where Plaintiff alleges that Temperley London infringed the copyrights in the sculpture and photographs by allegedly reproducing photographs, even though (1) Plaintiff's photograph registrations specifically exclude the sculpture, (2) Plaintiff has not adequately described the copyrightable subject matter of either the sculpture or the photographs, (3) Plaintiff has not delineated the subject matter between the works, (4) Plaintiff's narrative lacks supporting factual allegations, (5) Plaintiff instead relies on purely speculative claims about the reproduction of Instagram photographs to then be used to create infringing products, and (6) in any event, Plaintiff fails to plausibly allege that Temperley London had access to the photographs since the claim that the photographs were widely disseminated is wholly unsupported and insufficient as a matter of law?

3. Does Plaintiff fail to state a claim for vicarious or contributory infringement against Temperley London where Plaintiff fails to allege any facts that suggest Temperley London either had knowledge of any allegedly infringing activity of any other Defendant, or materially contributed to the alleged infringement?

4. Does Plaintiff fail to state a cognizable claim under the Digital Millenium Copyright Act (DMCA) where Plaintiff does not allege that its works included proper copyright management information and that Temperley London removed Plaintiff's copyright management information (CMI) or distributed works with Plaintiff's CMI altered or removed?

5. Does Plaintiff fail to state a cognizable claim under the DMCA where Plaintiff (1) does not allege that its works included proper CMI, (2) does not actually allege that the accused products are "copies" subject to the DMCA, (3) does not allege that Temperley London removed Plaintiff's CMI, if any, from Plaintiff's works, (4) does not allege Temperley London distributed Plaintiff's works with Plaintiff's CMI altered or removed, and (5) does not allege that Temperley London had knowledge of any of the above?

6. Is Plaintiff precluded from seeking statutory damages and/or attorneys' fees for alleged copyright infringement when Plaintiff registered its works well beyond the three-month post-publication window under the Copyright Act, 17 U.S.C. § 412?

## SUMMARY OF ARGUMENT

1. Where this Court lacks personal jurisdiction over Temperley London, and Plaintiff has failed to otherwise plead sufficient facts tending to establish jurisdiction over Temperley London, the Court should dismiss Alice Temperley, MBE and Temperley London entities from this suit.

2. Where the plaintiff fails to plausibly allege any facts that a defendant engaged in purported copyright infringement, the plaintiff fails to state a claim for direct copyright infringement?

3. Plaintiff fails to plausibly allege copyright infringement of either the sculpture or photograph given that (1) Plaintiff's photograph registrations specifically exclude the sculpture, (2) Plaintiff has not adequately described the copyrightable subject matter of either the sculpture or the photographs, (3) Plaintiff has not delineated the subject matter between the works, (4) Plaintiff's narrative lacks supporting factual allegations, (5) Plaintiff instead relies on purely speculative claims about the reproduction of Instagram photographs to then be used to create infringing products, (6) the accused products are neither substantially nor strikingly similar to the copyrighted works, and (7) in any event,

Plaintiff fails to plausibly allege that Temperley London had access to the photographs since the claim that the photographs were widely disseminated is based solely on Plaintiff's allegation that the photographs exist on the Internet.

4. Where a plaintiff fails to plausibly allege any facts that a defendant copied or accessed the plaintiff's photographs or sculpture, the plaintiff fails to state a claim for direct copyright infringement.

5. Where the plaintiff fails to allege that a defendant infringed any copyrightable aspect of a photograph, the plaintiff fails to state a cognizable claim for copyright infringement.

6. Where the plaintiff fails to plausibly allege any facts suggesting that an individual defendant had knowledge of any allegedly infringing activity—much less materially contributed to or supervised it—the plaintiff fails to state a claim for vicarious or contributory infringement against the individual defendant.

7. Where the plaintiff fails to allege that its works were published in connection with its CMI, and that the defendant removed the plaintiff's CMI or distributed any of the plaintiff's CMI, the plaintiff fails to plead a cognizable claim under the DMCA, 17 U.S.C. § 1202.

8. A plaintiff is precluded from recovering statutory damages or attorneys' fees pursuant to 17 U.S.C. § 412 where the plaintiff did not register a copyright for its work within three months of the work's initial publication.

## I.     INTRODUCTION

Plaintiff's Opposition (ECF No. 60, "Opp'n")[1] confirms that its defective claims against Alice Temperley, TMLL Ltd., and Temperley Holdings Ltd. (collectively, "Temperley London") should be dismissed for lack of personal jurisdiction and failure to state a claim. Plaintiff's arguments fail to cure speculative, conclusory allegations in the FAC, and no *prima facie* showing has been made for this Court to exercise personal jurisdiction over Temperley London. *Nottingham-Spirk Design Assocs., Inc. v. Halo Innovations, Inc.*, 603 F. Supp. 3d 561, 567 (N.D. Ohio 2022) (finding that the plaintiff failed to meet "its slight burden to make out even a prima facie case that the Ohio long-arm statute reache[d]" the defendant," where "it ha[d] no office in Ohio, own[ed] no real estate in Ohio, and ha[d] no employees in the State"); *Weller v. Cromwell Oil Co.*, 504 F.2d 927, 930 (6th Cir. 1974) (noting "the non-moving party may not rest upon allegations or denials in his pleadings but his response by affidavit or otherwise must set forth specific facts showing that the court has jurisdiction"). Indeed, Temperley London is not at home in Ohio and no long-arm statute reaches Temperley London. Likewise, jurisdiction would not comport with due process because the FAC does not allege facts tending to establish that Ms. Temperley or the Temperley entities have sufficient minimum contacts in Ohio (or the United States), that they purposefully availed themselves of Ohio's privileges by conducting activity in Ohio, or that the exercise of jurisdiction over them would be reasonable in the United States.

