### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF OHIO

Sophia Parker Studios, Inc.,             Case No. 1:24cv2086

         Plaintiff,

         -vs-

                           JUDGE PAMELA A. BARKER

Alice Temperley, et al.,

         Defendants.               MEMORANDUM OPINION & ORDER

Currently pending before the Court is Defendant Romo, Inc.'s Motion to Dismiss First Amended Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(6) filed on March 27, 2025 ("Romo, Inc.'s Motion"). (Doc. No. 26.) Plaintiff Sophia Parker Studios, Inc. ("Plaintiff") filed an Opposition to Romo, Inc.'s Motion on May 2, 2025, to which Romo, Inc. replied on May 16, 2025. (Doc. Nos. 30, 49.) Also pending before the Court is Defendants The Romo Group Ltd., Romo Ltd., and Romo (Holdings) Ltd.'s (collectively, "Romo UK", and together with Romo, Inc., the "Romo Defendants") Motion to Dismiss First Amended Complaint Pursuant to Federal Rules of Civil Procedure 12(b)(2) and (6) filed on May 27, 2025 ("Romo UK's Motion"). (Doc. No. 51.) Plaintiff filed an Opposition to Romo UK's Motion on July 1, 2025, to which Romo UK replied on July 15, 2025. (Doc. Nos. 61, 62.) Finally pending before the Court is Defendants Alice Temperley ("Ms. Temperley"), TMLL Ltd., and Temperley Holdings, Ltd.'s (collectively, "the Temperley London entities", and together with Ms. Temperley, the "Temperley London Defendants") Motion to Dismiss First Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(2) and (6) filed on May 27, 2025 (the "Temperley London Defendants' Motion"). (Doc. No. 52.) Plaintiff filed an

Opposition to the Temperley London Defendants' Motion on July 1, 2025, to which the Temperley London Defendants replied on July 15, 2025.  (Doc. Nos. 60, 63.)

For the following reasons, Romo, Inc.'s Motion (Doc. No. 26) is DENIED; Romo UK's Motion (Doc. No. 51) is DENIED; and the Temperley London Defendants' Motion (Doc. No. 52) is GRANTED in part and DENIED in part.  Ms. Temperley is dismissed from this action for lack of personal jurisdiction without prejudice.  Plaintiff's claim for statutory damages and fees against the Temperley London entities is dismissed.  All other parties and claims remain pending.

I.  **Factual Allegations**

A.  **Plaintiff obtains copyrights in certain artwork and photographs thereof**

This is a copyright case.  Plaintiff created the copyright-protected Artwork entitled "Memphis Chainsaw" in 2019 (the "Artwork").  (Doc. No. 22 at ¶ 58.)  According to Plaintiff, the Artwork is a "highly intricate, colorful, and vibrant sculptural work that was hand shaped and hand painted by Plaintiff to create its striking and visually distinct look."  (*Id.* at ¶ 3.)  The Artwork is depicted below:



(*Id.*)  The Artwork is an original work of authorship created by Plaintiff and "is registered with the

U.S. Copyright Office (U.S. Copyright Office Registration No. VA 2-342-734)." (*Id.* at ¶ 62.)

Plaintiff also claims a copyright in photos of the Artwork. After creating the Artwork, Plaintiff took photos of it in her art studio. (*Id.* at ¶ 63, Ex. A.) "Plaintiff then posted four (4) of those photographs onto her well-known and widely disseminated Instagram account, @wifenyc, between September 2019 and April 2020" (collectively, the "Photographs"). (*Id.* at ¶ 64.) The Photographs are original works of authorship created by Plaintiff and "are registered works of art with the U.S. Copyright Office (U.S. Copyright Office Registration No. VA 2-352-960 and U.S. Copyright Office Registration No. VA 2- 420-961)." (*Id.* at ¶ 65, Ex. B.) Plaintiff claims that the Photographs "depict different angles and lighting of the Artwork." (*Id.* at ¶ 4.)

**B.      Ms. Temperley and the Temperley London entities allegedly infringe upon Plaintiff's copyrights**

**1.      The Unauthorized Farrah Apparel Products**

In or around February or March 2022, the Temperley London Defendants began selling and distributing a Temperley London Spring Summer 2022 luxury fashion collection that included three (3) apparel items known as the "Farrah" apparel products (the "Unauthorized Farrah Apparel Products"). (*Id.* at ¶ 8.) Plaintiff did not discover the Unauthorized Farrah Apparel products until "February 2023" when it "discovered an advertisement in a window of a store in New York City that showed a model wearing a garment created by the Temperley London Defendants that included a reproduction of Plaintiff's Artwork on the front and sides of it." (*Id.* at ¶ 7.)

Plaintiff alleges that the Unauthorized Farrah Apparel Products "include identical reproductions of Plaintiff's Artwork" and "are strikingly similar or at least substantially similar to Plaintiff's copyright-protected Artwork and the Photographs as they include almost exact replicas of Plaintiff's Artwork with only some minor color and pattern adjustments made to them." (*Id.* at ¶¶ 8,

3

11.)   Plaintiff specifically alleges that:

> The embroidered patterned artworks found on the fronts, sides, and backs of the Unauthorized Farrah Apparel Products include the copyright-protected elements of Plaintiff's Artwork, including, but not limited to, the original hook-shaped curved form of the Dioon Edule Palm hand shaped by Plaintiff, the three (3) black and white checkerboard patterned palm fronds, the signature and distinctive curved blue stem of the plant in a cool medium blue paint tone, the intricate geometric paint patterns and color-tipped palm fronds, the particular color blocking expressions and color schemes chosen by Plaintiff, and the entire unique shape of the heavily-altered curved plant as depicted in the Artwork. Notably, the repeated embroidered patterned artworks found in the Unauthorized Farrah Apparel Products also contain the particular light blue- and light pink-painted palm fronds located in the center of the curved hook part of Plaintiff's sculpture. Plaintiff's Artwork and the Unauthorized Farrah Apparel Products contain identical design elements, and those elements are arranged in virtually the same way in relation to each other in both the Artwork and the embroidered patterned artworks found in the Unauthorized Farrah Apparel Products. Defendants replicated the entire copyright-protected selection, coordination, and arrangement of the design elements in Plaintiff's Artwork. Only minor color alterations are present between the works.

(*Id.* at ¶ 12.)

Plaintiff alleges that Ms. Temperley and the Temperley London entities "copied one or more of the Photographs and the underlying Artwork to create the Unauthorized Farrah Apparel Products." (*Id.* at ¶ 76.)  According to Plaintiff, they "digitally reproduced one or more of the Photographs found on Plaintiff's Instagram account, @wifenyc, to create a pattern or digital rendering that was then used to create the Unauthorized Farrah Apparel Products."  (*Id.* at ¶ 77.)   Plaintiff alleges that "[t]he Unauthorized Farrah Apparel Products constitute unauthorized derivative works of Plaintiff's Artwork and the Photographs" and Defendants actions "infringe upon Plaintiff's exclusive copyright rights in the Artwork and the Photographs."  (*Id.* at ¶ 13.)

Plaintiff alleges that Ms. Temperley and Temperley London "accessed the Photographs of the Artwork through Plaintiff's widely disseminated Instagram account, @wifenyc, and/or through obtaining screenshots/shares of the Photographs."  (*Id.* at ¶ 14; *see also id.* at ¶ 66.)   After Ms.

4

Temperley and the Temperley London entities accessed the Photographs, Plaintiff claims that "[t]he other Defendants then obtained access to the Photographs by receiving or accessing them and/or copies of them from the Defendants who accessed the Photographs." (*Id.* at ¶ 66.)

### 2.    The Unauthorized Palmae Apparel Products

In addition to the Unauthorized Farrah Apparel Products, Plaintiff alleges that Ms. Temperley and the Temperley London entities "also produced, displayed, sold, and distributed another line of clothes in Temperley London's Spring Summer 2022 collection known as the "Palmae" apparel line" (the "Unauthorized Palmae Apparel Products"). (*Id.* at ¶¶ 20, 23.)  As with the Unauthorized Farrah Apparel Products, Plaintiff claims that Ms. Temperley and the Temperley London entities used digital "renderings [of the Artwork] to create the Unauthorized Palmae Apparel Products." (*Id.* at ¶¶ 21–22.)  Plaintiff further alleges that the Unauthorized Palmae Apparel Products "are substantially similar to Plaintiff's copyright-protected Artwork and the Photographs and are unauthorized adaptations of the Artwork." (*Id.* at ¶ 25.)  Specifically,

> The Unauthorized Palmae Apparel Products all contain a repeated patterned print that includes copyright-protected elements of Plaintiff's Artwork, including, but not limited to, the three (3) black and white checkerboard patterned palm fronds, the signature and distinctive blue stems of the plant in a cool medium blue paint tone, the intricate geometric paint patterns and color-tipped palm fronds, and the particular color blocking expressions and color schemes chosen by Plaintiff. Notably, the base of Plaintiff's Artwork and the plant depicted in the patterned print of the Unauthorized Palmae Apparel Products is a palm. Moreover, the particular selection, coordination, and arrangement of original design elements in Plaintiff's Artwork have been reproduced in the Unauthorized Palmae Apparel Products. The "total concept and feel" of the Unauthorized Palmae Apparel Products is the same as that of the Artwork. An observer viewing the Artwork and the Unauthorized Palmae Apparel Products side by side would perceive them as coming from one creative source.

(*Id.* at ¶ 24.)

5

### C.       The Romo Defendants allegedly infringe upon Plaintiff's copyrights

"Following the apparent success of the Temperley London Spring Summer 2022 apparel collection, the Temperley London Defendants and the ROMO Defendants launched a joint collaboration known as the Temperley London x ROMO "A World Less Ordinary" interiors collection in or around March 2023."  (*Id.* at ¶ 28.)  Plaintiff alleges that this includes "fabrics, cushions, trims, and wallpaper products" (the "Unauthorized Farrah Interiors Products").  (*Id.* at ¶¶ 28, 30.)  "In March 2023, Plaintiff discovered that Defendants had created" the Unauthorized Farrah Interiors Products.  (*Id.* at ¶ 29.)

According to Plaintiff, the Romo Defendants "copied one or more of Plaintiff's Photographs of the Artwork and/or copied one or more of the digital or physical renderings featuring the Artwork created by the Temperley London Defendants."  (*Id.* at ¶¶ 32–35.)  Plaintiff alleges that the Romo Defendants "had access to the Photographs, which are copies of the preexisting Artwork, due to the public and widely disseminated nature of Plaintiff's Instagram account, @wifenyc" or alternatively accessed the Photographs "by receiving or accessing them and/or copies of them from the [other] Defendants who accessed the Photographs."  (*Id.* at ¶ 66.)  Plaintiff further alleges that "[t]he Unauthorized Farrah Interiors Products constitute unauthorized derivative works" and the Romo Defendants' actions "infringe upon Plaintiff's exclusive copyright rights in the Artwork and the Photographs."  (*Id.* at ¶ 39.)

Plaintiff also alleges that "[t]he Unauthorized Farrah Interiors Products are strikingly similar or at least substantially similar to Plaintiff's copyright-protected works as they include almost exact replicas of Plaintiff's Artwork with only some minor color and pattern adjustments made to them." (*Id.* at ¶ 37.)  Specifically,

> The Unauthorized Farrah Interiors Products all contain almost identical reproductions of Plaintiff's highly distinctive Artwork in embroidered form. The repeated embroidered patterned print that makes up the Farrah Agave and Farrah Lilac Ash fabrics as well as the Farrah Agave and Farrah Lilac Ash cushions includes the copyright-protected elements of Plaintiff's Artwork, including, but not limited to, the original hook-shaped curved form of the Dioon Edule Palm hand shaped by Plaintiff , two of the three (3) black and white checkerboard patterned palm fronds, the distinctive curved stem of the plant as shaped by Plaintiff, the intricate geometric paint patterns and color-tipped palm fronds, the particular color blocking expressions and color schemes chosen by Plaintiff, and the entire unique shape of the heavily-altered curved plant as depicted in the Artwork. Plaintiff's Artwork and the Unauthorized Farrah Interiors Products contain identical design elements, and those elements are arranged in virtually the same way in relation to each other in both the Artwork and the embroidered patterns found in the Unauthorized Farrah Interiors Products. Defendants replicated the entire copyright-protected selection, coordination, and arrangement of the design elements in Plaintiff's Artwork. Only minor color alterations are present between the works.

(*Id.* at ¶ 38.)

After the launch of the Unauthorized Farrah Interiors Products, Plaintiff alleges that Ms. Temperley "went on a North American tour promoting the . . . product line across the United States." (*Id.* at ¶ 93.) "During the North American tour, Defendants promoted, displayed, sold, and distributed the Unauthorized Farrah Apparel Products and Unauthorized Farrah Interiors Products to U.S. consumers." (*Id.* at ¶ 94.)

### D. Plaintiff alleges that Defendants further infringed on its copyrights through certain advertisements

Plaintiff also alleges that all Defendants "violated Plaintiff's copyright rights in the Artwork and the Photographs by producing photographs, videos, and advertisements featuring the Unauthorized Farrah Apparel Products, Unauthorized Palmae Apparel Products, and the Unauthorized Farrah Interiors Products." (*Id.* at ¶ 40.) Plaintiff then alleges that all Defendants further infringed upon Plaintiff's copyrights by "displaying and distributing those derivative works at brick-and-mortar showrooms and retail stores, in print books, brochures, advertisements, email

blasts, social media posts/stories, websites, and through various other advertising and marketing channel" (the "Unauthorized Advertising Works").  (*Id.*)

In addition, Plaintiff alleges that Defendants' respective websites contain false copyright management information.  With respect to the Romo Defendants, Plaintiff alleges that the Unauthorized Farrah Interiors Products "include the following copyright management statement: "© Copyright The Romo Group 2024. All Rights Reserved."  (*Id.* at ¶ 109.)  This, Plaintiff claims, "is a blatant misrepresentation . . . as Plaintiff is the copyright holder to the Artwork featured on the Unauthorized Farrah Interiors Products, not the ROMO Defendants."  (*Id.* at ¶ 110.) With respect to the Temperley London entities' website, Plaintiff asserts that "it states under its 'Ownership of Rights' section of its Terms and Conditions page: 'Any trademarks, copyrights or logos used on the website are owned by or licensed by TMLL Ltd.'"  (*Id.* at ¶ 86.)  Plaintiff then alleges that "[t]his statement is false as it relates to the Unauthorized Farrah Apparel Products and Unauthorized Palmae Apparel Products . . . because Plaintiff [, and not Defendants,] is the copyright holder to the Artwork." (*Id.*)

### E.    Defendants refuse to cease producing the allegedly infringing works at issue

Plaintiff claims that it "never gave permission or consent to Defendants to reproduce, display, distribute, or sell derivative works that featured the Artwork or the Photographs."  (*Id.* at ¶ 95.)  As a result, in April 2024, Plaintiff "sent detailed Cease-and-Desist Notices to [Defendants] regarding the above-mentioned infringements" demanding "that Defendants immediately cease and forever desist all forms of infringement concerning the Artwork and the Photographs."  (*Id.* at ¶ 41.)  Despite acknowledging receipt of the notices, Defendants "continued to display, produce, distribute, and sell the Unauthorized Farrah Interiors Products . . . for many additional months."  (*Id.* at ¶ 42.)  "The

8

ROMO Defendants did not remove the Unauthorized Farrah Interiors Products as being listed for sale on their U.S. website . . . until February 2025."  (*Id.*)  Plaintiff alleges that "the ROMO Defendants continue to display, distribute, and sell the Unauthorized Farrah Interiors Products to consumers throughout the world, including the United States, via their showrooms and various distribution channels, including third-party retailers and designers."  (*Id.*) And all Defendants "continue to this day to display, reproduce, and distribute certain of the Unauthorized Advertising Works depicting the Unauthorized Farrah Apparel Products, Unauthorized Palmae Apparel Products, and Unauthorized Farrah Interiors Products . . . through their various social media accounts and websites, showrooms, stores, and other advertising/marketing channels."  (*Id.* at ¶ 43.)

This lawsuit followed.

## II.    Procedural History

This case's procedural history is summarized in the Court's prior orders, including its June 5, 2025 Memorandum Opinion and Order.  The Court presumes familiarity with its prior orders.

Relevant to the instant Motions, on March 13, 2025, Plaintiff filed its Amended Complaint. (Doc. No. 22.)  Therein, Plaintiff brings four claims for relief against all Defendants: (1) Direct Copyright Infringement Under 17 U.S.C. § 501; (2) Vicarious and Contributory Copyright Infringement; (3) Distribution of False Copyright Management Information and Removal of Copyright Management Information in Violation of 17 U.S.C. § 1202(a) and (b); and (4) Accounting.