Furthermore, Plaintiff's claims for copyright infringement, indirect infringement, DMCA violations, and statutory damages should be dismissed with prejudice. Plaintiff relies on distinguishable case law, misinterprets the DMCA, and distorts the FAC to support a self-serving and logically inconsistent theory of statutory damages. Plaintiff also fails to substantively address

---

[1] Unless otherwise noted, citations are to the ECF document and page number.

1

the core arguments raised in Temperley London's Motion (ECF No. 52, "Mot."). Accordingly, the Court should dismiss the FAC as to Temperley London with prejudice.

## II.    ARGUMENT

### A.    Plaintiff Fails to Establish Personal Jurisdiction over Temperley London

As an initial matter, Plaintiff ignores that none of the Temperley London entities[2] are incorporated, headquartered, or maintain offices in Ohio. *See* Jha Decl. ¶¶ 4-7. Moreover, Alice Temperley is a citizen of the United Kingdom (U.K.) and resides in London. Temperley Decl., ¶¶ 2-3. Thus, as Plaintiff tacitly concedes, general jurisdiction does not apply. *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) (requiring that "corporation's affiliations with the State [to be] so continuous and systematic as to render [it] essentially at home in the forum State").

Likewise, as noted below, specific jurisdiction is inappropriate since (1) Plaintiff's claims do not arise out of or relate to the defendant's contacts with Ohio; (2); Temperley London does not have sufficient minimum contacts with Ohio; and (3) Ohio's exercise of jurisdiction over Temperley London would be unfair and unreasonable. *Sullivan v. LG Chem, Ltd.*, 79 F.4th 651, 670 (6th Cir. 2023) (citing *Ford Motor Co. v. Montana Eighth Judicial Dist. Court*, 592 U.S. 351, 362 (2021) and *AlixPartners, LLP v. Brewington*, 836 F.3d 543, 549 (6th Cir. 2016)); *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1264 (6th Cir. 1996) (Specific jurisdiction is proper only if the defendant has minimum contacts with the forum state, and the suit must not offend traditional notions of fair play and substantial justice).

Moreover, the Ohio Long-Arm Statute (OH ST § 2307.382) and the Federal Long-Arm (Fed. R. Civ. P. 4(k)(2)) do not apply to any of the Temperley London parties. As noted in

---

[2] Only TMLL Ltd., not Temperley Holdings Ltd., is the actual operating and trading company for Temperley London. Jha Decl., ¶ 5. Plaintiff has alleged no good faith basis to sue Temperley Holdings Ltd., much less to establish personal jurisdiction over it.

Temperley London's Motion, the alleged harm to Plaintiff did not occur in the State of Ohio and Temperley London did not direct any alleged tortious conduct **towards Ohio**. Mot., 13-14. Indeed, Plaintiff fails to show that Temperley London's two random sales in the entire State of Ohio over the last twenty-four months "[c]aused [Plaintiff] tortious injury in [Ohio] . . . with the purpose of injuring [Plaintiff], when [it] might reasonably have expected that [Plaintiff] would be injured thereby in [Ohio]." OH ST § 2307.382(A)(6) (2025); Jha Decl., ¶¶ 17-19 (the United States accounts for just sixteen percent (16%) of Temperley London's net sales, with Ohio accounting for less than one percent (1%) of *those* net sales). The FAC lacks plausible allegations to the contrary. Ultimately, neither Plaintiff nor Temperley London is based in Ohio, and Plaintiff has offered no plausible theory that "the effects of [Temperley London's] alleged misconduct are . . . felt in Ohio." *See Zoya Co. v. NIOS, Inc.*, No. 1:13-cv-00780-DCN, 2013 WL 4511922, at *4 (citing *Calder v. Jones*, 465 U.S. 783 (1984)). Similarly, though this is a Federal question suit and Temperley London maintains that it is not subject to personal jurisdiction in any state, the Federal Long-Arm is also inapplicable because the exercise of jurisdiction over Temperley London does not "comport with due process". *NOCO Company v. Shenzhen Valuelink E-Commerce Co., Ltd.*, 550 F. Supp. 3d 488, 494 (N.D. Ohio 2021).