On March 27, 2025, Romo, Inc. filed its Motion to Dismiss Plaintiff's Amended Complaint. (Doc. No. 26.)  Plaintiff filed its Opposition to Romo, Inc.'s Motion on May 2, 2025, to which Romo, Inc. replied on May 16, 2025.  (Doc. Nos. 30, 49.)  Thereafter, on May 27, 2025, Romo UK and the Temperley London Defendants filed their respective Motions to Dismiss. (Doc. No. 51, 52.)    On

June 26, 2025, Plaintiff filed a separate Opposition to Romo UK's Motion and the Temperley London Defendants' Motion.  (Doc. Nos. 60, 61.)  On July 15, 2025, Romo UK and the Temperley London Defendants filed their respective Reply briefs.  (Doc. Nos. 62, 63.)

Accordingly, Romo, Inc.'s Motion, Romo UK's Motion, and the Temperley London Defendants' Motion are each ripe for review.

## III.    Standard of Review

### A.    Motion to dismiss for lack of personal jurisdiction

Under Rule 12(b)(2) of the Federal Rules of Civil Procedure, "[t]he party seeking to establish the existence of personal jurisdiction bears the burden to establish such jurisdiction.'"  *Beydoun v. Wayaniya Rests. Holding, Q.S.C.*, 768 F.3d 499, 504 (6th Cir. 2014) (citing *CompuServe, Inc. v. Patterson*, 89 F.3d 1277, 1261–62 (6th Cir. 2014)).  If a court rules on a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction prior to trial, "it has the discretion to adopt any of the following courses of action: (1) determine the motions based on affidavits alone; (2) permit discovery, which would aid in resolution of the motion; or (3) conduct an evidentiary hearing on the merits of the motion."  *Intera Corp. v. Henderson*, 428 F.3d 605, 614, n.7 (6th Cir. 2005) (citing *Serras v. First Tenn. Bank Nat'l Ass'n*, 875 F.2d 1212, 1214 (6th Cir. 1989)).  In the instant case, neither party indicates that a hearing is necessary.  Upon review, the Court concludes that a hearing will not assist the Court and the personal jurisdiction arguments may be resolved based on the Amended Complaint and the parties' exhibits.

When deciding a Rule 12(b)(2) motion without a hearing, "the court must consider the pleadings and affidavits in a light most favorable to the plaintiff."  *CompuServe*, 89 F.3d at 1262 (citing *Theunissen v. Matthews*, 935 F.3d 1454, 1458 (6th Cir. 1991)).  To defeat such a motion, a plaintiff need only make a prima facie showing of jurisdiction, which can be done merely through the

10

complaint. *See Malone v. Stanley Black & Decker, Inc.*, 965 F.3d 499, 504 (6th Cir. 2020) (citing *Am. Greetings Corp. v. Cohn*, 839 F.2d 1164, 1169 (6th Cir. 1988)). The burden then shifts to the defendant, whose motion to dismiss must be properly supported with evidence. *Id.* (citing *Theunissen*, 9235 F.2d at 1458). Once the defendant has met the burden, it returns to the plaintiff, who may no longer "stand on his pleadings but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction." *Id.* (quoting *Theunissen*, 935 F.2d at 1458).

When analyzing the parties' submissions, the Court "does not weigh the controverting assertions of the party seeking dismissal." *CompuServe*, 89 F.3d at 1262 (citing *Theunissen*, 935 F.2d at 1459). "Dismissal in this procedural posture is proper only if all the specific facts which the plaintiff . . . alleges collectively fail to state a prima facie case for jurisdiction." *Id.*

### B. Motion to dismiss for failure to state a claim

In order to survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain (1) 'enough facts to state a claim to relief that is plausible,' (2) more than 'formulaic recitation of a cause of action's elements,' and (3) allegations that suggest a 'right to relief above a speculative level.'" *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (quoting in part *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–556 (2007)). For purposes of Rule 12(b)(6), "all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007) (internal citation and quotation marks omitted).

The measure of a Rule 12(b)(6) challenge — whether the Complaint raises a right to relief above the speculative level — "does not 'require heightened fact pleading of specifics, but only

enough facts to state a claim to relief that is plausible on its face.'" *Bassett v. National Collegiate Athletic Ass'n.*, 528 F.3d 426, 430 (6th Cir.2008) (quoting in part *Twombly,* 550 U.S. at 555–556). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Deciding whether a complaint states a claim for relief that is plausible is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679.

Consequently, examination of a complaint for a plausible claim for relief is undertaken in conjunction with the "well-established principle that 'Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief.' Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (quoting in part *Erickson v. Pardus*, 551 U.S. 89 (2007)). Nonetheless, while "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era ... it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 679.

## IV.    Analysis

### A.      Requests for dismissal based upon lack of personal jurisdiction

Ms. Temperley, the Temperley London entities, and Romo UK each argue that the Court lacks personal jurisdiction over them. The parties dispute whether these Defendants are subject to personal jurisdiction in Ohio and subject to personal jurisdiction under Fed. R. Civ. P. 4(k)(2). Accordingly, the Court first addresses whether these Defendants are "subject to the jurisdiction of a court of general jurisdiction in" Ohio. *See* Fed. R. Civ. P. 4(k)(1)(A). If the Court finds that they are not, the Court

will then address whether they are subject to jurisdiction under Rule 4(k)(2). *See Lyngaas v. Curaden AG*, 992 F.3d 412, 423 (6th Cir. 2021) (finding that to establish jurisdiction under Rule 4(k)(2), among other things, "the defendant must not be subject to the personal jurisdiction of any state court of general jurisdiction"); *Critical Device Corp. v. Enteral Access Techs. Ltd.*, No. 1:22-v-01050-PAB, 2023 U.S. Dist. LEXIS 238105, at *15 (N.D. Ohio Aug. 8, 2023) (Barker, J.) (holding that the Court lacked personal jurisdiction under Rule 4(k)(2) when the defendant was subject to the personal jurisdiction of Illinois courts).

### 1. Ms. Temperley, the Temperley London entities, and Romo UK are not subject to the jurisdiction of a court of general jurisdiction in Ohio

"Where a federal court's subject matter jurisdiction over a case stems from the existence of federal question, personal jurisdiction over defendant exists 'if the defendant is amenable to service of process under the [forum] state's long-arm statute and if the exercise of personal jurisdiction would not deny the defendant[] due process.'" *Bird v. Parsons*, 289 F.3d 865, 871 (6th Cir. 2002) (citing *Michigan Coalition of Radioactive Material Users, Inc. v. Griepentrog*, 954 F.2d 1174, 1176 (6th Cir. 1992)). For jurisdiction to comport with due process, the defendant must either be subject to general or specific jurisdiction. *Conn v. Zakharov*, 667 F.3d 705, 718 (6th Cir. 2012) (citing *Youn v. Track, Inc.*, 324 F.3d 409, 417 (6th Cir. 2003)).[1] A finding of specific jurisdiction requires that three elements be satisfied:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

---

[1] Plaintiff has not asserted that Ms. Temperley, the Temperley London entities, and Romo UK are subject to general jurisdiction in Ohio. Thus, the Court will only analyze specific jurisdiction.

*Conn*, 667 F.3d at 713 (citing *Bird*, 289 F.3d at 874).  Each factor "represents an independent requirement, and the failure to meet any one of the three means that personal jurisdiction may not be invoked." *Lak, Inc. v. Deer Creek Enters*., 885 F.2d 1293, 1303 (6th Cir. 1989).  As explained below, the Court finds that the exercise of jurisdiction over Ms. Temperley, the Temperley London entities, and Romo UK in Ohio would not comport with due process.

### i.    Exercising jurisdiction over Ms. Temperley in Ohio would not comport with due process

In the Temperley London Defendants' Motion, Ms. Temperley asserts that "although [she] arrived briefly in the United States in 2022 to promote one of the Temperley London collections, [her] trip was limited to Los Angeles and Orange County, CA, as well as New York City, NY." (Doc. No. 52, PageID #6949.)  Ms. Temperley also asserts that she "manages her own personal social media pages, where she promotes her products at her own discretion, but [she] does not have any control over the brand's official websites or social media pages." (*Id.* at PageID #6951.)  Accordingly, Ms. Temperley argues that "[e]xercising jurisdiction over [her] would not comport with traditional notions of fair play and substantial justice, given her lack of presence and business operations in the U.S." (*Id.* at PageID #6952.)

In its Opposition, Plaintiff argues that "Alice Temperley has [] personally availed herself of the privilege of conducting business in Ohio through her actions in advertising Temperley London's products, including the products at issue in this [lawsuit], on her personal social media accounts, which are accessible in Ohio." (Doc. No. 60, PageID #7085.)  Plaintiff also argues that its causes of action against Ms. Temperley arise from her activities in Ohio because "[t]he infringing social media posts posted by Alice Temperley on her social media accounts were also viewable and able to be interacted with by consumers in Ohio." (*Id.* at PageID #7086.)  Finally, Plaintiff argues that "it does

14

not appear that it would be overly burdensome or unreasonable for Alice Temperley" to appear in this Court because she "visited the U.S., including New York, Orange County, and Los Angeles, to promote the Unauthorized Farrah and Palmae Apparel Products at issue in this lawsuit."  (*Id.* at PageID #7.)

In the Temperley London Defendants' Reply, Ms. Temperley contends that there are no facts from the FAC demonstrating that she transacted business or tortiously injured Plaintiff in Ohio.  (Doc. No. 63, PageID #7247–48.)  Ms. Temperley submits that "Plaintiff's argument that [her] 'advertising' or 'posting on social media' suffices is contrary to law, given that Plaintiff does not identify any advertising or posts that specifically targeted Ohio or the United States."  (*Id.* at PageID #7248.)  Ms. Temperley asserts that "Plaintiff cites no authority to support its conclusory argument that Ms. Temperley's minimal travel to the United States in the past renders it reasonable to subject the Temperley London witnesses to being haled into court for a copyright litigation thousands of miles away."  (*Id.* at PageID #7252.)

The Court first addresses whether Ms. Temperley personally availed herself of the privilege of doing business in Ohio.  The question of whether a defendant has purposefully availed itself of the privilege of doing business in the forum state is "the *sine qua non* for in personam jurisdiction." *CompuServe, Inc.*, 89 F.3d at 1264 (quoting *Southern Machine Co. v. Mohasco Indus.*, 401 F.2d 374, 381–82 (6th Cir. 1968)); *see also Calphalon Corp. v. Rowlette*, 228 F.3d 718, 721 (6th Cir. 2000) ("The purposeful availment prong . . . is essential to a finding of personal jurisdiction").  The "purposeful availment" requirement is satisfied when the defendant's contacts with the forum state "proximately result from actions by the defendant himself that create a 'substantial connection' with the forum State," and when the defendant's conduct and connection with the forum are such that he

15

"should reasonably anticipate being haled into court there."  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474–7 (1985) (quoting *World–Wide Volkswagen v. Woodson*, 444 U.S. 286, 297 (1980)). Courts require purposeful availment to ensure that "random," "fortuitous," or "attenuated" contacts do not cause a defendant to be haled into a jurisdiction.  *Id.* at 475 (citing *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984)).

The Court finds that in its Amended Complaint, Plaintiff has made an initial prima facie showing of purposeful availment.  Plaintiff alleges that Ms. Temperley "produced the Unauthorized Farrah Apparel Products and Unauthorized Palmae Apparel Products and then distributed, sold, and displayed those infringing products to consumers in Ohio through Temperley London's U.S. website, https://int.temperleylondon.com/?country=US, which sells and delivers goods to Ohio residents." (Doc. No. 22 at ¶ 46.)  Plaintiff further alleges that Ms. Temperley "displayed copies of the [works at issue] in the form of advertisements for the products . . . on her personal Instagram account . . . which is viewable to residents of Ohio and this District."  (*Id.* at ¶ 47.)  As a result, the burden shifted to Ms. Temperley to produce evidence showing why the Court lacks jurisdiction over her.

The Court finds that Ms. Temperley has met her burden.  Ms. Temperley submitted a declaration where she avers that (1) she is a United Kingdom citizen; (2) she owns no assets in the United States; (3) she has never been to the State of Ohio; (4) she does not have a mailing address in the United States; and (5) she has only travelled to the United States a handful of times.  (Doc. No. 52–1 at ¶¶ 2–5, 7, 8, 20.)  Ms. Temperley also avers that she is "the founder and creative director of Temperley London," which is "based in the United Kingdom," and that "Temperley London does not have any stores of its own in the United States."  (*Id.* at ¶¶ 9, 21.)  She further avers that "the only boutiques or retail partners in the United States that carry Temperley London products are located in"

16

Florida, Texas, New York, and California.  (*Id.* at ¶ 21.)  Ms. Temperley also avers that she "promote[s] Temperley London's products by posting on [her] personal social media pages, directing my friends and followers to view Temperley London collections."  (*Id.* at ¶ 15.)

Plaintiff does not dispute these averments in its Opposition and instead focuses its argument on Ms. Temperley "conducting business in Ohio through her actions in advertising Temperley London's products, including the products at issue in this claim, on her personal social media accounts, which are viewable and accessible to Ohio customers." (Doc. No. 60, PageID #7140.)  The Court finds that Plaintiff has not met her burden to, by affidavit or otherwise, set forth specific facts showing that the Court has jurisdiction.

Under Sixth Circuit law, merely posting matters on social media is insufficient to confer personal jurisdiction.  While not cited by the parties, the Court finds *Blessing v. Chandrasekhar*, 988 F.3d 889 (6th Cir. 2021) instructive.  In *Blessing*, the Sixth Circuit noted that it has "held that personal jurisdiction is absent when the communication was not specifically directed at the forum state."  *Id.* at 905 (citing *Reynolds v. Int'l Amateur Athletic Fed'n*, 23 F.3d 1110, 1114 (6th Cir. 1994)).  Under this standard, the *Blessing* court held that social media posts, by themselves, were insufficient to establish personal jurisdiction.  *Id.* at 906.  Instead, to establish personal jurisdiction based on social media posts, the defendant must take some "affirmative steps to direct [] communications to the plaintiffs or to anyone else in" the forum state.  *Id.*; *compare Newton v. Kardashian*, No. 24-3966, 2025 U.S. App. LEXIS 24742, at *5–6 (6th Cir. Sept. 23, 2025) (holding that "a general post" on Instagram was insufficient to confer jurisdiction because the defendants did not target the plaintiff with the post); *with Johnson v. Griffin*, 85 F.4th 429, 435 (6th Cir. 2023) (holding social media post conferred personal jurisdiction in Tennessee when the defendant tagged a Tennessee company in the

post and by submitting additional posts that "amounted to direct communications with the Tennessee company").

Here, Plaintiff has not pointed the Court to any social media posts that were directed to anyone in Ohio. While Plaintiff attached to its Amended Complaint social media posts from Ms. Temperley, the Court does not find that these social media posts were directed to anyone in Ohio. (Doc. No. 22-8.) Further, Ms. Temperley avers in her Declaration that she uses her "personal social media pages" to direct her "*friends and followers* to view Temperley London collections," none of which are alleged to be in Ohio. (Doc. No. 52-1 at ¶ 15.) Accordingly, the Court finds that Ms. Temperley has not purposefully availed herself of the privilege of doing business in Ohio. Thus, the Court finds that Ohio lacks personal jurisdiction over Ms. Temperley. *See Lak, Inc.*, 885 F.2d at 1303.

### ii. Exercising jurisdiction over the Temperley London entities would not comport with due process

The Temperley London entities assert that "it appears Plaintiff named Temperley London in this lawsuit solely because Temperley London was a part of a joint collection with the U.K. parent companies of Romo, Inc." (Doc. No. 52, PageID #6948.) They also assert that "even assuming that any of the accused products were sold in the United States, Temperley London does not have its own stores in the country, and only works through boutiques, retail partners, or trunk shows in specific cities" outside of Ohio. (*Id.*at PageID #6949.) They submit "that Temperley London is currently only aware of two recorded sales in the entire State of Ohio over the last twenty-four months" and that "Temperley London's sales activity in the United States certainly was not targeted to consumers in Ohio." (*Id.* at PageID #6149–51.)

In its Opposition, Plaintiff argues that Temperley London "purposefully availed itself of conducting business in Ohio through, among other things, advertising products in Ohio via the

Temperley London website, fulfilling orders placed in Ohio for the products it designed and produced in the U.K., and then shipping those products into Ohio." (Doc. No. 60, PageID #7140.) Plaintiff argues that Ms. Temperley "personally availed herself of the privilege of conducting business in Ohio through her actions in advertising Temperley London's products, including the products at issue in this lawsuit, on her personal social media accounts, which are accessible in Ohio." (*Id.*) Plaintiff contends that its causes of action arise from Temperley London's activities in Ohio because the works at issue "were advertised and displayed by Temperley London on the Temperley London Website, which is viewable in Ohio, and were able to be purchased and shipped to Ohio residents through this site." (*Id.* at PageID #7141.) Plaintiff also asserts that "[t]he infringing social media posts posted by Alice Temperley on her social media accounts were also viewable and able to be interacted with by consumers in Ohio." (*Id.*) Plaintiff argues that exercising jurisdiction would be reasonable because "it does not appear that it would be overly burdensome or unreasonable for Alice Temperley or Temperley London's board members, executives, and employees to travel to this District to appear in this lawsuit." (*Id.* at PageID #7142.)