### 1.  The Court Lacks Personal Jurisdiction Over Temperley London

### a.  There is no purposeful availment.

As an initial matter, the FAC does not allege facts to establish that Ms. Temperley has sufficient minimum contacts in Ohio or the United States. *CompuServe*, 89 F.3d at 1263 (noting a defendant must purposefully avail itself of the privilege of conducting activities in the forum, invoking the benefits and protections of its laws). Ms. Temperley has not transacted business in the State of Ohio or tortiously injured Plaintiff in Ohio, and there are certainly no facts from the FAC demonstrating that she did. OH ST § 2307.382; *Pay(q)r, LLC v. Sibble*, Case No. 5:15-cv-

1038, 2015 WL 9583034, at \*5 (N.D. Ohio Dec. 31, 2015). Plaintiff's argument that Ms. Temperley's "advertising" or "posting on social media" suffices is contrary to law, given that Plaintiff does not identify any advertising or posts that specifically targeted Ohio or the United States. *See also* Jha Decl., ¶ 20 ("All Temperley London agency marketing and promotional activities originate in the UK, and digital marketing is managed by platforms such as Meta and Google, wherein Temperley London advertisements are distributed via their black-box algorithms."). The Sixth Circuit requires evidence of targeted conduct or purposeful availment, not passive website operation or generalized digital marketing. *See Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 890 (6th Cir. 2002); *Wireless Env't, LLC v. HooToo.com, Inc.*, Case No. 1:15-cv-1215, 2016 WL 4530617, at \*4 (N.D. Ohio Aug. 30, 2016). Plaintiff fails to identify any plausible allegation that Ms. Temperley targeted Ohio or specifically directed her conduct to the State. Moreover, Plaintiff does not plausibly allege that Ms. Temperley directed the allegedly infringing activities to the United States more broadly. *CompuServe*, 89 F.3d at 1263. At best, Ms. Temperley visited just two states in the United States on a brief promotional tour. Temperley Decl., ¶ 20. Notably, Plaintiff has not sued Temperley London in those states.[3] In addition, Ms. Temperley has never been a citizen or resident of the United States, has never set foot in Ohio, and does not own any property, assets, bank accounts, personal or business interests, contractual obligations, residential properties, or commercial properties in Ohio or the United States. Temperley Decl., ¶¶ 2-7; *Intera Corp. v. Henderson*, 428 F.3d 605, 616 (6th Cir. 2005) ("The purposeful availment requirement serves to protect a defendant from being haled into a jurisdiction by virtue of 'random,' 'fortuitous,' or 'attenuated' contacts"); *Calphalon Corp. v. Rowlette*, 228

---

[3] Even were Ms. Temperley's brief visits to the United States suffice as sufficient minimum contacts (which they do not), jurisdiction still does not comport with due process, as explained below.

4

F.3d 718 (6th Cir. 2000); *CompuServe,* 89 F.3d at 1263 (the contacts must create a "substantial connection" with the forum state); *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474-75 (1985) (the contacts in the forum must be substantial enough that a defendant "should reasonably anticipate being haled into court there"). Plaintiff ignores these facts entirely.[4] Ultimately, Ms. Temperley's contacts with Ohio are non-existent and her contacts with the United States are so attenuated that she has not purposefully availed herself of either forum, foreclosing the exercise of jurisdiction over Ms. Temperley. Moreover, Plaintiff fails to meaningfully address the significant fact that the Temperley entities' U.S. sales amount to less than one percent (1%) in Ohio and that Temperley London is aware of only two documented sales within the State of Ohio over the past twenty-four months. Jha Decl., ¶¶ 17, 19. These sales are not only "random," "fortuitous," or "attenuated"; they are essentially nonexistent and make clear that this is a case "in which the defendant acted by placing a product in the stream of commerce, and the stream eventually swept defendant's products into the forum State." *Asahi Metal Indus. Co. v. Superior Court of Cal.*, 480 U.S. 102, 110 (1987); *see also Harris v. Lloyds TSB Bank, PLC*, 281 F. App'x 489, 493 (6th Cir. 2008) ("merely fortuitous" that less than one percent of a defendant-bank's account holders had residential forum addresses where it marketed and sold accounts in the United Kingdom).

Ultimately, Plaintiff does not allege that Temperley London (1) designed the accused products (or any products) for the Ohio or United States markets, (2) retained control over its partner retailers' importation and distribution process, or (3) structured its relationship with

---

[4] Plaintiff has not alleged that Ms. Temperley acted outside the scope of her duties as Temperley London's Creative Director such that Ms. Temperley would reasonably anticipate being sued in Ohio or the United States. *See* Temperley Decl., ¶¶12-14 (the design team followed "the typical Temperley London design process . . . for the collections at issue in this case"). There appears to be no good faith basis for Plaintiff to have named Ms. Temperley in this lawsuit. The tenor of the allegations against Ms. Temperley instead appear to be a litigation-driven tactic to harass a high-profile celebrity designer of Ms. Temperley's caliber. *See* FAC, ¶ 5. Nothing more.

retailers such that Temperley London retains control over its partner retailers' sales of the products. Moreover, the Temperley London brand's marketing and promotional activities arose in the U.K., the brand "does not collect or analyze social media and marketing engagement data for insights on United States customers", "does not strategically time posts for United States time-zones and United States engagement", and does not "own[] or lease[] any real property [or asset] in the United States". Jha Decl., ¶¶ 20, 21, 25. The Temperley London entities therefore lack sufficient minimum contacts with Ohio and the United States.