In their Reply, the Temperley London entities argue that "Plaintiff does not allege that Temperley London (1) designed the accused products (or any products) for the Ohio or United States markets, (2) retained control over its partner retailers' importation and distribution process, or (3) structured its relationship with retailers such that Temperley London retains control over its partner retailers' sales of the products." (Doc. No. 63, PageID #7249–50.) The Temperley London entities argue that "Plaintiff's indirect assertion that its claims against the Temperley entities arise out of their Ohio contacts because Temperley products from just two sales might have reached consumers in Ohio is insufficient." (*Id.* at PageID #7250.) Finally, the Temperley London entities argue that

exercising jurisdiction would be unreasonable "[c]onsidering the burden imposed on . . . the Temperley London entities, and the absence of any salient interest for Ohio." (*Id.* at PageID 7252.)

The Court finds that in the Amended Complaint Plaintiff has made an initial prima facie showing of purposeful availment. Plaintiff alleges that "the Temperley London Defendants produced the [works at issue] and then distributed, sold, and displayed those infringing products to consumers in Ohio through Temperley London's U.S. website . . . which sells and delivers goods to Ohio residents." (Doc. No. 22, ¶ 46.) Plaintiff further alleges that the "Temperley London Defendants also sold the [works at issue] to other third-party retailers and distributors located in the U.S. who then sold the infringing products to consumers located in Ohio and this District." (*Id.*) Moreover, Plaintiff alleges that "Temperley London Defendants also displayed copies of the [works at issue] in the form of advertisements for the products . . . on their Instagram account . . . which not only displays the products to Ohio residents but also allows Ohio residents to purchase the products directly through the Instagram Shop app." (*Id.*) As a result, the burden shifts to the Temperley London entities to produce evidence showing why the Court lacks jurisdiction over them.

The Court finds that they have. The Temperley London entities submit the Declaration of Sarita Jha, a board member and interim chief executive officer of Temperley Holdings. (Doc. No. 53–1 at ¶ 2.) Therein, she avers that Temperley London (1) has no assets, entities, or offices in the United States; (2) does not have any storefronts in the State of Ohio and has never contracted with any retailers there; (3) does not import any products into the United States; (4) has never participated in any trunk shows in Ohio; (5) does not and has never targeted consumers in the Ohio market; (6) does not collect or analyze social media and marketing engagement data for insights on United States customers; and (7) does not strategically time posts for United States time-zones and United States

engagement.  (*Id.* at ¶¶ 6, 11, 13, 16, 21, 22, 25.)  Ms. Jha also avers that "[n]o Temperley London board member or executive has ever visited Ohio in connection with the company or otherwise" and that the Temperley London entities have "only two recorded sales" in Ohio "over the last twenty-four months."  (*Id.* at ¶¶ 16, 19.)

The Court finds that Plaintiff has not met her burden to, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction over the Temperley London entities.  Plaintiff does not offer any evidence in rebuttal and instead argues that the Temperley London entities "distributed Temperley London products designed and produced in the U.K. to consumers in the U.S., including Ohio consumers; shipped products designed and produced by it in the U.K. to consumers in the U.S., including Ohio; fulfilled product orders placed by customers in the U.S. via the Temperley London website to consumers in Ohio; and posted on social media and other places online advertisements of the products, including the products at issue in this lawsuit, that customers in Ohio could view and purchase."  (Doc. No. 60, PageID #7139 (internal citations omitted).)  The Court is not persuaded by these arguments.

First, contrary to Plaintiff's broad assertions, the record establishes that the Temperley London entities have only made two sales to customers in Ohio in the past two years, which accounts for less than 1% of its net sales.  (Doc. No. 53-1 at ¶¶ 17, 19.)  Second, as explained above, merely posting to social media that is viewable in Ohio is not enough to confer jurisdiction, and the Court does not find that the social media posts attached to the Amended Complaint were targeted to anyone in Ohio.

Third, there is nothing in the record establishing that the Temperley London entities purposefully availed themselves through their website.  Under Sixth Circuit law, "[i]n order to

determine whether an operator of a website purposefully availed himself of the forum state, the Court looks at the website's level of interactivity." *See, Inc. v. Imago Eyewear Pty, Ltd.*, 167 F. App'x 518, 522 (6th Cir. 2006) (citing *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 890 (6th Cir. 2002)). "A defendant purposefully avails itself of the privilege of acting in a state through its website if the website is interactive to a degree that reveals specifically intended interaction with residents of the state." *Neogen Corp.*, 282 F.3d at 890.

The Court finds that the Temperley London entities' website is not "interactive to a degree that reveals specifically intended interaction with residents of" Ohio. *Id.* While Plaintiff alleges that the Temperley London entities "distributed, sold, and displayed those infringing products to consumers in Ohio through Temperley London's U.S. website" (Doc. No. 22 at ¶ 46), Plaintiff has not pointed the Court to anything on the website that would establish this or has not even alleged that the Temperley London entities' website is interactive. *See Noco Co. v. Jasper Indus. Supply, Inc.*, No. 1:22-cv-00851, 2023 U.S. Dist. LEXIS 220445, at *13 (N.D. Ohio Dec. 12, 2023) ("Noco has not pointed to any statement or advertising on Jasper's website or storefront through which Jasper holds itself out as welcoming Ohio business, or through which Jasper represents to consumers that it does business in Ohio") (cleaned up). Indeed, the fact that the Temperley London entities made only two sales to Ohio consumers (Doc. No. 53-1 at ¶ 19) suggests that the website is not targeted to reach Ohio consumers. *See id.* (no purposeful availment when there was "no evidence that any Ohio resident even used the interactive features on Jasper's website and storefront"). And even if the website was targeted at Ohio, as Plaintiff alleges, the Court finds that the website, in conjunction with two sales to Ohio, is insufficient to establish purposeful availment. *See Psi Marine, Inc. v. Seahorse Docking LLC*, No. 22-cv-10611, 2023 U.S. LEXIS 166465, at *22–23 (E.D. Mich. Sept. 18, 2023)

22

(finding that two sales over the course of two years was insufficient to establish purposeful availment);  *Oaks v. Largo Bioscience, Inc.*, No. 3:21-cv-00541, 2022 U.S. Dist. LEXIS 43604, at *24 (M.D. Tenn. Mar. 11, 2022) (colleting authorities and concluding that "the Sixth Circuit and the district courts within the Sixth Circuit have generally found that isolated sales to a forum, through an interactive website or otherwise, will not satisfy the purposeful availment requirement"); *Advanced Solutions Life Scis., LLC v. BioBots, Inc.*, No. 3:16-CV-00709-CRS, 2017 U.S. Dist. LEXIS 73241, at *17 (W.D. Ky. May 12, 2017) (finding that two online sales by the defendant to customers in Kentucky was insufficient to confer jurisdiction).

Thus, the Court finds that Ohio lacks personal jurisdiction over the Temperley London entities.  *See Lak, Inc*., 885 F.2d at 1303.

### iii.     Exercising jurisdiction over Romo UK would not comport with due process

In their Motion, Romo UK argues that their "contacts with Ohio have no causal relationship to Plaintiff's claims" because "it appears Plaintiff named Romo UK in this lawsuit solely because the Romo UK entities are part of the same corporate family as Romo, Inc."  (Doc. No. 51, PageID #6910.) They further argue that Romo UK has not purposely availed itself of acting in Ohio because "Romo, Inc.'s sales are not Romo UK's sales, and even those Romo, Inc. sales have been minimal and have not been directed to consumers in Ohio."  (*Id.* at PageID #6912.)  They further assert that the Romo UK Defendants do not direct activities to the state of Ohio.  (*Id.* at PageID #6912–14.)  They finally argue that it would be unreasonable for the Court to exercise jurisdiction because "Romo UK, its board members, executives, and employees are located on another continent thousands of miles away" and that "[i]t appears that the only reason Plaintiff filed suit in the Northern District of Ohio is simply because Romo, Inc., has an office there, and nothing more."  (*Id.* at PageID #6914.)

In its Opposition, Plaintiff argues that the Romo UK entities purposively availed themselves because "they distributed Romo products designed and procured by Romo Ltd. in the UK to consumers in the U.S., including Ohio consumers . . . shipped products designed and procured by Romo Ltd. to Romo, Inc.'s facility in Ohio . . . fulfilled product orders placed by trade customers in the U.S. with Romo, Inc., based in Ohio . . . and shipped Romo product orders placed by U.S. customers and invoiced by Romo, Inc. to customers throughout the U.S., including Ohio."  (Doc. No. 56, PageID #7039–40.)  It further argues that the Romo UK entities operate a website that advertises the "goods at issue . . . to consumers in Ohio" and directs them to the "Chagrin Falls, Ohio location." (*Id.* at PageID #7040.)  Plaintiff next argues that its claim "arise from Romo UK's activities in Ohio" because the goods at issue "were advertised and displayed by Romo UK on the Romo Website, which is viewable in Ohio, "were available to be purchased from Romo UK by Ohio consumers and trade customers," "were fulfilled by Romo UK," "were shipped by Romo UK to Romo Inc. in Ohio", and "were shipped by Romo UK directly to trade customers in Ohio." (*Id.* at PageID #7041–42.)  Plaintiff finally argues that the exercise of jurisdiction would be reasonable because "it does not appear that it would be overly burdensome or unreasonable for Romo UK and its board members, executives, and employees to travel to this District to appear in this lawsuit" and because "the state of Ohio has interest in enjoying further copyright infringement . . . within the state."  (*Id.* at PageID #7043.)

In their Reply, Romo UK argue that "[o]ccasional and attenuated visits by Romo UK board members to Romo, Inc. do not establish targeted Ohio activity."  (Doc. No 62, PageID #7222.)  They further argue that "Romo UK does not regularly sell products into Ohio or store any allegedly infringing products in the United States, and simply fulfills Romo, Inc.'s orders and ships those products to the trade customers that ordered from Romo, Inc."  (*Id.* at PageID #7223.)  Romo UK

asserts "that Romo UK does not sell any products in the United States and that all U.S. activities are that of Romo, Inc., the U.S.-based company." (*Id.* at PageID #7226.) They also assert that "Plaintiff cites no authority to support its conclusory argument that these individuals' prior travel renders it reasonable to subject Romo UK witnesses to being hauled into court for a copyright litigation thousands of miles away." (*Id.* at PageID #7227.)

The Court finds that Plaintiff's Amended Complaint sets forth a prima facie showing of personal jurisdiction. Plaintiff alleges that the Romo UK entities (1) "developed/manufactured the Unauthorized Farrah Interiors products that were sold to consumers located in Ohio and this District," (2) "supplied and distributed the Unauthorized Farrah Interiors Products to consumers located in Ohio and this District," and (3) "supplied and distributed the Unauthorized Farrah Interiors Products to Romo, Inc. and various other third parties that then sold these goods to consumers located in the state of Ohio and this District." (Doc. No. 22 at ¶ 46.) As a result, the burden shifts to Romo UK to produce evidence showing why the Court lacks jurisdiction over them.

With their Motion, Romo UK submitted the Declaration of Neil Sexton. (Doc. No. 51-1.) Therein, Mr. Sexton avers that (1) Romo UK is based in the United Kingdom; (2) no one employed with Romo Ltd. interacts directly with any U.S. customer save for any general interactions that took place during promotional events that were held in Los Angeles and New York; (3) all of Romo's products are stored in the U.K.; and (4) Romo UK does not directly own any property, bank accounts, or other business interest in the United States, other than its 100% share interest in Romo, Inc. (*Id.* at ¶¶ 3, 8 14, and 30.) But Mr. Sexton also avers that (1) "[w]hen a U.S. trade customer's order is made with Romo, Inc., the order gets rung up by Romo, Inc., held by Romo, Inc., and then links to the Romo UK Entities system, indicating that an order needs to be fulfilled," (2) "[w]hen the Romo

UK Entities send product to the United States . . . the Romo UK Entities ship the parcels themselves directly to the trade customers that ordered the product, typically via FedEx," (3) "Romo UK Entities primarily target consumers located in the UK, Europe and the United States, which collectively account for approximately 90% of global sales," and (4) "[b]etween 2020 and April 2025, Romo's sales in the state of Ohio accounted for just 1.6% of all U.S. sales." (*Id.* at ¶¶ 22–25.)

The Court finds that purposeful availment is a close call.  While having limited Ohio contacts, Mr. Sexton's Declaration establishes that any time a U.S. sale is made (whether in Ohio or not), Romo, Inc. (an Ohio-based company) "links [the order] to the Romo UK Entities system, indicating than an order needs to be fulfilled."  (*Id.* at ¶ 22.)  In other words, all Romo UK sales to the United States flow through Romo, Inc. in Ohio.  Mr. Sexton avers that the United States and Europe "collectively account for approximately 90% of global sales," Mr. Sexton does not explain what percentage of Romo UK's sales are made solely in United States.  (*Id.* at ¶ 24.)  Taken together with the allegations in the Amended Complaint, the record establishes that a substantial portion of Romo UK's business flows through Romo, Inc. in Ohio.  Based on these facts, the Court finds that the Romo UK defendants have not met their burden to defeat personal availment.

For the same reasons, the Court finds Romo UK has not met their burden regarding relatedness.  Romo UK has not submitted any evidence that would defeat Plaintiff's prima facie showing that they "developed/manufactured the Unauthorized Farrah Interiors Products that were sold to consumers located in Ohio and this District."  (Doc No. 22 at ¶ 46.)  Indeed, Mr. Sexton's Declaration concedes that some sales were made in Ohio.  And Mr. Sexton's Declaration suggests that Romo, Inc would have "linked" orders for the allegedly infringing works to Romo UK, and there is no evidence in the record establishing that this is not the case.

26

The Court, however, finds that exercising jurisdiction over Romo UK would be unreasonable. "Generally, when considering whether it is reasonable to exercise personal jurisdiction over a non-resident defendant, a court must consider several factors including the following: (1) the burden on the defendant; (2) the interest of the forum state; (3) the plaintiff's interest in obtaining relief; and (4) other states' interest in securing the most efficient resolution of the controversy." *Intera Corp. v. Henderson*, 428 F.3d 605, 618 (6th Cir. 2005).  Here, the burden on Romo UK is high because they are based in the United Kingdom.  (Doc. No. 51–1 at ¶ 3.)  Ohio's interest in this litigation is low as only one party (Romo, Inc.) has a principal place of business in Ohio.  And the final two factors weigh against a finding of reasonableness because Plaintiff is a New York corporation, and its principal place of business is in New York.  (Doc. No. 22, ¶ 48.)  On balance, the Court finds that it would be unreasonable for an Ohio court to exercise jurisdiction over Romo UK.  *See Intera*, 428 F.3d at 618–19.

Accordingly, the Court finds that Ohio lacks specific jurisdiction over Romo UK because the exercise of jurisdiction would not comport with due process.

### 2. The Temperley London entities and Romo UK are subject to Jurisdiction under Rule 4(k)(2), but Ms. Temperley is not subject to jurisdiction under Rule 4(k)(2)

Having found that Ohio lacks personal jurisdiction over Ms. Temperley, the Temperley London entities, and Romo UK, the Court next considers whether Rule 4(k)(2) authorizes personal jurisdiction over them.  Rule 4(k)(2) has three requirements: "(1) the cause of action must arise under federal law; (2) the defendant must not be subject to the personal jurisdiction of any state court of general jurisdiction; and (3) the federal court's exercise of personal jurisdiction must comport with due process." *Lyngaas*, 992 F.3d at 422 (quoting *Plixer Int'l, Inc. v. Scrutinizer GmbH*, 905 F.3d 1,

27

6 (1st Cir. 2018)).    Under the third prong, "the due process requirements emanate from the Fifth rather than the Fourteenth Amendment." *Lyngaas*, 92 F.3d at 422 (citing *Sunshine Distrib. v. Sports Auth. Mich., Inc.*, 157 F. Supp. 2d 779, 788 (E.D. Mich. 2001)).   "But they 'are the same as with any personal jurisdiction inquiry, *i.e.*, relatedness, purposeful availment, and reasonableness, only in reference to the United States as a whole, rather than a particular state.'" *Id.* (quoting *Sunshine Distrib.*, 157 F. Supp. 2d at 788).

Plaintiff's claims arise under Federal law, which Defendants do not dispute.  (*See* Doc. No. 22.)   The Court has found that they are not subject to jurisdiction in Ohio, and Defendants have not pointed this Court to a different state that would have jurisdiction over them.  (*See* Doc. Nos. 51. 52, 62 63.)   Thus, "[t]he remaining question is whether personal jurisdiction comports with due process." *Lyngaas*, 92 F.3d at 422.