> **b.** **The claims do not arise from Temperley London's non-existent activities in Ohio and insubstantial activities in the U.S.**

Specific jurisdiction also does not apply to Ms. Temperley because her insubstantial activities in the United States are untethered to Plaintiff's claims. Ms. Temperley's promotional efforts were focused on the U.K., where Temperley London's sales and storefronts are concentrated. Temperley Decl., ¶ 20; Jha Decl., ¶¶ 7, 17. Ms. Temperley's design work as Creative Director of Temperley London occurs in the U.K., and Ms. Temperley does not control where, when, and how TMLL Ltd. sells its products. Plaintiff falls back on the argument that Ms. Temperley promoted the products on her social media, and that its claims arise from those posts. Yet as already discussed above, these posts are neither Ohio nor U.S. "contacts" to begin with. Likewise, as noted above, Plaintiff's indirect assertion that its claims against the Temperley entities arise out of their Ohio contacts because Temperley products from just two sales might have reached consumers in Ohio is insufficient. *See Joe Solo Prods., Inc. v. Dawson*, Case No. 1:09-cv-555, 2009 WL 2232856, at *5 (N.D. Ohio July 23, 2009) (requiring more than passive availment of Ohio's market). Accordingly, Plaintiff's claims against Ms. Temperley cannot be said to arise from Ms. Temperley's non-existent contacts with Ohio or her *de minimis* contacts with the United States. Likewise, as noted above, Plaintiff's claims against the Temperley London entities do not

arise from their passive, if not virtually non-existent contacts with Ohio, as well as their insubstantial contacts with the United States.

### c.    Exercising Jurisdiction Would Be Unreasonable

Even were minimum contacts to exist (which they do not), the exercise of jurisdiction would be unreasonable. *See Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.2d 1558, 1568 (Fed. Cir. 1994). Here, both Plaintiff's and the State of Ohio's "interest in adjudicating the dispute in the forum are so attenuated that they are clearly outweighed by the burden of subjecting [Temperley London] to litigation within [Ohio]." *Id.* (citing *Burger King*, 471 U.S. at 477). Likewise, Plaintiff does not explain how jurisdiction pursuant to Rule 4(k)(2) would be fair or reasonable when the sales and conduct at issue are either insubstantial, virtually non-existent, or not specifically directed to the United States.

The Temperley London Defendants are all based in either the U.K. or the Isle of Man; the burden of litigating in Ohio and United States is substantial, and at minimum, Ohio's interest is minimal given the lack of operative facts or injury in Ohio. *See Burger King*, 471 U.S. at 477; *Intera*, 428 F.3d at 618 (noting the factors courts consider in determining whether the exercise of jurisdiction is reasonable). Plaintiff nevertheless asserts that "Temperley London does not allege any specific facts in support of this claim and thus cannot meet its burden." Opp'n, 22.

Plaintiff is simply ignoring facts that do not suit its narrative, and is relying on self-serving conjecture, suggesting that "it does not appear that it would be overly burdensome or unreasonable for Alice Temperley or Temperley London's board members, executives, and employees to travel to this District to appear in this lawsuit." Opp'n, 22. Yet Temperley London was crystal clear in its Motion. "[T]he Temperley London entities, their board members, executives, and employees are all based **on other continents thousands of miles away**[.]" Mot., 16 (emphasis added); Jha Decl., ¶¶ 2-7; *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980) (the burden

on the defendant to answer a suit in the forum is of foremost importance). Plaintiff cites no authority to support its conclusory argument that Ms. Temperley's minimal travel to the United States in the past renders it reasonable to subject the Temperley London witnesses to being haled into court for a copyright litigation thousands of miles away. *See, Inc. v. Imago Eyewear Pty, Ltd.*, 167 F. App'x 518, 523 (6th Cir. 2006) (holding that an Australian defendant's trade show attendance was insufficient for due process purposes). Moreover, in its Opposition, Plaintiff does not even make a passing attempt at discussing Ohio's interest in this case, other than to casually proclaim that it has an interest in stopping copyright infringement writ large. This is likely because Ohio has no interest in this case, given that only two random sales of Temperley products have occurred in Ohio over the past 24 months. Considering the burden imposed on Ms. Temperley and the Temperley London entities, and the absence of any salient interest for Ohio, the exercise of jurisdiction would be unreasonable.

**B.      Plaintiff's Copyright Infringement Claims Should Be Dismissed**

Plaintiff appears to believe that its copyright infringement claims can survive a Rule 12(b)(6) motion simply by proclaiming that the accused products are derivative works of the sculpture and photographs. That is the essence of Plaintiff's case boiled down to its core. Plaintiff does nothing more than insert the party names and product titles into verbatim recitations of the legal elements of copyright infringement. Those are *legal* conclusions, not *factual* allegations, and such template-style allegations cannot move forward. Temperley London's Motion noted as much, yet Plaintiff doubled down in its Opposition and failed to address these glaring deficiencies. *See, e.g.*, Opp'n, 27 (generically alleging "that ***Alice Temperley and Temperley London*** infringed upon Plaintiff's exclusive rights as a copyright holder through their actions in producing, displaying, selling, and distributing the ***apparel, interiors, and advertising works***, which are unauthorized derivatives of Plaintiff's Artwork") (emphasis added). When Plaintiff does refer to allegedly

copyrightable elements in its Opposition, it becomes clear that Plaintiff is attempting to impermissibly expand the scope of its copyright relative to the FAC, and assert infringement based solely on a few photographs posted to a little-known Instagram account nearly six years ago. Indeed, a simple side-by-side comparison reveals material differences between the copyrightable elements of the works and accused products. Ultimately, Plaintiff's copyright infringement claims should be dismissed with prejudice.