> **i.**     **Ms. Temperley is not subject to personal jurisdiction under Rule 4(k)(2)**

Plaintiff argues in its Opposition that "[t]he case for purposeful availment as to Alice Temperley is also clear as she advertises Temperley London products, including the products at issue in this lawsuit, to U.S. consumers via her personal social media accounts" and "has traveled to New York City, Los Angeles, and Orange County to promote the Temperley London apparel collection at issue in this lawsuit.  (Doc. No. 60, PageID #7143.)   As to relatedness, Plaintiff argues that Ms. Temperley "displayed, sold, marketed, and distributed the infringing products at issue in this lawsuit in the U.S."  (*Id.*)  Plaintiff finally argues, in a conclusory manner, that "[b]ecause the purposeful availment and relatedness prongs as to Romo UK have been satisfied, this Court should also find the reasonability requirement satisfied."  (*Id.* at PageID #7143–44.)

In her Reply, as for the issue of due process, Ms. Temperley makes the same arguments that

she made to support her position that this Court does not have specific personal jurisdiction over her based upon lack of sufficient contacts in Ohio.  (Doc. No. 63, PageID #7247–7252.)

The Court concludes that Ms. Temperley has not purposefully availed herself of the privileges of doing business in the United States as a whole.  First, as explained above, there is no evidence that Ms. Temperley directed her social media posts to the United States.  (Doc. No. 52-1 at ¶¶ 15–16.) Second, the Court finds that Ms. Temperley's four-day "promotional tour of [Temperley London's] collections" in the United States (*Id.* at ¶ 20) is insufficient to establish purposeful availment.  *See See, Inc.*, 167 F. App'x at 523 ("attendance at one trade show in New York and a website that permits users to contact the company through an on-line forum are simply insufficient contacts with the United States to satisfy due process").  Given that the four-day promotional tour is the only contact Mr. Temperley had with the United States (see Doc. No. 52-1), the Court finds that Ms. Temperley did not purposefully avail herself of the privileges of doing business in the United States.

Accordingly, the Court finds that Ms. Temperley has not purposefully availed herself of the privilege of conducting business in the United States.  Thus, the Court finds that it lacks jurisdiction over Ms. Temperley under Rule 4(k)(2).  Accordingly, the Court dismisses Plaintiff's claims against Ms. Temperley without prejudice.

### ii.    The Temperley London entities are subject to personal jurisdiction under Rule 4(k)(2)

In its Opposition, Plaintiff argues that as to the Temperley London entities, the purposeful availment requirement is met because Temperley London (1) "admits that it designs, fulfills, and ships products, including the products at issue in this case, to consumers and boutique retailers in the U.S.," (2) admits "that it participates in trunk shows hosted by retailers in the U.S. to display, sell, and distribute its products, including the products at issue in this lawsuit; and (3) "advertises to U.S.

consumers with its website and through digital marketing efforts as well as through social media." (Doc. No. 60, PageID #7143.)  Plaintiff also points to Ms. Jha's Declaration where she avers that "[t]he United States accounts for … sixteen (16%) percent of Temperley London's net sales . . . ." (*Id.*)  Plaintiff makes the same arguments for relatedness and reasonability as she did with regard to Ms. Temperley.  (*see id.*)

In their Reply, the Temperley London entities make the same due process arguments that they did to support their position that this Court does not have specific personal jurisdiction over them based upon lack of sufficient contacts in Ohio.  (Doc. No. 63, PageID #7247–7252.)

The Court finds that Plaintiff has alleged a prima facie case for personal jurisdiction under Rule 4(k)(2) against the Temperley London entities.  Plaintiff alleges that Temperley London sold the allegedly infringing products "to other third-party retailers and distributors located in the U.S." and that they "displayed the Unauthorized Advertising works on their other social media accounts . . . all of which were accessible and targeted to reaching U.S. consumers."  (Doc. No. 22 at ¶ 46.)

Ms. Jha's Declaration supports Plaintiff's allegations.   Ms. Jha's avers in her Declaration that: (1) "Temperley London maintains relationships with small, independent retailers in Texas, Arkansas and Florida, each with no more than ten locations, typically within the same geographic area;" (2) "United States customers can purchase Temperley London products through the company's website;" (3) "Temperley London participates in trunk shows hosted by retailers, hosted by the boutique retailers in New York, Texas, California, Arkansas, and Florida;" and (4) "[t]he United States accounts for . . . sixteen (16%) percent of Temperley London's net sales."  (Doc. No. 52-2 at ¶¶ 10, 12, 15, 17.)   The Temperley London entities' significant sales in the United States, plus their additional connections to the United States, are sufficient to establish personal availment.  *See Ayla,*

30

*LLC v. Alya Skin Pty. Ltd.*, 11 F.4th 972, 981 (9th Cir. 2021) (finding purposeful availment under Rule 4(k)(2) when, among other contacts, "[n]early ten percent of [defendant's] products are sold in and shipped to the United States"); *cf. Noco Co. v. Shenzhen Valuelink E-Commerce Co.*, 550 F. Supp. 3d 488, 497 (N.D. Ohio 2021) (finding purposeful availment in Ohio when an online retailer "consistently generated 2.25-2.52 percent of its annual Amazon sales from Ohio residents, totaling $271,839.18 in revenue" and "sold an additional $4,875.07 worth of products to Ohio consumers through Walmart's e-commerce platform").

As to relatedness, the Court also finds that the Temperley London entities did not satisfy their burden. As explained above, the Temperley London entities have significant sales in the United States and have not produced any evidence that would defeat Plaintiff's allegation that they sold the allegedly infringing products "to other third-party retailers and distributors located in the U.S." (Doc. No. 22 at ¶ 46.)

As to reasonableness, the Court also finds that the Temperley London entities did not satisfy their burden. While there would be some burden on litigating in the United States since the Temperley London entities are based in the United Kingdom, the United States has an interest in enforcing its statutes, Plaintiff has an interest in obtaining relief in the United States, and the United Kingdom would not have an interest in securing the efficient resolution of a controversy involving United States copyright law. *See Intera Corp.*, 428 F.3d at 618.

Therefore, the Court finds that the Temperley London entities are subject to personal jurisdiction under Rule 4(k)(2).

### iii. Romo UK is subject to personal jurisdiction under Rule 4(k)(2)

In its Opposition, Plaintiff argues that purposeful availment is met as to Romo UK because it

"admits that it designs, fulfills, and ships products, including the products at issue in this case, to consumers in the U.S. and to Romo, Inc. located in Ohio."  (Doc. No. 61, PageID #7186.)  Plaintiff asserts that Romo UK "also admits that the products . . . are promoted and displayed in several showrooms throughout in the U.S." and that "Romo UK targets U.S. consumers with its website and interacts with U.S. consumers through social media."  (*Id.*)   Plaintiff argues that its causes of action arise from the Romo UK's activities in the U.S. because "it has been established that the Romo UK displayed, sold, marketed, and distributed the infringing products at issue in this lawsuit in the U.S." (*Id.* at PageID #7186–87.)  Plaintiff finally argues, in a conclusory manner, that "[b]ecause the purposeful availment and relatedness prongs as to Romo UK have been satisfied, this Court should also find the reasonability requirement satisfied."  (*Id.* at PageID #7187.)

In their Reply, Romo UK makes the same due process arguments it made to support its position that the Court does not have specific personal jurisdiction over it based upon lack of sufficient contacts to Ohio.  (Doc. No. 62, PageID #7222–28.)

The Court finds that Plaintiff has alleged a prima facie case for personal jurisdiction under Rule 4(k)(2) against Romo UK.  Plaintiff alleges that Romo UK "profited from the sale of the Unauthorized Farrah Interiors Products in the U.S. and the state of Ohio and had involvement in the infringements set forth in this First Amended Complaint."  (Doc. No.  22 at ¶ 46; *see also id.* at ¶ 31 (alleging Romo UK "sold the Unauthorized Farrah Interiors to consumers in the United States").)

As for purposeful availment, the Court has already found that Romo UK purposefully availed itself of the privilege of doing business in Ohio, so logically, it also purposefully availed itself of the laws of the United States as a whole.  *See Eireog Innovations Ltd. v. Lenovo Grp. Ltd.*, No. 2:24-CV-00239-JRG, 2024 U.S. Dist. LEXIS 189039, at *22 (E.D. Tex. Oct. 16, 2024) ("Here, given that the

Court has already concluded that it has personal jurisdiction over LGL based on its contacts with Texas, the Court also finds that it has personal jurisdiction over LGL based on its contacts directed to the United States at large").  The Court also finds additional facts support purposeful availment in the United States as whole.  Mr. Sexton avers in his Declaration that Romo UK "send[s] product to the United States and "primarily target[s] consumers located in the UK, Europe and the United States, which collectively account for approximately 90% of global sales."  (Doc. No. 51-1 at ¶¶ 22, 24.) While Romo, Inc. "is the importer of record," Mr. Sexton avers that "the Romo UK Entities ship the parcels themselves directly to the trade customer that ordered the product, typically via FedEx."  (*Id.* at ¶ 23.)  Mr. Sexton also avers that "21% of Romo's global social media followers are located in the United States and North America" and that Romo UK's "primary focus of outbound activity [on social media] is trade customers, though the company also responds to consumer inquiries."  (*Id.* at ¶ 26.)  Accordingly, Romo UK has not produced any evidence defeating Plaintiff's prima facie case as to purposeful availment.[2]

As to relatedness, Mr. Sexton's Declaration does not rebut Plaintiff's allegation that Romo UK sold and profited from the allegedly infringing works that were sold in the United States.  (Doc. No. 22 at ¶ 46.)  Mr. Sexton avers that "the Romo UK Entities send product to the United States" and that "the Romo UK Entities ship the parcels themselves directly to the trade customers that ordered

---

[2] These facts are distinguishable from *In re ZF-TRW Airbag Control Units Products Liability Litigation*, 601 F. Supp. 3d 625, 714 (C.D. Cal. 2022), which Romo UK primarily relies for the proposition that "simply shipping products to the United States, but not importing them into the United States, is insufficient for purposeful availment."  (Doc. No. 62, PageID #7224–25.)  In *ZF-TRW*, the court concluded that a foreign defendant did not purposefully avail itself of the privilege of doing business in the United States by simply "plac[ing] its vehicles into the stream of commerce with the expectation that they would be imported to the United States."  *Id.* at 714.  By contrast, here, Romo UK's contacts with the United States go further.  Romo UK correctly points out, that Romo, Inc. is the importer of record for Romo's products, but it ignores the fact that it has substantial sales in the United States, that it interacts with customers in the United States, and that it ships product directly to customers in the United States.  Thus, Romo UK's contacts go further than simply placing goods "into the stream of commerce with the expectation that they would be imported into the United States."

the product, typically via FedEx."  (Doc. No. 51-1 at ¶ 23.)  Romo UK has not produced any evidence suggesting that it has not shipped the works at issue to the United States or that it has not profited from the sales of the works in in the United States.

As to reasonableness, the Court also finds that Romo UK did not satisfy its burden.  While there would be some burden on litigating in the United States since they are based in the United Kingdom, the United States has an interest in enforcing its statutes, Plaintiff has an interest in obtaining relief in the United States, and the United Kingdom would not have an interest in securing the efficient resolution of a controversy involving United States' copyright law.  *See Intera Corp.*, 428 F.3d at 618.

Therefore, the Court finds that Romo UK is subject to personal jurisdiction under Rule 4(k)(2).

## B.    Motions to dismiss for failure to state a claim

Having rejected Romo UK and the Temperley London entities' personal jurisdiction arguments, the Court next addresses the parties' arguments regarding their Rule 12(b)(6) motions.[3]

---

[3] As a threshold matter, the Court rejects Romo, Inc.'s argument that "[t]hough information and belief pleading can render a claim plausible under certain circumstances, that is not so here, as Plaintiff must still plead supporting facts that render its claim plausible beyond a personal belief that it is true." (Doc. No. 26, PageID #1492.)  In *Germain v. Teva Pharms., USA (In re Darvocet, Darvon, & Propoxyphene Prods. Liab. Litig.)*, 756 F.3d 917, 931 (6th Cir. 2014) the Sixth Circuit noted that "[t]he mere fact that someone believes something to be true does not create a plausible inference that it is true." *Id.*  Less than one month after *Germain*, the Sixth Circuit found, albeit in an unreported decision, "that pleading on information and belief may be permissible in certain circumstances," including when a plaintiff has "sufficient data to justify interposing an allegation on the subject" or when a plaintiff is required to "rely on information furnished by others." *Starkey v. JP Morgan Chase Bank, N.A.*, 573 F. App'x 444, 447–48 (6th Cir. 2014) (quoting Wright & Miller, 5 Fed. Prac. & Proc. Civ. § 1224 (3d ed. 2012)).  Since *Starkey*, district courts within this Circuit have permitted "upon information and belief" pleading regarding "matters within the exclusive possession of Defendants or are allegations which are based on sufficient factual information that make the allegations plausible."  *Hercules LED, LLC v. Uhl*, No. 5:25-CV-1099, 2025 U.S. Dist. LEXIS 214409, at *20–21 (N.D. Ohio Oct. 30, 2025); *accord Cmty. Church of Chesterland Ohio v. Penny*, 759 F. Supp. 3d 805, 810, n.4 (N.D. Ohio 2024); *Lee v. Dana Inc.*, No. 3:23-cv-2072, 2024 U.S. Dist. LEXIS 178077, at *23 (N.D. Ohio Sept. 30, 2024); *Hunter v. Booz Allen Hamilton, Inc.*, 418 F. Supp. 3d 214, 224 (S.D. Ohio 2019).  Under this standard, and upon careful consideration of the factual allegations in the Amended Complaint, the Court finds that Plaintiff's "upon information and belief" pleading relates to matters within the exclusive possession of Romo, Inc. or are allegations which are based on sufficient factual information that make the allegations plausible.

1.       **Plaintiff alleges a plausible claim for copyright infringement**

Plaintiff's first claim for relief is for direct copyright infringement under the Copyright Act (17 U.S.C. § 501).  "The Copyright Act creates a federal cause of action for copyright infringement." *Joe Hand Promotions, Inc. v. Griffith*, 49 F.4th 1018, 1022 (6th Cir. 2022) (citing 17 U.S.C. § 501). "It provides that '[t]he legal or beneficial owner of an exclusive right under a copyright is entitled . . . to institute an action for any infringement of that particular right.'" *Id.* (quoting 17 U.S.C. § 501(b)). "To succeed on a copyright-infringement claim, a plaintiff must establish '(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *ECIMOS, LLC v. Carrier Corp.*, 971 F.3d 616, 627–628 (6th Cir. 2020) (quoting *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991)).  Under the first prong, "[r]egistration of a valid copyright . . . is prima facie evidence that the work is entitled to protection." *Id.* (citing *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 387 F.3d 522, 534 (6th Cir. 2004)).  The second prong "test[s] whether any copying occurred (a factual matter) and whether the portions of the work copied were entitled to copyright protection (a legal matter)." *Id.* (quoting *Lexmark*, 387 F.3d at 534).

i.       **Plaintiff alleges a plausible claim for copyright infringement against Romo, Inc.**

Defendant Romo Inc. does not argue that Plaintiff lacks a valid copyright.  Instead, it asserts that "Plaintiff has not plausibly alleged facts to support a claim that Romo, Inc. infringed, willfully or otherwise, its sculpture and photograph copyrights."  (Doc. No. 26, PageID #1473.)   The Court will address each of Romo Inc.'s arguments in support of this assertion, below.

35

### a. Plaintiff plausibly alleges that Romo, Inc. infringed on the sculpture

In its Motion, Romo, Inc. makes two arguments regarding the sculpture: (1) that it did not copy the sculpture and (2) that it never accessed or had the opportunity to access the sculpture.

With respect to the first argument, Romo, Inc. argues that "the works that are alleged to have been copied are the photographs, not the sculpture, and Plaintiff represents to this Court that these photographs are original works of authorship that have been granted copyrights of their own." (*Id.* at PageID #1474.)  Further, Romo, Inc. argues that "courts have repeatedly delineated the distinction between images and the underlying subject matter they depict." (*Id.*)  Thus, Romo, Inc. concludes that "Plaintiff cannot permissibly allege facts that Romo, Inc. accessed and copied the sculpture by alleging that Romo, Inc. reproduced the copyrighted photographs because the sculpture and photographs are separate works." (*Id.* at PageID #1476.)

In its Opposition, Plaintiff argues that "a copyright holder to an underlying work may successfully assert a copyright infringement claim against a party who unlawfully copied a derivative work of the underlying work and thereby indirectly copied the underlying work itself." (Doc. No. 30, PageID #1553.)  Plaintiff asserts that "[w]hen Defendant Romo, Inc. copied Plaintiff's 2-D Photographs to create the Unauthorized Farrah Interiors Products, it copied almost the entire expression of the Photographs, but most importantly, it copied all of the protected elements of the underlying Artwork itself." (*Id.* at PageID #1554.)