### 1.     Plaintiff fails to plausibly allege access.

At the eleventh hour, Plaintiff attempts to assert that it has pleaded "direct evidence of access[.]" Opp'n, 29-30. Plaintiff has done no such thing. Indeed, the Court should ignore Plaintiff's argument that access is shown "and infringement is present" based on "numerous 'common errors' between Plaintiff's works and Temperley London's works, including the precise way that the individual fronds are laid upon each other in the Artwork as depicted in the Photographs as well as in the Unauthorized Farrah Apparel Products." *Id.* Plaintiff does not cite to the FAC because this allegation does not appear anywhere in the FAC. Plaintiff creates this allegation out of whole cloth solely for the purposes of its Opposition. Plaintiff's reliance on attorney argument—as opposed to plausible factual allegations—is on further display when Plaintiff attempts to argue that "access" is shown based on circumstantial evidence.

### a.     Plaintiff's "Wide Dissemination" and "Chain of Events" Allegations Are Unsupported and Flawed

"Access may not be inferred through mere speculation or conjecture." *Ellis v. Diffie*, 177 F.3d 503, 506 (6th Cir. 1999). Yet Plaintiff's "wide dissemination" and "chain of events" theories of "access" are just that–speculation and conjecture. Opp'n, 30 (proclaiming that "Alice Temperley and Temperley London had access to the Artwork, through accessing Plaintiff's public and widely disseminated Instagram account, @wifenyc, or through accessing/receiving copies of

Plaintiff's Photographs from the other Defendants in this case, or a third party[.]").

First, in its Opposition, Plaintiff tellingly ignores a recent case that is directly at odds with Plaintiff's position. *See Woodland v. Hill*, 136 F.4th 1199, 1205 (9th Cir. 2025) ("The mere fact that Woodland posted his photos on his Instagram page—without more—falls short of plausibly alleging that Hill had 'access' to and saw Woodland's photographs"); *Art Attacks Ink, LLC v. MGA Ent. Inc.*, 581 F.3d 1138, 1143-45 (9th Cir. 2009). Instead of pleading any relevant information about Instagram's algorithm and policies or Plaintiff's own Instagram account, including interactions on Instagram that would tend to make it plausible that its photographs of the sculpture were widely disseminated, Plaintiff claims that its Instagram account was widely disseminated– nothing more. Opp'n, 30[5]; *Woodland*, 136 F.4th at 1209 (noting "for plaintiffs to show that defendants had access to their materials" on "social media and other digital-sharing platforms" plaintiffs must "***show that the defendants had a reasonable chance of seeing their work under that platform's algorithm or content-sharing policy***"). Plaintiff claims without authority these details "are merely some of the many ways of show[sic] accessing[,]" but then does not identify any alternative means for assessing whether its photographs were widely disseminated.

As in *Woodland*, here, Plaintiff "has not sufficiently pleaded that [Temperley London] had access to [the] Instagram photos, given that [it] does not plausibly allege that [Temperley London] ***followed, liked, or otherwise interacted with posts or accounts connected to or similar to*** [Temperley London]." *Id.* at 1209 (emphasis added). Indeed, Plaintiff pleads no facts about the number of followers at the relevant time, the reach of its posts, or any interaction between Temperley London and Plaintiff's account. Mere availability on Instagram is insufficient. *Id.* ("It

---

[5] Instead of identifying or analyzing relevant information about its Instagram account that would coincide with the years in which infringement is alleged to have first occurred, Plaintiff copies its conclusory allegations from the FAC and pastes them into the Opposition.

is not enough to simply allege that [Temperley London] is an active user of Instagram and thus had a reasonable possibility of viewing [Plaintiff's] photos on Instagram, a platform that has over a billion users and many more posts."). Plaintiff's threadbare arguments only further demonstrate that it is premising its "wide dissemination" claim on the misguided theory that merely posting content online establishes "access". *Id.* at 1208 ("*availability* should not be confused with *access*").

Plaintiff's "chain of events" theory suffers from many of the same defects. Plaintiff has not provided any factual support for the implausible allegation that copies of the sculpture were exchanged between Temperley London and the other Defendants. *Id.* at 1209 (remarking that "[p]erhaps recognizing" the weakness of its theory, "Woodland offers a chain of events to bolster his claim that Hill had a reasonable possibility of viewing Woodland's photos on Instagram"). Moreover, although the argument would be insufficient on its own, Plaintiff does not even attempt to allege that Temperley London and Plaintiff had such similar profile content that Plaintiff's photographs could conceivably be promoted to users like Temperley London. *See id.* at 1209 ("Even if we took judicial notice and accepted the information as true, Instagram's purported policy does not support Woodland's theory [since] [n]one of the documents support the contention that similar profile content alone would cause Instagram to promote a profile's posts to users."). Plaintiff's access claims cannot survive on speculation, and without access, Plaintiff "has not adequately alleged copying." *Id.*; *Ellis*, 177 F.3d at 506.

### 2. The Works and Products Are Neither Strikingly Nor Substantially Similar.

Given the apparent weakness of its "access" claims, Plaintiff falls back on an argument that it need not show "access" at all, asserting that the accused products and advertising works are strikingly or substantially similar to the copyrighted works. As it has done in other sections of its Opposition brief, Plaintiff fills pages of briefing space but conveys nothing of any substance at all.