In its Reply, Romo, Inc. argues "[h]aving failed to adequately define and delineate the sculpture's allegedly original elements from those of the photographs, Plaintiff nevertheless insists that the Court reach through the photographs to find that they fully convey the original elements of the sculpture." (Doc. No. 49, PageID #6868.)  Without citing any authority, Romo, Inc. asserts that

because "Plaintiff disavowed the sculpture itself from any copyrightable subject matter in the photographs, Plaintiff must delineate what it believes the protectable subject matter to be." (*Id.* at PageID #6869.) Romo, Inc. further argues that "[a]t bottom, Plaintiff not only fails to identify the elements of the sculpture that consistently carry through to the photographs but also shifts the scope of its rights." (*Id.* at PageID #6873.)

Romo, Inc.'s argument appears to be that it could not copy the Artwork by merely copying the Photographs. The parties have not cited any authority directly addressing Romo, Inc.'s argument.[4] Based on the Court's own independent research, courts have concluded that a defendant can infringe upon copyrighted material depicted in a photograph. *See Sensory Path Inc. v. Fit & Fun Playscapes LLC*, No. 3:19CV219-GHD-RP, 2022 U.S. Dist. LEXIS 209192, at *17 (N.D. Miss. Nov. 17, 2022) (holding that the defendant could have copied copyrighted material depicted in images posted on social media); *Dellamorte, LLC v. Michael Cos.*, No. 21-cv-2029, 2022 U.S. Dist. LEXIS 14887, at *14 (D.N.J. Jan. 27, 2022) (denying motion to dismiss copyright claim based upon a defendant copying a "three-dimensional sculpture of a silver bat" by accessing photos of the sculpture online); *cf. Cooley v. Penguin Group (USA), Inc.*, 31 F. Supp. 3d 599, 609 (S.D.N.Y. 2014) ("If he reproduces an image of a Cooley sculpture, he reproduces also the sculpture, which

---

[4] The Court has reviewed the cases cited by Romo, Inc. in its Motion and finds them distinguishable. The Tenth Circuit in *Meshwerks, Inc. v. Toyota Motor Sales U.S.A*, 528 F.3d 1258 (10th Cir. 2008) held that a digital recreation of a car was not entitled to copyright protection. *Id.* at 1269. The Southern District of California in *Masterson Mktg. v. KSL Rec. Corp.*, 495 Supp. 2d 1044 (S.D. Cal. Apr. 13, 2007) held a photograph of a building did not infringe on another photograph of the same building because "where a photographer takes a picture of the subject matter depicted in a copyrighted photograph, there is no infringement if the second photograph does not copy the original aspects of the copyrighted work." *Id.* at 1049. In *Tomaydo-Tomahhdo, LLC v. Vozary*, 629 F. App'x 685 (6th Cir. 2015) the Sixth Circuit held that a recipe book was not entitled to copyright protection because the plaintiff did not establish that the recipe book was original. *Id.* at 662–63. In *Pohl v. MH Sub I LLC*, 770 F. App'x 482 (11th Cir. 2019), the Eleventh Circuit held that there was a genuine issue of material fact concerning whether a dentist's before and after photos of a patient's teeth were protected by the Copyright Act. *Id.* at 489. Finally, *ABS Ent., Inc. v. CBS Corp.*, 908 F.3d 405 (9th Cir. 2018) dealt with whether remastered sound recordings were entitled to independent copyright protection. *Id.* at 417. At bottom, none of these cases addressed whether a defendant could infringe on copyright-protected subject matter depicted in a photograph.

infringes Cooley's rights if done without Cooley's authorization.").

Particularly instructive is the Sixth Circuit's decision in *Winfield Collection, Ltd. v. Gemmy Indus., Corp.*, 147 F. App'x 547 (6th Cir. 2005).  In *Winfield*, the plaintiff produced a design that enabled consumers to craft a figure of a witch.  *Id.* at 548–49.  The plaintiff obtained a copyright for its witch design, which included a photograph of a witch assembled according to that designing.  *Id.* a 549.   The plaintiff filed a copyright infringement claim based upon the defendant manufacturing an allegedly similar decorative witch figure.  *Id.*  The district court granted summary judgment in favor of the defendant on the plaintiff's copyright claim.  The district found, among other things, that: (1) the plaintiff's copyright protection extended only to the witch design, and not to the crafted witch figure itself; and (2) the plaintiff failed to establish access because while the Plaintiff "explain[ed] how [the defendant] had a reasonable opportunity to view figures crafted from [plaintiff's] design, [plaintiff] neglect[ed] to establish how [defendant] had a reasonable opportunity to view the design itself."  *Id.* at 550–51.

While ultimately affirming summary judgment, the Sixth Circuit disagreed with those two findings.  First, the Sixth Circuit determined "a competitor could [infringe on the plaintiff's design] by closely studying the photographs in [plaintiff's] catalogues and using them to reverse-engineer [the] witch."  *Id.* at 552.  Second, because plaintiff's "copyright protection extends to the actual witch decoration crafted from its design and photographs thereof" the Sixth Circuit found that the defendant "had access to photographs of plaintiff's assembled witch," which "was all that was necessary for [defendant] to have had the requisite access to make copying possible."  *Id.* at 553.

Pursuant to *Winfield*, the Court does not find as a matter of law, as Romo, Inc.'s argues, that "Plaintiff cannot permissibly allege facts that Romo, Inc. accessed and copied the sculpture by

alleging that Romo, Inc. reproduced the copyrighted photographs because the sculpture and photographs are separate works." (Doc. No. 26, PageID #1476.)  Romo, Inc. does not dispute that the Artwork is subject to copyright protection as alleged in the Amended Complaint.  And under *Winfield*, Plaintiff's "copyright protection extends to the actual [sculpture] and photographs thereof." *Id.* at 553.  Thus, as in *Winfield*, the Court finds that Romo, Inc. could have copied the Artwork by copying the Photographs.  *See also Sensory Path Inc.*, 2022 U.S. Dist. LEXIS 209192 at *17; *Dellamorte*, 2022 U.S. Dist. LEXIS 14887 at *14.  Accordingly, Plaintiff's claim for copyright infringement of the Artwork based upon Romo, Inc.'s alleged copying of the Photographs does not fail as a matter of law.

The Court is also persuaded by Plaintiff's argument that the Photographs could be derivative of the Artwork.  That is because "if a third party copies a derivative work without authorization, it infringes the original copyright owner's copyright in the underlying work to the extent the unauthorized copy of the derivative work also copies the underlying work." *Premier Dealer v. Serv. v. Allegiance Adm'rs, LLC*, No. 2:18-cv-735, 2021 U.S. Dist. LEXIS 141400, at *32 (S.D. Ohio July 29, 2021) (citing cases); *see also* 1 Nimmer on Copyright § 3.05.  Districts courts have concluded that a photograph can be derivative of underlying artwork.  *See Vila v. Deadly Doll, Inc.*, No. 2:21-cv-05837-ODW (MRWx), 2022 U.S. Dist. LEXIS 151683, at *6 (C.D. Cal. Aug. 23, 2022) ("Vila does not—and cannot—cite to any precedent stating that photographs can *never* be derivative works of any artwork displayed therein"); *FragranceNet.com, Inc. v. FragranceX.com, Inc.*, 679 F. Supp. 2d 312, 323 (E.D.N.Y. 2010) ("This Court is unable to locate any rule of law (and the defendant provides no citations supporting its claim) that photographs of third-parties' intellectual property are *per se* not copyrightable"); *Mackie v. Hipple*, No. C09-0164RSL, 2010 U.S. Dist. LEXIS 157025,

at *6–8 (W.D. Wash. Mar. 22, 2010) (denying motion to dismiss and rejecting the defendant's argument that "a photograph of a copyrighted sculpture cannot infringe the copyright in that sculpture because . . . it is not a 'derivative work' under the Copyright Act because it 'merely depicts' the sculpture").[5]  Indeed, in those same cases, the courts determined that whether the photos were derivative was a question of fact more appropriate for summary judgment and/or trial. *Vila v. Deadly Doll, Inc.*, 2022 U.S. Dist. LEXIS 151683 at *6; *Mackie*, 2010 U.S. Dist. LEXIS 157025 at *8; *FragranceNet.com*, 679 F. Supp. 2d at 324.

In sum, Plaintiff can establish a claim for infringement of the sculpture through allegations that Romo, Inc. copied Photographs of the Artwork.

Romo, Inc.'s second argument is that "Plaintiff has not alleged facts tending to establish that Romo, Inc. ever saw the sculptural work, or that it ever had an opportunity to see the sculptural work." (Doc. No. 26 at PageID #1476–77.)  It argues that "[t]he only conclusory allegation being made against the Romo, Inc. is that it (upon information and belief) viewed photographic works on an Instagram page and that "this is insufficient." (*Id.* at PageID #1477.)

Plaintiff responds in its Opposition that it alleged that Romo Inc. accessed its sculptural work (1) through "Plaintiff's public and widely disseminated Instagram account, @wifenyc" and (2) "through accessing/receiving copies of Plaintiff's Photographs from the other Defendants in this case or a third party." (*Id.* at PageID #1556.)  Plaintiff further argues that "factual and legal copying can be established because the infringing Unauthorized Farrah Interiors Products are at a minimum, substantially similar to Plaintiff's Artwork." (*Id.*)

---

[5] The Court recognizes that there is a split of authority as to whether photographs can be derivative of the underlying subject matter, and that the Sixth Circuit has not addressed this issue.  *See Schrock v. Learning Curve Int'l, Inc.*, 586 F.3d 513, 518 (7th Cir. 2009) ("Whether photographs of a copyrighted work are derivative works is the subject of deep disagreement among courts and commentators alike").

In its Reply, Romo, Inc. argues that "[w]hile Plaintiff claims that the photographs were widely disseminated, such that Romo, Inc. would have had a reasonable opportunity to view the photographs, Romo, Inc. explained in its opening brief and cited multiple cases that the allegation without more is insufficient to plausibly establish wide dissemination." (Doc. No. 49, PageID #6875.)  It further argues that Plaintiff must do more than simply repeat the words "widely disseminated" to plausibly allege access to the photographs" and "for that reason alone, Plaintiff has failed to state any copyright infringement claim against Romo, Inc. at all." (*Id.* at PageID #6875–76.)

To prevail on a copyright claim, "a plaintiff must either introduce direct evidence of the defendant's copying or prove it indirectly by showing that the defendant had access to the plaintiff's work and that there is a substantial similarity between it and the defendant's work, thus giving rise to an inference of copying." *Bridgeport Music, Inc. v. UMG Recordings, Inc.*, 585 F.3d 267, 275 (6th Cir. 2009) (citing *Ellis v. Diffie*, 177 F.3d 503, 506 (6th Cir. 1999)).  "Access is essentially hearing or having a reasonable opportunity to view the plaintiff's work and thus having the opportunity to copy."[6]  *Stokes v. Brinor*, 683 F. Supp. 3d 713, 722 (N.D. Ohio 2023) (quoting *Stromback v. New*

---

[6] Sixth Circuit law does not require Plaintiff to plead "wide dissemination" as Romo, Inc. argues.  In making this argument Romo, Inc. cites Ninth Circuit authority which holds that "[w]here there is no direct evidence of access, circumstantial evidence can be used to prove access either by (1) establishing a chain of events linking the plaintiff's work and the defendant's access, or (2) showing that the plaintiff's work has been widely disseminated." *See, e.g.*, *Loomis v. Cornish*, 836 F.3d 991, 995 (9th Cir. 2016).  Under the "widely disseminated" test, courts have found that merely posting something online is insufficient to establish access because posting something online "is nothing more than the bare possibility that Defendants might have seen the" post.  *Design Basics, L.L.C. v. DeShano Cos., Inc.*, No. 10-14419, 2012 U.S. Dist. LEXIS 135387, at *37 (E.D. Mich. Sept. 21, 2012).  The Court has not identified, and Romo, Inc. has not cited, any Sixth Circuit case adopting the Ninth Circuit's test.  The Court notes, as Romo, Inc.'s co-defendants point out, that some district courts within this Circuit have utilized the Ninth Circuit's test. *See, e.g.*, *id.*; *King Records, Inc. v. Bennett*, 438 F. Supp. 2d 812 (M.D. Tenn. 2006).  The Court is not convinced that this test even applies to Plaintiff's allegations, but even if it does, for purposes of this opinion only, the Court finds that the allegations in the complaint plausibly allege widespread dissemination, or at the very least a chain of events theory.  *See Turner v. Samsung Telcoms., Am., LLC*, No. CV 13-00629-MWF (VBKx), 2013 U.S. Dist. LEXIS 198631, at *12–13 (C.D. Cal. Nov. 4, 2013) (denying motion to dismiss because the plaintiff alleged that individuals retained by the defendants heard the plaintiff's recording online and delivered the recordings to the defendants).  In so finding, the Court is mindful that access is a factual matter, *Lexmark*, 387 F.3d at 534, and thus, determining widespread dissemination would be more appropriate for summary judgment or trial.

*Line Cinema*, 384 F.3d 283, 293 (6th 2004)). "Even if access cannot be proven, a plaintiff may prevail by showing a high degree of similarity between the two works." *Bridgeport*, 585 F.3d at 275 (citing *Ellis*, 177 F.3d at 506).

The Court finds that Plaintiff has pled access. Plaintiff alleges that Romo, Inc. "had access to the Photographs, which are copies of the preexisting Artwork, due to the public and widely disseminated nature of Plaintiff's Instagram account, @wifenyc," which "has 98,400 followers." (Doc. No. 22 at ¶ 66.) Plaintiff specifically alleges that "[u]pon information and belief, Defendants accessed the Photographs through Plaintiff's Instagram account." (*Id.*) Additionally, Plaintiff alleges "Romo, Inc. copied one or more of Plaintiff's Photographs of the Artwork and/or copied one or more of the digital or physical renderings featuring the Artwork created by the Temperley London Defendants." (*Id.* at ¶ 32.) The Court finds that these allegations plausibly demonstrate "a reasonable opportunity to view the plaintiff's work and thus having the opportunity to copy." *Stokes*, 683 F. Supp. 3d at 722; *see also Winfield*, 147 F. App'x at 553 (finding that "all that was necessary for [the defendant] to have the had the requisite access to make copying possible" was evidence establishing that the defendant "had access to photographs of [the] assembled witch"); *Sensory Path*, 2022 U.S. Dist. LEXIS 209192 at *17; *Dellamorte*, 2022 U.S. Dist. LEXIS 14887 at *14.

The Court also finds that Plaintiff plausibly alleges substantial similarity. Plaintiff alleges "[a]ll of the infringing products at issue are strikingly similar or at least substantially similar to Plaintiff's Artwork as depicted in the Photographs." (Doc. No. 22 at ¶ 67.) Contrary to Romo, Inc.'s assertion, there are factual allegations supporting this legal conclusion. Plaintiff attached side-by-side photos of the artwork and the allegedly infringing Romo products. (*Id.* at ¶ 31.) Plaintiff alleges that these products "include almost exact replicas of Plaintiff's Artwork with only some minor color

and pattern adjustments made to them." (*Id.* at ¶ 37.) Moreover, Plaintiff alleges "[t]he Unauthorized

Farrah Interiors Products all contain almost identical reproductions of Plaintiff's highly distinctive

Artwork in embroidered form" and explains:

> The repeated embroidered patterned print that makes up the Farrah Agave and
> Farrah Lilac Ash fabrics as well as the Farrah Agave and Farrah Lilac Ash cushions
> includes the copyright-protected elements of Plaintiff's Artwork, including, but not
> limited to, the original hook-shaped curved form of the Dioon Edule Palm hand
> shaped by Plaintiff, two of the three (3) black and white checkerboard patterned
> palm fronds, the distinctive curved stem of the plant as shaped by Plaintiff, the
> intricate geometric paint patterns and color-tipped palm fronds, the particular color
> blocking expressions and color schemes chosen by Plaintiff, and the entire unique
> shape of the heavily-altered curved plant as depicted in the Artwork. Plaintiff's
> Artwork and the Unauthorized Farrah Interiors Products contain identical design
> elements, and those elements are arranged in virtually the same way in relation to
> each other in both the Artwork and the embroidered patterns found in the
> Unauthorized Farrah Interiors Products. Defendants replicated the entire copyright-
> protected selection, coordination, and arrangement of the design elements in
> Plaintiff's Artwork. Only minor color alterations are present between the works."

(*Id.* at ¶ 38.) Given the procedural posture of this case,[7] the Court finds that these facts plausibly

allege substantial similarity.

To be clear, the Court is neither finding that Romo, Inc. accessed the works nor that the works

are indeed substantial similar. Romo, Inc. will have the opportunity to present evidence rebutting the

allegations in the complaint. But that is for another day. Thus, for all these reasons, the Court finds

that Plaintiff plausibly alleged claim for copyright infringement of the sculpture.

---

[7] The Sixth Circuit has cautioned that "summary judgment, particularly in favor of a defendant, is a practice to be used
sparingly" because substantial similarity is often an extremely close question of fact, but "a court may compare the two
works and render a judgment for the defendant on the ground that as a matter of law a trier of fact would not be permitted
to find substantial similarity." *Jones v. Blige*, 558 F.3d 485 (6th Cir. 2009). The Court finds the Sixth Circuit's warning
that granting judgment as a matter of law on the issue of "substantial similarity" should be done only "sparingly" weighs
against granting a Rule 12(b)(6) motion on the basis that "substantial similarity" has not been sufficiently alleged.