*See, e.g.*, Opp'n, 26 (generically recited that "the Unauthorized Farrah Apparel Products, Unauthorized Palmae Apparel Products, Unauthorized Farrah Interiors Products, and Unauthorized Advertising Works are strikingly similar, or at a minimum, substantially similar to the protectable elements of the Photographs and the underlying Artwork."). Plaintiff includes long string citations to the FAC but does not identify any plausible facts from these conclusory allegations, nor does it dedicate a single line of its Opposition towards analyzing the alleged "striking" or substantial similarities between the accused products and copyrighted works.

Tellingly, instead of specifically responding to Temperley London's detailed discussion of the meaningful ***differences*** between the works and products, Plaintiff cites a host of fact-specific cases, each of which stands for the unremarkable position that *insubstantial* differences do not preclude copyright infringement. In doing so, Plaintiff ignores Temperley London's comparison, which demonstrates that the differences are both notable and substantial, and Plaintiff proceeds to mischaracterize Temperley London's argument. Contrary to Plaintiff's red herring suggestion, Temperley London is not taking the position that copyright infringement requires *pirated* copying.

Rather, because "striking" and substantial similarity is a fact-specific inquiry, Temperley London is simply noting that it is incumbent upon Plaintiff to adequately plead sufficient factual detail, and for Plaintiff to support its pleadings with appropriate analysis and argument in its Opposition.[6] Long case-law renditions about derivative works or pirated copying misses the forest for the trees, and demonstrates that Plaintiff prefers to debate unchallenged legal concepts rather than specifically address the merits and inadequacy of its claims.

This is unsurprising for several reasons. First, Plaintiff's "striking similarity" argument

---

[6] The Court is well positioned to find a lack of striking or substantial similarity on a Motion to Dismiss. *See Woodland*, 136 F.4th at 1210-1217.

falls flat; the FAC's own side-by-side images show only generic palm motifs and do not demonstrate the kind of overwhelming similarity that would preclude independent creation. *Jones v. Blige*, 558 F.3d 485, 493 (6th Cir. 2009). Likewise, the FAC's shifting and vague descriptions of the "protectable elements" of the sculpture and photographs—"angles," "lighting," "color schemes"—make it virtually impossible to find any substantial similarity. *See Kohus v. Mariol*, 328 F.3d 848, 855 (6th Cir. 2003). Indeed, Plaintiff's asserted copyrightable elements are likely unprotected in the first instance:

> [T]he individual elements in photographs—the poses, lighting, costumes, and makeup—are not themselves protected from infringement. Rather, we held in *Rentmeester* that when viewed in isolation, these objective elements—even "highly original elements"—are unprotected. [*Rentmeester v. Nike, Inc*., 883 F.3d 1111, 1119 (9th Cir. 2018)]. Rather, "[w]hat *is* protected by copyright is the photographer's selection and arrangement of the photo's otherwise unprotected elements. If sufficiently original, the combination of subject matter, pose, camera angle, etc., receives protection, not any of the individual elements standing alone." *Id.* (emphasis in original). Thus, "[a] second photographer is free to borrow any of the individual elements featured in a copyrighted photograph, 'so long as the competing work does not feature **the same selection and arrangement**' of those elements." *Id.* at 1120 (quoting [*Feist Publications, Inc. v. Rural Telephone Service Co*., 499 U.S. 340, 349 (1991)]).

*Woodland*, 136 F.4th at 1210-11 (noting that "the result in *Rentmeester* is instructive") (emphasis added). To the extent there are any protectable elements, Temperley London's products and advertising differ from Plaintiff's works "in more than just minor details", specifically, the substantial differences in color, arrangement, and design. *See id.* at 1211.

Indeed, that these are the details that matter (especially when dealing with an unoriginal motif) was recently highlighted by the Ninth Circuit in Woodland:

> None of Woodland's photos depicting a subject draped in chains—"Unknown Soulja," "Bound Not Broken," and "Juneteenth" (top row)—share substantial similarities with Hill's photo of himself wrapped in chains. The idea in each of the photos is the same—the provocative image of a Black man in chains. But that idea is not protected—***indeed, it is a common motif in many pieces of art. Only the expression through the selection and arrangement of objective elements receives copyright protection.***

*Woodland*, 136 F.4th at 1214.

Here, as in *Woodland* and like *Rentmeester*'s "differences in the positions of [Michael] Jordan's limbs", the positions, colors, and arrangement of the palm motifs here are different. *Id.* at 1211 (citing *Rentmeester*, 883 F.3d at 1121-22). Likewise, "the backgrounds and foregrounds" of the advertising and products, "the presence or lack of" shadows in the advertising and products, the arrangement and diversity of colors and position of individual leaves, and the muted placement of a ubiquitous checkered pattern, all suggest that the advertising and products are "as a matter of law not substantially similar." *Id.* (quoting *Rentmeester*, 883 F.3d at 1121). Moreover, as in *Woodland*, here "[t]he objective elements in the [copyrighted works]—the [] poses, colors, lighting, backgrounds, etc.—are different, and so the selection and arrangement of these elements also widely differ." *Woodland*, 136 F.4th at 1212. Though there is no "well-defined standard for assessing when similarity in selection and arrangement becomes 'substantial,'" the "selection and arrangement of elements must be similar enough that 'the ordinary observer, unless he set out to detect the disparities, would be disposed to overlook them.'" *Id.*; *see also Peter Pan Fabrics, Inc. v. Martin Weiner Corp.*, 274 F.2d 487, 489 (2d Cir. 1960) (Hand, J.). The selection and arrangement of the elements (even the allegedly protectable elements) differ between the products, advertising, and copyrighted works. Accordingly, Plaintiff has not (1) adequately pleaded "access" or discharged the "access" requirement by adequately pleading "striking" similarity, and (2) adequately pleaded substantial similarity. Plaintiff's copyright infringement claims should therefore be dismissed with prejudice.