### b. Plaintiff plausibly alleges that Romo, Inc. infringed on the Photographs

In its Motion, Romo, Inc. makes similar arguments regarding the Photographs: (1) that it did not copy the Photographs and (2) that it never accessed or had the opportunity to access the Photographs.

With respect to its first argument, Romo, Inc. argues that "Plaintiff fails to identify any copyrightable aspect of the photographs that was allegedly copied by Romo, Inc." (Doc. No. 26, PageID #1479.)  It asserts that "an objective side-by-side comparison of Plaintiff's photographs and Romo, Inc.'s products demonstrates that none of Plaintiff's choices with respect to shading, lighting, or angling are present in any of the allegedly infringing products or advertising works." (*Id.*)  It further argues that "even without the benefit of this objective side-by-side comparison, that Romo, Inc. did not copy any of Plaintiff's original or creative choices is apparent from Plaintiff's own allegations." (*Id.* at PageID #1482.)

In its Opposition, Plaintiff argues that the Amended Complaint "alleges that Defendant Romo, Inc. copied the copyright-protected Photographs of the Artwork found on Plaintiff's Instagram account and then used those copies to create the Unauthorized Farrah Interiors Products, which were then depicted in the Unauthorized Advertising Works." (Doc. No. 30, PageID #1558.)  It further argues that it "has sufficiently asserted copyright protection in the Photographs and has sufficiently delineated the protectable elements of the Photographs, including the selection and arrangement of the subject of the Photographs, i.e. the Artwork, and the particular angles of the Artwork captured by Plaintiff." (*Id.* at PageID #1560.)

In its Reply, Romo, Inc. argues that "Plaintiff has yet to settle on the photographs' copyrightable subject matter, referring first to the protectable material as 'the angles and particular

44

compositions of the [p]hotographs', and then, later blurring the lines between the photographs and the sculpture by referring to the photograph's protectable material as "the selection and arrangement of the [sculpture].'" (Doc. No. 49, PageID #6868.) Romo, Inc. asserts that "[b]eing that the sculpture and photographs have their own separate copyrights, and Plaintiff disavowed the sculpture itself from any copyrightable subject matter in the photographs, Plaintiff must delineate what it believes the protectable subject matter to be." (*Id.* at PageID #6869.) Romo, Inc. further asserts that "Plaintiff does not delineate between the elements that make the sculpture distinctly original and independently creative over the photographs (or vice-versa), even though many of the photographer's original choices significantly impact—if not transform entirely—one's perception of the underlying subject matter." (*Id.*)

The Court recognizes that "some photographs are entitled to only thin protection because the range of creative choices available in selecting and arranging the photo's elements is quite limited." *NOCO Co. v. Shenzen Dingjiang Tech. Co.*, No. 1:21-cv-1483, 2022 U.S. Dist. LEXIS 3911, at *7 (N.D. Ohio Jan. 7, 2022). But the Court finds that the allegations in the Amended Complaint plausibly establish copying. Plaintiff alleges that "Defendants copied one or more of the Photographs to produce the unauthorized derivative works at issue in this lawsuit." (Doc. No. 22 at ¶ 4.) Plaintiff further alleges that "Defendants also violated Plaintiff's copyright rights in the Artwork and the Photographs by producing photographs, videos, and advertisements featuring the" products at issue. (*Id.* at ¶ 40.) Plaintiff also alleges that the products at issue "*include almost identical reproductions of Plaintiff's Photographs* and the underlying Artwork with only a few minor design changes and color alterations." (*Id.* at ¶¶ 89–90 (emphasis added).) If Romo, Inc. produced "almost identical reproductions" of the Photographs, then, logically, it would have copied the protected elements of the

Photographs.

To be sure, the Court is not finding that Romo, Inc. did in fact copy the Photographs.  But viewing these allegations in the light most favorable to Plaintiff, the Court finds that Plaintiff plausibly alleged that Romo, Inc. copied the Photographs.

Turning next to Romo, Inc.'s second argument, it argues that "Plaintiff also fails to allege that Romo, Inc., including any employee of Romo, Inc., had access to Plaintiff's Instagram page."  (Doc. No. 26, PageID #1482.)  It further argues that "[j]ust as it failed to do with respect to the sculptural work, Plaintiff has not pleaded any fact that would establish that the photographs were widely disseminated or commercially available, either in 2019, 2020, or 2022."  (*Id.* at PageID #1483.)

In its Opposition, Plaintiff argues that it "has plausibly alleged the Romo, Inc. had access to Plaintiff's Photographs."  (Doc. No. 30, PageID #1561.)  It asserts that "Romo, Inc. ignores the fact that Plaintiff has alleged that Defendant Romo, Inc. acquired access to the Photographs or copies of the Photographs from the other Defendants in this case or a third party and that the Unauthorized Farrah Interiors Products are at a minimum, substantially similar to Plaintiff's Photographs" and "the fact that Plaintiff has alleged in the FAC that the Unauthorized Farrah Interiors Products and Unauthorized Advertising Works are strikingly similar to the Photographs such that no evidence of access of the Photographs is necessary as access can be inferred."  (*Id.* at PageID #1561–62.)

In its Reply, Romo, Inc. asserts that "[w]hile Plaintiff claims that the photographs were widely disseminated, such that Romo, Inc. would have had a reasonable opportunity to view the photographs, Romo, Inc. explained in its opening brief and cited multiple cases that the allegation without more is insufficient to plausibly establish wide dissemination."  (Doc. No. 49, PageID #6875.)  It further argues that "every paragraph cited by Plaintiff in this section of the FAC is conclusory, and devoid

of any factual basis" and that "Plaintiff must do more than simply repeat the words 'widely disseminated' to plausibly allege access to the photographs." (*Id.* at PageID #6875–76.)

Under applicable Sixth Circuit law, and for the same reasons stated in the Court's analysis concerning the Artwork, the Court also finds that the Amended Complaint plausibly alleges access to Photographs.[8]  (*See supra* at (IV)(B)(1)(i)(a); *see also* Doc. No. 22 at ¶¶ 66–68.)  Similarly, given the procedural posture of this case, the Court also finds that the Amended Complaint plausibly alleges substantial similarity.[9]  (*See supra* at (IV)(B)(1)(i)(a); Doc. No. 22 at ¶¶ 31, 37–38, 67–68, 88–89, 137–38.)

As with the Artwork, the Court is neither finding that Romo, Inc. accessed the Photographs nor that the Photographs are substantially similar.  The Court simply finds that Plaintiff has sufficiently alleged a plausible claim for copyright infringement of the Photographs.

In sum, the Court finds that the Amended Complaint states a plausible claim for direct copyright infringement against Romo, Inc.

### ii.    Plaintiff alleges a plausible claim for copyright infringement against Romo UK

In its Motion, Romo UK takes the same position as Romo, Inc.: (1) Plaintiff fails to plausibly allege that Romo UK accessed its works; and (2) the accused products are not substantially similar to the Artwork and the Sculpture.  (Doc. No. 51, PageID #6915.)

Turning first to Romo UK's argument regarding access, Romo UK argues that "Plaintiff makes the conclusory allegation that its Instagram posts were so widely disseminated that either

---

[8] The Court also finds that, to the extent the Ninth Circuit's test applies here, that Plaintiff plausibly alleged wide dissemination and/or a chain of events theory of access.  *See supra* n.6.

[9] Again, the Court declines, for purposes of this opinion only, to hold that the Photographs and the products at issue are not substantially similar.  *See supra* n.7.

Romo UK saw its posts, or alternatively, the other Defendants (or some other third-party) saw the posts, and thereafter, gave Romo UK the photographs."  (Doc. No. 51, PageID #6916–19.)  Romo UK, like Romo, Inc., relies upon Ninth Circuit authority to suggest that Plaintiff failed to allege plausible widespread dissemination.  (*Id*.)  Based on the resolution of Romo, Inc.'s Motion, the Court also rejects Romo UK's argument.  Romo UK primarily relies upon *Woodland v. Hill*, 136 F.4th 1199 (9th Cir. 2025), which is a case analyzing how a plaintiff pleads access to copyrighted materials on social media under the Ninth Circuit's widespread dissemination test.  The Court is not bound by this decision,[10] and for the same reasons explained above, the Court finds that the Amended Complaint plausibly alleges Romo UK accessed the Artwork and the Sculpture under Sixth Circuit law.  (*See supra* at (IV)(B)(1)(i); *see also* Doc. No. 22 at ¶¶ 66–68.)

Turning next to Romo UK's argument regarding substantial similarity, Romo UK argues that "not only does Plaintiff fail to plausibly allege striking similarity, Plaintiff also does not plausibly meet the much lower bar of substantial similarity."  (Doc. No. 51, PageID #6920.)  The Court likewise rejects this argument based on the resolution of Romo, Inc.'s substantial similarity argument.  (*See supra* at (IV)(B)(1)(i); *see also* Doc. No. 22 at ¶¶ 31, 37–38, 67–68, 88–89, 137–38.)

Accordingly, Plaintiff alleges a plausible copyright infringement claim against Romo UK.

### iii. Plaintiff alleges a plausible claim for copyright infringement against the Temperley London entities

In their Motion, the Temperley London entities make substantially the same arguments that Romo UK made in its Motion.  (Doc. No. 52, PageID #6960.)  For the same reasons explained above, the Court rejects their arguments and finds that Plaintiff alleges a plausible copyright infringement claim against the Temperley London entities.  (*See supra* at (IV)(B)(1)(i) and (ii); *see also* Doc. No.

---

[10] *See supra* n.6 and n.8.

48

22 at ¶¶ 9, 11–12, 23–25, 66–68, 79, 85, 124–25.)

> **2.**      **Plaintiff alleges a plausible claim for contributory infringement and vicarious infringement against Romo, Inc., Romo UK, and the Temperley London entities**

Under Sixth Circuit law:

> Liability for contributory infringement is based on the defendant's relationship to the direct infringement. *Ez-Tixz, Inc. v. Hit-Tix, Inc.*, 919 F. Supp. 728, 732-33 (S.D.N.Y. 1996). Contributory infringement occurs when one, "with knowledge of the infringing activity, induces, causes, or materially contributes to the infringing conduct of another." *Gershwin Publ'g Corp. v. Columbia Artists Mgmt., Inc.*, 443 F.2d 1159, 1162 (2d Cir. 1971).

*Bridgeport Music Inc. v. Rhyme Syndicate Music*, 376 F.3d 615, 622 (6th Cir. 2004).  To state a claim for contributory infringement under Sixth Circuit law "a plaintiff must allege: (1) direct copyright infringement [by] a third-party; (2) knowledge by the defendant that the third-party was directly infringing; and (3) [defendant's] material contribution to the infringement."  *NCR Corp. v. Korala Assocs.*, 512 F.3d 807, 817 (6th Cir. 2008) (quoting *Parker v. Google, Inc.*, 242 F. App'x 833, 837 (3d Cir. 2007)).

Under the third element, "secondary liability may be imposed on a defendant who does nothing more than encourage or induce another to engage in copyright infringement." *Bridgeport Music*, 376 F.3d at 817 (quoting *Warner Bros. Entertainment, Inc. v. Ideal Work Direct*, 516 F. Supp. 2d 261 (S.D.N.Y. 2007)).  But the doctrine is limited to "instances where a defendant '*intentionally* induc[es] or encourage[es] direct infringement." *Navarro v. P&G*, 515 F. Supp. 3d 718, 750–51 (S.D. Ohio 2021) (quoting *MGM Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930 (2005)) (emphasis and alterations in original).  Thus, "contributory infringement occurs only when a party takes 'active steps . . . to encourage infringement." *Id.* at 750 (quoting *Grokster*, 545 U.S. at 936).

The Sixth Circuit has adopted a two-part test for the similar doctrine of vicarious liability.  "A

49

defendant can be held vicariously liable if [1] he enjoys a direct financial benefit from the infringing activity and [2] 'has the right and ability to supervise' the infringing activity." *Bridgeport*, 376 F.3d at 621 (citing *Ellison v. Robertson*, 357 F.3d 1072, 1076 (9th Cir. 2004)). Because vicarious liability is an "'outgrowth' of the common law doctrine of *respondeat superior*," a plaintiff does not need to establish knowledge on behalf of the vicarious infringer." *Gordon v. Nextel Communs.*, 345 F.3d 922, 926 (6th Cir. 2003) ("Lack of knowledge of the infringement is irrelevant").

### i. Plaintiff alleges a plausible claim for contributory infringement and vicarious infringement against Romo, Inc.

The Court first addresses whether Plaintiff has stated a claim for contributory infringement against Romo, Inc. In its Motion, Romo, Inc. argues that "Plaintiff does not allege facts suggesting that Romo, Inc. had knowledge of any allegedly infringing activity of any other defendant, much less having materially contributed to it." (Doc. No. 26, PageID #1485.) In its Opposition, Plaintiff argues "the FAC has sufficiently alleged that Defendant Romo, Inc. intentionally induced the direct infringement of the Artwork and Photographs by the other Defendants to create the Unauthorized Farrah Interiors Products and to subsequently promote, display, sell, and distribute those infringing products while knowing that these products were infringing upon Plaintiff's copyrights, thereby plausibly alleging its claim for contributory infringement." (Doc. No. 30, PageID #1562–63.) In its Reply, Romo, Inc. argues that "[n]ot one fact is alleged to plausibly establish that Romo, Inc. knew or would have reason to know of the alleged direct infringement of any other Defendant." (Doc. No. 49, PageID #6877.)

The Court is puzzled by Romo, Inc.'s argument. Plaintiff expressly pleads knowledge and material contribution. Plaintiff alleges "that upon information and belief, the ROMO Defendants knowingly induced, caused, participated in, aided and abetted, and profited from the creation, sale,

50

display, and distribution of the Unauthorized Farrah Interiors Products by the Temperley London Defendants."  (Doc. No. 22 at ¶ 158.)  Plaintiff alleges "the collaboration between the Temperley London Defendants and the ROMO Defendants concerning this collection was a very close one." (*Id.*)  Plaintiff further alleges that "the designs chosen for the collection . . . were deliberate choices that resulted from multiple discussions between employees/agents of the Temperley London Defendants and employees/agents of the ROMO Defendants."  (*Id.*)  Plaintiff also alleges that the infringing products were displayed at a Romo showroom.  (*Id.* at ¶ 92.)  Thus, Plaintiff has alleged a plausible contributory infringement claim.

The Court next addresses whether Plaintiff has stated a claim for vicarious infringement against Romo, Inc.  In its Motion, Romo, Inc. argues that "Plaintiff fails to allege that Romo, Inc. had the right and ability to supervise any other defendants' allegedly infringing activities" and that "Plaintiff's allegation that Romo, Inc. is on the lowest rung of the Romo corporate structure supports precisely the opposite inference."  (Doc. No. 26, PageID #1485.)  In its Opposition, Plaintiff argues "[t]he FAC further asserts that Defendant Romo, Inc. is vicariously liable for the infringements by the other Defendants as there was a 'close' collaboration between the ROMO Defendants, including Defendant Romo, Inc., with the Temperley London Defendants to design the Temperley London x ROMO interiors collection such that Defendant Romo, Inc. had the right and ability to supervise and exercise control over the infringing conduct of the other Defendants in creating the collection and choosing the subsequent marketing endeavors to promote it."  (Doc. No. 30, PageID #1563.)   In its Reply, Romo, Inc. argues that "Plaintiff makes no attempt to allege facts tending to establish that Romo, Inc. had any right or ability to supervise the allegedly infringing activity of any other Defendant."  (Doc. No. 49, PageID #6877.)

51

Plaintiff's vicarious liability claim is not limited to "ownership structure" as Romo, Inc. suggests.  Plaintiff alleges that "Defendants, and each of them, are also vicariously liable for the infringements alleged herein because they had the right and ability to supervise and control the infringing conduct and because they had a direct financial interest in the infringing conduct."  (Doc. No. 22 at ¶ 159.)  Plaintiff alleges that "Romo, Inc. . . . had the right and ability to supervise and control the infringing conduct of the Temperley London Defendants as it relates to the Unauthorized Farrah Interiors Products and related Unauthorized Advertising Works and had a direct financial interest in the reproduction, display, distribution, and sale of the Unauthorized Farrah Interiors Products."  (*Id.*)  Viewing the allegations in the Amended Complaint in the light most favorable to Plaintiff, the Court finds that, at a minimum, the factual allegations infer that Romo, Inc. enjoys a direct financial benefit from Temperley London's infringing activity and that Romo, Inc. has the right and ability to supervise the infringing activity.  (*Id.* at ¶¶ 92, 158–159.)  Romo, Inc. has not provided the Court with any binding authority suggesting that these allegations are insufficient.  Thus, Plaintiff plausibly alleges a vicarious liability claim against Romo, Inc.