### C.   Plaintiff's Indirect Infringement Claims Should Be Dismissed

Plaintiff's "vicarious" and "contributory" infringement theories are unsupported. Plaintiff asserts that "Alice Temperley knowingly induced, caused, participated in, aided and abetted, and profited from the infringing acts of Temperley London as she was actively involved in the day-to-

day operations of designing the Temperley London collection." Opp'n, 32. Plaintiff also alleges that Ms. Temperley was involved in the creation of the interiors collection and promoted the allegedly infringing products as part of her role with Temperley London. Plaintiff, however, does not address how these acts (when accepted as true) could be *contributory* acts of infringement, given that Ms. Temperley's role and work on behalf of the Temperley London entities is indistinguishable from the direct acts of the entities themselves. In other words, Plaintiff cannot recast a *single* alleged act of direct infringement on the part of the Temperley London entities as *two* acts of alleged infringement: one direct (Temperley entities) and one indirect (Alice Temperley). Ms. Temperley's declaration notes that she is "the creative director" of Temperley London and manages the "design team[.]" Temperley Decl., ¶¶ 12-13. Plaintiff cites no authority in support of its proposition that Ms. Temperley, acting within the scope of her duties for the Temperley London entities, is contributorily liable for any alleged infringement.

Similarly, Plaintiff reiterates its conclusory allegations, and contends that there was "a collaborative nature between the two brands at issue, i.e. Temperley London and Romo, such that all of the Defendants had collective access to the Artwork as depicted in the Photographs, and had knowledge of, directed, induced, and participated in the infringing activities taken place by the other Defendants as set forth in the FAC." Opp'n, 33. This assertion constitutes a legal conclusion devoid of factual support, precisely the type disapproved in *Twombly* and *Iqbal*. Essentially, Plaintiff attempts to reframe an arms-length commercial relationship as a coordinated effort to commit copyright infringement. Yet, Plaintiff fails to analyze or present any factual basis to justify this narrative. Even assuming, with respect to the joint interiors collection, that the Temperley London entities could contribute to the Romo entities' alleged infringement, Plaintiff overlooks that contributory infringement requires the secondary party to know or have reason to know of the

infringement. *Arista Recs., LLC v. Doe 3*, 604 F.3d 110, 118 (2d Cir. 2010); *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1020 (9th Cir. 2001). Plaintiff does not plead facts even remotely suggesting knowledge and instead proclaims that Temperley London simply knew of the alleged infringement. This is insufficient. *See Bridgeport Music, Inc. v. Rhyme Syndicate Music*, 376 F.3d 615, 621 (6th Cir. 2004).

Similarly, Plaintiff disregards the requirement that vicarious infringement must be supported by facts showing that Temperley London had the right and ability to supervise the infringing conduct of "the other Defendants," including Romo UK. Plaintiff conflates Ms. Temperley's role as Creative Director with that of a vicarious infringer. Ms. Temperley has "no access or control over any Temperley London (or Romo) websites or social media pages" and is simply performing her duties within the brand. Temperley Decl., ¶ 17. Moreover, Plaintiff's allegation that Temperley Holdings Ltd. is vicariously liable for the alleged infringement makes no sense, given that Temperley London's CEO, Sarita Jha, stated that "TMLL Ltd. is responsible for all business operations of the Temperley London brand[.]" Jha Decl., ¶ 5. Plaintiff's indirect infringement claims should be dismissed.

### D. Plaintiff Continues to Misinterpret the DMCA

Plaintiff does not meaningfully address the deficiencies in its DMCA claims. At bottom, Plaintiff's DMCA claim does not involve advertising and products that Plaintiff created, manufactured, or photographed, meaning no CMI could have been removed from Plaintiff's original work. Plaintiff continues to improperly conflate copyright infringement under 17 U.S.C. § 501 with DMCA violations under § 1202(a)-(b), despite the clear legal distinctions between the two. As articulated in *Faulkner Press, L.L.C. v. Class Notes, L.L.C.*, 756 F. Supp. 2d 1352, 1359 (N.D. Fla. 2010), CMI must be removed from the plaintiff's own work—not from a different product that allegedly incorporates elements of it. The cases Plaintiff cites, including *ADR Int'l*

*Ltd. v. Inst. for Supply Mgmt.*, 667 F. Supp. 3d 411, 428 (S.D. Tex. 2023), and *GC2 Inc. v. Int'l Game Tech.*, 391 F. Supp. 3d 828, 843-44 (N.D. Ill. 2019), involved direct copying of entire works with CMI removed or replaced. That is not the case here, where Plaintiff merely alleges that elements of its sculpture or photographs were incorporated into unrelated product designs. Plaintiff's reliance on *New Parent World, LLC v. True to Life Productions, Inc.*, Case No. CV-23-08089-PCT-DGC, 2024 WL 4277865 (D. Ariz. Sept. 24, 2024), is similarly misplaced, as that case involved a nearly identical copy of the work (omitting only a single sentence), rather than the creation of a new product containing, at most, unprotectable elements. Furthermore, as noted in *Kipp Flores Architects, LLC v. Pradera SFR, LLC*, SA-21-CV-00673-XR, 2022 WL 1105751, at *3 (W.D. Tex. April 13, 2022), "CMI cannot be 'removed' from a new work that never included" Plaintiff's CMI in the first place. Plaintiff also fails to plead the required scienter, as courts require a showing of intent or a "modus operandi" to support a DMCA violation. In *Stevens v. Corelogic, Inc.*, 899 F.3d 666, 674 (9th Cir. 2018), the court emphasized that a plaintiff must demonstrate a "past pattern of conduct or modus operandi" to establish the necessary mental state under the DMCA, a statute "requiring knowledge that a future action 'will' occur." The FAC contains no factual allegations that plausibly support Plaintiff's DMCA claims.