### ii.     Plaintiff alleges a plausible claim for contributory infringement and vicarious infringement against Romo UK

Romo UK argues that "Plaintiff does not allege facts suggesting that Romo UK had knowledge of any allegedly infringing activity of any other defendant, much less having materially contributed to or supervised it."  (Doc. No. 51, PageID #6923.)  Romo UK further argues that "Plaintiff has not alleged facts that plausibly establish that Romo UK had anything to do with the claims against the other defendants, much less controlled them or know about their alleged infringement of Plaintiff's copyrights."  (*Id.*)  Based on the resolution of Romo, Inc.'s similar arguments, the Court, viewing the allegations in the Amended Complaint in the light most favorable

52

to Plaintiff, finds that Plaintiff states plausible claims for contributory and vicarious liability against Romo UK.  (*See* Doc. No. 22 at ¶¶ 158–59.)

### iii. Plaintiff alleges a plausible claim for contributory infringement and vicarious infringement against the Temperley London entities

In its Motion, the Temperley London entities argue that "Plaintiff's indirect infringement claims must also be dismissed given that Plaintiff asserts that every defendant supervised, controlled, or otherwise contributed to the allegedly infringing acts of every other defendant solely due to 'the close relationships between the Defendants, including the collaborative nature between the two brands at issue (i.e. Temperley London and ROMO)[.]'" (Doc. No. 52, PageID #6960–61 (quoting Doc. No. 22 at ¶ 69).)  They then contend that "Plaintiff only alleges that the accused collections . . . were 'put out by TMLL Ltd.'" and "does not allege [] any facts showing that the other Temperley entities were engaged in or aware of allegedly infringing activity, yet tries to justify naming these companies solely because they 'had the same director[.]'"  (*Id.* at PageID #6961 (quoting Doc. No. 22 at ¶ 69).)

In its Opposition, Plaintiff argues that the Amended Complaint "asserts that Temperley London collaborated with, knowingly induced, caused, participated in, aided and abetted, and profited from the infringing acts of [] Romo, Inc., Alice Temperley MBE, and the Romo UK" and that the Amended Complaint "asserts that there was a close relationship between all of the Defendants and a collaborative nature between the two brands at issue." (Doc. No. 57, PageID #7100.)  Plaintiff further argues that "Temperley London is vicariously liable for the infringements of Romo, Inc. and Romo UK" because "there was a close collaboration between the two brands at issue" and "Temperley London had the right and ability to supervise and exercise control over the infringing conduct of the other Defendants."  (*Id.* at PageID #7100–01.)

53

In their Reply, the Temperley London entities argue that Plaintiff "reiterates its conclusory allegations" and "attempts to reframe an arms-length commercial relationship as a coordinated effort to commit copyright infringement." (Doc. No. 63, PageID #7259.)  They further assert that "Plaintiff does not plead facts even remotely suggesting knowledge and instead proclaims that Temperley London simply knew of the alleged infringement." (*Id.* at PageID #7260.)  Pointing to Ms. Jha's Declaration, they contend that "Plaintiff's allegation that Temperley Holdings Ltd. is vicariously liable for the alleged infringement makes no sense" because "TMLL Ltd. is responsible for all business operations of the Temperley London brand." (*Id.*)[11]

The Court is also puzzled by the Temperley London entities' arguments.  Contrary to their argument, Plaintiff expressly alleges that the other Temperley entities were engaged in or aware of allegedly infringing activity.  Plaintiff alleges that "the Temperley London Defendants knowingly induced, caused, participated in, aided and abetted, and profited from the creation, sale, display, and distribution of the Unauthorized Farrah Interiors Products by the ROMO Defendants." (Doc. No. 22 at 158.)  Plaintiff further alleges that "the collaboration between the Temperley London Defendants and the ROMO Defendants concerning this collection was a very close one, and the designs chosen for the collection . . . resulted from multiple discussions between employees/agents of the Temperley London Defendants and employees/agents of the ROMO Defendants. (*Id.*)  The Court finds that these allegations sufficiently allege a contributory liability claim under Sixth Circuit law.

For similar reasons, the Court finds that Plaintiff states a plausible vicarious liability claim against the Temperley London entities.  Plaintiff alleges that "Defendants, and each of them, are also vicariously liable for the infringements alleged herein because they had the right and ability to

---

[11] Because the Court's review is limited to the allegations in the Amended Complaint, the Court declines to consider the parties' arguments concerning Ms. Jha's Declaration.

supervise and control the infringing conduct and because they had a direct financial interest in the infringing conduct." (*Id.* at ¶ 159.)  Plaintiff alleges that "the Temperley London Defendants had the right and ability to supervise and control the infringing conduct of the ROMO Defendants as it relates to the Unauthorized Farrah Interiors Products and related Unauthorized Advertising Works and had a direct financial interest in the reproduction, display, distribution, and sale of the Unauthorized Farrah Interiors Products." (*Id.*)   The Temperley London defendants have not provided the Court with any binding authority suggesting that these allegations are insufficient to state a vicarious liability claim.

### 3.      Plaintiff alleges plausible DMCA claims

#### i.      Plaintiff alleges a plausible DMCA claim against Romo, Inc.

Plaintiff brings claims under the Sections 1202(a) and (b) of the Digital Millenium Copyright Act ("DMCA") against Romo, Inc.  The Court will analyze the parties' arguments in the same order presented in their briefing.

##### a.      Plaintiff alleges a plausible Section 1202(b) claim

In its Motion, Romo, Inc. argues that "Plaintiff's CMI removal claims should be dismissed" because "Plaintiff does not describe how it came to believe Romo, Inc. made copies of the photographs to be used as an 'inspiration' board or something similar', or what it did to investigate whether Romo, Inc. even created 'digital and/or physical renderings' to produce embroidered product." (Doc. No. 26, PageID #1487.)  Further, Romo, Inc. argues that "[e]ven if one assumed that Romo, Inc.'s interiors products infringed Plaintiff's copyrights, Plaintiff would still lack a viable DMCA claim, as the sculptures and photographs would have been copied and incorporated into entirely different mediums and products." (*Id.* at PageID #1488.)

In its Opposition, Plaintiff points to Paragraph 180 of the Amended Complaint to assert that

55

those allegations "sufficiently support Plaintiff's claim that Defendant Romo, Inc. violated 17 U.S.C. § 1202(b)(1)." (Doc. No. 30, PageID #1566.)  It also asserts that "it is not necessary for Plaintiff to show evidence of a pattern of conduct or modus operandi concerning Romo, Inc.'s removal of the CMI at this time, and it is not even a requirement that a plaintiff establish such evidence, but rather it is one way in which a plaintiff can meet its burden of proof." (*Id.* at PageID #1566–67.)

In its Reply, Romo, Inc. argues that "Plaintiff is effectively arguing that a claim under 17 U.S.C. § 1202 is entirely indistinguishable from a run-of-the-mill copyright infringement cause of action under 17 U.S.C. § 501." (Doc. No. 49, PageID #6879.)  It further asserts that "the accused products are different creations that Plaintiff believes incorporate its copyrighted subject matter," which "are not 'copies' under the DMCA." (*Id.* at PageID #6881.)

"A section 1202(b)(1) violation occurs when a person (i) without authority of the copyright owner or the law (ii) intentionally removes or alters any copyright management information (iii) knowing or having reasonable grounds to know that it will induce, enable, facilitate, or conceal an infringement of the federal copyright laws." *Gordon v. Nextel Communs.*, 345 F.3d 922, 927 (6th Cir. 2003).  To establish a § 1202(b)(3) claim, the plaintiff must prove that the defendant "possessed actual knowledge of the unauthorized change to the copyright management information." *Id.* at 926.

"A cause of action under Section 1202 potentially lies whenever . . . [copyright management information] is falsified or removed, regardless of the form in which that information is conveyed." *Design Basics, LLC v. Ashford Homes, LLC*, No. 1:17-cv-273, 2018 U.S. Dist. LEXIS 212442, at *50 (S.D. Ohio Dec. 18, 2018) (quoting *Shell v. Lautenschlager*, No. 1:15CV1757, 2017 U.S. Dist. LEXIS at *(N.D. Ohio Oct. 31, 2017)).  "Simply demonstrating copyright infringement does not in and of itself prove that a defendant has removed CMI from a work." *Shell*, 2017 U.S.

56

Dist. LEXIS 180596 at *22 (citing cases).  While there is some authority suggesting that "no DMCA violation exists where the works are not identical," *Kira Kara Corp. v. Western Stone & Metal Corp.*, No. CV 20-1931-DMG (Ex), 2020 U.S. Dist. LEXIS 189425, at *18 (C.D. Cal. Aug. 14, 2020), there is also authority suggesting that "an infringing work need not be an identical copy to violate the DMCA."  *New Parent World, LLC v. True to Life Prods.*, No. CV-23-08089-PCT-DGC, 2024 U.S. Dist. LEXIS 172098, at *5 (D. Ariz. Sept. 24, 2024) (citing *ADR Int'l v. Inst. for Supply Mgt.*, 667 F. Supp. 3d 411, 427 (S.D. Tex. 2023) ("none of the cases Defendants cite support the proposition that § 1202 requires a plaintiff to plead the allegedly infringing works are identical copies of the plaintiff's work"); *GC2 Inc. v. Int'l Game Tech., IGT, Doubledown Interactive LLC*, 391 F. Supp. 3d 828, 843–44 (N.D. Ill. 2019)) (rejecting "the broad proposition that derivative or collaborative works are categorically excluded from protection under the DMCA's provision for removal of copyright management information")); *see also* 4 Nimmer on Copyright § 12A.10 ("The authority supposedly requiring identity fails to withstand scrutiny").

As the *New Parent* court observed, "[t]he language of the DMCA does not require identical copies" because it defines "copies" as "material objects . . . in which a work is fixed by any method now known or later developed, and from which the work can be perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine or device."  2024 U.S. Dist. LEXIS 172098 at *5–6.  "Thus, to qualify as a copy under the DMCA, the allegedly infringing work must be fixed in some tangible form, from which the work can be perceived, reproduced, or otherwise communicated."  *Id.* (citing *Columbia Pictures Indus., Inc. v. Galindo*, No. 20-CV-3129, 2022 U.S. Dist. LEXIS 210979, at *23 (C.D. Cal. Nov. 18, 2022)).

Romo, Inc. primarily relies on *Faulkner Press, L.L.C. v. Class Notes, L.L.C.*, 756 F. Supp. 2d

1352 (N.D. Fla. Nov. 23, 2010), in which the court found that the plaintiff's §1202(b) claim failed as a matter of law. *Id.* at 1360.  The plaintiff, a college professor, argued that the defendant violated §1202(b) when the defendant took notes from his class, and those notes were compiled into note packages. *Id.* at 1359–60.  The *Faulkner* court concluded that "nothing was removed from the copyrighted works" because the "information from Dr. Moulton's courses was allegedly copied into a different form and then incorporated into the note packages," and thus, "[n]o copyright management information was removed from Dr. Moulton's product or original work." *Id.* at 1359.

As the author of leading treatise has observed, "[t]he key point [from *Faulkner*] is that the defendant did not alter any product originating from plaintiff; it produced its own product, which it duly marked." 4 Nimmer on Copyright § 12A.10.  By contrast, here, Plaintiff expressly alleges that Romo, Inc. made copies of the photographs and removed Plaintiff's CMI.  In Paragraph 180 of the Amended Complaint, Plaintiff alleges that Romo, Inc. "intentionally remove[d] or alter[ed] any copyright management information" by removing "Plaintiff's trade name and Instagram handle, @wifenyc, as well as the titles of the Photographs and Artwork displayed under or next to the Photographs on Plaintiff's Instagram account."[12]  Plaintiff further alleges that Romo, Inc. "made identical copies of the Photographs posted on Plaintiff's Instagram sans Plaintiff's copyright management information to be used in an 'inspiration' board or something similar" and that Romo, Inc. "removed Plaintiff's copyright information from one or more digital copies of one or more of

---

[12] *See Sydney Nicole LLC v. Alyssa Sheil LLC*, No. 1:24-CV-00423, 2024 U.S. Dist. LEXIS 207937, at *9 (W.D. Tex. Nov. 15, 2024) ("Given that Gifford may properly allege a DMCA claim based on Sheil's use of 'copies' of her work and CMI has been interpreted to include username information in social media posts, the undersigned finds that Gifford sufficiently stated a claim under the DMCA"); *Batra v. PopSugar, Inc.*, No. 18-cv-03742-HSG, 2019 U.S. Dist. LEXIS 20299, at *4–5 (N.D. Cal. Feb. 7, 2019) (holding plaintiff alleged a plausible DMCA claim based on removal of Instagram sidebar which included "information regarding the author of the photograph, including his or her name and/or link(s) to personal website(s) or other social media sites, such as a personal YouTube channel").

Plaintiff's Photographs." (Doc. No. 22 at ¶ 180.) Thus, even under the rule articulated in *Faulkner*, Plaintiff has pled a plausible § 1202(b) claim.[13]

The Court also finds that the allegations in the Complaint support an inference that Romo, Inc. removed Plaintiff's CMI "knowing or having reasonable grounds to know that such action would induce, enable, facilitate, or conceal her own infringement and the infringement of the other Defendants and any third party of Plaintiff's Artwork and the Photographs." (Doc. No. 22 at ¶ 180.) Plaintiff alleges that by removing the CMI, Romo, Inc. "could more easily represent to the world that they were the authors of the Unauthorized Farrah Apparel Products, Unauthorized Palmae Apparel Products, and Unauthorized Farrah Interiors Products and could thereby profit accordingly." (*Id.* at ¶ 181.) Courts have found that similar allegations plausibly allege a § 1202(b) claim. *Andy Ryan Photographer, LLC v. Dagny's Real Est. LLC*, No. 24-CV-7787 (KMK), 2025 U.S. Dist. LEXIS 189636, at *13–14 (S.D.N.Y. Sept. 25, 2025); *Hirsch v. F. Daily Inc.*, No. 18-CV-6531, 2021 U.S. Dist. LEXIS 26752, at *14 (E.D.N.Y. Feb. 9, 2021) (finding a Section 1202(b)(1) claim was sufficiently pled where plaintiff alleged the existence of CMI, its removal by defendant, and then simply alleged 'that the removal was 'intentional and knowing'"), *adopted by* 2021 U.S. Dist. LEXIS

---

[13] Plaintiff's § 1202(b) claim also includes allegations that "[t]he Unauthorized Farrah Interiors Products and Unauthorized Advertising Works do not contain Plaintiff's copyright management information and are unauthorized copies of Plaintiff's Artwork and the Photographs." (*Id.*) Because courts have concluded "an infringing work need not be an identical copy to violate the DMCA." *New Parent*, 2024 U.S. Dist. LEXIS 172098 at *5, and the Sixth Circuit has not spoken on this issue, the Court declines to hold that this allegation fails as a matter of law under the rule articulated in *Faulkner*. Romo, Inc. only points the court to *Faulkner* and the Court has identified conflicting authority, as identified above. The Court declines to categorically rely on one out-of-circuit decision to dismiss Plaintiff's 1202(b) claim based on the Unauthorized Farrah Interiors Products and Unauthorized Advertising Works. *See Design Basics*, 2018 U.S. Dist. LEXIS 212442 at *50–51 (denying summary judgment on DMCA claim when there was genuine issue of material fact as to whether the works at issue were substantially similar). The Court, however, "does not adopt a more precise construction of the statute at this point in the case." *New Parent*, 2024 U.S. Dist. LEXIS 172098 at *7. "At summary judgment and trial, the parties will need to address these statutory provisions more carefully, describing exactly what they each prohibit and then showing why the various categories of the works at issue in the complaint either do or do not satisfy the statute's requirements. Generalities like those contained in the present briefing will not be sufficient to resolve these claims." *Id.*

59064 (Aug. 26, 2021); *see also* Fed. R. Civ. P. 9(b) ("Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally").

Accordingly, the Court finds that Plaintiff alleges a plausible § 1202(b) claim.

### b.    Plaintiff alleges a plausible Section 1202(a) claim

Romo, Inc. argues that "Plaintiff's distribution of false CMI claims should be dismissed" because "the products that were allegedly distributed are Romo, Inc.'s products and materials, not Plaintiff's sculpture and photographs. (Doc. No. 26, PageID #1488.)  Even if Plaintiff had made such an argument, Romo, Inc. argues, without citing any authority, that Plaintiff's claim would fail because "Plaintiff improperly groups the Romo entities together" and "The Romo Group copyright management statement is not false at all." (*Id.* at PageID #1489.)  Romo, Inc. also argues that "Plaintiff also fails to allege that Romo, Inc. acted with the necessary intent." (*Id.* at PageID #1489.)  In its Opposition, Plaintiff argues that "the DMCA does not require the infringing work to be an identical copy of the copyrighted work for a claim under the DMCA to be actionable." (Doc. No. 30, PageID #1568.)  In its Reply, Romo, Inc. argues that "Plaintiff is effectively arguing that a claim under 17 U.S.C. § 1202 is entirely indistinguishable from a run-of-the-mill copyright infringement cause of action under 17 U.S.C. § 501." (Doc. No. 49, PageID #6979.)  It further asserts that "the accused products are different creations that Plaintiff believes incorporate its copyrighted subject matter," which "are not 'copies' under the DMCA." (*Id.* at PageID #6881.)