### E. Plaintiff Is Not Entitled to Statutory Damages or Attorney's Fees

Plaintiff has effectively undermined its own FAC through the arguments presented in its Opposition. As an initial matter, Plaintiff tacitly concedes in its Opposition that it is not entitled to statutory damages or attorney's fees for any of the apparel infringements. Accordingly, Plaintiff is disputing only the propriety of statutory damages with respect to the interiors collection.

In the FAC, Plaintiff asserts that it first became aware of the alleged infringement involving the Farrah Kimono in February 2023. FAC, ¶ 7. Plaintiff further alleges that all Defendants, including Temperley London and Romo, jointly "creat[ed] four (4) products as part of their

Temperley London x ROMO 'A World Less Ordinary' interiors collection[.]" *Id.* at ¶ 29; *see also id.* at ¶ 26 ("Temperley London and Romo's 'Farrah' Interiors Infringements"). According to Plaintiff, the interiors collection was developed following "the apparent success of the Temperley London Spring Summer 2022 apparel collection," which Plaintiff claims to have discovered in February 2023. *Id.*, ¶ 28. Plaintiff emphasizes that both the 2022 apparel and 2023 interiors collections share the same "Farrah" product names and fabric designs, and that all Defendants market the interiors products. *Id.*, ¶ 30. Plaintiff unequivocally alleges that all Defendants "***collectively*** copied the Artwork as depicted in the Photographs" and that "[a]ll Defendants had an active role in the design process of the [interiors collection]." *Id.* at ¶ 69 (emphasis added).

Yet, in a striking reversal, Plaintiff's Opposition disclaims these very allegations in an attempt to salvage its time-barred claim for statutory damages. Plaintiff now contends that "the launch of the" 2022 apparel collection "does not constitute the 'first act' in a series of acts constituting continuing infringement as it relates to the infringing Romo interiors products[.]" Opp'n, 37–38. More troubling and in complete contrast to its prior positions, Plaintiff asserts that "the apparel infringements by Alice Temperley and Temperley London are distinct from their subsequent infringements concerning the interiors collection and are not '***of the same kind***' as is required to be considered a continuing infringement[,]" and characterizes the apparel products as "wholly separate from the interiors products". Plaintiff ignores the fact that it is accusing Temperley London of being the common infringer for both the apparel and interiors collections. Moreover, a 'first act' cannot happen twice. Indeed, even assuming the truth in Plaintiff's allegations, it would defy logic that Plaintiff *first* copied the sculpture and photographs for the 2022 apparel collection, before once again, first copying the sculpture and photographs for the interiors collection. Ultimately, Plaintiff further weakens its own theories of personal jurisdiction

18

and indirect infringement by arguing that the allegedly infringing conduct of the Defendants is entirely unrelated. *Id.* at 37-38. This strategic pivot is made solely to support Plaintiff's new claim that "Temperley London's infringements . . . began in March 2023." *Id.* at 37. Plaintiff's repudiation of its own pleadings amounts to pure litigation gamesmanship and should be rejected. The claim for statutory damages is time-barred and should be dismissed.

## III.     CONCLUSION

For the foregoing reasons and those set forth in the opening memorandum, Alice Temperley and the Temperley London entities respectfully request that the Court dismiss all claims against them with prejudice for lack of personal jurisdiction and failure to state a claim.

Dated: July 15, 2025

Respectfully submitted,

By: */s/ Jeffer Ali*

Meredith K. Collier
Todd R. Tucker
**CALFEE, HALTER & GRISWOLD LLP**
1405 East Sixth Street
Cleveland, OH 44114
Telephone: 216.622.8200
Facsimile: 216.241.0816
mcollier@calfee.com
ttucker@calfee.com

Jeffer Ali*
**HUSCH BLACKWELL LLP**
80 South Eighth Street, Suite 4800
Minneapolis, Minnesota 55402
Telephone: 612.852.2700
Facsimile: 612.852.2701
jeff.ali@huschblackwell.com

Sharif Ahmed*
**HUSCH BLACKWELL LLP**
2415 East Camelback Road, Suite 500
Phoenix, AZ 85016
Telephone: 480.824.7890

Facsimile: 480-824-7905
sharif.ahmed@huschblackwell.com

*Admitted pro hac vice*

**Attorneys for Defendants Alice Temperley,
TMLL Ltd., and Temperley Holdings Ltd.**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that today, this 15th day of July 2025, I caused the foregoing document to be filed electronically with the Clerk of Court, and therefore served upon all counsel of record.

*/s/ Jeffer Ali*

HB: 4914-8711-4833