Section 1202(a) of the DMCA provides:

No person shall knowingly and with the intent to induce, enable, facilitate, or conceal infringement—

(1) provide copyright management information that is false, or

(2) distribute or import for distribution copyright management information that is

60

false.

"To properly plead a violation of § 1202(a), a plaintiff must allege that '(1) defendant knowingly provided false copyright information; and (2) that the defendant did so with the intent to induce, enable, facilitate, or conceal an infringement." *Grossman v. Velvet Ropes, Inc.*, No. 3:24-cv-01022, 2024 U.S. Dist. LEXIS 227815, at *4 (M.D. Tenn. Dec. 17, 2024) (quoting *McCleese Natorp's, Inc.*, No. 1:20-C-118, 2021 U.S. Dist. LEXIS 104619, at *12–13 (S.D. Ohio June 3, 2021)). As with a 1202(b) claim, courts have concluded that the infringing copy need not be identical. *New Parent*, 2024 U.S. Dist. LEXIS 172098 at *5.

Under this standard, the Court finds that Plaintiff alleges a plausible § 1202(a) claim. Plaintiff alleges that Romo, Inc. "knowingly and with the intent to induce, enable, facilitate, or conceal infringement, provided and distributed copyright management information that is false when they displayed unauthorized copies of the Artwork and the Photographs in the form of derivative works, namely the Unauthorized Advertising Works depicting the Unauthorized Farrah Apparel Products and Unauthorized Farrah Interiors Products, on their U.S. website . . . and Facebook account . . . with their brand names . . . and Instagram handle . . . listed above and under (as seen on an iPhone) or next to (as seen on a computer) the Unauthorized Advertising Works." (Doc. No. 22 at ¶ 177.) It further alleges that Romo, Inc. "also distributed false copyright management information when they displayed the Unauthorized Farrah Apparel Products and Unauthorized Farrah Interiors Products at their showrooms throughout the U.S. and via other third-party distributors, both online and through brick-and-mortar channels of distribution, while displaying the brand name, ROMO, above/next to/in connection with the items when they were on display." (*Id.*) Plaintiff then alleges that "[t]hrough displaying their copyright management information in connection with display and offering for sale

the Unauthorized Farrah Interiors Products," Romo, Inc. "held out to the public that these designs were original creations authored by the ROMO Defendants." (*Id.* at ¶ 178.) Plaintiff further alleges that "[t]hese statements are blatant misrepresentations that constitute the provision and distribution of false copyright management information as Plaintiff is the copyright holder to the Artwork featured on the Unauthorized Farrah Interiors Products, not the ROMO Defendants." (*Id.*)

The Court finds that these allegations are sufficient to state a plausible § 1202(a) claim. *See Andy Ryan Photographer*, 2025 U.S. Dist. LEXIS 189636, at *8–9.[14]

### ii. Plaintiff alleges a plausible DMCA claim against Romo UK

Romo UK contends that Plaintiff's DMCA claims fails for the same reasons Romo, Inc. argued in its respective Motion.[15] (Doc. No. 51 PageID #6923–26.) For the same reasons explained above, the Court finds that Plaintiff states a plausible DMCA claim against Romo UK. (*See* Doc. No. 22 at ¶¶ 178–81.)

### iii. Plaintiff alleges a plausible DMCA claim against the Temperley London entities

The Temperley London entities also make the same argument that Romo UK made in its Motion. (Doc. No. 52, PageID #6961–63.) The Court likewise rejects the Temperley London entities' argument, and, for the same reasons explained above, finds that Plaintiff states a plausible DMCA claim against the Temperley London entities. (*See* Doc. No. 22 at ¶¶ 171–75.)

---

[14] The Court recognizes that these allegations would be insufficient under the rule articulated in *Faulkner*. But since the Court declines to adopt that rule categorically here, the Court declines to dismiss Plaintiff's § 1202(a) claim at this time. *See supra* n.13.

[15] Romo UK makes an additional argument that "Plaintiff has not established that Sophia Parker Studios had any identifying CMI conveyed in connection with the pictures posted to the personal Instagram account, @WIFENYC." (Doc. No. 51, PageID #6925.) The Court disagrees. The Amended Complaint alleges that @wifenyc is "Plaintiff's Instagram account." (Doc. No. 22 at ¶ 66.) But the Court notes that Plaintiff also describes the Instagram account as "*her* Instagram account" in the Amended Complaint, which could infer that the Instagram account does not belong to Plaintiff (a corporation). (*Id.*) At this stage of the case, viewing the allegations in a light most favorable to Plaintiff, the Court finds that Plaintiff has alleged that @wifenyc is Plaintiff's Instagram account.

4. **Plaintiff plausibly alleges a claim for statutory damages and fees under 17 U.S.C. § 504(c)**

   i. **Plaintiff plausibly alleges a claim for statutory damages and fees against Romo Inc.**

Defendant Romo Inc. next argues in its Motion that "Plaintiff is precluded from recovering attorney's fees or statutory damages pursuant to 17 U.S.C. 504(c)." (Doc. No. 26, PageID #1492.) It asserts that "Plaintiff alleges that the infringement began "in or around February or March 2022", an entire year before it registered the sculpture." (*Id.* at PageID #1491.)  Romo, Inc. asserts that "[t]he allegedly common infringing activity therefore occurred well before the earliest of the three registration dates" because "Plaintiff did not register the works until February 2023 (sculpture), April 2023 (Photographs) and November 2024 (Photographs)." (*Id.*)    In its Opposition, Plaintiff asserts that "[t]he undisputed evidence in this case indicates that February 28, 2023 is the effective date of registration for the Artwork," but that "[t]he FAC asserts that Defendant Romo, Inc.'s infringement of Plaintiff's Artwork commenced in March 2023." (Doc. No. 30, PageID #1570.)  In its Reply, Romo, Inc. asserts that "Plaintiff attempts to rewrite its infringement timeline, and in the process, contradicts its own FAC, as well as the first 23 pages of its Opposition brief." (Doc. No. 49, PageID #6882.)  If Plaintiff's assertion was true, Romo, Inc. argues, then "none of the following alleged acts could constitute infringement: (1) reproduction of Instagram images to be used on a 'vision board' to create the products; (2) Romo, Inc.'s alleged receipt of copies of the images to be used to create the products; (3) creating digital renderings based on the photographs to make the interiors products; and (4) taking photographs of the interiors products for use in advertisements." (*Id.* at PageID #6881–82.)

Under 17 U.S.C. § 412:

In any action under this title, other than an action brought for a violation of the

63

rights of the author under section 106A(a), an action for infringement of the copyright of a work that has been preregistered under section 408(f) before the commencement of the infringement and that has an effective date of registration not later than the earlier of 3 months after the first publication of the work or 1 month after the copyright owner has learned of the infringement, or an action instituted under section 411(c), no award of statutory damages or of attorney's fees, as provided by sections 504 and 505, shall be made for—

(1) any infringement of copyright in an unpublished work commenced before the effective date of its registration; or

(2) any infringement of copyright commenced after first publication of the work and before the effective date of its registration, unless such registration is made within three months after the first publication of the work.

The only Sixth Circuit case cited by the parties interpreting 17 U.S.C. § 412 is *Johnson v. Jones*, 149 F.3d 494 (6th Cir. 1998).   In *Johnson*, the Sixth Circuit held "that infringement 'commences' for the purposes of § 412 when the first act in a series of acts constituting continuing infringement occurs." *Id.* at 505 (citing cases).

The Court declines to dismiss categorically Plaintiff's claim for statutory damages and fees against Romo, Inc.  Romo, Inc. selectively omits the full relevant allegations in its Motion.  Romo, Inc. directs the Court to Paragraph 8 of the Amended Complaint, which reads:

In or around February or March 2022, the Temperley London Defendants began selling and distributing a Temperley London Spring Summer 2022 luxury fashion collection that included three (3) apparel items known as the "Farrah" apparel products. All three (3) of these "Farrah" apparel products include identical reproductions of Plaintiff's Artwork yet were created without Plaintiff's knowledge, consent, or any payment to her. Plaintiff had no knowledge of the Temperley London apparel products featuring her Artwork or any use of her Artwork by Defendants until she discovered the store display showing the model wearing the "Farrah Kimono" in February 2023.

(Doc. No. 22 at ¶ 8.)   This paragraph does not include any allegation that  Romo, Inc. began selling and distributing infringing products "[i]n or around February or March 2022."  In paragraph 28 of Plaintiff's Amended Complaint, Plaintiff does allege that "[f]ollowing the apparent success of the

Temperley London Spring Summer 2022 apparel collection, the Temperley London Defendants and the ROMO Defendants launched a joint collaboration known as the Temperley London x ROMO "A World Less Ordinary" interiors collection in or around March 2023." (*Id.* at ¶ 28.) While the Amended Complaint certainly alleges that Temperley London began their infringing activities in 2022, there are no allegations that Romo, Inc. did as well.

Based on this, the Court declines to dismiss Plaintiff's claims for statutory damages and fees against Romo, Inc. At a minimum, viewing the allegations in the light most favorable to Plaintiff, the Amended Complaint demonstrates that Plaintiff's alleged registration of the Artwork in February 2023 predates Romo, Inc.'s alleged infringement in March 2023. *See Marlon Blackwell Architects, P.A. v. HBG Design, Inc.*, No. 4:19-cv-00925 KGB, 2020 U.S. Dist. LEXIS 215309, at *7 (E.D. Ark. Nov. 18, 2020) ("the question of how many infringements have occurred and on what dates which parties commenced each such infringement are ones to be resolved after the benefit of factual discovery"); *Mahavisno v. Compendia Bioscience, Inc.*, No.13-12207, 2014 U.S. Dist. LEXIS 11147, at *25 (E.D. Mich. 2014) (dismissing statutory damages and fees against one defendant and declining to dismiss statutory damages against the other). For these reasons, the Court denies Romo, Inc.'s request to dismiss categorically Plaintiff's requests for statutory damages and fees.

### ii. Plaintiff plausibly alleges a claim for statutory damages and fees against Romo UK

With respect to Plaintiff's claim for statutory damages and fees, Romo UK makes the same argument that Romo, Inc. made in its Motion. Romo UK points the Court to Paragraph 8 of the Amended Complaint to argue that "Plaintiff alleges that the infringement began "in or around February or March 2022", an entire year before it registered the sculpture." (Doc. No. 51, PageID 6926.) Like Romo, Inc., Romo UK also omits the full the full allegation contained in Paragraph 8,

and that allegation does not reference Romo UK.  (Doc. No. 22 at ¶ 8.)  Instead, Plaintiff alleges that the "ROMO Defendants" launched the infringing collections "in or around March 2023," which postdates Plaintiff's registration of the Artwork.  Accordingly, for the same reasons identified above, the Court denies Romo UK's request to dismiss categorically Plaintiff's requests for statutory damages and fees.

### iii.   Plaintiff does not allege a plausible claim for statutory damages and fees against the Temperly London entities

In its Motion, the Temperley London entities make the same argument as their co-defendants, namely that the alleged infringement began in 2022, which pre-dates registration of the Artwork. (Doc. No. 51, PageID #6296.)  In its Opposition, relying on Ninth Circuit authority, Plaintiff argues that "the Temperley London apparel collection does not constitute the "first act" in a series of acts constituting continuing infringement as it relates to the infringing Romo interiors products and advertisements since the infringements by Temperley London and Romo are distinct and are not 'of the same kind' as is required to be considered a continuing infringement."  (Doc. No. 61, PageID #7201.)  Plaintiff further argues that "[t]he infringements at issue here are by two separate brands and several different companies, not the same brand or company."  (*Id.*)  In their Reply, the Temperley London entities assert that "Plaintiff ignores the fact that it is accusing Temperley London of being the common infringer for both the apparel and interiors collections."  (Doc. No. 63, PageID #7262.) They further argue that "even assuming the truth in Plaintiff's allegations, it would defy logic that Plaintiff first copied the sculpture and photographs for the 2022 apparel collection, before once again, first copying the sculpture and photographs for the interiors collection."  (*Id.*)

To resolve this issue, the Court finds *Trent P. Fisher Enters., LLC v. SAS Automation, LLC*, No. 3:20-cv-216, 2021 U.S. Dist. LEXIS 62914 (S.D. Ohio Mar. 31, 2021) instructive.  In *Trent*, the

court dismissed the Plaintiff's claim for statutory damages under § 412 even when the plaintiff alleged "new and independent acts of infringement" occurring after registration. *Id.* at *28–29. In dismissing Plaintiff's claim, the court reasoned that "[i]f, following registration, the defendant infringed the same work again, this would still not entitle the plaintiff to statutory damages-even where the new post-registration act of infringement is arguably 'different in kind' from the preregistration infringement." *Id.* at *29 (quoting *S. Credentialing Support Servs., LLC v. Hammond Surgical Hosp., L.L.C.*, 946 F.3d 780, 785 (5th Cir. 2020)); *see also Johnson*, 149 F.3d at 505; *Signature Mgmt. Team, LLC v. Doe*, No. 13-cv-14005, 2016 U.S. Dist. LEXIS 202214, at *5 (E.D. Mich. Sept. 12, 2016 ("In short, plaintiff cannot reset the clock under § 412 by pointing to a continuing act of infringement by defendant of the same work").

Like *Trent*, Plaintiff's Amended Complaint simply alleges that that the Temperley London entities "infringed the same work again" pre- and post-registration. With respect to the Unauthorized Farrah Interiors Products, Plaintiff alleges that "*[f]ollowing* the apparent success of the Temperley London Spring Summer 2022 apparel collection, the Temperley London Defendants and the ROMO Defendants launched a joint collaboration . . . in or around March 2023." (Doc. No. 22 at ¶ 28 (emphasis added).) Plaintiff then alleges that "[t]hrough this collection, Defendants *again* made unauthorized use of Plaintiff's Artwork and the Photographs and sold products that violated Plaintiff's copyright rights – *this time* in the form of fabrics and cushions." (*Id.* (emphasis added).) And with respect to the Unauthorized Adverting Works, Plaintiff alleges that these are merely depictions of the underlying infringing works. (Doc. No. 22 at ¶ 40 ("Defendants also violated Plaintiff's copyright rights in the Artwork and the Photographs by producing photographs, videos, and advertisements featuring the Unauthorized Farrah Apparel Products, Unauthorized Palmae

Apparel Products, and the Unauthorized Farrah Interiors Products").)  Viewing these allegations in the light most favorable to Plaintiff, under *Johnson*, the Court finds that Amended Complaint alleges that "the first act in a series of acts constituting infringement" occurred in 2022.

The Court is not persuaded by Plaintiff's argument that post-registration infringements are not "of the same kind."  In making this argument, Plaintiff relies on *Derek Andrew, Inc. v. Poof Apparel Corp.*, 528 F.3d 696 (9th Cir. 2008), where the Ninth Circuit held that "that the first act of infringement in a series of ongoing infringements *of the same kind* marks the commencement of one continuing infringement under § 412."  *Id.* at 701 (emphasis added).  In reaching its holding, the Ninth Circuit observed that "we join those circuits that addressed the issue before us" by relying, in part, upon *Johnson*'s standard.  This begs the question whether the Ninth Circuit's "of the same kind" holding is materially different than the Sixth Circuit's standard in *Johnson*.  *See Dorchen/Martin Assocs. v. Brook of Cheboyhan, Inc.*, No. 11-10561, 2013 U.S. Dist. LEXIS 4475, at *8 (E.D. Mich. Jan. 11, 2013) (finding that the Ninth Circuit "established the same standard" as *Johnson* in *Derek Andrew*).  Even if *Derek Andrew*'s standard is materially different than *Johnson*'s standard, the Ninth Circuit's holding does not help Plaintiff here because the Ninth Circuit reversed the district court's award of statutory damages.  *See Derek Andrew*, 528 F.3d at 701 ("The mere fact that the hang-tag was attached to new garments made and distributed after June 15 does not transform those distributions into many separate and distinct infringements").

Accordingly, the Court finds that Plaintiff fails to state a claim for statutory fees and damages against the Temperley London entities.

**V.       Conclusion**

For the reasons set forth herein, Romo, Inc.'s Motion (Doc. No. 26) is DENIED; Romo UK's Motion (Doc. No. 51) is DENIED; and the Temperley London Defendants' Motion (Doc. No. 52) is GRANTED in part and DENIED in part.  Ms. Temperley is dismissed from this action for lack of personal jurisdiction without prejudice.  Plaintiff's claim for statutory damages and fees against the Temperley London entities is dismissed.  All other parties and claims remain pending.

**IT IS SO ORDERED.**

           *s/Pamela A. Barker*
           PAMELA A. BARKER
Date:  November 25, 2025           U.S. DISTRICT JUDGE